**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 21-cr-399 (RDM)** |
| | : | |
| **ROMAN STERLINGOV,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR BILL OF PARTICULARS**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully opposes the defendant's Motion for a Bill of Particulars, ECF No. 45.

The Superseding Indictment against the defendant, ECF No. 43, specifies the elements of the offenses the defendant committed, identifies the relevant time period and locations, and provides citation to the applicable statutes. In addition, the government has provided fulsome discovery totaling more than three terabytes of data, filed a detailed affidavit in support of a criminal complaint, and turned over detailed search and seizure warrant affidavits in discovery. Nothing further is necessary to ensure the defendant understands the charges against him and is able to prepare his defense. The defendant's motion—a laundry list of civil interrogatory-style questions—goes well beyond the minimal pleading standards under the Federal Rules of Criminal Procedure and should be denied.

**ARGUMENT**

**A. Legal Standard**

The purpose of a bill of particulars is "to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v.*

*Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (internal citation omitted).  A bill of particulars should be granted only when "necessary to prevent unfair surprise at trial."  *United States v. Hsin-Yung*, 97 F. Supp.2d 24, 36-37 (D.D.C. 2000) (internal citation omitted).  "Defendants are not entitled to a bill of particulars as a matter of right since the test is whether such particulars are 'necessary.'" *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (quoting 1 Charles Alan Wright & Andrew Leipold, *Federal Practice and Procedure: Criminal* § 130 (4th ed. 2008)). "[T]he determination of whether a bill of particulars is necessary rests within the sound discretion of the trial court."  *United States v. Butler*, 822 F.2d 1191, 1194 (D.C. Cir. 1987).

The defendant misunderstands the purpose of an indictment and the low bar an indictment must clear to satisfy the federal rules and Constitution.  In general, "an indictment that includes each of the elements of the charged offense, the time and place of the accused's allegedly criminal conduct, and a citation to the applicable statute or statutes is sufficient to meet that standard." *United States v. Vaughn*, 722 F.3d 918, 927 (7th Cir. 2013).  As the D.C. Circuit explained in *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976), "[a]lthough an indictment must in order to fulfill constitutional requirements apprise the defendants of the essential elements of the offense with which they are charged, neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed."  Indeed, "the validity of an indictment 'is not a question of whether it could have been more definite and certain.'"  *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).  "While detailed allegations might well have been required under common-law pleading rules . . . they surely are not contemplated by Rule 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential

2

facts constituting the offense charged.'" *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007). As a mere notice pleading, an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Id.* at 108; *see also Haldeman*, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established."). Only in the rare case where "guilt depends so crucially upon . . . a specific identification of fact" not included in the statutory language will an indictment that restates the statute's language be insufficient. *Haldeman*, 559 F.2d at 125 (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)).

In addition, "if the requested information is available in some other form, then a bill of particulars is not required." *Butler*, 822 F.2d at 1193; *see also* Wright & Leipold, *Federal Practice and Procedure: Criminal* § 130 ("[N]o bill is required if the government has provided the desired information through pretrial discovery or in some other satisfactory manner."). Accordingly, courts routinely look beyond the four corners of an indictment and take into consideration whether other material in the case, such as warrant affidavits or discovery, are sufficient in combination with the indictment to apprise the defendant of the charges against him and allow him to prepare a defense. *See, e.g.*, *Mejia*, 448 F.3d at 446 (denying bill of particulars where DEA-6 forms summarizing witness statements were produced in discovery); *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (denying bill of particulars where defendants received "wealth of evidentiary detail from the discovery to date, including electronic intercepts, search evidence and exhaustive supporting affidavits"); *United States v. Taylor*, 2018 WL 4961608, at *4 (N.D. Cal. Oct. 12, 2018) (denying bill of particulars where "the indictment and search warrant affidavits provide a description of the alleged conspiracy that adequately informs Taylor of the charges against him"); *United States v. Zoernack*, 2005 WL 1837962, at *4 (S.D.N.Y. Aug. 2, 2005)

(denying bill of particulars where "Affidavit in support of the search warrant" and 7,000 pages of discovery "provide sufficient information of the details of the charges to enable Defendant and his counsel to prepare for trial and avoid unfair surprise").

Courts applying these principles have repeatedly concluded that "a bill of particulars is not a discovery tool or a device for allowing the defense to preview the government's evidence." *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004). "[U]nlike discovery, a bill of particulars is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation and not to provide the defendant with the fruit of the government's investigation." *Sanford Ltd.*, 841 F. Supp. 2d at 316 (internal citation omitted). "In other words, a bill of particulars properly includes clarification of the indictment, not the governments proof of its case." *Id.* (internal citation omitted).

## B. The Superseding Indictment, Affidavits, and Discovery Are Sufficient To Provide Notice of the Charges and Allow Defendant To Prepare a Defense

Set against these standards, there is little doubt that the Superseding Indictment adequately informs the defendant of the charges against him and allows him to prepare a defense—especially as supplemented by the detailed agent affidavit filed in support of the criminal complaint, ECF No. 1-1 (the "Complaint Affidavit"), the various search and seizure warrants produced in discovery, and the detailed motions practice in this case.

In Count One, for instance, the Superseding Indictment charges Money Laundering Conspiracy. The plain language of the indictment specifies the relevant statute (18 U.S.C. § 1956(h)) and describes the essential elements of the crime of money laundering conspiracy—namely, an agreement between two or more persons to commit a money laundering offense. *See* ECF No. 43 (alleging that defendant and co-conspirators "did knowingly and willfully combine, conspire, confederate and agree to commit" violations of the money laundering statute, 18 U.S.C.

§ 1956(a)(1)(A)(i) and (a)(1)(B)(i)); *see United States v. Powell*, 847 F.3d 760, 781 (6th Cir. 2017) ("[T]o establish a money-laundering conspiracy the government must prove (1) that two or more persons conspired to commit the crime of money laundering, and (2) that the defendant knowingly and voluntarily joined the conspiracy.") (internal quotations omitted). The indictment contains a plain and concise statement of *who* was involved in the conspiracy (the defendant Roman Sterlingov, "co-conspirators known and unknown," and "darknet vendors and darknet market administrative teams"); *when* the conspiracy occurred ("[f]rom on or about October 27, 2011, and continuing until at least on or about April 27, 2021"); *where* the conspiracy reached ("in the District of Columbia and elsewhere"); and *how* the conspiracy operated ("through the operation of BITCOIN FOG"). The indictment language for Count One clearly "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Resendiz-Ponce*, 549 U.S. at 108. The same analysis applies to the Superseding Indictment's allegations in Counts Two through Four, which similarly specify the relevant statutes, essential elements, and key facts pertaining to each of the charges.

If anything further were needed for notice purposes, the detailed affidavits in this case provide a wealth of detail about the nature of Bitcoin Fog and the defendant's role in operating it. The Complaint Affidavit, for instance, describes how the defendant was directly involved in setting up Bitcoin Fog—creating the clearnet domain, www.bitcoinfog.com, that was used to advertise and direct users to Bitcoin Fog's Tor address; and engaging in "beta test" transactions testing out the operation of a mixer/tumbler, and eventually merging into Bitcoin Fog's bitcoin cluster, shortly before the official launch of Bitcoin Fog. ECF No. 1-1, at 7-11. The Complaint Affidavit describes how the defendant was tied to accounts for the fictitious persona Akemashite Omedetou ("Happy New Year"), which was used to manage Bitcoin Fog's public-facing communications on the

BitcoinTalk forum and Twitter. *Id.* at 2-3, 7-9. And it describes the defendant's ongoing receipt of proceeds from Bitcoin Fog as recently as 2019. *Id.* at 11. It further describes how Bitcoin Fog was advertised as a tool for concealing transactions from the "authorities," in contrast to "legitimate, visible businesses." *Id.* at 2-3. And it documents how Bitcoin Fog in fact transmitted an enormous volume of bitcoin transactions—valued at more than $78 million—directly to or from darknet markets primarily dealing in illegal drugs; and processed undercover transactions conducted from the District of Columbia, including an undercover transaction represented to involve the proceeds of illegal drug trafficking activity. *Id.* at 3-7. The search and seizure warrant affidavits added even more detail,[1] and the government has produced a massive volume of discovery pertaining to these affidavits and more. The defendant may well contest *some* of this evidence—although he has either corroborated or failed to deny many key details in his interview with reporters and in his pleadings, such as conceding his receipt of payments from Bitcoin Fog and claiming he cannot "remember" if he set up Bitcoin Fog's clearnet domain[2]—but there is very little mystery about the charges in the Superseding Indictment or the defendant's role in Bitcoin Fog, and the government's theory of the case has further been fleshed out in detailed motions practice over the defendant's pretrial detention, *see* ECF No. 19 (Gov't Opp. to Def. Mot. To

---

[1] Two of the warrant affidavits in this case are attached to the government's opposition to the defendant's motion for the release of seized assets, to be filed contemporaneously with this pleading.

[2] See Lily Hay Newman & Andy Greenberg, *Bitcoin Case Could Put Cryptocurrency Tracing on Trial*, WIRED (Aug. 2, 2022), *available at* https://www.wired.com/story/bitcoin-fog-roman-sterlingov-blockchain-analysis/ (reporting that defendant "concedes that he did send and receive payments to Bitcoin Fog as a user of the service," and quoting defendant saying "he 'can't remember' if he created Bitcoinfog.com" and "'it's really hard for me to say anything specific'"); ECF No. 47, at 15 (claiming defendant "was merely a user of the service").

Revoke Detention Order); ECF No. 50 (Gov't Opp. to Def. Mot. To Reconsider Pre-Trial Detention).

### 1. Count One Provides Sufficient Notice

The defendant's additional complaints about the notice provided as to Count One in the Superseding Indictment are meritless. The defendant complains (at 4) that the indictment does not list out individual co-conspirators, but the weight of authority holds that conspiracy indictments generally need not name unindicted co-conspirators. *See. e.g.*, *Sanford Ltd.*, 841 F. Supp. 2d at 317 ("The government in this case is not required to disclose the identities of all members of the conspiracy."); *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004); *United States v. Aparo*, 221 F. Supp. 2d 359, 368 (E.D.N.Y. 2002) ("A bill of particulars is not intended to provide the defendant with the names of unindicted co-conspirators."); *United States v. Diaz*, 303 F. Supp. 2d 84, 89 (D. Conn. 2004) ("[T]he general rule in conspiracy cases is that the defendant is not entitled to obtain detailed information about the conspiracy in a bill of particulars."). Even the decision in *United States v. Concord Management & Consulting LLC*, 385 F. Supp. 3d 69 (D.D.C. 2019), on which the defendant relies, acknowledged that "a bill of particulars is rarely the proper vehicle for obtaining the identities of unindicted co-conspirators." *Id.* at 75. *Concord* ordered a limited identification of some (not all) unindicted co-conspirators only because of the "unique circumstances" of that case, which included "strict limitations the government has sought on the large volume of discovery" based on national security concerns. *Id.* Nothing remotely similar is the case here.

The defendant further complains (at 4-5) that Count One of the Superseding Indictment does not specify particular "conspiratorial acts" or "financial transactions." The D.C. Circuit's decision in *Mejia* is directly on point. The D.C. Circuit affirmed denial of a motion for bill of

particulars asking for overt acts in a drug trafficking conspiracy, among other things, because, "[a]lthough the indictment did not allege any overt acts, the district court correctly found that 'the language of [21 U.S.C. § 963] does not call for any to be set forth in an indictment, nor do any have to have been committed in order for a § 963 violation to be proven.'"   448 F.3d at 445 (quoting district court; internal alterations omitted).   The same logic holds true here:   the money laundering statute, 18 U.S.C. § 1956(h), does not require proof of any overt acts, *see Whitfield v. United States*, 543 U.S. 209, 211 (2005).   As in *Mejia*, the defendant's request for a bill of particulars for such details should be denied.

The defendant professes ignorance (at 6) about the "object" of the conspiracy, but the indictment plainly alleges that the object of the conspiratorial agreement was to launder drug trafficking proceeds for purposes of concealment (in violation of 18 U.S.C. § 1956(a)(1)(B)(i)) and to promote further drug trafficking offenses (in violation of 18 U.S.C. § 1956(a)(1)(A)(i)), *see* ECF No. 43, at 2 (subparagraphs "a" and "b").

Confusingly, the defendant demands (at 6) more detail about "the intent to avoid a transaction reporting requirement under federal or state law," referring to a separate money laundering offense, *see* 18 U.S.C. § 1956(a)(1)(B)(ii), but that offense is not mentioned in the indictment and has never been alleged by the government.

The defendant also uses his motion (at 4-6) to demand a variety of "factual predicates" and push his vague and conclusory arguments about the government's evidence, but he disregards Chief Judge Howell's admonition that "[a] bill of particulars is not a discovery tool or a devise for allowing the defense to preview the government's theories or evidence," *Sanford Ltd.*, 841 F. Supp. 2d at 316 (internal citation omitted).

### 2.   Count Two Provides Sufficient Notice

The defendant's complaints about Count Two are similarly meritless.  At the outset, much of the defendant's argument appears to arise from a basic misreading of the offense statute, 18 U.S.C. § 1956(a)(3).  This statutory provision—sometimes referred to as the "sting money laundering" statute, *see, e.g.*, Michael Bednarczyk, *Money Laundering*, 59 Am. Crim. L. Rev. 1129 (2022)—makes it a crime to conduct certain transactions with "property *represented to be* the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity."  18 U.S.C. § 1956(a)(3) (emphasis added).  The statutory language is clear: the transaction does not *actually* have to involve proceeds of illegal activity; it only has to involve property "represented to be" the proceeds of illegal activity.  The Superseding Indictment tracks the statutory language.  *See* ECF No. 43, at 2 (transaction involved property "represented to be the proceeds of specified unlawful activity, that is, the felonious . . . buying, selling, and otherwise dealing in a controlled substance").  The Complaint Affidavit explained how the funds were sent to Bitcoin Fog from a wallet held on the darknet market Apollon, and that the funds were represented to be "coins from selling ecstasy"—with the undercover agent adding further that "I have more coins I need cleaned," ECF No. 1-1, at 6.  Set against the perfectly understandable statutory text as well as the narrative in the Complaint Affidavit, the defendant's criticism (at 10) that "[t]here is no allegation in Count Two that the proceeds in question are the ill-gotten gains of a crime"—a requirement that appears nowhere in the statute—is baffling.

The defendant suggests (at 10) that there is some "difference" that needs to be explained between the offense alleged in Count Two and the Complaint Affidavit's description of an undercover transaction conducted through the defendant's platform, Bitcoin Fog.  If the defendant means to argue that he is not responsible for individual transactions on Bitcoin Fog, that is an

argument about the merits, not the sufficiency of the notice of the charges against the defendant. In any event, it is black-letter law that a defendant is responsible for an act that he willfully causes to be done, *see, e.g.*, *United States v. Heyman*, 794 F.2d 788, 791 (2d Cir. 1986), and the Complaint Affidavit explains how the defendant created and maintained Bitcoin Fog for the express purpose of concealing such transactions from the "authorities," ECF No. 1-1, at 2-3; *see also* ECF No. 19, at 4-11.[3]

As with Count One, the defendant repeatedly demands the "factual predicates" (at 11) underlying Count Two.  The government, however, has provided detailed discovery regarding the undercover transaction, including screenshots, video recordings, and identification of the specific bitcoin addresses involved in this and other undercover transactions.  In any event, there is no more basis here than with Count One to use a bill of particulars to engage in this form of discovery.  *See Sanford Ltd.*, 841 F. Supp. 2d at 316.

### 3.  Counts Three and Four Provide Sufficient Notice

The defendant's challenges (at 12) to the notice provided in Counts Three and Four are largely repetitive demands for "factual predicates," which fail under the precedent discussed above.  *See Sanford Ltd.*, 841 F. Supp. 2d at 316.  Meanwhile, the defendant's claim that he "cannot determine under what statute the Government is attempting to prosecute Mr. Sterlingov for aiding and abetting" is puzzling, because it is plain from the face of the indictment.  Count Three charges the defendant with a substantive offense of Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a), and, in the alternative, with Aiding and Abetting the

---

[3] The government has also presented evidence that the defendant's alter ego, Akemashite Omedetou, monitored customer support messages submitted through Bitcoin Fog, *see* ECF No. 19, at 15-16.

same offense (§ 1960), in violation of the federal aiding and abetting statute, 18 U.S.C. § 2.  *See*

ECF No. 43, at 3-4 (citing 18 U.S.C. §§ 1960(a) and 2).[4]  There is no need for a bill of particulars

to explain what is plain from the text of the indictment.

### 4.  The Superseding Indictment Provides Sufficient Notice as to Venue

Finally, the defendant argues (at 10-11) that the Court should grant a bill of particulars on

venue, although he does not provide a single legal authority supporting this request.  Here, the

Superseding Indictment clearly alleges that each count occurred "in the District of Columbia and

elsewhere," ECF No. 43, at 1 (Count One), 3 (Counts Two and Three), 4 (Count Four), and the

Complaint Affidavit explained that Bitcoin Fog was "an Internet-based service accessible from the

District of Columbia" and that undercover agents accessed Bitcoin Fog and conducted transactions

on it from locations in the District of Columbia, ECF No. 1-1, at 1, 5-7.  Documents produced in

discovery show additional undercover transactions by agents in the District of Columbia.  And the

government's venue theory is further detailed in its response to the defendant's Motion To

Dismiss, to be filed contemporaneously with this pleading.

It appears that the defendant actually understands the government's factual basis for venue

in the District of Columbia—as evidenced by the extended discussion of the D.C.-based

undercover transactions in his motion (at 13-14)—and he is using the instant motion as another

vehicle to air his perceived grievances about the government's prosecution.  The Court should

---

[4] Aiding and abetting is not a separate offense, but rather an alternative theory of liability that "is embedded in every federal indictment for a substantive crime."  *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005); *see also, e.g.*, *United States v. Sanchez*, 917 F.2d 607, 611 (1st Cir. 1990) ("'[A]iding and abetting is not a separate offense. . . .  Aiding and abetting is an alternative charge in every count, whether explicit or implicit.") (internal citations and alterations omitted).  "It is not uncommon to charge aiding and abetting and principal liability as alternative theories."  *United States v. Ulbricht*, 2014 WL 5410049, at *4 (S.D.N.Y. Oct. 24, 2014) (rejecting motion to dismiss counts that charged aiding and abetting as well as principal liability).

reject the defendant's attempt to rehash his merits arguments in the guise of a motion for a bill of particulars.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion for a bill of particulars should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:    */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
C. Alden Pelker, Maryland Bar
Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007
Catherine.Pelker@usdoj.gov