# UNITED STATES DISTRICT COURT

# DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

ROMAN STERLINGOV,

*Defendant*.

**21-CR-399 (RDM**)

**Defendant's Reply to Government's Opposition to Defendant's Motion to Reconsider Pre-Trial Detention**

1

# Table of Contents

*I.*   *The Presumption of Innocence* ............................................................... *7*

*II.*   *The Weight of the Evidence* .................................................................. *7*

   **A.**   **Flight Risk** ............................................................................. **9**

   **B.**   **The Charged Crimes** ............................................................ **10**

      **1.**   **The Errors in the Government's Opposition** ................................. 10

      **2.**   **The Errors in the Two New Search Warrants** ............................... 13

      **3.**   **The Validity of the Blockchain Analysis is a Question of Fact and not Law** ................. 14

      **4.**   **Statute of Limitations** ................................................................. 15

      **5.**   **Terms of Release** ......................................................................... 16

*III.*   *The Least Restrictive Means* ................................................................. *17*

*IV.*   *Conflicts of Interest* ............................................................................. *17*

# Table of Authorities

**Cases**

*United States v. Salerno*, 481 U.S. 739 (1987) ...........................................................................9

**Statutes**

18 U.S.C. § 3142(c)(1)(B) ..........................................................................................................17

18 U.S.C. § 3142(g) .....................................................................................................................9

**Other Authorities**

Bank of America CEO: We Have Hundreds of Blockchain Patents — But Regulation Won't

    Allow Us to Engage in Crypto, *Bitcoin Dot Com News*, May 30, 2022 ..............................17

ADAM BENFORADO, UNFAIR:  THE NEW SCIENCE OF CRIMINAL INJUSTICE (2015) ....................7

Katie Kilkenny, *Jigsaw Productions Options Wired Writer's Cryptocurrency Book

    (Exclusive)* HOLLYWOOD REPORTER. ......................................................................................5

## Introduction

Roman Sterlingov has now served a felony length jail sentence without ever being convicted by a jury. After seizing and rummaging through terabytes of data, wiretaps, surveillance, pen traps, and employing numerous investigators over the course of seven years the Government has no evidence but speculation for its case-in-chief.

The Government cannot point to a single piece of evidence showing that Roman Sterlingov operated the foggedriztcar2.onion site.[1] Nor do they have any evidence that Mr. Sterlingov is a flight risk. They presume his guilt rather than his innocence in their pre-trial detention arguments. The Government has yet to identify a single crime the proceeds of which can be attributed to Mr. Sterlingov. And they admit that they have no eyewitnesses. This is all bad guess work done from desks thousands of miles away from Gothenburg, Sweden.

The Government relies on unscientific, undefined, blockchain analyses in its guess work. They cannot cite a single piece of scientific evidence supporting their methodologies. None of this is peer-reviewed, independently verified, or scientifically sound. More money has been spent on marketing these so-called blockchain analyses than on verifying their validity. The validity of a blockchain analysis is a question of fact, not of law, and no amount of case law can save the Government from its flawed, error-ridden, and speculative analysis.

Justice requires either the pretrial release of Mr. Sterlingov under the least restrictive means to ensure his appearance in this Court; or a pre-trial hearing where Mr. Sterlingov can

---

[1] The foggedriztcar2.onion address was not the original onion address shown on the clearnet site or in the Bitcoin Talk forum post. The original onion address was fogcore5n3ovtui.onion. This is another one of the Government's errors, discussed later in this brief.

confront his accusers and demonstrate the pervasive error, speculation, and junk science at the heart of the Government's case.

## Background

Around 2015, the Counterintelligence Division of the FBI Philadelphia Field Office began its investigation into Bitcoin Fog.[2] Then-FBI Intelligence Analyst Catherine Alden Pelker, a current prosecutor in this case, worked on the investigation. At some point it was transferred to the Criminal Division.

Sometime in 2015 or 2016, Ms. Pelker transfers this case to the District of Colombia, where she graduates from Georgetown Law School in 2016. After graduating, Ms. Pelker joins the U.S. Attorney's Office for the District of Columbia as an Assistant United States Attorney.

In 2015, Aaron Bice begins working, through his employer MITRE, on a contract with the IRS as a criminal investigator ("IRS-CI"). As an IRS-CI, Bice works on this case, using a blockchain analysis software platform from a British company called Elliptic, as well as working with Chainalysis.

In 2017, during this investigation, Bice and an associate found Excygent LLC, registering it in Virginia. In 2018, Bice leaves MITRE to devote himself to Excygent, LLC, while still working as an IRS-CI on this case. The Defense cannot locate any government contract with Excygent, LLC in the SAM.gov database that lists government contracts.

---

[2] The following is based on the Defense's review of the Government's discovery as well as the declaration of E. Garland attached as Exhibit B to Defendant's Motion for Reconsideration of Detention.

4

Around 2020, individuals from the prosecution, including investigators and government contractors involved in this case, began conversations about it with a WIRED Magazine reporter. These discussions and interviews, over the course of the last two years, form the basis of a book coming out in November, 2022 chronicling their work and discussing this case. The book has already been optioned by Hollywood.[3]

On April 27, 2021, the FBI arrests Mr. Sterlingov at Los Angeles International Airport. The same day WIRED runs an exclusive article announcing his arrest.

ANDY GREENBERG   SECURITY   APR 27, 2021 6:20 PM

# Feds Arrest an Alleged $336M Bitcoin-Laundering Kingpin

The alleged administrator of Bitcoin Fog kept the dark web service running for 10 years before the IRS caught up with him.

This exclusive story quotes Jonathan Levin, the British co-founder of Chainalysis.

"This is yet another example of how investigators with the right tools can leverage the transparency of cryptocurrency to follow the flow of illicit funds," says Jonathan Levin, cofounder of blockchain analysis company Chainalysis.

As of Tuesday afternoon, Bitcoin Fog remained online, though it's unclear who, if anyone, now operates it. Neither the IRS nor the Department of Justice responded to WIRED's requests for comment.

DOJ does not officially announce the arrest in a press release until the following day.

On April 28, 2021, Excygent LLC features prominently in the two DOJ press releases trumpeting Mr. Sterlingov's arrest. The DOJ thanks Excygent, LLC at the head of a list of

---

[3] Katie Kilkenny, *Jigsaw Productions Options Wired Writer's Cryptocurrency Book (Exclusive)* HOLLYWOOD REPORTER, https://www.hollywoodreporter.com/business/business-news/tracers-in-the-dark-book-optioned-jigsaw-productions-1235173673/.

names including FBI field offices and domestic and international law enforcement. Neither

MITRE nor Elliptic are mentioned.

> The IRS-CI District of Columbia Cyber Crime Unit and the FBI Washington Field Office are investigating the case. Essential support was provided by Excygent; the IRS-CI Los Angeles Field Office, Van Nuys Post of Duty; FBI Los Angeles Field Office; Homeland Security Investigations; Customs and Border Patrol; the U.S. Attorneys' Offices for the Central District of California, Northern District of California, and Southern District of New York; and the Financial Crimes Enforcement Network of the U.S. Department of Treasury. The Department of Justice's Office of International Affairs provided invaluable assistance, as did Europol; the Swedish Economic Crime Authority, the Swedish Prosecution Authority, and the Swedish Police; and the General Inspectorate of Romanian Police, Directorate for Combatting Organized Crime and the Directorate for Investigating Organized Crime and Terrorism.
>
> Trial Attorney C. Alden Pelker of the Criminal Division's Computer Crime and Intellectual Property Section and Assistant U.S. Attorney Christopher B. Brown of the U.S. Attorney's Office for the District of Columbia are prosecuting the case, with assistance from Paralegal Specialist Chad Byron. Former Assistant U.S. Attorneys Youli Lee and Zia Faruqui made invaluable contributions during their tenures on the case team. The team also appreciates the previous support of Trial Attorney S. Riane Harper of the Computer Crime and Intellectual Property Section; Paralegal Specialist Kenny Nguyen; former Paralegal Specialists Toni Anne Donato and Bianca Evans; and former Assistant U.S. Attorney Allen O'Rourke over the course of this long-running investigation.

On June 24, 2021, Chainalysis receives $100 million in its Series E funding round, led

by Coatue, a hedge fund with significant co-investments alongside the government of China.

Chainalysis values itself then at $4.2 billion.

On October 5, 2021, Chainalysis buys Excygent LLC for an undisclosed sum.

In January 2022, Chainalysis hires Youli Li, a former prosecutor on this case, as

Senior Legal Director.

## Argument

The Government is afraid to put its pretrial detention theory to the test in open court; if

it is so sure of its case, why is it so scared to put it up for cross examination pretrial on so

fundamental an issue as a defendant's liberty? If the Government wishes to detain a defendant

pretrial for a felony-length sentence, then it invites constitutional scrutiny. If it does not want

to be cross-examined on its detention of Mr. Sterlingov, then the Government should release

Mr. Sterlingov.

# I.      The Presumption of Innocence

The presumption of innocence requires treating Mr. Sterlingov like a normal human being and not a darknet supervillain. The Government points to no concrete evidence that Mr. Sterlingov is a flight risk, rather they spin fantasies of flight based on him being guilty of what they've charged him with. This is unconstitutional. The presumption of innocence in the pretrial setting requires evidence of flight risk and the presumption of innocence even when speculating about the weight of factors like the length of the sentence faced, or assets on hand.

The reality is that Mr. Sterlingov wants to confront his accusers in adversarial proceedings in open court. The Government is the one lurking in the shadows.

# II.     The Weight of the Evidence

Confirmation bias is a well-documented scientific phenomena, and one that law enforcement is subject to.[4] There's more scientific evidence for the existence of prosecutorial confirmation bias than there is for the validity of the government's blockchain analysis. Just as there is no evidence that Mr. Sterlingov ever operated Bitcoin Fog, there is no evidence that he is a flight risk.

The fact that the Government gives such primacy to two machine-translated Russian language documents, and some WhatsApp messages highlights the paucity of their case.

First, that this is all they can cite for corroborating evidence after a seven-year multi-jurisdictional investigation involving wiretaps, surveillance, pen traps, and the wholesale

_____

[4] ADAM BENFORADO, UNFAIR:  THE NEW SCIENCE OF CRIMINAL INJUSTICE, 18-25, 36 (summarizing research) (2015).

seizure of Mr. Sterlingov's computers, storage devices, back up codes, files, and notes demonstrates the Government has no corroborating evidence.

The Russian language document they attach to their Opposition is one discussing the best jurisdiction to set up an offshore entity for tax purposes. This is a conversation that's being had thousands of times a day by corporate lawyers with their clients all over the world. The document, page 49 of a larger document, discusses what legal formalities need to be followed, and what taxes must be paid. It is a document discussing corporate legal compliance and jurisdictional tax concerns, not legal evasion. This document is not evidence of Mr. Sterlingov operating the Bitcoin Fog onion site for a decade.

Nor are the decrypted WhatsApp messages attached to the Government's Opposition, which jokingly discuss gold bullion being stashed under pillows. On April Fool's Day. Discussing a country's legal and regulatory schemes relating to commodities and assets is a normal business conversation happening all over the world right now between business people and their lawyers. If this can even be characterized as a serious business conversation and not joking. Again, it is not evidence of operating a bitcoin mixing onion site for a decade, or hiding of assets, or anything.

This is all the Government presents after rummaging through all of Mr. Sterlingov's encrypted communications. There is not a single communication regarding the operation of anything related to Bitcoin Fog. No log ins, source code, notes, nothing. Just Government guessing using unscientific, undefined, methodologies.

### A.      Flight Risk

The Government has the burden of proof of establishing that Mr. Sterlingov is a flight risk and that no reasonable measures are available that would ensure his appearance at trial.[5] The record contains no discussion of the potential methods of supervised release for Mr. Sterlingov; the Government simply asserts that no such methods exist.

Pre-Trial Services employs capable officers and methodologies for supervising the release of defendants across the United States. Pre-Trial Services Offices in the Eastern District of New York and Massachusetts are both professional, experienced, and well equipped to supervise a non-violent defendant like Mr. Sterlingov.

There is no evidence that Mr. Sterlingov is a flight risk, under either the preponderance of the evidence or the clear and convincing standards of review. In conducting the fact-specific analysis of flight risk, courts look to a series of factors including those listed in the Bail Reform Act.[6]

The Constitution requires that this analysis be done under the presumption of innocence. The government has seized substantially all of Mr. Sterlingov's assets. The Government speaks as if he has access to large amounts of assets but presents no evidence of this.

The only thing at issue here is the weight of speculative factors, such as the length of the sentence faced and the ties to the community. This weighing analysis is problematic

---

[5] *See United States v. Salerno*, 481 U.S. 739 (1987).
[6] 18 U.S.C. § 3142(g).

because of the Government's ability to manipulate these factors to its favor. For instance, if a lengthy sentence is determinative of pre-trial detention, the Government can effectively detain any defendant pretrial by simply charging a crime with a lengthy sentence. The fact that most of Mr. Sterlingov's family and friends are in Sweden shows that he grew up in Sweden since he was 14. Not that he's a flight risk. The constitutional issue here is avoidance of arbitrary determinations that violate due process. The hallmark of the Government's speculation is that it's always based on a possibility, a guess, never any concrete facts. Under the presumption of innocence this Court should assume that an innocent defendant wants his day in open Court.

## B.   The Charged Crimes

### 1.   The Errors in the Government's Opposition

The Government's discovery and search warrants contain numerous errors and contradictions. Including:

1.   Claiming an account was created on BitcoinTalk.org in 2011 "with an email address tied to other Bitcoin Fog accounts" with a username of "Akemashite Omedetou".

Government filings claim investigators previously obtained records from BitcoinTalk.org which "revealed that the account was created […]using email address shormint@hotmail.com." Yet the screenshot presented as corroboration includes a parenthetical tag noting the email address has not been verified: "(not verified)"[7]

---

[7] (Governments Opp. to Defendant's Mot. for Bond (Dkt. 19)).

User ID: 44692                                      Personal text: None
Date registered: 2011-10-25 11:54:39               ICQ: None
Username: Akemashite Omedetou                      AIM: None
Email address: shormint@hotmail.com (not verified) YIM: None
Website title: Bitcoin Fog                         MSN: None
Website URL: http://www.bitcoinfog.com

BitcoinTalk.org does not verify email addresses. Arbitrary, fictitious, and random non-existent email addresses are all equally accepted when an account is created on BitcoinTalk.org. Additionally, the discovery names another individual as the owner of the shormint@hotmail.com email address.

2.      Setting aside debate on the appropriateness or accuracy of the "cluster" designation concept, the address 1YZJKaAx2HRWvcbCXDBtQbBZcRU46WJqw has a current value of 0 (zero) Bitcoin and has not been involved in any transaction since 2012.



Claiming there is a current value of 1354 BTC tied in some manner, to that address, which has no connection to Mr. Sterlingov, is dubious and lacks scientific rigor and specificity.

3.      The Government's statement in its Opposition that "[t]he defense's bold claims of Government incompetence here are based on a scrivener's error that changed a lowercase

11

"c" to an "e" when transcribing the accurate blockchain analysis graphs into the court filings" downplays the pattern and practice of errors, mistakes, and bad guesses.

The image below seems to be the source of the "c" to "e" transcription error. If so, it calls into question the scientific precision of the forensics.



Rigorous, peer-reviewed, scientific, and well-designed blockchain analytical workflows do not involve a step in which a human must manually transcribe charts in which a lower case "c" is mistaken, by a human eye, for a lowercase "e" due to a very-obvious horizontal line from one circle to another circle. As appears to have happened in the Government's reference to "1KWMex".

4.      Equally puzzling is the Government defending the truncation of wallet addresses down to 6 characters. Far from being a standard and accepted practice, as asserted by the Government, the address truncation present in the investigation notes appear driven by

a need to fit a large graph on a single screen for display. And not as a standardized, commonly accepted, or even wise practice.

### 2.        The Errors in the Two New Search Warrants

On August 9, 2022, after the Superseding Indictment, the Government filed for two new search warrants in this case. Like previous warrant applications they contain material errors and speculation. They also contradict the Government's prior assertions.

Errors in the August 9, 2022, search warrant applications include:

1.        False statements regarding onion website addresses. They misstate the onion URL at issue in this case. The onion URL originally appearing in a 2011 BitcoinTalk.org forum post was not "foggeddriztrcar2.onion". Archived snapshots of the forum post from November 2012 show the original onion URL as "fogcore5n3ov3tui.onion". It was not until years later that the URL in that post was edited and changed to contain the URL claimed by the search warrants and erroneously stated as being the original URL shown in the first BitcoinTalk.org forum post. These materially significant edits exist in plain sight, and can be verified through easily accessible online reference sources.

2.        The August 9, 2022, warrant applications contain an unexpected and surprising statement. The Government now claims an additional clearnet website domain to have been operated by Mr. Sterlingov. The warrant applications go beyond the Prosecution's previous allegation of Mr. Sterlingov operating a .com website "bitcoinfog.com". The Government now claims in its warrant applications that Mr. Sterlingov ran a website at the .info clearnet address "bitcoinfog.info." The website at URL bitcoinfog.info is still in operation as of this writing:



The clearnet site Mr. Sterlingov has previously been accused of operating, the .com version ("bitcoinfog.com"), is not currently a functioning website. The current non-existence of the .com site has been suggested by Prosecutors as proof that Mr. Sterlingov must have been operating it, due to the .com site going offline at some time after Mr. Sterlingov was detained. However, this does not explain how the .info is still operational.

This is just a small sample of the issues in the Government's new and belated search warrant applications.

> 3.     **The Validity of the Blockchain Analysis is a Question of Fact and not Law**

This case demonstrates why the validity of any blockchain analysis is a question of fact and not law. None of the Government's cited cases, the majority of which involve plea deals, contain any rigorous scientific challenge to the purported blockchain analysis used. Mr.

14

Sterlingov's case appears to be the first ever to question the soundness and reliability of blockchain forensics that have swelled into a multi-billion dollar business. A large part of this seems to be because the overwhelming majority of federal criminal cases result in a plea. The small number of cases that the Government cites that actually went to trial had corroborating evidence to support the accusations outside of the blockchain analysis. Nor can the court assume that the vague phrase "blockchain analysis" encompasses the same methodologies across the spectrum of cases cited by the Government. Therefore, the inquiry is specific and fact intensive and cannot be decided a priori as a matter of law. The Government doesn't cite a single piece of reliable scientific evidence, or any scientific evidence, attesting to the validity of its murky methodology to establish that it is anything but the arbitrary guesswork it appears to be.

### 4.    Statute of Limitations

The Government spends most of its time arguing that the registration of a website's domain name in 2011 ties Mr. Sterlingov to a decade of money laundering over $300 million. This is a misattribution the Defense is happy to put in front of a jury. But, as a matter of law, the registration of a clearnet website domain name in 2011 is legal then and now, and without more cannot sustain the weight of these fantastic money laundering charges, particularly when it lies years outside the statute of limitations. Again, the Government has no direct evidence of Mr. Sterlingov's involvement, claiming to have linked the transaction to him through:

> a six-layered transaction involving four forms of fiat and virtual currency (euros, U.S. dollars, BTC, and Liberty Reserve Dollars), three virtual currency payment services (Mt. Gox, Aurum Xchage, and Liberty Reserve), and accounts registered with three different

burner email account (including shormint@hotmail.com, nfs9000@hotmail.com, and lobases99@rambler.ru).[8]

Plenty of room for error. Like misplacing decimal points and turning a $100 Mt. Gox deposit into 10000000 BTC in the following government spreadsheet purporting to document activity in Mr. Sterlingov's Mt. Gox account:

## *"1) European transfer from my bank account into account at MTGOX. This will take a couple of business days, but it seems cheap"*

| Login | Email | Currency | Date | Type | BTC | Balance | Info |
|---|---|---|---|---|---|---|---|
| roso987341870 | plasma@plasmadivision.com | EUR | 2011-10-03 11:08:14 | deposit | 10000000 | 10000000 | VIR STERLINGOV,ROMAN 30066-12-11276370036590 MTG92441X |

$100 deposit: The formatting added 5 decimal places to the BTC and Balance columns

On October 3, 2011, Bitcoin was trading for $5.02. 10000000 Bitcoin at this exchange rate is $50,200,000. These types of mistakes are all over the discovery. The Government repeatedly makes allegations regarding legal events well outside the statute of limitations without any corroborating evidence of any crime within the statute of limitations.

5.    **Terms of Release**

Pretrial Services has adequate experience in supervising the release of someone like Mr. Sterlingov. Mr. Sterlingov has never expressed any predisposition to flee.

---

[8] (Gov. Opp. to Def. Mot. to Rec. Det. at 7-8 (ECF 50)).

The Government suggests that undersigned counsel would be faced with a conflict of interest between duty to a client and the Court if Mr. Sterlingov chose to flee while in supervised release. But this ignores the simple fact that an attorney cannot aid and abet in a crime, that there is a crime fraud exception to privilege, and that what the Government is really worried about is Mr. Sterlingov being able to work on his defense with his lawyer with full access to the 3 plus terabytes of data in this case and without having his calls recorded by the Government.

## III.   The Least Restrictive Means

The Bail Reform Act requires that a defendant be "subject to the least restrictive" set of conditions that will reasonably assure his appearance at trial.[9] In this case, pre-trial detention is not the least restrictive means. As stated in his motion for reconsideration, Mr. Sterlingov has family in Boston, Massachusetts. Alternatively, undersigned counsel is willing to house him in Brooklyn, New York.

## IV.   Conflicts of Interest

The Government states that there is no competitive dynamic between the customers of Chainalysis and other private companies. By way of example, the Government mocks the notion that Bank of America might be a competitor in the cryptocurrency market space. Contrary to the Government's understanding, Bank of America holds hundreds of patents around cryptocurrency technology. It established a cryptocurrency research team in July 2021, and its CEO states that, should he receive regulatory approval, his company will compete

---

[9] 18 U.S.C. § 3142(c)(1)(B).

vigorously in the space.[10] Bank of America understands what the Government ignores about competitive dynamics: Two companies in the same general market space, be it pharmaceuticals, consumer electronics, or financial transactions, need not sell directly competing products to be current or future competitors. Companies in a given market space frequently launch new related products or services, or acquire companies doing the same, such that if they are not direct competitors at the moment, they quickly can become so. The Government, in highlighting Bank of America, chose a perfect example of this dynamic.

That Chainalysis has customers which compete against the companies and individuals it helps prosecute is a simple and inconvenient truth. Chainalysis has multiple clients facing prosecution and litigation: Bittrex, which is implicated in drug trafficking; BitMEX, the executives from which (after a favorable Chainalysis audit) have pleaded guilty to violating the Bank Secrecy Act; Celsius, which is facing bankruptcy (after a favorable Chainalysis audit); and Binance, which is (after a favorable Chainalysis audit) accused of SEC violations. Attached as Exhibit 'A' is an illustration of some of Chainalysis's business and other relationships.

The defense shares the Government's concern about potential national security risks with this arrangement.

---

[10] "Bank of America CEO: We Have Hundreds of Blockchain Patents — But Regulation Won't Allow Us to Engage in Crypto," *Bitcoin Dot Com News*, May 30, 2022. https://news.bitcoin.com/bank-of-america-ceo-we-have-hundreds-of-blockchain-patents-but-regulation-wont-allow-us-to-engage-in-crypto/.

## Conclusion

The Court should grant Mr. Sterlingov's Motion for Reconsideration and release him pretrial under the least restrictive conditions necessary to ensure his appearance in Court. In the alternative this Court should grant a hearing so that Mr. Sterlingov can confront his accusers in open court through cross-examination in the adversarial process, as our Constitution requires. It is the Government that is lurking in the shadows here, not Mr. Sterlingov. This prosecution is an injustice.

Dated: August 31, 2022
New York, New York

Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
michael@torekeland.com

/s/ Marina Medvin, Esq.
Counsel for Defendant
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

*Counsel for Defendant Roman Sterlingov*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of August 2022, the forgoing document was filed

with the Clerk of Court using the CM/ECF System. I also certify that a true and correct copy

of the foregoing was sent to the following individuals via e-mail and mail delivery via first

class mail:

<u>s/ Tor Ekeland</u>

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov