UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>ROMAN STERLINGOV,<br><br>*Defendant*. | 21 – CR - 399 (RDM) |

**Defendant Roman Sterlingov's Reply to the Government's Opposition to Defendant's Pretrial Motion to Free Seized Assets**

1

## Table of Contents

Introduction ........................................................................................................... 4

Argument .............................................................................................................. 4

I.   Chainalysis's 'Clustering' Methodology is Unreliable & Unreproducible ................... 5

II.  This Court Should Grant a Hearing to Determine Release of the Seized Assets ..... 6

III. Mr. Sterlingov Cannot Mount a Complete Defense Without His Assets ................. 8

IV.  The New Declarations and Search Warrants ............................................. 10

V.   IP Addresses are Not Personally Identifiable Information ..................................... 12

Conclusion ........................................................................................................ 12

# Table of Authorities

### Cases

*Kaley v. United States*, 571 U.S. 320 (2014) ................................................................................ 8

*United States v. Bikundi*, 125 F. Supp. 3d 178 (D.D.C. 2015) ................................................... 6, 7

*United States v. Cosme*, 796 F.3d 226 (2d Cir. 2015) ................................................................... 8

*United States v. E-Gold, Ltd.*, 521 F.3d 411 (D.C. Cir. 2008) ....................................................... 7

*VPR Internationale v. Does* 1-1017, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. 2011) .................. 12

*W. Coast Prods. v. Doe*, Civil Action No. 11-55 (JEB/JMF), 2012 U.S. Dist. LEXIS 110847

    (D.D.C. Aug. 6, 2012) .............................................................................................................. 12

### Other Authorities

Europol, A Guide For Bitcoin Investigators, (Jan. 26, 2017) ....................................................... 11

Danny Nelson, Marc Hochstein *Leaked Slides Show How Chainalysis Flags Crypto Suspects for*

    *Cops*: *Walletexplorer.com, a block explorer site secretly operated by Chainalysis, has*

    *provided law enforcement with "meaningful leads", the document says*, Coindesk (Sept. 21,

    2021) ........................................................................................................................................ 12

GEORGE KAPPOS ET AL., HOW TO PEEL A MILLION: VALIDATING AND EXPANDING BITCOIN

    CLUSTERS, (May 27, 2022) ................................................................................................... 5, 7

## Introduction

The Government has not identified a single criminal transaction tied to any of the accounts seized from Defendant Roman Sterlingov. Despite a seven-year investigation consisting of wiretaps, pen traps, physical surveillance, the seizure and forensic analysis of Mr. Sterlingov's computers, storage devices, cloud-based accounts, and papers, the Government has not put forth a single piece of evidence linking the seized assets to the commission of any crime. Because no evidence exists.

## Argument

This Court should grant a hearing under the Fifth and Sixth Amendments of the United States Constitution because the Government's seizure of substantially all of Mr. Sterlingov's assets violates his constitutional rights to put on a complete defense. Chainalysis's own senior software engineer recently co-authored a whitepaper stating its cluster categorization is unreliable and unreproducible. The Government has not tied any of Mr. Sterlingov's assets to any crime.

After the Criminal Complaint, the Indictment and the Superseding Indictment, the Government just filed for two new search warrants and attached the declaration of Luke Scholl to its Opposition to this motion. Mr. Scholl is new to this case. His declaration contains material errors, omissions, and misrepresentations, and as such are in good company with the newly filed search warrants.

## I.  Chainalysis's 'Clustering' Methodology is Unreliable & Unreproducible

The Government's case hinges on its undefined 'cluster' analysis. There is no standard for cluster categorization and the Government cites no scientific evidence supporting the validity of their methodologies. The one whitepaper that the Defense found documents the unreliability of Chainalysis's methodologies.[1] Authored by employees and associates of Chainalysis, it uncritically uses data, including data from this case, assuming its validity. It notes the unreproducibility and unreliability of Chainalysis's methodologies. The Government's methodologies have never been peer-reviewed, scientifically validated, nor proven at trial. Chainalysis's whitepaper fails to validate the methodology underlying the cluster categorization used in this case.

The whitepaper documents the impossibility of a reliable, scientific cluster categorization methodology and notes that any efforts would likely produce false positives.[2] As the paper concludes "[g]iven this, investigators should not rely on the output of either our heuristics or our classifier as definitive evidence."[3]

---

[1] GEORGE KAPPOS ET AL., HOW TO PEEL A MILLION: VALIDATING AND EXPANDING BITCOIN CLUSTERS, (May 27, 2022).

[2] *Id.* at 14.

[3] *Id.*

## II. This Court Should Grant a Hearing to Determine Release of the Seized Assets

The Government acknowledges in its Opposition that there needs to be probable cause in order for the Government to seize Mr. Sterlingov's assets. In *United States v. Bikundi*, the court held:

> In short, the defendant's motion in this case squarely raises an issue left unresolved by the Supreme Court in both the *Kaley* and *Monsanto* opinions, and by the D.C. Circuit in *E-Gold*, regarding an indicted defendant's entitlement to pre-trial judicial review of the forfeitability, or traceability, of assets seized pursuant to a probable cause warrant—which probable cause finding in this case is bolstered by a grand jury finding—when no Sixth Amendment right to counsel is implicated. [4]

Here, Mr. Sterlingov's Fifth and Sixth Amendments rights to counsel and to put on a complete defense are implicated. Not only is there no evidence that any of his assets were involved in any crimes, but Chainalysis's own senior research engineer has publicly stated that Chainalysis's methodologies are unreliable.

On August 11, 2022, Chainalysis Senior Research Engineer, George Kappos, presented a whitepaper at the 31st USENIX Security Symposium in Boston, Massachusetts. The paper concludes "currently, the clusters output by the co-spend heuristic are largely treated as ground truth, despite the fact that there exist techniques such as Coinjoin that invalidate them."[5] The Government's failure to mention this whitepaper in its Opposition briefs speaks volumes.

---

[4] *United States v. Bikundi*, 125 F. Supp. 3d 178, 186 (D.D.C. 2015).

[5] GEORGE KAPPOS ET AL., HOW TO PEEL A MILLION: VALIDATING AND EXPANDING BITCOIN CLUSTERS, at 9 (May 27, 2022).

Here, the Mr. Sterlingov's Sixth Amendment right to counsel and his Fifth and Sixth Amendment rights to put on a complete defense are implicated by the Government's seizure of his assets. He cannot access his seized assets, which are substantially all of his assets, not only because they were seized by the government, but because he has been in jail for nearly two years awaiting trial.

In *Bikundi*, the court held that Federal Rule of Criminal Procedure 32.2 did not preclude a defendant from invoking his due process rights before trial to test the sufficiency of probable cause for the forfeitability of seized property.[6] As the Federal Court of Appeals for the District of Colombia held in *E-Gold*, "[i]n ascertaining the requirements of the due process clause in affording a hearing to those whose assets are the subject of seizure," the Court must "look first to the Supreme Court's declarations in *Mathews v. Eldridge*."[7]

The *Mathews* factors weigh "(1) the burdens that a requested procedure would impose on the Government against (2) the private interest at stake, as viewed alongside (3) the risk of an erroneous deprivation of that interest without the procedure and the probable value, if any, of the additional procedural safeguard."[8]

A weighing of the *Mathews* factors come out against the Government. First, it is not burdensome for the Government to present evidence justifying its seizure of Mr. Sterlingov's assets pre-trial. If it is justified in its seizure, it should have it on hand. Second, the private

---

[6] *United States v. Bikundi*, 125 F. Supp. 3d 178, 187-88 (D.D.C. 2015).

[7] *United States v. E-Gold, Ltd.*, 521 F.3d 411, 414 (D.C. Cir. 2008).

[8] *Kaley v. United States*, 571 U.S. 320, 321(2014) (quoting *Mathews*, 424 U.S. at 335).

interests at stake are substantial as they go directly to Mr. Sterlingov's life, liberty and property. Third, the risk of erroneous deprivation of these interests is high given the unreliability and unreproducibility of the Government's undefined cluster categorizations and blockchain analysis in general. The Government lacks any evidence for its speculations. Moreover, it is unclear whether the forfeiture allegations were put to a vote by the grand jury, or if they were merely included by the Government in the Indictment as notice provisions.[9]

For all its hundreds of pages of briefing and affidavits, and its three-plus terabytes of data, the Government has yet to identify a single particular criminal transaction related to Mr. Sterlingov. To say nothing of any transaction by Mr. Sterlingov in the District of Columbia. The Government cannot even identify the location of any device alleged to have transmitted their sting operation funds. And there is no plausible allegation that anyone other than the Government was aware of its unilateral sting operation. This complete lack of evidence cannot support the universal jurisdiction through the internet that the Government is pursuing here.

### III.   Mr. Sterlingov Cannot Mount a Complete Defense Without His Assets

The Government's pre-trial detention and seizure of Mr. Sterlingov's assets directly impairs his ability to mount a complete defense as guaranteed by the Fifth and Sixth Amendments to the United States Constitution. Par for the course, the Government is mistaken

---

[9] *See United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015) (holding that the defendant is entitled to a proper judicial determination of whether probable cause existed at the time of the seizure to support the forfeitability of his property).

about the transfer of funds to Mr. Sterlingov's legal defense fund. As of this writing, Mr. Sterlingov's legal defense fund has received no donations.

Moreover, the Government has the naïve impression that $23,301 it erroneously thinks was donated to Mr. Sterlingov's legal defense fund comes close to covering the expenses in this case. The Defense was forced to stop uploading the Government's massive data dump of useless discovery because the data upload fees for its industry-standard e-discovery vendor exceeded $10,000.00. The expenses of travelling to visit Mr. Sterlingov in the Northern Neck Regional Jail in Warsaw, Virginia, to have a conversation free from Government surveillance, runs roughly $1000.00 per trip, to say nothing of attorneys' travel time and fees. Given the complexity of this case, the fees for trial graphics, trial techs, lodging in DC, travel for lawyers and the trial support team will be substantial. The Government states that it "is far from clear that Defense counsel would withdraw from this case without the seized funds", but that is not the measure of Mr. Sterlingov's rights to put on a complete defense under the Fifth and Sixth Amendments. It ignores the substantial expenses involved in this case and assumes the only costs are attorneys' fees. Only someone who has never run a business would think this. This is the same naivety the Government applies when it comes to the operation of "Bitcoin Fog".

The Government is incorrect when it says that Mr. Sterlingov misrepresented his assets during his pre-trial services interview while in the U.S. Marshal facility in California a few days after his arrest. On the advice of his federal defender, who was not present for his pre-trial interview, Mr. Sterling invoked his Fifth Amendment right to not discuss his assets given that the Government was accusing him of financial crimes. The pre-trial services officer properly did not

follow up with Mr. Sterlingov after he asserted his right. There has been no pre-trial services interview with Mr. Sterling since the initial interview in 2021.

The Government shows a complete lack of understanding of business basics throughout this case. It assumes that Bitcoin Fog somehow operates miraculously on its own, without any evidence of operation by Mr. Sterlingov, yet claims Bitcoin Fog stops operating days after Mr. Sterlingov's arrest. Yet, Mr. Sterlingov being in jail makes it impossible for him to have shut down Bitcoin Fog. Either someone else shut it down, or it was shut down for lack of maintenance. If it was shut down for lack of maintenance the Government leaves unexplained why there is no evidence in the record of Mr. Sterlingov ever maintaining Bitcoin Fog. Moreover, the Government is incorrect in saying that "Bitcoin Fog" shut down. There are numerous clearnet sites, onion sites and social media accounts currently in operation claiming to be "Bitcoin Fog".[10] The Government's assertion that "Bitcoin Fog" stopped operating upon Mr. Sterlingov's arrest is false.

## IV. The New Declarations and Search Warrants

Staff Operations Specialist Luke Scholl claims in his declaration that an "[a]nalysis [he] conducted identified additional addresses controlled by Bitcoin Fog through use of

---

[10] *See e.g.*, https://bitcoinfog.co, archived: https://web.archive.org/web/20220907051749/https://bitcoinfog.co/; https://bitcoinfog.site, archived: https://web.archive.org/web/20220907053010/https://bitcoinfog.site/; Onion Routing Site http://btfogedquq25a37oit5p2jq52crt6hdx7b3qrnnzvwohd7itfz5bb7id.onion; Twitter Account https://twitter.com/BltcoinFog, archived: https://web.archive.org/web/20220907162635/https://twitter.com/BltcoinFog; Twitter Account https://twitter.com/BitcoinFogg, archived: https://web.archive.org/web/20220907162611/https://twitter.com/BitcoinFogg.

WalletExplorer.com, a reputable open source blockchain analysis tool."[11] First, WalletExplorer.com is not open source.[12] Second, Europol's "A Guide For Bitcoin Investigators" states that the original developer of WalletExplorer.com now works for Chainalysis, and that WalletExplorer.com stopped development when he started working at Chainalysis.[13] As a matter of fact, Chainalysis owns WalletExplorer.com.[14] There is nothing independent about this dynamic.[15]

The IRS agent who filed the recent search warrant applications after the Government filed its Superseding Indictment repeats errors in his affidavits that the Government has already noted and corrected in their own investigation notes. It appears that the affidavits are generally a copy and paste from previous search warrant affidavits.

---

[11] Decl. of L. Scholl at ¶5.

[12] *See* www.WalletExplorer.com.

[13] Europol, A Guide For Bitcoin Investigators, (Jan. 26, 2017), available at https://ddosecrets.com/wiki/BlueLeaks (last accessed Sept. 7, 2022).

[14] *See* Danny Nelson, Marc Hochstein *Leaked Slides Show How Chainalysis Flags Crypto Suspects for Cops*: *Walletexplorer.com, a block explorer site secretly operated by Chainalysis, has provided law enforcement with "meaningful leads", the document says*, Coindesk (Sept. 21, 2021) available at https://www.coindesk.com/business/2021/09/21/leaked-slides-show-how-chainalysis-flags-crypto-suspects-for-cops/ (last accessed Sept. 7, 2022).

[15] Chainalysis advertises at the bottom of the WalletExplorer.com website. *See* www.WalletExplorer.com (last accessed Sept. 7, 2022).

## V. IP Addresses are Not Personally Identifiable Information

Courts have long recognized that IP addresses are not personally identifiable information.[16] IP addresses are commonly shared. Thousands of people can share the same IP address on a single proxy server or VPN service. The Government's Opposition fails to address this point raised by the Defense in its opening motion. This bespeaks a lack of understanding of the modern computer landscape and epitomizes the failures of this investigation and prosecution.

## Conclusion

This Court should grant Defendant's motion to free his seized assets. In the alternative, it should grant a hearing so that the Defense may challenge in open court the Government's baseless claims that the assets seized have anything to do with any crime.

Dated: September 7th, 2022
New York, NY

---

[16] *See, e.g., VPR Internationale v. Does* 1-1017, 2011 U.S. Dist. LEXIS 64656, *3 (C.D. Ill. 2011); *See also W. Coast Prods. v. Doe*, Civil Action No. 11-55 (JEB/JMF), 2012 U.S. Dist. LEXIS 110847, at *13 n.10 (D.D.C. Aug. 6, 2012).

Respectfully submitted,

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
michael@torekeland.com

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

/s/ Marina Medvin, Esq.
Counsel for Defendant
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

*Counsel for Defendant Roman Sterlingov*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of September 2022, the forgoing document was filed with the Clerk of Court using the CM/ECF System. I also certify that a true and correct copy of the foregoing was sent to the following individuals via e-mail and mail delivery via first class mail:

s/ Tor Ekeland

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov