UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>ROMAN STERLINGOV,<br><br>*Defendant*. | 21-CR-399 (RDM)<br><br>**Defendant's Reply to Government's Opposition to Defendant's Motion for Attorney-Directed Voir Dire** |

## Introduction

Attorney-directed voir dire is critical to the selection of a fair and impartial jury of the Defendant's peers. Application of attorney-directed voir dire is centuries old and practiced all over the United States. This is consistent throughout the history of the jury and functions to limit prejudice and bias within the jury.

The Federal Rules of Criminal Procedure specifically grant the Court the authority to permit attorneys to examine prospective jurors.[1] Academic studies establish that attorney-directed voir dire is a significantly more effective process at rooting out potential bias in jurors than alternative jury selection procedures such as judge-led voir dire. Attorney-directed voir dire is key to preserving the Defendant's constitutional rights to a fair jury trial by his peers. Attorney-directed voir dire is also crucial to protecting the Equal Protection rights of the jurors themselves. Thus, this Court should grant attorney-directed voir dire and allow the attorneys to directly question the venire.

---
[1] FED. R. CRIM. P. 24(a)(1).

## Argument

Attorney-directed v<u>oir</u> dire ensures a defendant's Sixth Amendment right to an impartial jury of his or her peers.[2] Conduct of voir dire is a matter left primarily to the broad discretion of the trial judge.[3] "Rule 24(a) of the Federal Rules of Criminal Procedure gives the trial court broad discretion in deciding the scope and method of the jury <u>voir</u> dire."[4] This broad discretion extends to the decision whether jurors should be questioned collectively, or individually out of the presence of other jurors.[5]

### I.   Historical Context Supports Application of Attorney-Directed Voir Dire

In 1066, the Norman Invasion introduced the term "Voir Dire" to the common law. Attorney participation in voir dire is crucial to a defendant picking a jury of his or her peers. The term is law French for "to speak the truth".[6]

In 1670 *Bushell's Case* established the supremacy of the jury as to determination of a defendant's guilt or innocence.[7] The independence and sanctity of the bias-free jury is paramount to our Constitution. Attorney-directed voir dire promotes these notions of sanctity, independence and impartiality in ways alternative jury selection practices, such as judge-led voir dire, do not.

Attorneys are uniquely positioned to distinguish jury impartiality. Not only have studies established that potential jurors are more candid with attorneys than with judges but affording

---

[2] *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).
[3] *United States v. Robinson,* 475 F.2d 376, 380 (1973) (citations omitted); s*ee, e. g., United States v. Caldwell, supra,* 543 F.2d at 1345; *United States v. Liddy,* 509 F.2d 428, 434 (1974) (*en banc*); *United States v. Nix,* 465 F.2d 90, 96 (5th Cir.), *cert. denied,* 409 U.S. 1013, (1972).
[4] *United States v. Gerald*, 624 F.2d 1291, 1296 (5th Cir. 1980), cert. denied, 450 U.S. 920 (1981).
[5] *Id.* at 296; *see also United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir. 1979).
[6] Black's Law Dictionary, 3rd Ed. (1933).
[7] *See Bushell's Case*, 124 Eng. Rep. 1006 (1670).

defense attorneys the opportunity to directly question potential jurors more effectively exposes potential jurors' bias.[8]

The Government contends that attorney-directed voir dire is not an established practice in the District of Columbia. But it is a common practice in jurisdictions across the country. One that is increasingly embraced both at the federal and state level. Undersigned law firm Tor Ekeland Law, PLLC has engaged in attorney-directed voir dire in federal court in New Jersey, Texas, and California. In *United States v. Ledee,* the Fifth Circuit Court of Appeals acknowledges the importance of attorney-directed voir dire:

> We must acknowledge that voir dire examination in both civil and criminal cases has little meaning if it is not conducted by counsel for the parties.
>
> A judge cannot have the same grasp of the facts, the complexities and nuances as the trial attorneys entrusted with the preparation of the case. The court does not know the strength and weaknesses of each litigant's case. Justice requires that each lawyer be given an opportunity to ferret out possible bias and prejudice of which the juror himself may be unaware until certain facts are revealed.[9]

The sentiment espoused in *Ledee* is echoed around the country. Even the D.C. Circuit, contrary to the Government's assertion that it favors judge-led voir dire, recognizes the importance of attorney-directed voir dire. In *United States v. Robinson*, they hold:

> …the defense must be given a full and fair opportunity to expose bias or prejudice on the part of venire….[10] The possibility of prejudice is real, and there is consequent need for a searching voir dire examination, in situations where, for example, the case carries

---

[8] *See*, Richard Seltzer, Mark A. Venuti and Grace M. Lopes, *Juror Honesty During the Voir Dire*, JOURNAL OF CRIMINAL JUSTICE, Vol. 19, pp. 451-462 (1991); *see also* Susan E. Jones, Judge-versus Attorney-Conducted Voir Dire, An Empirical Investigation of Juror Candor, LAW AND HUMAN BEHAVIOR, Vol. 11, No. 2, pp. 131-146 (1987).
[9] *See United States v. Ledee*, 549 F. 2d 990 at 993 (5th Cir. 1997).
[10] *See Morford v. United States*, 339 U.S. 258 (1950).

>racial overtones, or involves other matters concerning which the local community or the population at large is commonly known to harbor strong feelings that may stop short of presumptive bias in law yet significantly skew deliberations in fact. Still other forms of bias and distorting influence have become evident, through experience with juries, and have come to be recognized as a proper subject for voir dire. An example is the problem that jurors tend to attach disproportionate weight to the testimony of police officers.[11]

In its Response to the Defense's original motion, the Government cites cases related to the Watergate scandal and the January 6th protests as examples of instances where judge-led voir dire sufficiently rooted out public exposure to a case. But public exposure to this case isn't necessarily the same as bias or prejudice and is not the sole issue. There are a whole host of factors that can constitute bias or prejudice in a juror in the District of Columbia that would not exist with a juror in Gothenburg, Sweden. For instance, venire members might work for the government or have family and friends who work for the government. They may have varying views, whether accurate or not, regarding the internet, the darknet, and cryptocurrency, all of which are currently in the news. The pre-trial publicity in this case is an issue. Prosecutors and investigators directly involved with this case have been speaking to the press for the last two years regarding it. A book incorporating those conversations is coming out tomorrow.[12] There are talks of a Hollywood movie. Given the state of pre-trial publicity, attorney-directed voir dire is an effective of rooting out any prejudice or bias based on such publicity.

The Government's position that judge-led voir dire is sufficient to safeguard the Defendant's constitutional rights is rooted in a concern for judicial economy rather than justice. While judicial economy is important, a defendant's right to an unbiased jury of his or her peers is constitutionally paramount. Haste at the behest of economy is not warranted with such a

---

[11] *See United States v. Robinson*, 475 F.2D 376 at 380-81 (D.C. Cir., 1973)
[12] Andy Greenberg, *Tracers in the Dark: The Global Hunt of the Crime Lords of Cryptocurrency*, (Doubleday, Nov. 15, 2022).

constitutionally important factor. An obsession with the quantitative over the the qualitative aspects of justice degrades justice. Favoring judge-led voir dire because of its expeditiousness risks empaneling a biased jury in haste.

Attorneys are in a much better position to explore the thoughts and potential biases of jurors because they know the case better than the judge. The fairness of the adversarial process depends upon unfettered attorney participation in voir dire, just as in other parts of the case. Citizens have more confidence in a system in which they can engage those who would judge them.

## II.     Attorney-Directed Voir Dire Reveals Unconstitutional Discrimination

In *Swayne v. Alabama*, the Supreme Court held that jurors may not be peremptorily challenged because of their race.[13] The court subsequently held that the use of race or gender in peremptory challenges violated the equal protection rights of both civil and criminal litigants, as well as the jurors improperly excluded.[14] Attorney-directed voir dire can assist the courts in limiting the application of race or gender in peremptory challenges.

In *Batson v. Kentucky*, the Supreme Court articulated a three-part test to enforce litigants' and jurors' equal protection rights.[15] When attorneys are allowed to conduct voir dire, the impermissible use of race and gender in peremptory challenges is more easily uncovered. For example, the Supreme Court holds that "the best evidence (of discriminatory intent) often will be the demeanor of the attorney who exercises the challenge."[16] Investigation into prejudiced peremptory challenges is inhibited when a court prohibits attorney-directed voir dire. It limits the

---

[13] *See Swayne v. Alabama*, 390 U.S. 202 (1965).
[14] *See Miller-EL v. Dretke*, 545 U.S. 231 (2005); *see also People v. Knight*, 473 Mich. 324 (2005).
[15] *See Batson v. Kentucky*, 476 U.S. 79 (1986).
[16] *See Snyder v. Louisiana*, 554 U.S. 472 (2008).

evidentiary record with which the appellate courts can evaluate whether *Batson* is violated. Further, when a trial court refuses to allow attorney-conducted voir dire, it enables a lawyer to conceal racial or gender-related reasons for striking potential jurors. Attorneys that are not allowed to proactively participate in the voir dire process are arguably more likely to strike potential jurors based on stereotypes, in violation of the jurors' equal protection rights.

### III. This Court Should Allow Attorney-Directed Voir Dire

Judicial economy is not the same a justice. The needs of justice supersede the need for judicial economy. Mr. Sterlingov is facing a potential life sentence. Justice requires that both time and care be taken in the selection of his jury. This motion does not seek to restrict this Court in its questioning of jurors, but merely seeks the freedom for the attorneys to do so as well. Nor does it ask for unfettered discretion and unlimited time on behalf of the attorneys to conduct voir dire. It only asks for the freedom and time necessary to thoroughly engage the venire in order to root out bias and prejudice and select a jury of Mr. Sterlingov's peers. This need is particularly acute given that Mr. Sterlingov is 6000 miles away from his home and has never set foot in this district until haled here by the Government. This Court has the broad discretion to allow attorney-directed voir dire and should exercise this discretion in the interests of justice.

## Conclusion

This Court should grant Mr. Sterlingov's motion for attorney-directed voir dire under Federal Rule of Criminal Procedure 24(a)(1). Studies addressing this question have revealed that attorney-led voir dire is critical to discovering the true outlooks, values and prejudices of potential jurors.

Dated: November 14th, 2022
New York, New York

        Submitted,

        /s/ Michael Hassard
        Michael Hassard (NYS Bar No. 5824768)
        *Pro Hac Vice*
        Tor Ekeland Law, PLLC
        30 Wall Street, 8th Floor
        New York, NY
        t:  (718) 737 - 7264
        f:  (718) 504 - 5417
        michael@torekeland.com

        /s/ Tor Ekeland
        Tor Ekeland (NYS Bar No. 4493631)
        *Pro Hac Vice*
        Tor Ekeland Law, PLLC
        30 Wall Street, 8th Floor
        New York, NY
        t:  (718) 737 - 7264
        f:  (718) 504 - 5417
        tor@torekeland.com

        /s/ Marina Medvin, Esq.
        Counsel for Defendant
        MEDVIN LAW PLC
        916 Prince Street
        Alexandria, Virginia 22314
        Tel:  888.886.4127
        Email: contact@medvinlaw.com

        *Attorneys for Defendant Roman Sterlingov*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of November 2022, the forgoing document was filed with the Clerk of Court using the CM/ECF System. I also certify that a true and correct copy of the foregoing was sent to the following individuals via e-mail:

/s/ Michael Hassard

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov