UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S REPLY IN SUPPORT OF NOTICE
OF INTENT TO PRESENT EXPERT TESTIMONY**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits this reply in support of its prior Notice of Intent to Present Expert Testimony, ECF No. 61 (the government's "Expert Notice"). Contemporaneous with the government's Expert Notice, the defense filed an Omnibus Motion *In Limine* that sought, *inter alia*, to preclude expert testimony on blockchain analysis. ECF No. 59. In response to the defense motion, the government filed a detailed opposition establishing the admissibility of expert testimony on blockchain analysis under Fed. R. Evid. 702 and the standard established by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. ECF No. 73 at 1-25. Contemporaneous with that filing, the defense filed an opposition to the government's Expert Notice. ECF No. 72. The government now replies in support of its original Expert Notice.

**ARGUMENT**

As set forth in the government's Expert Notice, the government intends to present testimony on blockchain analysis from Federal Bureau of Investigation (FBI) Staff Operations Specialist Luke Scholl and Chainalysis Director of Investigation Solutions Elizabeth Bisbee; on computer science and digital evidence review from FBI Computer Scientist Valerie Mazars de

Mazarin and Internal Revenue Service (IRS) Computer Investigative Specialist Matthew St. Jean; and on federal anti-money laundering regulations from Financial Crimes Enforcement Network (FinCEN) Senior Compliance Officer Theodore Vlahakis. The defense objects to the government's Expert Notice, parading out a laundry list of federal rules with little explanation of how the rules purportedly preclude the government's expert testimony. The defense's opposition largely rehashes the conclusory arguments that the government addressed in its Opposition to Defendant's Omnibus Motions *In Limine*, ECF No. 72 at 1-25. For the reasons set forth herein, the court should reject the defense's perfunctory arguments and permit the government's proposed expert testimony.

### A. Non-Blockchain Expert Testimony Is Uncontroversial and Should Be Permitted

The defense introduction opens by stating that it objects to expert testimony of Luke Scholl, Elizabeth Bisbee, Matthew St. Jean, and Theodore Vlahakis. ECF No. 72 at 3. Mr. Scholl and Ms. Bisbee were noticed as experts in blockchain analysis and are expected to testify regarding blockchain analysis, which the government understands is the focus of the defense's objections. The defense provides no explanation of its basis for objecting to the proposed testimony from Mr. St. Jean or Mr. Vlahakis.

Mr. St. Jean is extremely qualified and well-credentialed in the field of computer science and digital evidence review. *See* ECF No. 61, at 8-9. As set forth in the government's expert notice, Mr. St. Jean will testify primarily as a fact witness based on his own review of the evidence in this case. *Id.* at 8-10. Mr. St. Jean's review consisted of standard and accepted forensic practices; he is not expected to testify on novel or controversial methodologies. He was noticed as an expert because he possesses specialized technical knowledge that will assist the trier of fact in understanding the evidence. Notably, in its opposition, the defense does not object to the

testimony of FBI Computer Scientist Valerie Mazars de Mazarin. The defense does not explain its basis for objecting to Mr. St. Jean, whose expected testimony is substantially similar to that of CS Mazars de Mazarin.

The defense also objects to the testimony of FinCEN Senior Compliance Officer Theodore Vlahakis. The defendant's filing offers no clues as to the basis for its objection. As explained in the government's Expert Notice, Mr. Vlahakis's testimony will not convey scientific knowledge but rather will provide the jury with an understanding of federal anti-money laundering regulations and their purpose, and related topics. *Id.* at 12-14. He is a long-time FinCEN employee with significant experience in the matters about which he is expected to testify, and he has testified on similar subject matter in other criminal cases. He was noticed as an expert out of an abundance of caution in light of his specialized knowledge. To the extent that he would be considered an expert at all, his testimony is intended to "educate the factfinder about general principles." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. ECF No. 73 at 31-32.

### B. Government's Experts Are Highly Qualified

The defense objects to the government experts' qualifications, but only in the context of a general objection to the area of their testimony. ECF No. 72 at 3 ("The Government's experts are unqualified to testify because what the Government claims they are experts in has no scientific bases and is junk science."). At the outset, it is not clear how this would apply to the government's non-blockchain-related experts, even under the defense's theory. Certainly the defense is not calling the practice of reviewing files from seized electronic devices "junk science." And while Mr. Vlahakis's testimony regarding federal anti-money laundering regulations is not intended to be "scientific," the federal Bank Secrecy Act and its application can hardly be described as "junk

science." The defendant's repeated use of a vague defense buzzword without grounding to the specifics of this case highlights the emptiness of the defense assertions.

The defense objection to the qualifications of the government's witnesses similarly falls short with regard to Mr. Scholl and Ms. Bisbee. Mr. Scholl and Ms. Bisbee are among the nation's preeminent experts in blockchain analysis—which is, contrary to the defense's critique, an established field including practitioners in law enforcement and the private sector. The defendant has had the opportunity to review their curricula vitae and the government's proffer of their background in its Expert Notice. ECF No. 61 at 3-8. Having received these materials, the defendant does not identify any specific concerns with Mr. Scholl's or Ms. Bisbee's credentials or bona fides.

Mr. Scholl is a recognized subject matter expert for the U.S. Government in blockchain analysis and cryptocurrency money laundering typologies. Mr. Scholl is currently detailed to the Department of Justice's National Cryptocurrency Enforcement Team, where he was selected as one of the nation's top blockchain analysis experts to provide analytical support and technical expertise to the Department of Justice's highest priority cryptocurrency cases. He has worked on numerous significant cases involving the illicit use of cryptocurrency, including investigations of darknet market activity, ransomware, decentralized finance (DeFi) exploits, frauds, and computer intrusions. Mr. Scholl was a founding member of the FBI's Virtual Currency Response Team (VCRT), where he provides virtual currency investigative support through blockchain analysis and case strategy consultation in investigations across the FBI. He has developed and delivered training curriculum on virtual currency-related topics to a variety of audiences, and is well-versed in using numerous blockchain analysis products, including those offered by Chainalysis, TRM Labs, and Coinbase. He has worked as an online covert employee in support of online undercover

operations involving virtual currency. Mr. Scholl joined the FBI after serving as a Submarine Warfare Officer in the United States Navy. Mr. Scholl holds a Master of Science in Cyber Security.

Ms. Bisbee is the Director of Investigation Solutions at Chainalysis, where she leads a team of approximately three dozen investigators. She is responsible for Chainalysis' entire global investigations business. Since joining Chainalysis in January 2021, she has provided investigative support for multiple complex investigations involving blockchain analysis. She designed training curricula, including a six-week onboarding program for Chainalysis investigators, and developed processes and procedures for Chainalysis' investigative team. Prior to joining Chainalysis, Ms. Bisbee worked as the lead virtual currency subject matter expert at the Drug Enforcement Agency (DEA), serving as the national expert for all virtual currency investigations, practices, and policies. She established the DEA's Virtual Currency Initiative and led efforts to establish training curriculum and field and case support for the DEA's numerous investigations involving virtual currency. Ms. Bisbee has been involved in over 400 virtual currency-related investigations, including covert operations, cryptocurrency seizures, and subject interviews. She is nationally recognized as a leading expert in investigating cryptocurrency crime. She supported complex, international money laundering investigations involving OFAC-sanctioned actors, Mexican and Colombian cartels, and Chinese-national money launderers, including many significant investigations involving complex blockchain analysis. She developed and provided curriculum for monthly training for investigators who conducted blockchain analysis. She holds a Master of Arts in Forensic Psychology and a Master of Science in Psychology of Investigation & Forensic Psychology.

### C. Blockchain Analysis Expert Testimony Satisfies Fed. R. Evid. 702

As set forth in detail in the Government's Opposition to Defendant's Omnibus Motions *In Limine*, the government's proposed expert testimony concerning blockchain analysis meets the criteria under Rule 702 governing the admissibility of expert testimony. ECF No. 73 at 6-25. In its Opposition, the government conducted a detailed analysis of its proposed blockchain analysis testimony under the factors that the Supreme Court set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The government explained that blockchain analysis has been extensively vetted and tested over the course of its use in numerous law enforcement investigations and by the financial services industry, ECF No. 73 at 10-13, and that blockchain analysis has been studied by academics, *id.* at 13-15. The government explained how its blockchain analysis is designed to ensure reliability and avoid errors in the form of false positives. ECF No. 73 at 15-17. The government provided detail regarding the training and certifications for investigators conducting blockchain analysis. ECF No. 18-19. The government also explained that blockchain analysis has earned wide acceptance across law enforcement and the financial services industry. ECF No. 19-21. The government then provided further detail regarding additional indicia of the reliability of blockchain analysis, including the well-established record of blockchain analysis in federal courts. *See Ambrosini v. Labarraque*, 101 F.3d 129, 139 (D.C. Cir. 1996) (finding that "additional indicia of reliability" beyond the *Daubert* factors supported an expert witness's testimony).

In its own opposition, the defense devotes two short paragraphs of its brief to arguing that the government's expert testimony violates Rule 702. ECF No. 72 at 8-9. The first paragraph simply restates the rule with a quote from *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). The second paragraph consists of two sentences—the first, a conclusory assertion

that the proffered testimony does not meet the requirements of Rule 702, and the second, a request for a *Daubert* hearing. The defendant refers the Court to a prior defense filing for its "reasons," but no further detail or specifics is found there, either. *See* ECF No. 59. The defendant's skeletal objection under Rule 702 is undeveloped and fails to examine any of the well-established factors that courts frequently consider in determining whether expert testimony is permissible under Rule 702. The defendant has made no effort whatsoever to apply the law to the facts of this case or the specific evidence and testimony the government has noticed and will present at trial.

The *Daubert* standard is one of inclusion and favors admission of evidence. Courts in this Circuit have embraced this permissive view of admitting expert testimony under *Daubert*. *See, e.g.*, *United States v. Morgan,* 45 F.4th 192 (D.C. Cir. 2022) (affirming the admission of testimony about a "drive test" over defense objections); *United States v. Harris*, 502 F. Supp. 3d 28 (D.D.C. 2020) (finding that expert testimony regarding firearm and toolmark identification was admissible under *Daubert* even if it involved some element of subjective interpretation). As the Supreme Court noted in *Daubert*, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The defense was free to offer an alternative explanation or critique through its own expert, if it could find a qualified expert who would endorse the defense theory. The defendant declined to notice such an individual. Any good-faith defense concerns regarding the government's expert analysis conducted in this case can be addressed through cross-examination at trial.

### D. Fed. R. Evid. 701 Does Not Bar Fact Witnesses in Cyber Cases

The defense opposition reprises its bizarre prior argument—initially advanced in the Defendant's Omnibus Motions *In Limine*, ECF No. 59 at 12-13—that the court should bar any and

all fact witnesses because investigators worked "at desks." The defense suggests that, because the government's witnesses did not physically observe Mr. Sterlingov at his keyboard, they cannot provide fact witness testimony. The defense did not provide any case law supporting this novel rule that would seem to present an insurmountable bar to nearly all prosecutions of Internet-based crimes (to say nothing of murders, burglaries, mail or wire frauds, or any other crime prosecuted without a percipient "eyewitness"). As the government explained in its Opposition to the Defendant's Omnibus Motions *In Limine*, the defense's argument has no basis in law or fact. ECF No. 73 at 30.

The instant defense opposition intermingles arguments about fact testimony and lay *opinion* testimony. Rule 701 permits lay opinion testimony provided that it comports with the three prongs set forth in the rule—that it is rationally based on the witness's perception, that it is helpful to understanding the witness's testimony or to determining a fact in issue, and that it is not based on specialized knowledge falling within the scope of Rule 702. Fed. R. Evid. 701. "Lay witnesses may offer opinion testimony based on their perceptions, if it is helpful and not based on specialized knowledge, provided the party offering the lay opinion testimony establishes a proper foundation, and the party opposing the admission of such testimony has an opportunity, through the process of cross-examination, to expose a weak foundation." *Lightfoot v. Rosskopf*, 377 F. Supp. 2d 31, 33 (D.D.C. 2005); *see also United States v. Paiva*, 892 F.2d 148, 157 (1st Cir. 1989) ("No longer is lay opinion testimony limited to areas within the common knowledge of ordinary persons. Rather, the individual experience and knowledge of a lay witness may establish his or her competence, without qualification as an expert, to express an opinion on a particular subject outside the realm of common knowledge."). Judge Contreras recently set forth a detailed analysis of current case law on various facets of lay opinion testimony in *Atlanta Channel, Inc. v. Solomon*,

Civil Action No. 15-1823 (RC), 2021 U.S. Dist. LEXIS 176981, at *5-*20 (D.D.C. Sep. 17, 2021). As Judge Contreras explained, "lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Id*. (Quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendment). A lay opinion "arise[s] from the personal knowledge or firsthand perception of the witness." *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 575 (4th Cir. 2017). "A witness offering a lay opinion grounds his baseline in personal experiences, then uses that baseline to evaluate an event that he personally observed." *Atlanta Channel*, 2021 U.S. Dist. LEXIS 176981, at *8. A witness's "[p]erceptions based on industry experience are a sufficient foundation for lay opinion testimony." *United States v. Oldrock*, 867 F.3d 934, 940 (8th Cir. 2017) (cleaned up).

The government's non-expert witnesses will be testifying to their own actions and information that they reviewed in the course of the investigation. This will generally be in the form of fact—not opinion—testimony. To the extent that any arguably lay opinion testimony is solicited, it will comport with the requirements of Fed. R. Evid. 701.

**E.   Government's Expert Testimony Is Not Barred By Fed. R. Evid. 703**

The defense argues that the government's testimony "[v]iolates FRE 703." ECF No. 72 at 9. The defense's argument consists of a block quote of Fed. R. Evid. 703 followed by three sentences—first, a conclusory assertion that the government's proposed expert testimony and underlying facts and data are inadmissible; second, a request that the Court "bar the proffered experts from testifying to the data and facts that form the basis of their Opinions except in response to cross examination by the Defense"; and, finally, a request for a *Daubert* hearing. The defendant again refers the Court to a prior defense filing for its "reasons," but no further detail or specifics is found there, either. *See* ECF No. 59.

The defense has offered no explanation of how the government's proffered testimony violates Rule 703, which permits experts to base testimony on both admissible and inadmissible facts and data, including hearsay. The government's best guess is that the defense is suggesting—in contorted fashion—that because the defendant does not accept blockchain analysis as a scientific field, there are no facts that would be the appropriate basis for an opinion. This is circular logic, as presentation of the expert's testimony at trial is predicated on a determination that the expert's testimony is sufficiently supported. *See generally Daubert*, 509 U.S. at 592. If an expert has met the court's threshold for testimony, that expert should be permitted to testify to the basis for his opinion, consistent with Rule 703.

As set forth in the government's Opposition to Defendant's Omnibus Motions *In Limine*, the expert blockchain analysis testimony in this case will be based largely on evidence that will be admitted at trial, including records recovered from the defendant's devices, online accounts, and financial records; transaction records from the blockchain itself; and testimony of undercover agents and cooperating witnesses who conducted transactions using Bitcoin Fog. ECF No. 73 at 28. However, to the extent that the government's experts' testimony and opinions are informed by hearsay and otherwise inadmissible evidence, the experts should be permitted to testify to those opinions as established in Rule 703. The defense articulates no basis for the Court to depart from the standard, well-established practice codified in the Rule.

### F. The Government Does Not Intend to Present Testimony In Violation of Fed. R. Evid. 704(b)

The government is not seeking to introduce any testimony in violation of Fed. R. Evid. 704(b), which precludes an expert witness from opining on whether the defendant had the mental state that constitutes an element of the crime charged. Fed. R. Evid. 704(b). The defense opposition specifically notes concern regarding a potential Rule 704(b) violation arising from

testimony regarding the government's undercover transactions. ECF No. 72 at 9. The defense asks the court to preclude "testimony that [the government's] crypto transfers are evidence of Mr. Sterlingov's *mens rea*," but then goes on to move the court to forbid "any such testimony, as the Government has no eyewitnesses with personal knowledge of any of Mr. Sterlingov's actions." *Id.* The government is unclear whether the defense's concern is with testimony that would actually violate Rule 704(b), or if the defense is encouraging a broad reading of "any such testimony" to include testimony regarding the circumstances of the transactions.

Rule 704(b) only prohibits experts from opining on the ultimate issue of whether the defendant had the requisite mental state to be guilty of the charged statute. The government could not—and would not— solicit testimony from any of its experts that, in the expert's opinion, "Mr. Sterlingov *knew* that the property involved in the transactions was the proceeds of illicit activity," or that "Mr. Sterlingov *intended* to promote narcotics trafficking." Nor would the government introduce testimony that the expert's opinion is that the defendant is guilty. *See United States v. Boney*, 977 F.2d 624, 630 (D.C. Cir. 1992) ("An opinion that the defendant is guilty necessarily incorporates a conclusion that the defendant had the requisite mental state to meet all elements of the offense.") However, the government's witnesses may appropriately testify to Mr. Sterlingov's actions, and the government may argue in its closing that those actions are evidence of Mr. Sterlingov's knowledge and intentions. As the D.C. Circuit has noted, "all evidence as to what a defendant *did* bears upon what he *intended to do*," *United States v. Dunn*, 269 U.S. App. D.C. 373, 846 F.2d 761, 762 (D.C. Cir. 1988) (emphasis in original), but that does not amount to a violation of Rule 704(b).[1]

---

[1] To the extent the defense focuses its Rule 704(b) argument on the undercover transaction that forms the basis of Count Two, the objection is misplaced for the additional reason that the government is not required to prove that the defendant personally had knowledge of the undercover

In considering whether expert testimony runs afoul of Rule 704(b), the D.C. Circuit—adopting the approach initially advanced by the Seventh Circuit—directs trial courts to assess two key elements: "(1) the language used by the questioner and/or the expert, including use of the actual word 'intent'; and (2) whether the context of the testimony makes clear to the jury that the opinion is based on knowledge of general criminal practices, rather than some special knowledge of the defendant's mental processes." *United States v. Smart*, 98 F.3d 1379, 1388 (D.C. Cir. 1996). The D.C. Circuit has emphasized that "testimony should not be excluded under Rule 704(b) as long as it is clear that the expert is testifying on the basis of his knowledge of general criminal practices and not on some special knowledge of the defendant's mental processes." *United States v. Miller*, 395 F.3d 452, 455 (2005) (quoting *United States v. Bailey*, 319 F.3d 514, 521 (2003). Furthermore, "if it is made clear to the jury that the expert was not qualified to testify to the ultimate issue of intent, there is no violation of Rule 704(b)." *United States v. Bailey*, 319 F.3d 514, 522 (2003).

The government will introduce evidence through witness testimony regarding the *modus operandi* of criminals operating on the darknet who are seeking to conceal their activity, including common money laundering techniques and the use of mixers in that laundering. *See, e.g.*, ECF No. 61 at 6 (providing notice of Mr. Scholl's testimony in the specified area). The government will introduce evidence regarding the Bitcoin Fog messaging platform and will present testimony from individuals—including the undercover referenced in the defense filing—who sent messages

---

agent's representation regarding the source or intended use of the undercover funds. *See* 134 Cong. Rec. S17360-02 (Nov. 10, 1988) (Senate Judiciary Committee analysis of Anti-Drug Abuse Act of 1988) (noting that "there would not be any separate knowledge requirement regarding the source of the property involved in the transaction" for a sting money laundering offense under 18 U.S.C. § 1956(a)(3), and "everyone involved in the financial transaction would be guilty of this offense whether he was aware of the law enforcement officer's representation or not").

to Bitcoin Fog. The government will also introduce statements from "Akemashite Omedetou" regarding his review of messages sent through the Bitcoin Fog message platform. The government's witnesses may describe the functionality of a messaging system and its purpose, and may also describe practices and procedures employed by individuals running illicit services on the darknet. None of this runs afoul of Rule 704(b). "[A] court may admit testimony as to *modus operandi* linking facts and actions to a particular type of crime." *United States v. Mitchell*, 996 F.2d 419, 422 (D.C. Cir. 1993) (quoting *United States v. Dunn*, F.2d 761, 762 (D.C. Cir. 1988)). "[D.C.] Circuit precedent makes clear that Rule 704(b) allows an expert to state that certain conduct fits a specific role in a criminal enterprise—even though the conduct described exactly parallels conduct that other evidence explicitly links to a defendant." *United States v. Mitchell*, 996 F.2d 419, 422 (D.C. Cir. 1993). Furthermore, a party may present evidence that "match[es] particular defendants and their actions with paradigm roles in an illegal enterprise." *United States v. Boney*, 977 F.2d 624, 629, 631 (D.C. Cir. 1992).

### G. Fed. R. Evid. 901 Does Not Bar Blockchain Expert Testimony

The defense invokes Fed. R. Evid. 901 to suggest that the court should exclude expert testimony on blockchain analysis. As a threshold matter, the defense arguments appear to pertain to the authentication of blockchain-related records, rather than expert testimony concerning blockchain analysis. In any event, the defense objection is misplaced.

Federal Rule of Evidence 901(a) requires a proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it to be." A proponent must only make a *prima facie* showing that the evidence is what it purports to be. *See United States v. Caldwell*, 776 F.2d 989, 1001-02 (11th Cir. 1985). Once that *prima facie* case is established, the evidence is admitted, and the ultimate question of authenticity is decided by the jury. *United States v.*

*Belfast*, 611 F.3d 783, 819 (11th Cir. 2010). *See also* Hon. Paul Grimm, Gregory Joseph & Daniel Capra, *Best Practices for Authenticating Digital Evidence*, pp. 2-3, West Academic Publishing (2016).

Fed. R. Evid. 901(b) provides a non-exhaustive list of potential ways a party could authenticate records for trial. The rule text emphasis that it is a list of "examples only" and is "not a complete list." Fed. R. Evid. 901(b). *See United States v. Dean*, 989 F.2d 1205, 1210 n.7 (D.C. Cir. 1993) ("The rule contains an illustrative, but not exhaustive, list of suggested methods of identification."). Rule 901(b)(9) provides for authentication through "Evidence describing a process or system and showing that it produces an accurate result." Fed. R. Evid. 901(b)(9). Evidence can also be authenticated through testimony of a witness with knowledge, Fed. R. 901(b)(1), or based on an item's "appearance, contents, substance, internal patterns and other distinctive characteristics of the item, taken together with all the circumstances," Fed. R. 901(b)(4).

The threshold for a determination of authenticity is not high. "The question for the Court under Rule 901 is whether the proponent of the evidence has 'offered a foundation from which the jury could reasonably find that the evidence is what the proponent says it is.'" *United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006) (quoting 5 *Federal Rules of Evidence Manual*, § 901.02[1] at 901-5-901-6). The Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the *jury* ultimately might do so. *Id.* at 38 (citing 31 Federal Practice and Procedure: Evidence § 7102 at 16).

As Judge Contreras observed in *United States Hassanshahi*, 195 F. Supp. 3d 35 (D.D.C. 2016):

> The threshold for the Court's determination of authenticity is not high, however, and the proponent's burden of proof for authentication is slight. Rule 901(a) does not erect a particularly high hurdle to evidence's admission, nor does it require the proponent to rule out all possibilities inconsistent with authenticity, or to prove

>beyond any doubt that the evidence is what it purports to be. The ultimate resolution of the evidence's authenticity is reserved for the jury.

*Id.* at 48 (internal quotations and citations omitted); *see also United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994) ("the burden of proof for authentication is slight"); *United States v. Coohey*, 11 F.3d 97, 99 (8th Cir. 1993) ("the proponent need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be").

Rule 901 thus sets forth a flexible, permissible standard for authenticating evidence. The government's blockchain analysis and related evidence and testimony readily meet the threshold for authentication under Rule 901.

### H. Experts May Testify Regarding Darknet Markets

In its Notice of Intent to Present Expert Testimony, the government provided notice of anticipated testimony from Mr. Scholl and Ms. Bisbee regarding darknet markets. ECF No. 61 at 5, 6, 8. This testimony includes "the use of bitcoin on darknet markets," *id.* at 5; the *modus operandi* of criminals operating on the darknet, including the user of mixers, *id.* at 6; and addresses held by particular darknet markets that sent funds to and from Bitcoin Fog, *id.* at 6 and 8. This testimony is significant to the conduct charged in the Superseding Indictment and which the government will need to prove at trial—that the defendant, through Bitcoin Fog, conspired to launder funds tied to darknet narcotics trafficking, and operated a money transmitting business that moved funds tied to unlawful activity. The defense, citing Rule 403, opposes the entire body of testimony regarding darknet markets. ECF No. 72 at 11-12. However, the evidence is highly probative and, indeed, relates directly to the elements of the charged money laundering and unlicensed money transmitting business offenses. The government addresses this issue in detail in its 404(b) Notice and Motion *In Limine,* ECF No 63, and in its reply in support of that motion, which is being filed contemporaneous with this reply.

I. **Purported Discovery Disputes Are Not a Basis for Excluding Expert Testimony**

The defense opposition reprises ill-defined complaints about discovery advanced in prior filings. *See* ECF No. 72 at 3. As noted in the Government's Opposition to Defendant's Omnibus Motions *in Limine*, the defendant's discovery-related requests are neither relevant nor ripe. ECF No. 73 at 32. The defendant has had multiple opportunities to articulate with specificity what he believes he is missing from discovery and how it is material to the preparation of his defense. Evidently unable to muster any colorable argument as to materiality, the defense has instead chosen to copy-and-paste the same conclusory assertions from one motion to the next. For the reasons set forth in the government's Opposition, the defense discovery requests are meritless. ECF No. 73 at 32-37. And, most pertinent to this motion, they are a separate issue from whether the government's proposed expert testimony is reliable and will aid the jury. *See Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996) (pursuant to *Daubert,* the trial court must undertake a "two-prong analysis that centers on evidentiary admissibility and relevancy: the district court must determine first whether the expert's testimony is based on 'scientific knowledge;' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue'") (quoting *Daubert*, 509 U.S. at 592). The D.C. Circuit has expressly held that that an expert witness was not required to "explain the inner workings of the software he used." *Morgan*, 45 F.4th at 203. As the Circuit explained, "we have never held that Rule 702 requires an expert to have a sophisticated understanding of the software underlying her technological tools," and rejected the argument that an expert using Microsoft Excel "would be

required to be an expert in the algorithms by which Excel codes its formula and calculations." *Id.* (cleaned up).

## CONCLUSION

For the foregoing reasons, the government affirms its intent to present expert testimony, as set forth in greater detail in its Expert Notice, ECF No. 61, and requests that such testimony be admitted at trial.

<div style="margin-left: 40%;">

Respectfully submitted,
MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:  */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
C. Alden Pelker, Maryland Bar
Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007
Catherine.Pelker@usdoj.gov

</div>