UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S REPLY IN SUPPORT OF
MOTION *IN LIMINE* TO PRECLUDE THE DEFENSE FROM
CALLING THE PROSECUTOR AS A WITNESS FOR THE DEFENSE

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits the following Reply in support of its motion *in limine* to preclude the defense from calling the prosecutor as a defense witness, ECF No. 64.

## ARGUMENT

The defendant has now had at least three opportunities to state clearly a *legal* basis for calling one of the prosecutors in this case as a defense witness—first, in correspondence with the government, ECF No. 64, at 2-3 (referencing government's Sept. 17, 2022 letter and defendant's failure to respond); second, in the defendant's opening motion *in limine*, ECF No. 59, at 14-15; and third, in the defendant's opposition to the government's cross-motion *in limine*, ECF No. 67. In each instance, the defendant has refused to address the applicable legal framework or explain why the proposed testimony from Trial Attorney Pelker would be "vital to his case" and that he has exhausted efforts to obtain "the same or similar facts from another source." *United States v. Watson*, 952 F.2d 982, 986 (8th Cir. 1991); *see also* ECF No. 64, at 2-3 (collecting cases).  His inability to do so confirms that his motion is frivolous, in violation of D.C. R. Prof. Conduct 3.1,

and is a transparent attempt to force one of the prosecutors on his case to withdraw. The Court should draw a clear line against such gamesmanship.[1]

> I. **The Defendant Has Not Shown that Testimony from a Prosecutor Is Vital to His Case and Cannot Be Obtained from Another Source**

First, the defendant has failed to establish that Trial Attorney Pelker's testimony would even be relevant, let alone "vital," to the defense. *See Watson*, 952 F.2d at 986. Liberally construed, and without addressing every misstatement and inaccuracy in the defendant's so-called statement of "Facts," the defendant's thesis appears to be that (1) then-Intelligence Analyst (IA) Pelker caused the Department of Justice to purchase a software license for blockchain analysis software, and that (2) as a result of this software license, "the market value of Chainalysis has ballooned to 8.6 billion dollars." ECF No. 67, at 3; *see also id.* at 2 ("Since the DOJ acquired a license for Chainalysis Reactor software at Ms. Pelker's behest, the market value of Chainalysis has increased astronomically."). Even assuming a single software license launched a chain of dominos that resulted in Chainalysis reaching an $8.6 billion market valuation, what conceivable relevance does that have to the sole question before the jury, whether Roman Sterlingov operated Bitcoin Fog and committed the crimes charged in the Superseding Indictment? The defendant does not explain.

Instead of providing specifics, the defendant asserts the vague and conclusory claim (at 3) that Chainalysis's contracting relationship with the government is relevant to "the weight, credibility and integrity of the Government's evidence." The defendant does not further explain *how* this is so. To the contrary, as explained in the government's opposition to the defendant's

---

[1] The government further objects to the defendant's attempt to personalize or belittle the government's motion by referring to it (at 1, 6) as "her motion" or "her own motion." The government's motion was filed by two attorneys for the government on behalf of the United States of America.

*Daubert* challenge and in other pleadings, the blockchain tracing in this case is verifiable on the public blockchain; numerous vendors and tools compete with Chainalysis in the public and private sector; investigators used a variety of blockchain analysis tools in this case; and the defendant has personally confirmed the accuracy of the government's blockchain analysis by telling WIRED reporters that he did, indeed, receive a stream of payments from the Bitcoin Fog cluster. *See* ECF No. 73, at 1-25; ECF No. 50, at 6-25; Lily Hay Newman & Andy Greenberg, *Bitcoin Case Could Put Cryptocurrency Tracing on Trial*, WIRED (Aug. 2, 2022), https://www.wired.com/story/bitcoin-fog-roman-sterlingov-blockchain-analysis/; *see also* ECF No. 47, at 15 (stating that "Mr. Sterlingov was merely a user of the service").  The defendant even concedes (at 3) that other cases supported by blockchain analysis resulted in guilty pleas and had "corroborating evidence."  The defendant's hinted-at but never fully explained conspiracy theory involving Chainalysis is meritless and irrelevant to the charges in the Superseding Indictment.  And even if it were somehow relevant, the defendant never explains how Trial Attorney Pelker's testimony, in particular, is "vital" to the defendant's presentation of this conspiracy theory to the jury and cannot be obtained through any other means.

      Finally, lacking any way to tie Trial Attorney Pelker's prospective testimony to the facts of the case, the defendant resorts to *ad hominem* attacks.  The defendant claims (at 6) that Trial Attorney Pelker has "every incentive to withhold evidence" because of her "reputation and career."  To begin with, the government has produced an enormous volume of discovery totaling more than three terabytes.  The defendant has not offered a shred of proof for the inflammatory charge that the government is deliberately "withhold[ing]" relevant and discoverable evidence.  Further, the defendant's argument, if true, would justify calling any attorney in any trial as a witness for the opposing side, because virtually any representation might have an impact on an advocate's

"reputation and career." Indeed, it is the defense team, not the government, who appear to be seeking pretrial publicity in order to promote their "reputation and career." *See* Newman & Greenberg, *supra* (interview of the defendant and defense counsel). The defendant's *ad hominem* attack is baseless, untethered to the facts of the case, and provides no excuse to side-step the well-established standard for calling a prosecutor as a defense witness.

## II. The Prosecutor Is Not a "Witness Against" the Defendant Under the Sixth Amendment Confrontation Clause

The defendant repeats his conclusory assertion that Trial Attorney Pelker is an "accuser" under the Sixth Amendment. While it is certainly true that prosecutors (or for that matter grand jurors) are "accusers" in some colloquial sense, that does not convert them into "witnesses against [the defendant]," U.S. Const. amend. VI, within the meaning of the Sixth Amendment's Confrontation Clause. The defendant offers no legal authority other than block-quoting the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004). But *Crawford* dealt with a different question—whether the government could introduce an out-of-court statement against the defendant at trial if the witness was unavailable for cross-examination. *See id.* at 38-40. As the government has explained, it does not intend to offer any out-of-court statements by then-IA Pelker at trial, so the defendant's confrontation rights are not at issue. *See* ECF No. 64, at 4; ECF No. 73, at 41-42.

## III. The Prosecutor Is Not a "Material Fact Witness as to Venue"

The defendant claims (at 6) that Trial Attorney Pelker is a "material fact witness as to venue," based on her alleged involvement "transferring" the investigation to the FBI's Washington Field Office. That is irrelevant to venue. As explained in the government's prior submissions, venue in the District of Columbia is proper based on the undercover transactions conducted in the District of Columbia and the defendant's omissions in the District of Columbia, including his

failure to obtain a money transmitter license from the D.C. Department of Insurance, Securities, and Banking (DISB) or to register as a money transmitting business with the U.S. Department of Treasury, Financial Crimes Enforcement Network (FinCEN).  *See* ECF No. 52, at 2-20.  These facts have nothing to do with which field office was investigating the case, let alone Trial Attorney Pelker's prospective testimony about such bureaucratic history.

## **CONCLUSION**

For the foregoing reasons, the Court should preclude the defendant from calling Trial Attorney Pelker as a witness for the defense and deny the defendant's frivolous cross-motion.

Respectfully submitted,
MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY: */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
C. Alden Pelker, Maryland Bar
Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007
Catherine.Pelker@usdoj.gov