UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO CONTINUE TRIAL

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully opposes the defendant's motion to continue the trial date, ECF No. 83, because the defense has had adequate time to prepare expert reports, follow through with discovery, investigate the defendant's financial resources, and otherwise prepare for trial. The government further objects to the defendant's use of his motion as a vehicle to rehash arguments from his prior motions and to level yet more baseless accusations against the government.

1. The defendant was arrested on April 27, 2021, he was originally indicted on June 14, 2021, he made his Initial Appearance in the District of Columbia on June 23, 2021, and he was appointed competent and effective counsel from the Office of the Federal Public Defender for the District of Columbia.[1] The government provided an in-person presentation of its evidence to the defendant and his counsel, produced discovery, and repeatedly invited the defendant to speak to the government under the protection of a proffer letter. The government extended a plea offer on

---

[1] As noted in the government's prior submissions, the defendant simultaneously retained a private defense attorney in Boston, Maksim Nemtsev, whose representation was not disclosed to the government or to the Court at the time. Mr. Nemtsev now claims to be acting as the defendant's attorney, although he has not entered an appearance in this case. Mr. Nemtsev's role in this case has never been acknowledged or explained in any of the defense filings. *See* ECF No. 50, at 29-30; ECF No. 53, at 6.

January 10, 2022, which was not accepted. The government has repeatedly communicated to the defendant's former and current trial counsel that the January 10, 2022 plea offer was not a final offer, and that the government was willing to discuss other possible resolutions, but neither counsel has been willing to engage in plea negotiations. The defendant retained his current trial counsel in March 2022, who promptly indicated an intent to take this case to trial. The parties filed a Joint Status Report and Motion to Exclude Time on May 13, 2022, asking this Court to set the matter for trial. ECF No. 38.

2. The defendant claims (at 4) that he needs more time to respond to the government's noticed experts and to "find [his] own experts and notice the Government accordingly." First, the parties have fully briefed the government's expert notices and the defendant's cross-motion to challenge the use of blockchain analysis under *Daubert*. The defendant inaccurately claims the government has noticed "five proposed forensics experts." In fact, the government noticed two blockchain experts (Mr. Scholl and Ms. Bisbee), two computer specialists (Mr. St. Jean and Ms. Mazars de Mazarin), and one senior FinCEN official who will testify about FinCEN's role enforcing anti-money laundering laws and rules (Mr. Vlahakis). ECF No. 61. The defendant's response focused on the blockchain experts, made only a single perfunctory reference to Mr. St. Jean and Mr. Vlahakis, and did not mention Ms. Mazars de Mazarin at all. ECF No. 72, at 3. To the extent the defendant intends to challenge the non-blockchain experts, he has had adequate opportunity to do so already.

3. Second, the defendant has had adequate time to identify his own expert witnesses and prepare expert notices. Indeed, the role of blockchain analysis in this case has been a singular focus for the defense since at least August 2022—both in pleadings filed in this Court and in defense counsel's statements to the press. *See* Lily Hay Newman & Andy Greenberg, *Bitcoin*

*Case Could Put Cryptocurrency Tracing on Trial*, WIRED (Aug. 2, 2022), https://www.wired.com/story/bitcoin-fog-roman-sterlingov-blockchain-analysis/ ("'This is a story of people profiteering and advancing their careers, throwing people in jail to promote their blockchain analysis tool that is junk science and doesn't withstand any scrutiny,' says Ekeland. He adds that, based on the evidence provided in Sterlingov's case, he believes 'Chainalysis is the Theranos of blockchain analysis.'"). The defendant even retained two so-called "experts" for his prior motions before this Court—although neither appeared to have any knowledge or experience in the field of blockchain analysis. The government's expert notices should have come as no surprise to the defendant. And to the extent the defendant needs time (at 8) for "substantial expert technical analysis" of discovery materials, that was foreseeable as well.

4. The defendant argues (at 4) that the government "will need [its] time" to respond to the defendant's expert notices. To be sure, fairness will require allowing the government an adequate amount of time to respond to any late-filed expert notices by the defense. But it is hardly fair to postpone the defendant's expert notices and then cite the government's need to respond as a reason for further delay.

5. The defendant claims (at 5-7) that he needs more time to pursue discovery demands—and then uses his motion to rehash his unsupported demand for "source code," and to repeat irrelevant theories related to Chainalysis, from his prior submissions.[2] The defendant has

---

[2] The defendant claims (at 7) that the case "necessitates multiple subpoenas for both documents and testimony, and time is needed for subpoena response and any motions to quash," indicating he intends to serve multiple Rule 17 subpoenas returnable before trial. *See also id.* at 6 (expressing intent "to subpoena the information directly from the Government's for-profit forensic vendors," including "forensic source and object code"). Although the government expects such subpoena recipients and the government itself may well move to quash such palpably improper subpoenas, the government is concerned with defendant's apparent intent—without leave of Court—to issue such early-return subpoenas. This District Court has previously warned litigants against doing so without specific leave of court. *See United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 176

had adequate time to follow through with any good faith discovery demands. As recounted in the government's opposition to the defendant's omnibus motions *in limine*, the defense delivered a 15-page discovery letter to the government on September 23, 2022 (which made a variety of demands but never clearly asked for "source code"); the government responded with a letter asking for clarification and inviting further dialogue on October 4, 2022; and the defendant declined to make any reply. ECF No. 73, at 35. Instead, the defendant waited until his motion *in limine* on October 24, 2022 to raise his discovery demands before the Court. The defendant *now* claims (at 7) that the parties "need time to meet and confer in an attempt to resolve their discovery disputes"—but it was not until the defendant's Reply in support of his motions *in limine*, on Monday, November 14, 2022, that the government first learned the defendant intended to "meet and confer" at all regarding discovery. The government remains willing to confer in good faith with the defense—and expects defense counsel to do the same—but the defendant's eleventh-hour discovery demands provide no reason to delay the trial.[3]

---

(D.D.C. 2015) ("[T]he Court has an independent duty to review the propriety of the subpoena.") (citation, quotation omitted). "Because subpoenas are issued with the Court's seal and backed by the threat of court-imposed sanctions, . . . courts have found that regardless of whether the [movant] has standing, the Court is obligated under Rule 17 to assess each subpoena for compliance." *Id.* (quotations, citations omitted; collecting cases); *cf. Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951) ("The burden is on the court to see that the subpoena is good in its entirety and it is not upon the [subpoenaed party] to cull the good from the bad."). Accordingly, "it is this court's duty to make certain that the subpoena power is invoked legitimately and legally." *United States v. Santiago-Lugo*, 904 F.Supp. 43, 45 (D.P.R.1995). Indeed, Rule 17 itself appears to contemplate that only "the court may" direct production "before trial." Fed. R. Crim. P. 17(c)(1).

[3] To be clear, the government objects to the defendant's unfounded accusation (at 7) that the government has committed unspecified *Brady* violations. The government takes its discovery obligations seriously, and has made ongoing efforts to collect and produce in discovery any and all discoverable materials, including *Brady* material, and has produced more than three terabytes of discovery to date. The government is committed to working with the defendant in good faith to address any legitimate discovery concerns.

6. The defendant claims (at 5) that he needs more time to prepare a "Statement of Net Worth," and inaccurately asserts that the government "substantially seized all of Mr. Sterlingov's assets upon his arrest." As the government has explained in prior submissions, however, the defendant appears to have many other assets. Indeed, he was able to pay 1.65 BTC from his Binance account, valued at approximately $54,550 at the time, to retain the Boston-based attorney, Mr. Nemtsev, following his arrest in April 2021. *See* ECF No. 50, at 29-30; ECF No. 53, at 6.

7. The defendant does not further explain his proposed "Statement of Net Worth." Presumably, the defendant intends to supplement his motion for the return of seized funds, ECF No. 48—tacitly acknowledging that the original motion was legally insufficient. But the defendant has been on notice that he bears a threshold burden of establishing financial need to justify a *Monsanto* hearing since at least August 29, 2022, when the government filed its opposition, if not earlier while the defendant was researching and drafting his motion.[4]

8. In any event, the government respectfully requests expedited consideration of the motion to continue, as the government needs to subpoena and make travel arrangements for numerous government and civilian witnesses (including potentially more than 60 authentication witnesses, *see* ECF No. 78, at 3).

---

[4] The government reiterates its position that the defendant's motion for the return of seized funds also fails because the seizures were supported by probable cause, *see* ECF No. 53, and reserves the right to respond to any supplemental submission by the defendant.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY: */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
C. Alden Pelker, Maryland Bar
Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007
Catherine.Pelker@usdoj.gov