Exhibit 'A'



Tor Ekeland
Managing Partner
(718) 737-7264
tor@torekeland.com

**November 18th, 2022**

**Via Email and FedEx**

Sarah Ward
General Counsel
Chainalysis, Inc.

114 5th Avenue, 18th Floor
New York, NY
10011

Re:     *United States v. Roman Sterlingov*, 21-CR-00399 (D.D.C.):  Subpoenas

Ms. Ward,

      Please find enclosed subpoenas for Chainalysis Inc. ("Chainalysis"), Michael Gronager, Jonathan Levin and Youli Lee. As you are aware, Chainalysis participated in the investigation of the above-referenced case dating back to at least 2016, if not earlier. Among other things, our subpoenas seek the source code, object code, algorithms, and all software code used by Chainalysis for the investigation in the above-referenced case. Additionally, it has come to our attention that you have circulated evidence in this case to third-parties for analysis and presentation at the USENIX Security Symposium. Our subpoenas also seek all information related to this research and whitepaper. The subpoenas are enclosed.

      Currently this matter is scheduled to go to trial on January 9th, 2023, thus time is of the essence. There is a pending motion for a 3-month continuance. We will inform you of any schedule changes. We hereby tender the statutory witness fees, please let us know where you would like to have them sent. We look forward to speaking with you at your earliest convenience to make this as easy as possible for everyone.

      Given the complexities of this case, we foresee the possibility of having to issue further subpoenas for both testimony and information from your company.



Finally, please be advised because of your company's involvement in Mr. Sterlingov's prosecution, you face potential liability should he be acquitted. Thus, since civil litigation is a foreseeable event, your duty to preserve all documents, communications, information, and records relating to anything having to do with Mr. Sterlingov has attached. This includes your discussions with any investors and potential investors about this case.

Sincerely,

Tor Ekeland
Michael Hassard

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| _____ | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR
### OBJECTS IN A CRIMINAL CASE

To: 

_____
*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:

| Place: | Date and Time: |
|---|---|
| | |

        Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

        *(SEAL)*

Date:  _____

                                        *CLERK OF COURT*

                                        _____
                                        *Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____

_____ , who requests this subpoena, are:

---

### Notice to those who use this form to request a subpoena

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case  (Page 2)

Case No.

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case (Page 3)

### Federal Rule of Criminal Procedure 17 (c), (d), (e), and (g) (Effective 12/1/08)

**(c) Producing Documents and Objects.**

**(1)  In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

**(2)  Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

**(3)  Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

**(d)  Service.** A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

**(e)  Place of Service.**

**(1)  In the United States.** A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States.

**(2)  In a Foreign Country.** If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.

**(g)  Contempt.** The court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district. A magistrate judge may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by that magistrate judge as provided in 28 U.S.C. § 636(e).

Tor Ekeland (*pro hac vice*)
tor@torekeland.com
**TOR EKELAND LAW, PLLC**
30 Wall Street, 8th Floor
New York, NY 10005-2205
(718) 737 – 7264

Michael Hassard (*pro hac vice*)
michael@torekeland.com
**TOR EKELAND LAW, PLLC**
30 Wall Street, 8th Floor
New York, NY 10005-2205
(718) 737 – 7264

*Attorneys for Defendant*
*Roman Sterlingov*

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Roman Sterlingov,<br><br>　　　　　　　　Defendant. | 21-CR-00399-RDM<br><br>**SUBPOENA FOR DOCUMENTS AND TESTIMONY**<br><br>**EXHIBIT 'A'** |

To:
**CHAINALYSIS INC** (Delaware Division of Corporations File No.5731603)

Resident Agent:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

# Definitions

1.      The term "any" includes "any," "all" and "every."

2.      The term "Document" shall be construed in the broadest sense allowed by federal law. The term "Document" includes, but is not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically stored matter from which information can be obtained and translated, if necessary, into reasonable useable form. The term "Document" includes preliminary versions, drafts, and revisions.

3.      The term "records" shall be construed in the broadest sense allowed by federal law and includes but is not limited to any communications, emails, text messages, bank records, financial statements, notes, recordings, or the like.

4.      The terms "include" or "including" are used merely to emphasize certain types of information requested and should not be construed as limiting a subpoena in any way. "Including" should be construed in all cases as followed by the phrase "but not limited to."

5.      The terms "person," "individual," or "entity" mean any natural person or any business, legal or governmental entity or association.

6.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this subpoena all documents and information that would be excluded if such words were not so construed. The present tense includes the past and future tenses.

7.      The term "Chainalysis" means the following entity:

**CHAINALYSIS, LLC** (Delaware Division of Corporations File No. 5731603)
and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by Chainalysis, LLC.

8.      The term "Excygent" means the following entity:

**EXCYGENT, LLC** (Virginia Corporation Commission Entity No. S6918975)

and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by Excygent, LLC.

9.     The term "**ELLIPTIC**" means the blockchain analytic company with offices in London, New York City, Tokyo, and Singapore with the following website: www.elliptic.co.

10.     The term "**MITRE**" means the following entity:

**MITRE ENGENUITY, INCORPORATED** (Virginia Corporation Commission Entity No. 11037123)

and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by MITRE Engenuity, Inc.

11.     The term "Bitcoin Fog" refers to any bitcoin tumbling or mixing .onion site, or the like, that Excygent, Aaron Bice, John Golinvaux or Tyler Travis investigated or researched on behalf of, with, or alongside the United States Government that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C).

12.     The term "communication" means the transmission of information by any means, electronic, paper or other (in the form of facts, ideas, inquiries or otherwise), including, but not limited to e-mails, text messages, chat messages, web postings, social media postings, and messages from any and all messaging applications (including but not limited to Facebook, Google, Twitter, Slack, Chanty, Microsoft Teams, Discord, Mattermost, Confluence, Whatsapp, Signal) which are in the possession, custody or control of Chainalysis, wherever located. All communications shall include source codes, object codes, algorithms, computer software, metadata, time stamps, dates, and complete content.

13.     All "communications" include communications made in both professional and personal capacities.

14.     The term "whitepaper" means the "How to Peel a Million: Validating and Expanding Bitcoin Clusters" written by George Kappos, Haaron Yousaf, Rainer Stütz, Sofia Rollet, Bernhard Haslhofer and Sarah Meiklejohn, and presented at the USENIX Security Symposium in Boston, MA in August 2022.

15.     The term "entities" includes any corporation, partnership, sole proprietorship, LLC, LLP, or any type of business entity related in any way to the investigation of Bitcoin Fog and the investigation and prosecution of Mr. Sterlingov.

16.     The term "Source Code" includes any coding, abbreviations, or means of identification used to conduct blockchain analysis, log communications, or conduct investigations.

17.     The term "Native File Format" refers to the default file format that a computer application or program uses to create or save files in a proprietary format that only that program or application can recognize and includes all the metadata attached to those files. For example, Microsoft Word documents should be produced in .doc format and not as a .pdf, and with all metadata, including track changes, intact.

## Testimony Requested

1.      This subpoena includes a request for a custodian of records, or other qualified person, who can authenticate any produced material in accordance with Federal Rule of Evidence 902(11).

2.      For materials that are not self-authenticating, the Defense requests that Chainalysis produce an individual with knowledge who can testify as to the authenticity of the produced material.

## Documents and Objects to be Produced

1.      Any documents, records and communications, including individual notes to one's self, related to the DOJ press releases announcing Roman Sterlingov's arrest. This includes communications between Chainalysis and the Department of Justice in scheduling interviews, the timing of the release, and communications with WIRED reporter Andy Greenberg, as well as any communications related to Andy Greenberg's book "Tracers in the Dark – The Global Hunt for the Crime Lords of Cryptocurrency".

2.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and investors or potential investors related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes pitchbooks, newsletters, and any material mentioning Chainalysis's work on Mr. Sterlingov's case and Bitcoin Fog.

3.      Any documents, records and communications, including individual notes to one's self, exchanged between employees, agents, contractors, entities, and anyone else at Chainalysis related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

4.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and Aaron Bice, Excygent, John Golinvaux, Tyler Travis, MITRE, Catherine A. Pelker, the IRS, the U.S. Treasury Department, the DOJ, the FBI, Elliptic, and any other foreign or domestic law enforcement agency, third party vendor or contractors, or entities in any combination whatsoever, related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

5.      Any documents, records, and communications, including any contracts or memorandums of understanding between the United States Government and Chainalysis in relation to the work related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

6.      Any documents, records and communications regarding the purchase of Excygent by Chainalysis, including due diligence documents, the price paid, any memorandums of understanding, sales agreements, negotiations, contracts and records of payment whether via cash, equity, options, or any other form of consideration.

7.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and WIRED Magazine, Andy Greenberg, or any other reporter related to blockchain analysis or Andy Greenberg's book "Tracers in the Dark – The Global Hunt for the Crime-Lords of Cryptocurrency" released on in November 15, 2022.

8.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and any researcher from University College London, IC3, the Austrian Institute of Technology, or the Complexity Science Hub Vienna, including, but not limited to, George Kappos, Haaron Yousaf, Rainer Stütz, Sofia Rollet, Bernhard Haslhofer, or Sarah Meiklejohn related to the presentation of the whitepaper at the USENIX Security Symposium and the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes datasets, draft versions of the whitepaper, source code, object code, algorithms, heuristics, methodologies, and Chainalysis research sent to researchers, as well as all software editions with complete code in native file format.

9.      Any documents, records and communications, including individual notes to one's self, regarding the development of Chainalysis Reactor software and any other software related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.), including any reports, sandbox results, beta testing, penetration testing results, GitHub or the like archives or repositories, wiki documents, peer reviews, error rates, clustering methodologies and propensity for false positives.

10.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and Catherine Alden Pelker related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

11.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and Excygent related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

12.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and Elliptic related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes all communications between Excygent and Elliptic.

13.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and MITRE related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

14.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and Excygent related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

15.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and Aaron Bice related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

16.      Any documents, records and communications, including individual notes to one's self, initiated or received by Michael Gronanger, Jonathan Levin, Youli Lee, John Lewis Golinvaux, Gurvais Grigg, or anyone else affiliated with Chainalysis, related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

17.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and the Swedish Prosecution Authority related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

18.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and the Financial Crimes Enforcement Network related to the

investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

19.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and any other federal agency related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

20.     Please produce a log documenting all material withheld on the basis of privilege, work-product doctrine, or otherwise.

21.     All production must be in Native File Format unless otherwise agreed to.


Deadline and place for production:

On or before 21 days from date of receipt.


Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
(718) 737-7264
tor@torekeland.com

November 18, 2022

Submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No.
4493631)
Tor Ekeland Law, PLLC

/s/ Michael Hassard
Michael Hassard (NYS Bar No.
5824768)
Tor Ekeland Law, PLLC


30 Wall Street
8th Floor
New York, NY
10005
(718) 737 - 7264
tor@torekeland.com


*Attorneys for Roman Sterlingov*

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| _____ | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To:

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: | Courtroom No.: |
|---|---|
| | Date and Time: |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

(SEAL)

Date:  _____

*CLERK OF COURT*

_____

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   _____
_____ , who requests this subpoena, are:

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case (Page 2)

Case No.

## PROOF OF SERVICE

      This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

    ❏  I returned the subpoena unexecuted because: _____

_____ .

    Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

    I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Tor Ekeland (*pro hac vice*)
tor@torekeland.com
**TOR EKELAND LAW, PLLC**
30 Wall Street, 8th Floor
New York, NY 10005-2205
(718) 737 – 7264

Michael Hassard (*pro hac vice*)
michael@torekeland.com
**TOR EKELAND LAW, PLLC**
30 Wall Street, 8th Floor
New York, NY 10005-2205
(718) 737 – 7264

*Attorneys for Defendant*
*Roman Sterlingov*

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

United States of America,

                              Plaintiff,

        v.

Roman Sterlingov,

                              Defendant.

21-CR-00399-RDM


**SUBPOENA FOR DOCUMENTS
AND TESTIMONY**

**EXHIBIT 'A'**


To:
**MICHAEL GRONAGER, CEO/CO-FOUNDER - CHAINALYSIS INC** (Delaware Division
of Corporations File No.5731603)

Resident Agent:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

# Definitions

1.      The term "any" includes "any," "all" and "every."

2.      The term "Document" shall be construed in the broadest sense allowed by federal law. The term "Document" includes, but is not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically stored matter from which information can be obtained and translated, if necessary, into reasonable useable form. The term "Document" includes preliminary versions, drafts, and revisions.

3.      The term "records" shall be construed in the broadest sense allowed by federal law and includes but is not limited to any communications, emails, text messages, bank records, financial statements, notes, recordings, or the like.

4.      The terms "include" or "including" are used merely to emphasize certain types of information requested and should not be construed as limiting a subpoena in any way. "Including" should be construed in all cases as followed by the phrase "but not limited to."

5.      The terms "person," "individual," or "entity" mean any natural person or any business, legal or governmental entity or association.

6.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this subpoena all documents and information that would be excluded if such words were not so construed. The present tense includes the past and future tenses.

7.      The term "Chainalysis" means the following entity:

**CHAINALYSIS, LLC** (Delaware Division of Corporations File No. 5731603) and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by Chainalysis, LLC.

8.      The term "Excygent" means the following entity:

**EXCYGENT, LLC** (Virginia Corporation Commission Entity No. S6918975)

and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by Excygent, LLC.

9.      The term "**ELLIPTIC**" means the blockchain analytic company with offices in London, New York City, Tokyo, and Singapore with the following website: www.elliptic.co.

10.     The term "**MITRE**" means the following entity:

**MITRE ENGENUITY, INCORPORATED** (Virginia Corporation Commission Entity No. 11037123)

and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by MITRE Engenuity, Inc.

11.     The term "Bitcoin Fog" refers to any bitcoin tumbling or mixing .onion site, or the like, that Excygent, Aaron Bice, John Golinvaux or Tyler Travis investigated or researched on behalf of, with, or alongside the United States Government that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C).

12.     The term "communication" means the transmission of information by any means, electronic, paper or other (in the form of facts, ideas, inquiries or otherwise), including, but not limited to e-mails, text messages, chat messages, web postings, social media postings, and messages from any and all messaging applications (including but not limited to Facebook, Google, Twitter, Slack, Chanty, Microsoft Teams, Discord, Mattermost, Confluence, Whatsapp, Signal) which are in the possession, custody or control of Chainalysis, wherever located. All communications shall include source codes, object codes, algorithms, computer software, metadata, time stamps, dates, and complete content.

13.     All "communications" include communications made in both professional and personal capacities.

14.     The term "whitepaper" means the "How to Peel a Million: Validating and Expanding Bitcoin Clusters" written by George Kappos, Haaron Yousaf, Rainer Stütz, Sofia Rollet, Bernhard Haslhofer and Sarah Meiklejohn, and presented at the USENIX Security Symposium in Boston, MA in August 2022.

15.     The term "entities" includes any corporation, partnership, sole proprietorship, LLC, LLP, or any type of business entity related in any way to the investigation of Bitcoin Fog and the investigation and prosecution of Mr. Sterlingov.

16.     The term "Source Code" includes any coding, abbreviations, or means of identification used to conduct blockchain analysis, log communications, or conduct investigations.

17.     The term "Native File Format" refers to the default file format that a computer application or program uses to create or save files in a proprietary format that only that program or application can recognize and includes all the metadata attached to those files. For example, Microsoft Word documents should be produced in .doc format and not as a .pdf, and with all metadata, including track changes, intact.

## Testimony Requested

1.      This subpoena includes a request for a custodian of records, or other qualified person, who can authenticate any produced material in accordance with Federal Rule of Evidence 902(11).

2.      For materials that are not self-authenticating, the Defense requests that Chainalysis produce an individual with knowledge who can testify as to the authenticity of the produced material.

## Documents and Objects to be Produced

1.      Any documents, records and communications, including individual notes to one's self, related to the DOJ press releases announcing Roman Sterlingov's arrest. This includes communications between Chainalysis or Michael Gronager and the Department of Justice in scheduling interviews, the timing of the release, and communications with WIRED reporter Andy Greenberg, as well as any communications related to Andy Greenberg's book "Tracers in the Dark – The Global Hunt for the Crime Lords of Cryptocurrency".

2.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and investors or potential investors related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes pitchbooks, newsletters, and any material mentioning Chainalysis's work on Mr. Sterlingov's case and Bitcoin Fog.

3.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and employees, agents, contractors, entities, or anyone else at Chainalysis related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

4.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and Aaron Bice, Excygent, John Golinvaux, Tyler Travis, MITRE, Catherine A. Pelker, the IRS, the U.S. Treasury Department, the DOJ, the FBI, Elliptic, and any other foreign or domestic law enforcement agency, third party vendor or contractors, or entities in any combination whatsoever, related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

5.      Any documents, records, and communications, including any contracts or memorandums of understanding between the United States Government and Chainalysis or Michael Gronager in

relation to the work related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

6.        Any documents, records and communications regarding the purchase of Excygent by Chainalysis, including due diligence documents, the price paid, any memorandums of understanding, sales agreements, negotiations, contracts and records of payment whether via cash, equity, options, or any other form of consideration.

7.        Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and WIRED Magazine, Andy Greenberg, or any other reporter related to blockchain analysis or Andy Greenberg's book "Tracers in the Dark – The Global Hunt for the Crime-Lords of Cryptocurrency" released on in November 15, 2022.

8.        Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and any researcher from University College London, IC3, the Austrian Institute of Technology, or the Complexity Science Hub Vienna, including, but not limited to, George Kappos, Haaron Yousaf, Rainer Stütz, Sofia Rollet, Bernhard Haslhofer, or Sarah Meiklejohn related to the presentation of the whitepaper at the USENIX Security Symposium and the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes datasets, draft versions of the whitepaper, source code, object code, algorithms, heuristics, methodologies, and Chainalysis research sent to researchers, as well as all software editions with complete code in native file format.

9.        Any documents, records and communications, including individual notes to one's self, regarding the development of Chainalysis Reactor software and any other software related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.), including any reports, sandbox results, beta testing, penetration testing results, GitHub or the like archives or repositories, wiki documents, peer reviews, error rates, clustering methodologies and propensity for false positives.

10.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and Catherine Alden Pelker related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

11.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and Excygent related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

12.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and Elliptic related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes all communications between Excygent and Elliptic.

13.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and MITRE related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

14.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and Excygent related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

15.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and Aaron Bice related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

16.     Any documents, records and communications, including individual notes to one's self, initiated or received by Michael Gronager, Jonathan Levin, Youli Lee, John Lewis Golinvaux, Gurvais Grigg, or anyone else affiliated with Chainalysis, related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

17.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and the Swedish Prosecution Authority

related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

18.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and the Financial Crimes Enforcement Network related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

19.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and any other federal agency related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

20.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Michael Gronager and anyone else regarding any press releases announcing Mr. Sterlingov's arrest. This includes all communications with WIRED Magazine reporters, individuals at the Department of Justice, or anyone else.

21.      Please produce a log documenting all material withheld on the basis of privilege, work-product doctrine, or otherwise.

22.      All production must be in Native File Format unless otherwise agreed to.


Deadline and place for production:

On or before 21 days from date of receipt.


Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
(718) 737-7264
tor@torekeland.com

November 18, 2022

Submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No.
4493631)
Tor Ekeland Law, PLLC

/s/ Michael Hassard
Michael Hassard (NYS Bar No.
5824768)
Tor Ekeland Law, PLLC


30 Wall Street
8th Floor
New York, NY
10005
(718) 737 - 7264
tor@torekeland.com


*Attorneys for Roman Sterlingov*

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )   Case No. |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To:

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: | Courtroom No.: |
|---|---|
| | Date and Time: |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

*(SEAL)*

Date:  _____

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  _____
_____ , who requests this subpoena, are:

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case (Page 2)

Case No.

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Tor Ekeland (*pro hac vice*)
tor@torekeland.com
**TOR EKELAND LAW, PLLC**
30 Wall Street, 8th Floor
New York, NY 10005-2205
(718) 737 – 7264

Michael Hassard (*pro hac vice*)
michael@torekeland.com
**TOR EKELAND LAW, PLLC**
30 Wall Street, 8th Floor
New York, NY 10005-2205
(718) 737 – 7264

*Attorneys for Defendant*
*Roman Sterlingov*

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>   v.<br><br>Roman Sterlingov,<br><br>                    Defendant. | 21-CR-00399-RDM<br><br>**SUBPOENA FOR DOCUMENTS**<br>**AND TESTIMONY**<br><br>**EXHIBIT 'A'** |

To:
**JONATHAN LEVIN, CSO/CO-FOUNDER - CHAINALYSIS INC** (Delaware Division of
Corporations File No.5731603)

Resident Agent:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

## Definitions

1.      The term "any" includes "any," "all" and "every."

2.      The term "Document" shall be construed in the broadest sense allowed by federal law. The term "Document" includes, but is not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically stored matter from which information can be obtained and translated, if necessary, into reasonable useable form. The term "Document" includes preliminary versions, drafts, and revisions.

3.      The term "records" shall be construed in the broadest sense allowed by federal law and includes but is not limited to any communications, emails, text messages, bank records, financial statements, notes, recordings, or the like.

4.      The terms "include" or "including" are used merely to emphasize certain types of information requested and should not be construed as limiting a subpoena in any way. "Including" should be construed in all cases as followed by the phrase "but not limited to."

5.      The terms "person," "individual," or "entity" mean any natural person or any business, legal or governmental entity or association.

6.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this subpoena all documents and information that would be excluded if such words were not so construed. The present tense includes the past and future tenses.

7.      The term "Chainalysis" means the following entity:

**CHAINALYSIS, LLC** (Delaware Division of Corporations File No. 5731603) and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by Chainalysis, LLC.

8.      The term "Excygent" means the following entity:

**EXCYGENT, LLC** (Virginia Corporation Commission Entity No. S6918975)

and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by Excygent, LLC.

9.      The term "**ELLIPTIC**" means the blockchain analytic company with offices in London, New York City, Tokyo, and Singapore with the following website: www.elliptic.co.

10.     The term "**MITRE**" means the following entity:

**MITRE ENGENUITY, INCORPORATED** (Virginia Corporation Commission Entity No. 11037123)

and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by MITRE Engenuity, Inc.

11.     The term "Bitcoin Fog" refers to any bitcoin tumbling or mixing .onion site, or the like, that Excygent, Aaron Bice, John Golinvaux or Tyler Travis investigated or researched on behalf of, with, or alongside the United States Government that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C).

12.     The term "communication" means the transmission of information by any means, electronic, paper or other (in the form of facts, ideas, inquiries or otherwise), including, but not limited to e-mails, text messages, chat messages, web postings, social media postings, and messages from any and all messaging applications (including but not limited to Facebook, Google, Twitter, Slack, Chanty, Microsoft Teams, Discord, Mattermost, Confluence, Whatsapp, Signal) which are in the possession, custody or control of Chainalysis, wherever located. All communications shall include source codes, object codes, algorithms, computer software, metadata, time stamps, dates, and complete content.

13.     All "communications" include communications made in both professional and personal capacities.

14.     The term "whitepaper" means the "How to Peel a Million: Validating and Expanding Bitcoin Clusters" written by George Kappos, Haaron Yousaf, Rainer Stütz, Sofia Rollet, Bernhard Haslhofer and Sarah Meiklejohn, and presented at the USENIX Security Symposium in Boston, MA in August 2022.

15.     The term "entities" includes any corporation, partnership, sole proprietorship, LLC, LLP, or any type of business entity related in any way to the investigation of Bitcoin Fog and the investigation and prosecution of Mr. Sterlingov.

16.     The term "Source Code" includes any coding, abbreviations, or means of identification used to conduct blockchain analysis, log communications, or conduct investigations.

17.     The term "Native File Format" refers to the default file format that a computer application or program uses to create or save files in a proprietary format that only that program or application can recognize and includes all the metadata attached to those files. For example, Microsoft Word documents should be produced in .doc format and not as a .pdf, and with all metadata, including track changes, intact.

## Testimony Requested

1.      This subpoena includes a request for a custodian of records, or other qualified person, who can authenticate any produced material in accordance with Federal Rule of Evidence 902(11).

2.      For materials that are not self-authenticating, the Defense requests that Chainalysis produce an individual with knowledge who can testify as to the authenticity of the produced material.

## Documents and Objects to be Produced

1.      Any documents, records and communications, including individual notes to one's self, related to the DOJ press releases announcing Roman Sterlingov's arrest. This includes communications between Chainalysis or Jonathan Levin and the Department of Justice in scheduling interviews, the timing of the release, and communications with WIRED reporter Andy Greenberg, as well as any communications related to Andy Greenberg's book "Tracers in the Dark – The Global Hunt for the Crime Lords of Cryptocurrency".

2.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and investors or potential investors related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes pitchbooks, newsletters, and any material mentioning Chainalysis's work on Mr. Sterlingov's case and Bitcoin Fog.

3.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and employees, agents, contractors, entities, or anyone else at Chainalysis related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

4.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and Aaron Bice, Excygent, John Golinvaux, Tyler Travis, MITRE, Catherine A. Pelker, the IRS, the U.S. Treasury Department, the DOJ, the FBI, Elliptic, and any other foreign or domestic law enforcement agency, third party vendor or contractors, or entities in any combination whatsoever, related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

5.      Any documents, records, and communications, including any contracts or memorandums of understanding between the United States Government and Chainalysis or Jonathan Levin in relation to the work related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

6.      Any documents, records and communications regarding the purchase of Excygent by Chainalysis, including due diligence documents, the price paid, any memorandums of understanding, sales agreements, negotiations, contracts and records of payment whether via cash, equity, options, or any other form of consideration.

7.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and WIRED Magazine, Andy Greenberg, or any other reporter related to blockchain analysis or Andy Greenberg's book "Tracers in the Dark – The Global Hunt for the Crime-Lords of Cryptocurrency" released on in November 15, 2022.

8.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and any researcher from University College London, IC3, the Austrian Institute of Technology, or the Complexity Science Hub Vienna, including, but not limited to, George Kappos, Haaron Yousaf, Rainer Stütz, Sofia Rollet, Bernhard Haslhofer, or Sarah Meiklejohn related to the presentation of the whitepaper at the USENIX Security Symposium and the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes datasets, draft versions of the whitepaper, source code, object code, algorithms, heuristics, methodologies, and Chainalysis research sent to researchers, as well as all software editions with complete code in native file format.

9.      Any documents, records and communications, including individual notes to one's self, regarding the development of Chainalysis Reactor software and any other software related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.), including any reports, sandbox results, beta testing, penetration testing results, GitHub or the like archives or repositories, wiki documents, peer reviews, error rates, clustering methodologies and propensity for false positives.

10.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and Catherine Alden Pelker related to the

investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

11.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and Excygent related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

12.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and Elliptic related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes all communications between Excygent and Elliptic.

13.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and MITRE related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

14.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and Excygent related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

15.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and Aaron Bice related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

16.     Any documents, records and communications, including individual notes to one's self, initiated or received by Michael Gronager, Youli Lee, John Lewis Golinvaux, Gurvais Grigg, or anyone else affiliated with Chainalysis, related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

17.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and the Swedish Prosecution Authority related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

18.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and the Financial Crimes Enforcement Network related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

19.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and any other federal agency related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

20.     All communications with WIRED reporter Andy Greenberg.

21.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Jonathan Levin and anyone else regarding any press releases announcing Mr. Sterlingov's arrest. This includes all communications with WIRED Magazine reporters, individuals at the Department of Justice, or anyone else.

22.     Please produce a log documenting all material withheld on the basis of privilege, work-product doctrine, or otherwise.

23.     All production must be in Native File Format unless otherwise agreed to.


Deadline and place for production:

On or before 21 days from date of receipt.


Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
(718) 737-7264
tor@torekeland.com

November 18, 2022

Submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
Tor Ekeland Law, PLLC

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY 10005
(718) 737 - 7264
tor@torekeland.com

*Attorneys for Roman Sterlingov*

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| _____ | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To:

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: | Courtroom No.: |
|---|---|
| | Date and Time: |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

*(SEAL)*

Date:  _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   _____
_____ , who requests this subpoena, are:

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case (Page 2)

Case No.

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Tor Ekeland (*pro hac vice*)
tor@torekeland.com
**TOR EKELAND LAW, PLLC**
30 Wall Street, 8th Floor
New York, NY 10005-2205
(718) 737 – 7264

Michael Hassard (*pro hac vice*)
michael@torekeland.com
**TOR EKELAND LAW, PLLC**
30 Wall Street, 8th Floor
New York, NY 10005-2205
(718) 737 – 7264

*Attorneys for Defendant*
*Roman Sterlingov*

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, | |
| Plaintiff, | 21-CR-00399-RDM |
| v. | |
| | **SUBPOENA FOR DOCUMENTS** |
| | **AND TESTIMONY** |
| Roman Sterlingov, | |
| Defendant. | **EXHIBIT 'A'** |

To:
**YOULI LEE, SR. LEGAL DIRECTOR - CHAINALYSIS INC** (Delaware Division of
Corporations File No.5731603)

Resident Agent:
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

# Definitions

1.      The term "any" includes "any," "all" and "every."

2.      The term "Document" shall be construed in the broadest sense allowed by federal law. The term "Document" includes, but is not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically stored matter from which information can be obtained and translated, if necessary, into reasonable useable form. The term "Document" includes preliminary versions, drafts, and revisions.

3.      The term "records" shall be construed in the broadest sense allowed by federal law and includes but is not limited to any communications, emails, text messages, bank records, financial statements, notes, recordings, or the like.

4.      The terms "include" or "including" are used merely to emphasize certain types of information requested and should not be construed as limiting a subpoena in any way. "Including" should be construed in all cases as followed by the phrase "but not limited to."

5.      The terms "person," "individual," or "entity" mean any natural person or any business, legal or governmental entity or association.

6.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this subpoena all documents and information that would be excluded if such words were not so construed. The present tense includes the past and future tenses.

7.      The term "Chainalysis" means the following entity:

**CHAINALYSIS, LLC** (Delaware Division of Corporations File No. 5731603) and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by Chainalysis, LLC.

8.      The term "Excygent" means the following entity:

**EXCYGENT, LLC** (Virginia Corporation Commission Entity No. S6918975)

and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by Excygent, LLC.

9.      The term "**ELLIPTIC**" means the blockchain analytic company with offices in London, New York City, Tokyo, and Singapore with the following website: www.elliptic.co.

10.     The term "**MITRE**" means the following entity:

**MITRE ENGENUITY, INCORPORATED** (Virginia Corporation Commission Entity No. 11037123)

and its subsidiaries, affiliates, directors, contractors, employees, volunteers, agents, representatives, or any entities controlled or owned by MITRE Engenuity, Inc.

11.     The term "Bitcoin Fog" refers to any bitcoin tumbling or mixing .onion site, or the like, that Excygent, Aaron Bice, John Golinvaux or Tyler Travis investigated or researched on behalf of, with, or alongside the United States Government that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C).

12.     The term "communication" means the transmission of information by any means, electronic, paper or other (in the form of facts, ideas, inquiries or otherwise), including, but not limited to e-mails, text messages, chat messages, web postings, social media postings, and messages from any and all messaging applications (including but not limited to Facebook, Google, Twitter, Slack, Chanty, Microsoft Teams, Discord, Mattermost, Confluence, Whatsapp, Signal) which are in the possession, custody or control of Chainalysis, wherever located. All communications shall include source codes, object codes, algorithms, computer software, metadata, time stamps, dates, and complete content.

13.     All "communications" include communications made in both professional and personal capacities.

14.     The term "whitepaper" means the "How to Peel a Million: Validating and Expanding Bitcoin Clusters" written by George Kappos, Haaron Yousaf, Rainer Stütz, Sofia Rollet, Bernhard Haslhofer and Sarah Meiklejohn, and presented at the USENIX Security Symposium in Boston, MA in August 2022.

15.     The term "entities" includes any corporation, partnership, sole proprietorship, LLC, LLP, or any type of business entity related in any way to the investigation of Bitcoin Fog and the investigation and prosecution of Mr. Sterlingov.

16.     The term "Source Code" includes any coding, abbreviations, or means of identification used to conduct blockchain analysis, log communications, or conduct investigations.

17.     The term "Native File Format" refers to the default file format that a computer application or program uses to create or save files in a proprietary format that only that program or application can recognize and includes all the metadata attached to those files. For example, Microsoft Word documents should be produced in .doc format and not as a .pdf, and with all metadata, including track changes, intact.

## **Testimony Requested**

1.      This subpoena includes a request for a custodian of records, or other qualified person, who can authenticate any produced material in accordance with Federal Rule of Evidence 902(11).

2.      For materials that are not self-authenticating, the Defense requests that Chainalysis produce an individual with knowledge who can testify as to the authenticity of the produced material.

## Documents and Objects to be Produced

1.      Any documents, records and communications, including individual notes to one's self, related to the DOJ press releases announcing Roman Sterlingov's arrest. This includes communications between Chainalysis or Youli Lee and the Department of Justice in scheduling interviews, the timing of the release, and communications with WIRED reporter Andy Greenberg, as well as any communications related to Andy Greenberg's book "Tracers in the Dark – The Global Hunt for the Crime Lords of Cryptocurrency".

2.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and investors or potential investors related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes pitchbooks, newsletters, and any material mentioning Chainalysis's work on Mr. Sterlingov's case and Bitcoin Fog.

3.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and employees, agents, contractors, entities, or anyone else at Chainalysis related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

4.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and Aaron Bice, Excygent, John Golinvaux, Tyler Travis, MITRE, Catherine A. Pelker, the IRS, the U.S. Treasury Department, the DOJ, the FBI, Elliptic, and any other foreign or domestic law enforcement agency, third party vendor or contractors, or entities in any combination whatsoever, related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

5.      Any documents, records, and communications, including any contracts or memorandums of understanding between the United States Government and Chainalysis or Youli Lee in relation to the work related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

6.      Any documents, records and communications regarding the purchase of Excygent by Chainalysis, including due diligence documents, the price paid, any memorandums of understanding, sales agreements, negotiations, contracts and records of payment whether via cash, equity, options, or any other form of consideration.

7.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and WIRED Magazine, Andy Greenberg, or any other reporter related to blockchain analysis or Andy Greenberg's book "Tracers in the Dark – The Global Hunt for the Crime-Lords of Cryptocurrency" released on in November 15, 2022.

8.      Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and any researcher from University College London, IC3, the Austrian Institute of Technology, or the Complexity Science Hub Vienna, including, but not limited to, George Kappos, Haaron Yousaf, Rainer Stütz, Sofia Rollet, Bernhard Haslhofer, or Sarah Meiklejohn related to the presentation of the whitepaper at the USENIX Security Symposium and the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes datasets, draft versions of the whitepaper, source code, object code, algorithms, heuristics, methodologies, and Chainalysis research sent to researchers, as well as all software editions with complete code in native file format.

9.      Any documents, records and communications, including individual notes to one's self, regarding the development of Chainalysis Reactor software and any other software related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.), including any reports, sandbox results, beta testing, penetration testing results, GitHub or the like archives or repositories, wiki documents, peer reviews, error rates, clustering methodologies and propensity for false positives.

10.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and Catherine Alden Pelker related to the

investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

11. Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and Excygent related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

12. Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and Elliptic related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.). This includes all communications between Excygent and Elliptic.

13. Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and MITRE related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

14. Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and Excygent related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

15. Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and Aaron Bice related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

16. Any documents, records and communications, including individual notes to one's self, initiated or received by Michael Gronanger, Jonathan Levin, Youli Lee, John Lewis Golinvaux, Gurvais Grigg, or anyone else affiliated with Chainalysis, related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

17. Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and the Swedish Prosecution Authority related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

18.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and the Financial Crimes Enforcement Network related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

19.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and any other federal agency related to the investigation that led to the prosecution in *United States v. Roman Sterlingov* 21-CR-00399-RDM (D.D.C.).

20.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis or Youli Lee and anyone else regarding any press releases announcing Mr. Sterlingov's arrest. This includes all communications with WIRED Magazine reporters, former colleagues at the Department of Justice or anyone else.

21.     Any documents, records and communications, including individual notes to one's self, exchanged between Chainalysis and Youli Lee regarding Youli Lee's employment at Chainalysis. This includes any recruitment efforts, job applications, onboarding files, projects, contacts, work done and internal communications.

22.     Please produce a log documenting all material withheld on the basis of privilege, work-product doctrine, or otherwise.

23.     All production must be in Native File Format unless otherwise agreed to.


Deadline and place for production:

On or before 21 days from date of receipt.


Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
(718) 737-7264
tor@torekeland.com

November 18, 2022

Submitted,

<u>/s/ Tor Ekeland</u>
Tor Ekeland (NYS Bar No.
4493631)
Tor Ekeland Law, PLLC

<u>/s/ Michael Hassard</u>
Michael Hassard (NYS Bar No.
5824768)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005
(718) 737 - 7264
tor@torekeland.com

*Attorneys for Roman Sterlingov*