# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

_____

*United States of America*,

                                        Plaintiff,

                                                                        **21 - CR - 399 (RDM)**

                        *v.*

*Roman Sterlingov*,

                                        Defendant.

_____


**Opposition to Chainalysis, Inc's Motion to Quash Federal Rule of Criminal Procedure 17(c) Subpoenas for Chainalysis, Inc., Michael Gronager, Jonathan Levin and Youli Lee**

# Table of Contents

Introduction ........................................................................................................................ 3

Background ......................................................................................................................... 3

Legal Standard ................................................................................................................... 7

Argument ............................................................................................................................ 8

    I.    The Subpoenas Seek Relevant, Admissible and Specific Testimony and Evidence .......... 8

        A.    The Subpoenaed Testimony and Evidence are Relevant, Admissible and Specific as They Pertain to Chainalysis ................................................................................................ 9

        B.    The Subpoenaed Testimony and Evidence are Relevant, Admissible and Specific as They Pertain to Michael Gronager ..................................................................................... 11

        C.    The Subpoenaed Testimony and Evidence are Relevant, Admissible and Specific as They Pertain to Jonathan Levin ....................................................................................... 13

        D.    The Subpoenaed Testimony and Evidence are Relevant, Admissible and Specific as They Pertain to Youli Lee ................................................................................................ 14

    II.    Compliance with the Subpoenas is Neither Unreasonable nor Oppressive ................... 15

Conclusion ........................................................................................................................ 15

## Introduction

Defendant Roman Sterlingov submits this opposition to Chainalysis, Inc's ("Chainalysis") Motion to Quash Defendant's Rule 17(c) Subpoenas to Chainalysis Inc., Michael Gronager, Jonathan Levin and Youli Lee. For the reasons argued below, this Court should dismiss Chainalysis' Motion to Quash. Defendant's subpoenas meet the guidelines under *United States v. Nixon*, and this Court should order compliance with the subpoenas and pre-trial production of the requested evidence. The subpoenaed evidence is relevant, admissible, and specific. Without it, Mr. Sterlingov cannot mount a complete defense.

## Background

On November 18, 2022, Defendant served subpoenas on Chainalysis, Michael Gronager, Jonathan Levin and Youli Lee. Michael Gronager is a co-founder and Chief Executive Officer of Chainalysis, the principal for-profit blockchain forensic vendor in this case.[1] Jonathan Levin is a co-founder of Chainalysis and its Chief Strategy Officer, heavily involved in the company's marketing and software from its inception in 2014.[2] Youli Lee is a former prosecutor on this case who now works for Chainalysis as the Senior Legal Director of Global Investigations, Litigation and Governance.[3] The subpoenas seek testimony and pre-trial production of relevant, admissible, and specific testimony and evidence necessary for Mr. Sterlingov to put on a complete defense.

According to published press reports, Chainalysis was the official investigator for the Mt. Gox bankruptcy proceedings and did investigative work into Mt. Gox on behalf of the Mt. Gox

---

[1] *See* Chainalysis website https://www.chainalysis.com/company/ (last accessed Dec. 14, 2022).
[2] *Id.*
[3] See LinkedIn page for Youli Lee https://www.linkedin.com/in/youli-lee-64b7bb19a/ (last accessed Dec. 14, 2022).

bankruptcy trustee.[4] The Government seeks to authenticate its Mt. Gox records through the bankruptcy trustee. However, review of the records reveal numerous errors that call their authenticity into question. Michael Gronager and Chainalysis worked on these records.[5] The Defense's review of the discovery, and the Government's attempts to authenticate the Mt. Gox through the Mt. Gox bankruptcy trustee, indicate that the Government intends to rely heavily on data from Mt. Gox.

On November 30, 2022, the Government filed its Motion to Quash Early-Return Rule 17(c) Subpoenas at issue here.[6] On December 9, 2022, the subpoenaed parties sought leave of the Court to file their own motion to quash. This Court granted permission the same day.[7] On December 2, 2022, Chainalysis filed its own Motion to Quash.[8]

This investigation starts in 2014 and is one of the government's oldest ongoing blockchain investigations and prosecutions.[9]

In 2014, around the same time as the investigation into Bitcoin Fog begins, Michael Gronager and Jonathan Levin co-found Chainalysis. Chainalysis uses this case to develop its blockchain analysis techniques. Chainalysis works on this case from the beginning.

In 2015, Aaron Bice begins working, through his employer MITRE, on a contract with the IRS as a criminal investigator ("IRS-CI"). As an IRS-CI, Bice works extensively on this case, using a blockchain analysis software platform from a British company called Elliptic, as well as using what Chainalysis in its Motion to Quash states is Chainalysis' proprietary intellectual

---

[4] *See* Jamie Redman, *Chainalysis Says They've Found the Missing $1.7 Billion Dollar Mt Gox Bitcoins*, available at https://news.bitcoin.com/chainalysis-says-theyve-found-the-missing-1-7-billion-dollar-mt-gox-bitcoins/ (last accessed Dec. 14, 2022).

[5] *See* Andy Greenberg, Tracers in the Dark: The Global Hunt for the Crime Lords of Cryptocurrency, at 91-4, 102-5, 117-21, 130, 137-9 (Doubleday Nov. 15, 2022).

[6] *See* Government's Motion To Quash Early-Return Rule 17(c) Subpoenas (Dkt. No. 93).

[7] (*See* Dkts. Nos. 94-95).

[8] (*See* Dkt. No. 95).

[9] The following is based on the Defense's review of the Government's discovery.

property in the form of Chainalysis's Reactor blockchain forensic software: "[Defendant's] requests for software development records, 'source code' … would require Chainalysis to divulge its intellectual property…. Reactor's source code…is proprietary information…."[10]

To date, no evidence of the accuracy or scientific validity of this software has been produced in relation to Chainalysis Reactor, or any software used in this case. The discovery contains numerous references to, and outputs from, Chainalysis Reactor and indicates that there were conversations between Chainalysis, Aaron Bice and the Government related to this prosecution that have not been produced.

In 2017, during this investigation, Aaron Bice and an associate found Excygent, LLC, registering it in Virginia. In 2018, Mr. Bice leaves MITRE to devote himself to Excygent, LLC, while still working as an IRS-CI on this case. Government contract databases contain public records of both Chainalysis and Excygent LLC's Government contracts. These contracts show revenue from government contracts in the hundreds of millions of dollars.

Around 2020, individuals from Chainalysis, the prosecution, investigators and others involved in this case, began conversations with a WIRED Magazine reporter. These discussions and interviews, over the course of the last two years, form the basis of "Tracers in the Dark: The Global Hunt for the Crime Lords of Cryptocurrency" by Andy Greenberg, released this November. The book chronicles Chainalysis's work in the emerging field of blockchain forensics and directly identifies Mr. Sterlingov by name, characterizing him as the operator of Bitcoin Fog despite the fact that Mr. Sterlingov has a pending trial. The index contains entries for Aaron Bice, Catherine Pelker, former prosecutor on this case Zia Faruqui, Michael Gronager,

---

[10] *See* MOTION TO QUASH SUBPOENA BY NON-PARTIES CHAINALYSIS, INC., MICHAEL GRONAGER, JONATHAN LEVIN, AND YOULI LEE AND INCORPORATED MEMORANDUM OF LAW (Dkt. No. 95 at 15).

Jonathan Levin, Youli Lee, among others.[11] The book contains an alleged account of a

conversation between government law enforcement and Mr. Sterlingov upon his arrest at LAX in

April 2021.[12]

On April 27, 2021, the FBI arrests Mr. Sterlingov at Los Angeles International Airport.

The same day WIRED runs an exclusive article announcing the arrest and quoting Jonathan

Levin promoting the blockchain forensics used in the case. DOJ does not issue an official press

release until the next day.



ANDY GREENBERG   SECURITY   APR 27, 2021 6:28 PM

## Feds Arrest an Alleged $336M Bitcoin-Laundering Kingpin

**The alleged administrator of Bitcoin Fog kept the dark web service running for 10 years before the IRS caught up with him.**

"This is yet another example of how investigators with the right tools can leverage the transparency of cryptocurrency to follow the flow of illicit funds," says Jonathan Levin, cofounder of blockchain analysis company Chainalysis.

As of Tuesday afternoon, Bitcoin Fog remained online, though it's unclear who, if anyone, now operates it. Neither the IRS nor the Department of Justice responded to WIRED's requests for comment.

On April 28, 2021, Excygent LLC features prominently in the two DOJ press releases

announcing Mr. Sterlingov's arrest. The DOJ thanks Excygent, LLC at the head of a list of

names including FBI field offices and domestic and international law enforcement. Neither

MITRE, Elliptic nor Chainalysis are mentioned.

---

[11] *See* Andy Greenberg, TRACERS IN THE DARK: THE GLOBAL HUNT FOR THE CRIME LORDS OF CRYPTOCURRENCY, Index, (Doubleday Nov. 15, 2022).

[12] *See id.* at 290-91.

The IRS-CI District of Columbia Cyber Crime Unit and the FBI Washington Field Office are investigating the case. Essential support was provided by Excygent; the IRS-CI Los Angeles Field Office, Van Nuys Post of Duty; FBI Los Angeles Field Office; Homeland Security Investigations; Customs and Border Patrol; the U.S. Attorneys' Offices for the Central District of California, Northern District of California, and Southern District of New York; and the Financial Crimes Enforcement Network of the U.S. Department of Treasury. The Department of Justice's Office of International Affairs provided invaluable assistance, as did Europol; the Swedish Economic Crime Authority, the Swedish Prosecution Authority, and the Swedish Police; and the General Inspectorate of Romanian Police, Directorate for Combatting Organized Crime and the Directorate for Investigating Organized Crime and Terrorism.

Trial Attorney C. Alden Pelker of the Criminal Division's Computer Crime and Intellectual Property Section and Assistant U.S. Attorney Christopher B. Brown of the U.S. Attorney's Office for the District of Columbia are prosecuting the case, with assistance from Paralegal Specialist Chad Byron. Former Assistant U.S. Attorneys Youli Lee and Zia Faruqui made invaluable contributions during their tenures on the case team. The team also appreciates the previous support of Trial Attorney S. Riane Harper of the Computer Crime and Intellectual Property Section; Paralegal Specialist Kenny Nguyen; former Paralegal Specialists Toni Anne Donato and Bianca Evans; and former Assistant U.S. Attorney Allen O'Rourke over the course of this long-running investigation.

Less than two months after Mr. Sterlingov's arrest, on June 24, 2021, Chainalysis completes its Series E funding round, raising $100 million. At the time, Chainalysis values itself at $4.2 billion. Chainalysis has a pattern of investor fundraising around law enforcement press releases.

On October 5, 2021, Chainalysis buys Excygent, LLC for undisclosed compensation, and Mr. Bice begins working for Chainalysis. A review of government contracting records shows that Excygent has a revenue stream of roughly $10 million since its formation during Mr. Bice's tenure as an IRS-CI.[13]

In January 2022, Chainalysis hires Youli Lee, a former prosecutor on this case, as Senior Legal Director of Global Investigations, Litigation and Governance.

As of May 2022, Chainalysis' market valuation stands at $8.6 billion.[14]

## Legal Standard

The 6th Amendment to the United States Constitution guarantees a defendant compulsory process to confront witnesses and put on a defense. The 5th Amendment to the United States

---

[13] *See* General Services Administration, www.sam.gov (providing searchable database of government contracts) (last accessed Dec. 23, 2022).

[14] *See* Gertrude Chavez-Dreyfuss, CHAINALYSIS RAISES $170 MILLION IN 6TH FUNDING ROUND WITH $8.6 BILLION VALUATION, available at https://www.reuters.com/technology/chainalysis-raises-170-mln-6th-funding-round-with-86-bln-valuation-2022-05-12/ (last accessed Dec. 14, 2022).

Constitution guarantees a defendant the right to put on a complete defense. Federal Rule of Criminal Procedure 17(c) governs the issuance of criminal subpoenas. For information sought returnable prior to trial, Federal Rule of Criminal Procedure 17(c)(1) states that "the court may direct the witness to produce the designated items in court before trial, or before they are to be offered into evidence." Neither the Local Rules nor the Rules of this Court require permission of the Court before issuing a Rule 17(c) subpoena. Federal Rule of Criminal Procedure 17(c)(2) states that "on motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." The pre-internet era case of *United States v. Nixon* provides guidelines for the evaluation of the validity of criminal subpoenas.[15]

## Argument

### I.   The Subpoenas Seek Relevant, Admissible and Specific Testimony and Evidence

All the subpoenaed testimony and evidence specifically relate to material issues in this case and are relevant, admissible, and specific. The subpoenaed witnesses have unique material personal knowledge of the investigation, forensics, and monetization of Mr. Sterlingov's case. Chainalysis' Reactor software is the core forensic software generating data being used by the Government in its case-in-chief.

Chainalysis Reactor is nothing like an Excel spreadsheet. Excel spreadsheets rely upon well proven mathematics that have existed for millennia. Blockchain's theoretical foundation does not exist until 2008.[16] Peel chains, cluster analysis, and the algorithms, methodologies and assumptions involved in Chainalysis' Reactor software have never been tested in open court, never been peer-reviewed, and are nowhere near as accepted as the simple, easily checked,

---

[15] *See United States v. Nixon*, 418 U.S. 683, 699-700 (1974).
[16] Satoshi Nakamoto, BITCOIN: A PEER-TO-PEER ELECTRONIC CASH SYSTEM, available at https://archive.org/details/bitcoin_20171228/page/n7/mode/2up) (2008) (last accessed Dec. 23, 2022).

mathematic equations behind an Excel spreadsheet. If Chainalysis' software is as accurate as they say it is, then why are they afraid to put it to the test? Chainalysis makes conclusory allegations that somehow revelation of its Reactor source code will jeopardize unnamed law enforcement investigations in unnamed ways. If this case is indicative, perhaps Chainalysis' real fear is that it is the Theranos of blockchain forensics. And just like Theranos, it seeks to hide its core technology that it has used to raise of hundreds of millions of dollars from investors.

**A. The Subpoenaed Testimony and Evidence are Relevant, Admissible and Specific as They Pertain to Chainalysis**

The subpoenaed testimony and evidence from Chainalysis are relevant, admissible, and specific, and is necessary for Mr. Sterlingov to put on a complete defense. Chainalysis, along with the Excygent - the company started by IRS-CI Aaron Bice that Chainalysis bought during the pendency of this prosecution - is one of the Government's primary sources of evidence in this case. The discovery indicates early communications between Aaron Bice and Chainalysis. These communications appear to include discussions regarding errors and revisions to the Chainalysis Reactor software. The discovery contains Chainalysis Reactor outputs as well as spreadsheets created by Mr. Bice relying on Chainalysis Reactor's data output.

For the Defense to effectively challenge the authenticity, integrity and credibility of the evidence, the production of the computer code underlying Chainalysis Reactor is necessary in all its versions used, at the relevant times.

The direct testimony of Mr. Gronager and Mr. Levin is necessary as well. The discovery indicates their direct involvement in this investigation during its entirety. Moreover, Chainalysis appears to have circulated evidence in this case to outside third parties for analysis and presentation in a whitepaper at a conference despite these pending proceedings. The whitepaper

mentions this case and Mr. Sterlingov by name.[17] The subpoenaed testimony and evidence goes directly to the validity, integrity, and credibility of the blockchain forensics, the motivations underlying them, and the scientifically documented phenomena of confirmation bias. Even DNA forensic analysis is subject to confirmation bias.[18]

Defense review of the Government's discovery, in comparison to the public blockchain, reveals discrepancies that the Defense intends to bring up at trial. To do so, not only does the Defense need the relevant forensic computer code in all of its versions used in this investigation, but it needs the testimony of those directly involved in its use and marketing. Chainalysis' proffered expert Elizabeth Bisbee is a newcomer to this case, incapable of providing the testimony the Defense seeks to elicit. Only Michael Gronager, Jonathan Levin and Youli Lee have personal knowledge not only of the blockchain forensics in this case, but the motivations lying behind them. They have all made money from this case.

Chainalysis' describes its software as its proprietary intellectual property.[19] It does not post its code on GitHub or make it available anywhere for public inspection. It is not part of the public blockchain. Review of the forensic evidence in this case is not as simple as looking at the public blockchain. Chainalysis's forensic methodologies involve heuristics like peel chain analysis and clustering that involve subjective assumptions in their application. If this was as simple as looking at the public blockchain, why does Chainalysis complain so loudly that revealing its source code could jeopardize law enforcement investigations?

This hysteria is unwarranted as all the evidence in this case is already subject to a protective order. The Defense seeks this evidence for one purpose only: To defend the innocent

---

[17] *See* George Kappos et al., HOW TO PEEL A MILLION: VALIDATING AND EXPANDING BITCOIN CLUSTERS, at 13 (University College London and IC3 et. al.).

[18] Adam Benforado, UNFAIR: THE NEW SCIENCE OF CRIMINAL JUSTICE, at 20-1, (Penguin Random House 2015).

[19] (*See* Dkt. 95 at 15 (Chainalysis' Motion to Quash)).

Mr. Sterlingov from a shoddy, conflicted investigation that was focused more on marketing than it was on justice.

All the subpoenaed witnesses have direct, unique, personal knowledge of this. And if Chainalysis wishes to avoid scrutiny of its software, it should not voluntarily market it to law enforcement. The Bill of Rights is directed against abusive law enforcement. Chainalysis' business needs come second to the mandates of the United States Constitution, particularly in a federal criminal trial where the defendant faces a potential life sentence.

This evidence is relevant because it goes directly to the authenticity of the records at the heart of the Government's case. It is admissible because the subpoenaed parties have direct knowledge of the investigation, its forensics, and its software. In the case of Chainalysis Reactor's software code, the testimony of an expert analysis of that code is admissible.

The requests are specific, as detailed in the subpoenas themselves. Chainalysis' objections focus on the detailed definitions provided before the subpoena requests to help interpret the subpoena requests. Chainalysis says little about the detailed requests themselves, which are specific to the subpoenaed parties' involvement in this investigation, the money they made in this investigation, their motives, and the methodologies and software used in this investigation.

**B. The Subpoenaed Testimony and Evidence are Relevant, Admissible and Specific as They Pertain to Michael Gronager**

The Government seeks to authenticate its Mt. Gox records through the Mt. Gox bankruptcy trustee. This is problematic because the Defense's review of the produced Mt. Gox records reveals inexplicable errors including incorrect transaction dates, incorrect transaction hashes, and fictitious transactions. Chainalysis, and Michael Gronager in particular, were heavily

involved in the generation of this data for the bankruptcy trustee.[20] The Defense seeks to challenge the authenticity of this foundational evidence through cross-examination of Mr. Gronager. Again, he has voluntarily put himself at the center of this investigation. He cannot now avoid responsibility for his choice to do so. The Sixth Amendment forbids it.

Michael Gronager co-founds Chainalysis in 2014, around the same time that Catherine Pelker issues the Bitcoin Fog Intelligence Note on the FBI intranet. The Defense expects that documents and testimony from Mr. Gronager will reveal a deep connection between the growth of Chainalysis and the investigation of this case. Chainalysis used this case to market itself and its software. Chainalysis appears to have beta tested its Chainalysis Reactor software on this case. This is directly relevant, admissible and specific in relation to the issue of the pervasive confirmation bias, and sloppy work that taints this entire investigation.

The testimony of proffered Chainalysis expert Elizabeth Bisbee does not address these issues. Ms. Bisbee did not work on this investigation until after the fact. She is relying on data that the Defense believes is inauthentic or inaccurate. As Chainalysis concedes in its Motion to Quash, "Ms. Bisbee did not work with the Government to investigate Bitcoin Fog. Ms. Bisbee considered evidence already gathered and, after the fact, formed opinions regarding the meaning of some of that evidence."[21] Ms. Bisbee is not even proffered as an expert on all the evidence. The subpoenaed parties are necessary to fill that large gap.

The Defense seeks testimony and evidence specifically to challenge the authenticity, integrity and credibility of Ms. Bisbee's proffered testimony and evidence. That cannot come from her because she did not generate the data that she is basing her expert opinions on. To

---

[20] *See* Andy Greenberg, TRACERS IN THE DARK: THE GLOBAL HUNT FOR THE CRIME LORDS OF CRYPTOCURRENCY, at 91-4, 102-5, 117-21, 130, 137-9 (Doubleday Nov. 15, 2022).

[21] Dkt. 95 at 10.

effectively cross-examine Ms. Bisbee, all of the subpoenaed parties and evidence must be produced to the Defense.

**C.  The Subpoenaed Testimony and Evidence are Relevant, Admissible and Specific as They Pertain to Jonathan Levin**

As Chainalysis' Chief Strategy Officer, Jonathan Levin was directly involved in this case.[22] He comments in the WIRED Magazine exclusive the day of Mr. Sterlingov's arrest, opining on the efficacy of the blockchain forensics involved without mentioning Chainalysis' heavy involvement in this investigation.[23] He also has intimate knowledge of Chainalysis Reactor software.[24] Upon information and belief, he was involved in the negotiations with Mr. Bice and Excygent, LLC that resulted in its purchase by Chainalysis a few months after Mr. Sterlingov's arrest. The Defense also believes Mr. Levin to have been involved in negotiating Youli Lee's employment with Chainalysis after she leaves her role as a prosecutor on this case. Mr. Levin, as Chainalysis' CSO, is involved in its communications with law enforcement and investors. He has knowledge of those communications and their timing in relation to Chainalysis' use of Mr. Sterlingov's case for marketing purposes to promote its blockchain forensic software and methodologies to law enforcement and investors. This, combined with his core knowledge of Chainalysis Reactor software make him a necessary and material witness for the Defense whose testimony and documents sought are relevant, admissible and specific to the issues of the reliability of Chainalysis' forensics and the confirmation bias coming from the conflict of interest between profit and justice that is at the core of this case.

---

[22] *See generally* Andy Greenberg, TRACERS IN THE DARK: THE GLOBAL HUNT FOR THE CRIME LORDS OF CRYPTOCURRENCY, at 137-8, 168-70, 199-202, 238-9, 243-6, 283, 292-4 (Doubleday Nov. 15, 2022).

[23] *See* Andy Greenberg, FEDS ARREST AN ALLEGED $336M BITCOIN-LAUNDERING KINGPIN, available at https://www.wired.com/story/bitcoin-fog-dark-web-cryptocurrency-arrest/ (Apr. 27, 2021) (last accessed Dec. 23, 2022).

[24] *See e.g.* Andy Greenberg, TRACERS IN THE DARK: THE GLOBAL HUNT FOR THE CRIME LORDS OF CRYPTOCURRENCY, at 168, (Doubleday Nov. 15, 2022).

Mr. Levin has had no problem speaking publicly about Mr. Sterlingov's case and using it to promote Chainalysis. He should have no problem speaking to the same in a court of law if his company's forensics and methodologies are so accurate as he has publicly proclaimed. Particularly when a defendant faces a potential life sentence because of the business he co-founded. Again, not only is his testimony necessary to cross-examine and challenge the Government's case as to the authenticity, credibility, and integrity of the evidence, but it goes directly to the issue of how the profit motive leads to pervasive confirmation bias permeating the forensic evidence in this case.

### D. The Subpoenaed Testimony and Evidence are Relevant, Admissible and Specific as They Pertain to Youli Lee

Youli Lee is a former prosecutor on this case who left during its pendency for a lucrative position as Senior Legal Director for Global Investigations, Litigation and Governance at Chainalysis. She also appears in Mr. Greenberg's book.[25] That Chainalysis offers lucrative paid positions at its company to prosecutors directly involved in Mr. Sterlingov's prosecution, and that the prosecutor accepts this paid position, is relevant and material to the issues of the authenticity, credibility, and integrity of the evidence in this case, to say nothing of the confirmation bias.

The Defense does not seek Ms. Lee's testimony as to privileged matters; rather the Defense seeks her testimony in relation to her business communications and negotiations in relation to her leaving the government for paid employment with the government's forensic contractor in this case. Again, this goes to the confirmation bias running throughout this case and the conflict of interest between profit and justice.

---

[25] *See e.g.* Andy Greenberg, TRACERS IN THE DARK: THE GLOBAL HUNT FOR THE CRIME LORDS OF CRYPTOCURRENCY, at 269-71, 279-80, (Doubleday Nov. 15, 2022).

II.     **Compliance with the Subpoenas is Neither Unreasonable nor Oppressive**

The over two years Mr. Sterlingov has spent in jail pretrial is far more unreasonable and oppressive than a subpoena request to a company that voluntarily markets its forensics to law enforcement. These subpoenas should come as no surprise, and in its capacity as a government law enforcement contractor, Chainalysis should be prepared to meet defense subpoenas in all the cases it is involved in. It cannot flee its obligations under the Constitution by now claiming, after being involved in this investigation for seven years, that it is too difficult to produce the testimony and documentation that is being used to accuse Mr. Sterlingov of crimes he did not commit. Indeed, it is Chainalysis' job, what it is being paid for by the Government, to be prepared to meet the Government's evidentiary burden of proof beyond a reasonable doubt.

There is nothing unreasonable, burdensome, or oppressive about the Defense's straightforward subpoena requests. The fact that Chainalysis claims the requests are burdensome and oppressive calls into question its record keeping practices and documentation in this case. If Chainalysis has conducted a forensically sound investigation, then it should have no problem introducing the information and software it used, and having it tested in the adversarial process. Instead, after having made millions of dollars from its government law enforcement contracts, it now complains that it is too difficult to produce the evidence the Constitution requires of it. Chainalysis voluntarily entered the law enforcement market, in part by using Mr. Sterlingov's case to market itself. It cannot now complain of the consequences of that act.

## Conclusion

This Court should deny Chainalysis' Motion to Quash, and order production of the subpoenaed evidence pre-trial. The evidence in this case is too complex and novel for analysis during trial. In the alternative, the Defense requests a hearing on this issue.

Dated: December 23rd, 2022                    Respectfully submitted,


                                              /s/ Tor Ekeland
                                              Tor Ekeland (NYS Bar No. 4493631)
                                              *Pro Hac Vice*
                                              Tor Ekeland Law, PLLC
                                              30 Wall Street, 8th Floor
                                              New York, NY
                                              t:  (718) 737 - 7264
                                              f:  (718) 504 - 5417
                                              tor@torekeland.com

                                              /s/ Michael Hassard
                                              Michael Hassard (NYS Bar No. 5824768)
                                              *Pro Hac Vice*
                                              Tor Ekeland Law, PLLC
                                              30 Wall Street, 8th Floor
                                              New York, NY
                                              t:  (718) 737 - 7264
                                              f:  (718) 504 - 5417
                                              michael@torekeland.com

                                              /s/ Marina Medvin, Esq.
                                              Counsel for Defendant
                                              MEDVIN LAW PLC
                                              916 Prince Street
                                              Alexandria, Virginia 22314
                                              Tel:  888.886.4127
                                              Email: contact@medvinlaw.com


                                              *Counsel for Defendant Roman Sterlingov*

**Certificate of Service**

I hereby certify that on the 23rd day of December 2022, the forgoing document was filed with the Clerk of Court using the CM/ECF System. I also certify that a true and correct copy of the foregoing was sent to the following individuals via e-mail and mail delivery via first class mail:

s/ Tor Ekeland

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov