# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

_____

United States of America,

      Plaintiff,

    v.

Roman Sterlingov,

      Defendant.

_____

             **21 - CR - 399 (RDM)**

**Defendant Roman Sterlingov's Opposition to Chainalysis's Motion to Quash Subpoena Ad Testificandum for Chainalysis Co-Founder and CEO Michael Gronager – Dkt. 126**

Defendant Roman Sterlingov, through his attorneys, opposes Chainalysis's Motion to Quash the Subpoena Ad Testificandum for Michael Gronager's testimony at the June 16 and June 23, 2023, motions *in limine* and *Daubert* hearings. Mr. Gronager is a material fact witness in this matter with unique, relevant, material, personal knowledge as to the inauthenticity of the Mt. Gox data foundational to the Government's case and other matters directly related to the motions *in limine* and *Daubert* hearings. For the reasons argued below, this Court should deny Mr. Gronager's Motion to Quash or, in the alternative, bar any use at trial of the Mt. Gox data, any evidence derived therefrom, and from the use of Chainalysis Reactor.

## PROCEDURAL POSTURE

On May 5, 2023, the Defense served a subpoena *ad testificandum* on Mr. Gronager, co-founder and CEO of Chainalysis Inc. ("Chainalysis"). It is not a subpoena *duces tecum* under Federal Rule of Criminal Procedure 17(c) ("FRCrP"), as it only seeks testimony and not

1

documents. The subpoena requires Mr. Gronager's testimony at the June 16 and 23, 2023, motions *in limine* and *Daubert* hearings.

On May 19, 2023, counsel for Mr. Gronager and Chainalysis, William Frentzen, accepted service of the subpoena *ad testificandum* via email to Defense counsel.[1]

On May 23, 2023, Defense counsel met and conferred with Chainalysis's counsel over Zoom. Mr. Frentzen requested that Mr. Gronager be examined on the June 23, 2023, hearing date, and Defense counsel agreed.

On May 26, 2023, Mr. Frentzen filed a Motion to Quash on behalf of Mr. Gronager. This opposition follows.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 17(a) governs subpoenas *ad testificandum* in criminal proceedings. Subpoenas *ad testificandum* are requests for witness testimony and are not requests for documents subject to FRCrP 17(c). FRCrP 17(a) provides the framework by which counsel may request testimony in a criminal case. It does not differentiate between trial and pre-trial testimony.

Under FRCrP 17(a) testimonial subpoenas are issued without the court's involvement.[2] There is no clear case law as to what the standards are for evaluating the validity of a subpoena *ad testificandum*.

Given the lack of standards for reviewing testimonial subpoenas courts look by analogy to the standards for subpoenas *duces tecum*. The Watergate-era United States Supreme Court case *United States v. Nixon* governs the document subpoena analysis.[3] In *Nixon*, the Supreme

---

[1] *See* Ex. A.
[2] *See* Fed. R. Crim. P. 17(a), (c); *see also United States v. Vo*, 78 F. Supp. 3d 171 (D.D.C. 2015).
[3] *United States v. Nixon*, 418 U.S. 683 (1974) (affirming the District Court's denial of a motion to quash under FRCrP 17(c) and ordering pre-trial production of President Nixon's tapes and documents).

Court affirmed the District Court's denial of a motion to quash a subpoena *duces tecum* for President Nixon's audio recordings and documents.[4] In so doing, it held that "[a] subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise."[5] Concerned only with subpoenas *duces tecum* in criminal cases under FRCrP 17(c), *Nixon* does not discuss standards for the analysis of subpoenas *ad testificandum*.[6]

## BACKGROUND

The Government's case relies heavily on data from the defunct Bitcoin exchange Mt. Gox. In its Criminal Complaint, it prominently displays a diagram listing a multi-hop transaction trace between Mt. Gox accounts, alleging that Mr. Sterlingov registered the domain name for www.bitcoinfog.com.[7]



The Government also uses the Mt. Gox data to attribute the online moniker "Akemashite Omedetou" to Mr. Sterlingov. According to the Criminal Complaint, someone using the moniker on BitcoinTalk.org chat forums claimed to be the owner and operator of Bitcoin Fog.[8]

Mt. Gox operated between 2010 and 2014.[9] Mt. Gox stands for "Magic the Gathering Online Exchange" as it was initially created to trade Magic the Gathering game cards before

---

[4] *Id.* at 698.
[5] *Id.* (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951)).
[6] *See id.* at 698-700.
[7] Dkt. 1 at 8.
[8] *Id* at 7.
[9] *See e.g.* Jake Frakenfield, *What Was Mt. Gox? Definition, History, Collapse, and Future* INVESTOPEDIA (May 30, 2023) https://www.investopedia.com/terms/m/mt-gox.asp.

becoming one of the first Bitcoin exchanges, if not the first. Because it was the only viable Bitcoin exchange in the early days of Bitcoin, as an early adopter of Bitcoin, Mr. Sterlingov had an account with Mt. Gox.

From its inception, Mt. Gox was a target for hackers and suffered serious information security compromises.[10] Additionally, in early 2014, Mt. Gox was hacked and hundreds of millions of dollars of Bitcoin were stolen. This forced Tokyo-based Mt. Gox into bankruptcy.[11]

In 2015, Mr. Gronager had just started Chainalysis alongside Jonathan Levin. He begins working for the Mt. Gox bankruptcy trustees in Japan to see if he can trace the stolen Bitcoin.[12] As part of his investigation, the trustees sent Mr. Gronager an encrypted thumb drive containing data from Mark Karpelès, the CEO of Mt. Gox.[13]

Mr. Karpelès has a history of data fraud. On May 14, 2010, the Crown Court of Paris, after trying Mr. Karpelès in absentia, found him guilty of: (1) fraudulent access to a data processing system; and (2) fraudulent changes to data contained in an automated data processing system. The Crown Court sentenced him to one year of imprisonment.[14]

In 2015, Mr. Karpelès was arrested in Tokyo. According to a statement from the Tokyo Metropolitan Police Department, Mr. Karpelès "had 'unjustly inflated the balance' of an account held under his name by manipulating transaction records on a system that Mt. Gox used to swap Bitcoins for dollars," and that "[h]e created false information that $1 million had been transferred

---

[10] *Id.*
[11] *Id.*
[12] *Tracers in the Dark: The Global Hunt for the Crime Lords of* Cryptocurrency, Andy Greenberg, Doubleday (2022).
[13] *Id.*
[14] Crown Court of Paris, *Portha et al. v. Karpeles*, Case 0822491118, Verdict Passed May 14, 2010 (available at https://www.documentcloud.org/documents/1227216-karpeles-english.html).

into the account, when in fact it had not been".[15] In 2019, Mr. Karpelès was found guilty of

illegally altering Mt. Gox's electronic records.[16] He was sentenced to two-and-a-half years in

prison with a four-year suspension (meaning that if he committed no crimes within four years, he

would serve no more jail time).[17] In June 2020, a Japanese high court affirmed the lower court's

conviction.[18] Upon information and belief Mr. Karpelès has been working closely with DOJ and

was also on the phone with Mr. Sterlingov's arresting officer at the time of Mr. Sterlingov's

arrest.

      Mr. Karpelès is the original and custodial source of the Mt. Gox data foundational to the

Government's case. In 2015 Mr. Gronager met personally with Mr. Karpelès in Tokyo to discuss

the adulterations, manipulations, and deletions Mr. Gronager saw in the Mt. Gox data.[19] Mr.

Gronager has unique, material, relevant, personal, direct knowledge of the inauthenticity of the

Mt. Gox records given to him and used by Chainalysis and the Government to wrongfully accuse

Mr. Sterlingov. As described by Andy Greenberg in his non-fiction book *Tracers in the Dark:*

*The Global Hunt for the Crime Lords of Cryptocurrency*:

> Mt. Gox had, by the time of that meeting [between Mark Karpelès
> and Michael Gronager], been bankrupt for nearly a year – a year
> that Karpelès had spent under investigation by Japanese police
> while also being accused of gross incompetence and even outright
> theft by hordes of angry Bitcoin users. Gronager remembers that
> the Frenchman seemed mildly disheveled, in need of a haircut, and
> somewhat broken in spirit – "on hold," as Gronager put it, resigned
> to yet another meeting in the seemingly endless cycle of meetings

---

[15] Jonathan Soble, *Mark Karpeles, Chief of Bankrupt Bitcoin Exchange, Is Arrested in Tokyo*, NEW YORK TIMES Aug 1, 2015 (last accessed June 6, 2023) https://www.nytimes.com/2015/08/02/business/dealbook/mark-karpeles-mt-gox-bitcoin-arrested.html.
[16] Ben Dooley, *Bitcoin Tycoon Who Oversaw Mt. Gox Implosion Gets Suspended Sentence*, NEW YORK TIMES (March 15, 2019) https://www.nytimes.com/2019/03/15/business/bitcoin-mt-gox-mark-karpeles-sentence.html.
[17] *Id.*
[18] Yuri Kageyama, *Japan court backs Karpeles conviction for data manipulation*, TECH XPLORE, (June 12, 2020), https://techxplore.com/news/2020-06-japan-court-karpeles-conviction.html.
[19] *Tracers in the Dark: The Global Hunt for the Crime Lords of* Cryptocurrency, Andy Greenberg, Doubleday (2022) at 103.

> that had become his life, all as a result of his company's epic downfall.
>
> Weeks before, Gronager had received an envelope in the mail from Mt. Gox's trustees containing a single encrypted USB thumb drive. The drive was supposed to contain all of Mt. Gox's financial data, including records of every trade made on the exchange in its four-year history. But when he decrypted it, Gronager found it was mysteriously incomplete. Many records of trades were missing the "counterparty" – the buyer or seller on the other side of the deal – and many more entries seem to have been deleted altogether.
>
> When Gronager asked Karpelès about those missing entries, Karpelès told him a strange story in his slightly clumsy, French-accented English. In early 2014, he said, around the time of the hacker breach that had stolen Mt. Gox's entire treasury of bitcoins, someone had physically broken into the exchange's server room and accessed its computers. The company hadn't been able to determine who the intruder was, but Karpelès suggested the break-in was related to the theft and believed it had allowed the burglar to delete the data that Gronager had found missing.
>
> And, Gronager asked incredulously, didn't the company have a backup of that data? Karpelès said no, that the backup system hadn't worked either.
>
> Gronager could see that Karpelès was almost certainly withholding something, if not outright lying.[20]

Additionally, according to the book, Mr. Gronager suspected Mr. Karpelès of falsifying trades on Mt. Gox by using automated programs to create trades at artificially high prices, "bolstering Bitcoin's exchange rate, and making Mt. Gox seem more dominant in the Bitcoin economy than it truly was."[21] Finally, the illegitimacy of the Mt. Gox data raises serious questions about the accuracy of Chainalysis's Reactor blockchain forensic software that uses the Mt. Gox data.

---

[20] *Id.* at 103-4.
[21] *Id.* at 104.

**ARGUMENT**

Mr. Gronager has unique, relevant, material, personal knowledge as to the inauthenticity of the Mt. Gox database central to the Government's case. The Defense seeks to exclude all Mt. Gox data that the Government seeks to certify through the bankruptcy trustees because it lacks integrity. Its source, Mr. Karpelès, was criminally convicted for fraudulently altering this data.[22] Nowhere in its Criminal Complaint, the Superseding Indictment or its filings does the Government disclose to the Court the serious problems with the integrity of the Mt. Gox data. Instead, the Government represents to the Court that the data is authentic because the Japanese Mt. Gox bankruptcy trustees certified the copy of the Mt. Gox data in their possession, which they then gave to the Government.[23] But that certification merely attests that the trustees did not alter the data while it was in their possession; it does nothing to certify the authenticity of the data as it was provided to the bankruptcy trustees by Mr. Karpelès. Mr. Gronager is a material fact witness to the corrupt nature of the Mt. Gox data as given to the Mt. Gox bankruptcy trustees. His personal knowledge, as expressed to Mr. Greenberg in extensive interviews for *Tracers in the Dark* directly contradicts the Government's claims that the Mt. Gox data is authentic.

**I.      Mr. Gronager is a Necessary Material Fact Witness to the Inauthenticity of the Mt. Gox Data Crucial to the Government's Case**

Without the Mt. Gox data, and the conclusions the Government and Chainalysis have drawn using that data, the case against Mr. Sterlingov collapses. The Criminal Complaint and the subsequent Superseding Indictment depend heavily on the Mt. Gox database produced by convicted data fraudster Mr. Karpelès. The Mt. Gox bankruptcy trustees never created the data at

---

[22] *See* Dkt. 59 and 71.
[23] *See* Dkt 62 at 20.

question here in the regular course of business. They simply took possession of Mt. Gox's data from Mr. Karpelès after its creation following Mt. Gox's collapse into bankruptcy.

Mr. Gronager, in his extensive interviews with Mr. Greenberg, attests to the corruption and lack of integrity of the Mt. Gox data. He is also, in his role as Chainalysis's CEO, one of Mr. Sterlingov's primary accusers. Given Chainalysis's heavy involvement in this investigation, not only should the Court deny his motion to quash his testimony at the June 16 and 23, 2023, hearings, it should deny his motion to quash the subpoena for his trial testimony.

Mr. Gronager has chosen to speak extensively and publicly about critical evidence in this case because it benefitted him financially by promoting his company - Chainalysis - that he starts by working on the Mt. Gox bankruptcy.[24] In so doing he demonstrates his unique, material, relevant personal knowledge regarding the most important evidence in this case. His testimony regarding the Mt. Gox data goes directly to its inauthenticity, and why this Court should exclude it in its entirety.

Chapter 17 of *Tracers in the Dark* titled "Noise" identifies, with specificity, the relevant and material information possessed by Mr. Gronager that is central to establishing the inauthenticity of the Mt. Gox records used by the Government to attribute operation of Bitcoin Fog to Mr. Sterlingov. The data's corruption and lack of integrity provides explanations as to what led the Government to wrongfully accuse Mr. Sterlingov. False data produces false results. Or worse, convicted data fraudster Mr. Karpelès wanted to divert attention to someone other than himself. Perhaps it is no coincidence that Akemashite Omedetou is the Japanese phrase for

---

[24] *Tracers in the Dark: The Global Hunt for the Crime Lords of Cryptocurrency*, Andy Greenberg, Doubleday (2022) at 103-4.

"Happy New Year", and that Mt. Gox was located in Japan and operated by Mr. Karpelès from Tokyo.[25]

## II.   Mr. Gronager's Counsel Accepted Service of the Subpoena Only to Later Reject Service of the Subpoena

On May 17, 2023, counsel for Mr. Gronager and Chainalysis, Mr. William Frentzen of Morriston & Foerster LLP, accepted service of the subpoena via email saying "Counsel, I am authorized to accept service of a subpoena for Mr. Gronager. Please confirm ASAP if you need him to appear for June 16 or for June 23 and for what purpose."[26] Subsequently, Defense counsel had a Zoom call with Mr. Frentzen where he did not mention any issues with service.

Now, belatedly, realizing the full scope of Mr. Gronager's and Chainalysis's potential civil liability for malicious prosecution, false imprisonment, defamation, and other torts implicated by Mr. Gronager's and Chainalysis's role in Mr. Sterlingov's wrongful incarceration and prosecution, he seeks to back-track on this acceptance of service. Mr. Gronager wants to have his cake and eat it too.

Mr. Gronager is now scared to speak about the very things he publicly spoke of in marketing Chainalysis. He has voluntarily put himself in this position as a necessary material fact witness in a federal criminal case where the Defendant is facing fifty years to life in prison. He has profited from this case considerably as he and Chainalysis have used Mt. Gox and Mr. Sterlingov's case to help launch their now $8.6 billion company. Moreover, the fact that Chainalysis is a private company does nothing to mitigate its, or Mr. Gronager's, constitutional obligations in their roles as private vendor government investigators. The Government cannot

---

[25] The Government refuses to accept a subpoena for Mr. Karpelès's testimony despite having apparently worked closely with Mr. Karpelès.
[26] Ex. A.

hide from its constitutional obligations in a federal criminal case by using private vendors to do work normally done in-house by FBI Cyber.

The service of the subpoena is proper and Mr. Gronager's counsel of record accepted its service. Mr. Gronager's counsel acknowledged service of the subpoena and spoke with Defense counsel about scheduling Mr. Gronager's testimony without ever stating that he was disputing service of the subpoena.

**III.    Counsel for Chainalysis and Mr. Gronager Mistakenly Apply the Standard for a Subpoena *Duces Tecum* to Mr. Gronager's Subpoena *Ad Testificandum***

Counsel for Mr. Gronager argues that Defense counsel failed to seek leave of the Court prior to serving its subpoena. But Defense counsel does not need to seek leave of the Court to serve a subpoena *ad testificandum* under FRCrP 17(a), which merely seeks Mr. Gronager's testimony at the upcoming June 2023 hearings. The standard Mr. Gronager's counsel attempts to apply from FRCrP 17(c) only applies to the pre-trial return of documents and information under a subpoena *duces tecum*. As such Mr. Gronager's argument on this point lacks all merit.

**IV.    The Subpoena *Ad Testificandum* is Neither Unreasonable nor Oppressive**

Defense counsels' subpoena *ad testificandum* is neither unreasonable nor oppressive. It seeks no more than a few hours of testimony, on a single day in June in Washington D.C., about a subject matter relevant and material to the inauthenticity of the Mt. Gox data and other issues directly related to the motions *in limine* and *Daubert* hearings.

Counsel for Mr. Gronager did not complain of any oppression or unreasonableness on his conference call with Defense counsel. Rather, the point of the call was to make it convenient for Mr. Gronager to testify at the hearing. At the end of the call, the parties agreed to call Mr. Gronager on June 23, 2023. What is oppressive and unreasonable here is that an innocent man has languished in jail for over two-and-a-half years pre-trial based on shoddy analysis founded

on corrupt, inauthentic Mt. Gox data willfully manipulated by a convicted felon – Mr. Karpelès – whose very conviction involves falsifying the data at issue. If Mr. Gronager wishes to make his money by putting people in jail, then he can certainly suffer the minor inconvenience of testifying in federal criminal court.

Mr. Gronager knowingly and willfully entered the law enforcement market seeking profits and actively marketed both himself and Chainalysis to the Government as experts in the newly emergent field of blockchain forensics. Mr. Gronager is heavily involved in the case against Mr. Sterlingov, and it should come as no surprise to him that he is being summoned for testimony in a case where he is a unique, material fact witness. He has years of knowledge that the Government's proffered expert, Elizabeth Bisbee of Chainalysis - who is a newcomer to this case - does not have.

There is no one else apparent who can testify to the inauthenticity of the Mt. Gox data other than Mr. Gronager and Mr. Karpelès. Mr. Gronager also knows whether this tainted data poisons Chainalysis's Reactor software from the company's inception. The inauthentic, adulterated Mt. Gox data's potential incorporation into Chainalysis Reactor puts the legitimacy and accuracy of Chainalysis's proprietary black-box blockchain forensic software in question. There is nothing unreasonable in questioning Mr. Gronager about his relevant, personal, material knowledge regarding the integrity of the Mt. Gox data and issues directly related to the motions *in limine* and *Daubert* hearings. The Defense has no constitutional obligation to disclose the specifics of the testimony it seeks under a criminal subpoena *ad testificandum*, quite the opposite.[27]

---

[27] *See* U.S. CONST. amends. V, VI.

**CONCLUSION**

The Court should deny Mr. Gronager's motion to quash his subpoenaed testimony at the June 16 and 23, 2023, motions *in limine* and *Daubert* hearings. As documented by his public comments published in *Tracers in the Dark*, Mr. Gronager possesses unique, material, relevant knowledge regarding the Mt. Gox database that is foundational to the Government's case. That Chainalysis is the "Theranos of Blockchain analysis" has nothing to do with the Defense's subpoena of Mr. Gronager. Mr. Gronager willfully entered this space in the hopes of profiting from lucrative contracts with the United Stated Department of Justice. In so doing, he gained unique, material, relevant knowledge regarding matters in this case, in his and Chainalysis's roles as private vendor government investigators, that no one else can testify to. He cannot now complain that the very situation he worked so hard to create is unreasonable and oppressive.

This Court should deny Mr. Gronager's motion to quash in its entirety and order him to appear at the June motions *in limine* and *Daubert* hearings, as well as deny his motion to quash the subpoena for his trial testimony. In the alternative, the Court should exclude any use at trial of the Mt. Gox data, any evidence derived therefrom, and any evidence derived from the use of Chainalysis Reactor.

Dated: June 6, 2023
New York, New York

Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
michael@torekeland.com

*Counsel for Defendant Roman Sterlingov*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of June 2023, the forgoing document was filed with the Clerk of Court using the CM/ECF System, and sent by email to the attorneys for the Government listed below:

s/ Tor Ekeland

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov