**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | **No. 21-cr-399 (RDM)** |
| v. | |
| ROMAN STERLINGOV | |
| Defendant. | |

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S NOTICE AND MOTION FOR ORDER TO SHOW CAUSE REGARDING ONGOING VIOLATIONS OF LOCAL CRIMINAL RULE 57.7(b)**

# Table of Contents

Introduction ................................................................................................................ 3

Background ................................................................................................................. 4

Argument ................................................................................................................. 12

I.    The Size of this District's Venire Cures any Issue .............................................. 13

II.   Voir Dire Cures any Issue ............................................................................... 16

III.   Mr. Sterlingov has a First Amendment Right to Reply to the Government's Media
Campaign ................................................................................................................. 17

IV.   Any Gag Order Violates Mr. Sterlingov's Fifth and Sixth Amendment Rights ............... 18

Conclusion ............................................................................................................... 18

## Introduction

Defendant Roman Sterlingov submits this Opposition to the Government's Notice and Motion for Order to Show Cause Regarding Ongoing Violations of Local Criminal Rule 57.7(b). For the reasons argued below, this Court should deny the Government's motion. Courts in this District routinely hold that both the size of the venire in the District of Columbia, and voir dire, eliminate the possibility of any prejudice from attorney pre-trial comments. Courts in this District hold this even in the face of the massive negative national publicity generated by the January 6th cases. Moreover, the Defense's comments are part of Mr. Sterlingov's constitutional right to reply and mitigate the damage done by the Government's extensive multi-year press campaign related to this case. The Government has spent years promoting their for-profit, proprietary, junk science, black-box blockchain surveillance forensics at the heart of their case to the substantial prejudice of Mr. Sterlingov.

Finally, the Defense's public commentary in this case has greatly aided Mr. Sterlingov's constitutional right to put on a complete defense. Not only has it raised money for his defense in the face of the Government's pre-trial seizure of his assets, but it has also revealed information about the failures of Chainalysis Inc. currently nowhere in the public record. The speech in question is political speech going to matters of grave public concern: the integrity of our justice system and the corrupting influence of money and status-seeking upon the institution. To utilize a prior restraint on speech to restrict Mr. Sterlingov's and his attorneys' 1st, 5th, and 6th amendment rights to publicly comment about his public trial not only runs contrary to the precedent in this District, but it also runs contrary to his right to put on a complete defense in the face of the DOJ's media juggernaut, and the public's right to be informed regarding what is being done in the name of their taxpayer dollars. Simply put, as applied, the Government's

requested relief is unconstitutional under the 1st, 5th, and 6th amendments to the United States Constitution.

## Background

For years the Government has promoted itself to the national media trumpeting Mr. Sterlingov's case and the purported prowess of their blockchain forensics before the Defense ever uttered a word to the public. On April 28, 2021, the United States Department of Justice issues a national press release trumpeting Mr. Sterlingov's arrest and tarring him as the operator of Bitcoin Fog.[1] The story is immediately picked up by the national press.[2] But the Government's press junket begins even earlier than this.

Around 2020, individuals from Chainalysis Inc. – the Government's for-profit private blockchain forensic vendor - the prosecution, investigators and others involved in this case, begin conversations with Senior WIRED Magazine reporter Andy Greenberg. These discussions and interviews, over the course of the last few years, form the basis of Mr. Greenberg's book *Tracers in the Dark:  The Global Hunt for the Crime Lords of Cryptocurrency*, released November 15, 2022.[3] The book receives widespread media attention including reviews in the New York Times and the Washington Post.[4] The book specifically discusses Mr. Sterlingov's case as well as lionizing members of the Government's prosecutorial and investigatory team.

---

[1] Individual Arrested and Charged with Operating Notorious Darknet Cryptocurrency "Mixer", DEPARTMENT OF JUSTICE (Apr. 28, 2021).
https://www.justice.gov/opa/pr/individual-arrested-and-charged-operating-notorious-darknet-cryptocurrency-mixer
[2] *See e.g.* Lawrence Delevingne, *U.S. arrests alleged 'Bitcoin Fog' money launderer* REUTERS (Apr. 28, 2021).
https://www.reuters.com/technology/us-arrests-alleged-bitcoin-fog-money-launderer-2021-04-28/.
[3] *Tracers in the Dark:  The Global Hunt for the Crime Lords of Cryptocurrency*, Andy Greenberg, Doubleday (2022).
[4] *See e.g.* Mark Gimein, *They Thought They Were Invisible. They Were Wrong.* NEW YORK TIMES (NOV. 16, 2022)
https://www.nytimes.com/2022/11/16/books/review/tracers-in-the-dark-andy-greenberg.html; Dina Temple-Raston,
*Criminals thought crypto was untraceable. They were wrong* WASHINGTON POST (Dec. 29, 2022)

The book chronicles Chainalysis's work in the emerging standardless field of blockchain forensics and directly identifies Mr. Sterlingov by name, characterizing him as the operator of Bitcoin Fog even though Mr. Sterlingov's trial is pending. The index contains entries for: Chainalysis, Inc. (the $8.6 billion private black-box blockchain surveillance company that uses this case to help launch itself);[5] Catherine Pelker (the initiating FBI Analyst on this case who becomes the lead prosecutor on this case);[6] Chainalysis Reactor (the black-box proprietary forensics software used to accuse Mr. Sterlingov);[7] Aaron Bice (the IRS Criminal Investigator on this case);[8] Excygent LLC (the for-profit company developed by Mr. Bice during his time as an IRS-CI working on this case that was bought for an undisclosed sum by Chainalysis shortly after Mr. Sterlingov's arrest);[9] Mark Karpelès (criminally convicted data fraudster and former owner of Mt. Gox from which the inauthentic Mt. Gox records used in this case originated);[10] Mt. Gox (a former hacked bankrupt Bitcoin exchange);[11] Michael Gronager (co-founder and CEO of Chainalysis and a material fact witness in this case);[12] Jonathan Levin (co-founder and CSO of Chainalysis and a material fact witness in this case); Tigran Gambaryan (one of the arresting officers who now works at Binance and a material fact witness in this case);[13] Matthew Price

---

https://www.washingtonpost.com/books/2022/12/29/tracers-crime-cryptocurrency-andy-greenberg/; *An absorbing work of true crime—and, as the bad guys will tell you, true punishment* KIRKUS REVIEWS (Nov.15, 2022) https://www.kirkusreviews.com/book-reviews/andy-greenberg/tracers-in-the-dark/.
[5] *Tracers in the Dark: The Global Hunt for the Crime Lords of Cryptocurrency*, Andy Greenberg, Doubleday (2022) at 92, 100-02, 106-112, 137-39, 168-70, 173, 189, 200-3, 237-38, 258, 287, 289, 292, 297-318.
[6] *Id.* at 127, 248, 287.
[7] *Id.* at 138, 168, 172, 185, 189, 238, 244, 246, 253, 258, 319.
[8] *Id.* at 246, 248, 265-66, 269, 272, 275, 278, 281.
[9] *Id.* at 246.
[10] *Id.* at 93, 100, 103-05, 118, 120.
[11] *Id.* at 26, 34, 39, 41, 53, 54, 91-94, 100, 103-5, 111-14, 117-21, 129-30, 134, 137, 291.
[12] *Id.* at 91-106, 108, 110-112, 117, 121-124, 130-31, 134, 137-39, 169-70, 199-200, 248-49, 299-301, 304-305, 310-12, 318, 319-20.
[13] *Id.* at 10-15, 17, 19-25, 35, 66-76, 78-82, 111-15, 122-30, 132-34, 199-203, 238-39, 245-55, 258, 262, 269, 280, 281, 287, 289-93, 301-303, 317, 323-326.

(one of the arresting officers who now works at Binance and a material fact witness in this case);[14] Youli Lee (an original prosecutor on this case and now Senior Legal Director of Global Operations at Chainalysis);[15] Zia Faruqui (a former prosecutor on this case and now a magistrate judge for the Federal District Court for the District of Columbia who has written an opinion endorsing the newly emergent, standardless blockchain forensics at issue here that mentions Chainalysis by name);[16] and William Frentzen (a former Federal Prosecutor who worked with arresting officer Tigran Gambaryan and who now represents Chainalysis's as counsel in this matter);[17] among others.

Arresting officer Tigran Gambaryan features prominently in the book as its main character. The book contains an alleged account of a conversation between Tigran Gambaryan, Matthew Price, and Mr. Sterlingov upon his arrest at LAX in April 2021.[18] The book portrays Mr. Sterlingov's arrest, describing how arresting officers Tigran Gambaryan and Matt Price drove through the night from Fresno to Los Angeles International Airport to arrest Mr. Sterlingov, and how Mr. Gambaryan spoke to Mr. Sterlingov in Russian, apparently not even knowing that he spoke English.[19]

In January 2021, Chainalysis hires Elizabeth Bisbee (Government proffered expert witness) from her role as an Intelligence Research Specialist at the Drug Enforcement Agency.[20]

---

[14] *Id.* at 287, 289-91, 324
[15] *Id.* at 269-71, 279-80.
[16] *Id.* at 125-26, 246-47, 254-57, 263-266, 269-271, 280, 288; *see also In re Search Multiple Email Accounts Pursuant to 18 U.S.C. § 2703 for Investigation of Violation of 18 U.S.C. § 1956*, 585 F. Supp. 3d 1, 8 (D.D.C. 2021).
[17] *Id.* at 19, 72, 76, 81, 112, 114-16, 127, 289, 302.
[18] *See Tracers in the Dark:  The Global Hunt for the Crime Lords of Cryptocurrency*, Andy Greenberg, Doubleday (2022) at 290-91.
[19] *Id.* at 291.
[20] E. Bisbee CV (sent by the Government to the Court and the Defense via email).

On April 27, 2021, the FBI arrests Mr. Sterlingov at Los Angeles International Airport. The same day WIRED runs an exclusive article announcing the arrest and quoting Jonathan Levin promoting the blockchain forensics used in the case. DOJ does not issue an official press release until the next day.[21]

ANDY GREENBERG   SECURITY   APR 27, 2021 6:20 PM

## Feds Arrest an Alleged $336M Bitcoin-Laundering Kingpin

**The alleged administrator of Bitcoin Fog kept the dark web service running for 10 years before the IRS caught up with him.**

"This is yet another example of how investigators with the right tools can leverage the transparency of cryptocurrency to follow the flow of illicit funds," says Jonathan Levin, cofounder of blockchain analysis company Chainalysis.

As of Tuesday afternoon, Bitcoin Fog remained online, though it's unclear who, if anyone, now operates it. Neither the IRS nor the Department of Justice responded to WIRED's requests for comment.

On April 28, 2021, IRS-CI Aaron Bice's private company, Excygent, LLC, features prominently in the two DOJ press releases announcing Mr. Sterlingov's arrest. The DOJ thanks Excygent, LLC at the head of a list of names including FBI field offices and domestic and international law enforcement.[22]

---

[21] *See* Andy Greenberg, Feds Arrest an Alleged $336M Bitcoin-Laundering Kingpin, WIRED (Apr. 27, 2021) available at https://www.wired.com/story/bitcoin-fog-dark-web-cryptocurrency-arrest/ (last accessed June 13, 2023).
[22] *See* Individual Arrested and Charged with Operating Notorious Darknet Cryptocurrency "Mixer", DEPARTMENT OF JUSTICE (Apr. 28, 2023) available at https://www.justice.gov/opa/pr/individual-arrested-and-charged-operating-notorious-darknet-cryptocurrency-mixer (last accessed June 13, 2023).

The IRS-CI District of Columbia Cyber Crime Unit and the FBI Washington Field Office are investigating the case. Essential support was provided by Excygent; the IRS-CI Los Angeles Field Office, Van Nuys Post of Duty; FBI Los Angeles Field Office; Homeland Security Investigations; Customs and Border Patrol; the U.S. Attorneys' Offices for the Central District of California, Northern District of California, and Southern District of New York; and the Financial Crimes Enforcement Network of the U.S. Department of Treasury. The Department of Justice's Office of International Affairs provided invaluable assistance, as did Europol; the Swedish Economic Crime Authority, the Swedish Prosecution Authority, and the Swedish Police; and the General Inspectorate of Romanian Police, Directorate for Combatting Organized Crime and the Directorate for Investigating Organized Crime and Terrorism.

Trial Attorney C. Alden Pelker of the Criminal Division's Computer Crime and Intellectual Property Section and Assistant U.S. Attorney Christopher B. Brown of the U.S. Attorney's Office for the District of Columbia are prosecuting the case, with assistance from Paralegal Specialist Chad Byron. Former Assistant U.S. Attorneys Youli Lee and Zia Faruqui made invaluable contributions during their tenures on the case team. The team also appreciates the previous support of Trial Attorney S. Riane Harper of the Computer Crime and Intellectual Property Section; Paralegal Specialist Kenny Nguyen; former Paralegal Specialists Toni Anne Donato and Bianca Evans; and former Assistant U.S. Attorney Allen O'Rourke over the course of this long-running investigation.

Less than two months after Mr. Sterlingov's arrest, on June 24, 2021, Chainalysis completes its Series E funding round, raising $100 million.[23] At the time, Chainalysis values itself at $4.2 billion. Chainalysis has a pattern of investor fundraising around law enforcement press releases.

On October 5, 2021, Chainalysis buys Excygent, LLC for undisclosed compensation, and Mr. Bice begins working for Chainalysis. A review of government contracting records shows that Excygent has a revenue stream of roughly $10 million since its formation during Mr. Bice's tenure as an IRS-CI.[24]

In January 2022, Chainalysis hires Youli Lee, a former prosecutor on this case, as Senior Legal Director of Global Investigations, Litigation and Governance.

In February 2022, undersigned counsel began representing Mr. Sterlingov.

---

[23] *See* https://www.crunchbase.com/funding_round/chainalysis-series-e--b35d8de5.
[24] *See* General Services Administration, www.sam.gov (providing searchable database of government contracts) (last accessed Dec. 23, 2022).

As of May 2022, Chainalysis' market valuation stands at $8.6 billion.[25]

On August 10-12, 2022, despite there being a pending criminal trial, Chainalysis Inc. presents a whitepaper through its agents at the USENIX Security Symposium in Boston, MA using evidence in this case and naming and accusing Mr. Sterlingov publicly.[26]

On April 4-5, 2023, Chainalysis hosts its Chainalysis Links 2023 Conference at the Marriot Marquis in Times Square, New York City. The event sells out at $599.00 for a commercial ticket, with a $399.00 government rate ticket. The New York Times covers the event.[27] At 10:00 am of day one of the Conference, Michael Gronager, Tigran Gambaryan and Andy Greenberg appeared together on stage to discuss Mr. Gronager's and Mr. Gambaryan's roles as protagonists in *Tracers in the Dark*.[28]

---

[25] *See* Gertrude Chavez-Dreyfuss, Chainalysis Raises $170 million in 6th Funding Round with $8.6 Billion Valuation, REUTERS (May 12, 2022) available at https://www.reuters.com/technology/chainalysis-raises-170-mln-6th-funding-round-with-86-bln-valuation-2022-05-12/ (last accessed June 12, 2023).

[26] *See* Danny Nelson, Chainalysis Raises $170M at $8.6B Valuation, COINDESK (May 11, 2023) available at https://www.coindesk.com/business/2022/05/12/chainalysis-raises-170m-at-86b-valuation/ (last accessed June 13, 2023).

[27] *See* David Yaffe-Bellany, The Crypto Detectives are Cleaning Up, NEW YORK TIMES (April 22, 2023) available at https://www.nytimes.com/2023/04/22/business/crypto-blockchain-tracking-chainalysis.html (last accessed June 12, 2023).

[28] *See* Chainalysis Links 2023 Conference, Schedule Day 1, (April 3-4, 2023) available at https://www.chainalysis.com/links-nyc/.



L-R: *Tracers in the Dark* author Andy Greenberg; Chainalysis Inc., CEO Michael Gronager; and Mr. Sterlingov's arresting officer Tigran Gambaryan; with Dina Temple-Raston, on stage at Chainalysis Links, 2023 in New York City.[29]



From the Conference Agenda for Chainalysis Links 2023.[30]

---

[29] *See* David Yaffe-Bellany, The Crypto Detectives are Cleaning Up, NEW YORK TIMES (April 22, 2023) available at https://www.nytimes.com/2023/04/22/business/crypto-blockchain-tracking-chainalysis.html (last accessed June 12, 2023).

[30] *See* Chainalysis Links 2023 Conference Schedule, available at https://www.chainalysis.com/links-nyc/#agenda (last accessed June 13, 2023).

Prosecutor Catherine Pelker, the federal agents who made the arrest – Tigran Gambaryan and Matthew Price, and Government agents from private blockchain forensics vendor Chainalysis have all been speaking to the national press for years about this case, and others involving the blockchain forensics they are busy promoting. Mr. Sterlingov is the last person to do press on this case.

Upon discovering by chance, in a conversation with Senior WIRED Reporter Andy Greenberg, the extensive interviews given to him by the prosecution, investigators, and material fact witnesses in this case in order to promote their positions, the Defense responded by getting a comment into Mr. Greenberg's book just days before its final editorial deadline:

> "His lawyer, the veteran hacker defense attorney Tor Ekeland, vowed to fight the case. 'Our review of the blockchain analysis tells a different story', he said. 'I'm convinced Mr. Sterlingov has been unjustly accused and we look forward to taking this matter to trial as soon as possible.'"[31]

The book then goes on to inaccurately claim that Mr. Sterlingov used Bitcoin from Mt. Gox "to rent Bitcoin Fog's servers from a hosting company."[32] This is false. There is nothing in the evidence that supports this, nor has the Government found Bitcoin Fog's servers.

After this Court denied the release of Mr. Sterlingov's funds seized pre-trial by the Government, the Defense appealed to the Bitcoin community for help, speaking on Bitcoin-related podcasts and travelling to Europe, Mexico City and Miami, to speak at Bitcoin meetups and conferences about Mr. Sterlingov's case and to fundraise. From the events, not only was the Defense able to raise money for Mr. Sterlingov's defense, but they were approached by

---

[31] *Tracers in the Dark: The Global Hunt for the Crime Lords of* Cryptocurrency, Andy Greenberg, Doubleday (2022) at 291.
[32] *Id.*

numerous people who were highly critical of Chainalysis Inc.'s methodologies and who described instances where faulty Chainalysis analysis led to wrongful arrests in cases that were later quietly dropped. This information highlights the fact that when the Government cites to Chainalysis' successes, what is being left out of the record, are Chainalysis's failures. Furthermore, because of the Defense's public outreach, the Defense was able to obtain otherwise unattainable experts to work on this case.

Finally, because of the public interest in this case, and concern within the blockchain community over the Government's and Chainalysis's overreach, the Defense was invited to speak at the largest Bitcoin conference in the world, Bitcoin 2023 in Miami, successfully raising funds for Mr. Sterlingov's defense and receiving offers from volunteers eager to work on the case. None of this was directed towards Washington D.C. Without the Defense's public outreach, Mr. Sterlingov would not be able to afford his defense, nor would he have the necessary experts to mount a defense.[33] Moreover, Mr. Sterlingov has a 1st Amendment right to reply to the Government's accusations. Regardless, both the size of the venire and the fact of voir dire eliminate any issues of potential pretrial juror prejudice.

## Argument

The size of the venire in the District of Columbia, in conjunction with voir dire, eliminates the possibility of juror prejudice based on pre-trial publicity. Courts in this District repeatedly find no potential juror prejudice even in the face of overwhelming negative national publicity like that directed at the January 6th defendants. Courts also recognize the prophylactic

---

[33] Although the Court appointed Mr. Sterlingov's counsel Criminal Justice Act counsel on the case, given the volume of January 6th cases the administrators of CJA for the District of Columbia are handling, the Defense is informed that they are unlikely to be paid any money from CJA until after the trial.

power of the centuries-old process of voir dire, the entire point of which is to eliminate prejudice from the jury panel. If anything, the publicity has helped Mr. Sterlingov get a fair trial, as it has raised funds, provided experts, and produced useful information. And Mr. Sterlingov is the last person to the press party. The United States Government Department of Justice has been doing press for years on this case, and their questionable, newly emergent, standardless, blockchain forensics that are its evidentiary foundation.

The Government's poisoning of the well with its pretrial commentaries, book interviews and press releases necessitates that Mr. Sterlingov exercise his constitutionally protected rights to reply, to engage in free political speech, to protect his 5th and 6th amendment rights. To say nothing of the People's 1st amendment right to know what their justice system is doing in their name.

## I.    The Size of this District's Venire Cures any Issue

Courts in this District and the Federal Fourth Circuit Court of Appeals find no prejudice to a Defendant's (not the Government's) right to a fair trial even in the face of national negative press exposure like the January 6th cases.[34] They do so because the size of the venire in the District of Columbia, roughly 600,000, guarantees that there are jurors who have not been exposed to pretrial publicity.[35] As the D.C. District Court in *United States v. Nassif* stated this last September:

---

[34] *See United States v. Chwiesiuk*, Criminal Action 21-536 (CKK), at *7 (D.D.C. Mar. 17, 2023); *United States v. Taylor,* 942 F.3d 205, 223 (4th Cir. 2019) (affirming denial of venue transfer motion where local population "was approximately 621,000 residents")).

[35] *See United States v. Nassif*, Criminal Action 21-421 (JDB) (D.D.C. Sep. 12, 2022) *Skilling v. United States*, 561 U.S. 358, 382 (noting that there is a "reduced likelihood of prejudice where the venire was drawn from a pool of over 600,000 individuals" (citing *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1044 (1991) (plurality opinion)); *United States v. Taylor*, 942 F.3d 205, 223 (4th Cir. 2019) (affirming denial of venue transfer motion where local population "was approximately 621,000 residents").

'The mere existence of intense pretrial publicity is not enough to make a trial unfair, nor is the fact that potential jurors have been exposed to this publicity.' And "[i]t is not required . . . that . . . jurors be totally ignorant of the facts and issues involved.". "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." The Supreme Court has presumed prejudice based on pretrial publicity only once, in a case where a defendant's unlawfully obtained confession was broadcast three times shortly before his trial to large audiences, in a community of only 150,000 people. Courts have successfully empaneled juries and conducted trials in the locations of highly publicized crimes. And importantly, "[w]hen publicity is about the event, rather than directed at the individual defendants, this may lessen any prejudicial impact."[36]

Pretrial, before a jury has been empaneled, the presumption of prejudice belongs only to the extreme case.[37] *Skilling v. United States* lays out the basic analysis for juror prejudice, taking into account: (1) the venire size; (2) whether the publicity contains "[a] confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight;" and, (3) the temporal distance between the alleged crime and trial.[38]

First, courts in this district hold that the size of venire ensures there are members that haven't been exposed to pretrial publicity.[39] This is especially true for any of the Defense's comments as they were generally made at Bitcoin Meetups in Europe, the Bitcoin 2023

---

[36] *United States v. Nassif*, Criminal Action 21-421 (JDB), at *19 (D.D.C. Sep. 12, 2022) (citing *United States v. Childress,*58 F.3d 693, 706 (D.C. Cir. 1995); *Irvin* v. *Dowd*, 366 U.S. 717, 722-23 (1961); *Rideau v. Louisiana,*373 U.S. 723, 724-25, 727 (1963); *see United States v. Brock,* Crim. A. No. 21-140 (JDB), 2022 WL 3910549, at *7; *Skilling v. United States,*561 U.S. at 358, 384 n.17 (2010)).

[37] *United States v. Nassif*, Criminal Action 21-421 (JDB), at *16 (D.D.C. Sep. 12, 2022) ("Where a jury has not yet been empaneled, a defendant may show that jury bias has violated his rights based on a presumption of prejudice, but that 'presumption of prejudice . . . attends only the extreme case.'"(citing *Skilling* at 381 (2010) ("Prominence does not necessarily produce prejudice, and juror *impartiality*, we have reiterated, does not require *ignorance*." quoting *Irvin* v. *Dowd*, 366 U.S. 717, 722 (1961)).

[38] *Skilling* 561 U.S. at 382 - 83 (discussing 3 prong analysis for potential juror prejudice) (2010).

[39] *See United States v. Chwiesiuk*, Criminal Action 21-536 (CKK), at *8-9 (D.D.C. Mar. 17, 2023)

conference in Miami, or on podcasts aimed at the Bitcoin community Mr. Sterlingov is part of.

None were directed towards the D.C. venire.

      Second, none of the protected speech in question - and it is all protected speech under the

1st Amendment, and any restriction of it is a prior restraint - reaches the level of extremity

required to find prejudice in the pretrial setting.[40] As the United States Supreme Court says in

*Skilling* when it discusses its cases where it's overturned convictions because of press coverage:

> In each of these cases, we overturned a "conviction obtained in a
> trial atmosphere that [was] utterly corrupted by press coverage";
> our decisions, however, "cannot be made to stand for the
> proposition that juror exposure to . . . news accounts of the crime .
> . . alone presumptively deprives the defendant of due process."
> Prominence does not necessarily produce prejudice, and juror
> *impartiality*, we have reiterated, does not require *ignorance*. *Irvin*
> v. *Dowd*, 366 U.S. 717, 722 (1961) (Jurors are not required to be
> "totally ignorant of the facts and issues involved"; "scarcely any of
> those best qualified to serve as jurors will not have formed some
> impression or opinion as to the merits of the case."); *Reynolds* v.
> *United States*, 98 U.S. 145, 155-156 (1879) ("[E]very case of
> public interest is almost, as a matter of necessity, brought to the
> attention of all the intelligent people in the vicinity, and scarcely
> any one can be found among those best fitted for jurors who has
> not read or heard of it, and who has not some impression or some
> opinion in respect to its merits."). A presumption of prejudice, our
> decisions indicate, attends only the extreme case.[41]

      Third, assuming arguendo the Government's claim that Bitcoin Fog stopped operation

after Mr. Sterlingov's arrest in April 2021, over two and a half years since any possible crime by

Mr. Sterlingov, as he has been in jail since his arrest. Charged crimes with no apparent

---

[40] *See United States v. Chwiesiuk*, Criminal Action 21-536 (CKK), at *8-9 (D.D.C. Mar. 17, 2023).
[41] *Skilling v. United States*, 561 U.S. 358, 380-81 (2010) (citing *Murphy* v. *Florida*, 421 U.S. 794, 798-799 (1975); *Patton* v. *Yount*, 467 U.S. 1025 (1984).

connection to the District of Columbia besides one manufactured unilaterally by the Government in 2019.[42]

## II.      Voir Dire Cures any Issue

Regardless, what the size of the venire does not repair voir dire does. Because both the Court and the parties can ask the jurors if they've viewed or heard anything about the case.[43] Courts in this District hold that voir dire eliminates any presumed prejudice from pretrial publicity, even with the intensity of media coverage of the January 6th cases.[44]

The main point of voir dire is to discover bias, whatever the source, thereby ensuring the Defendant a fair trial. Conducting an open conversation with the jurors during the jury selection process is a critical part of this process. Through voir dire, the Court and the Parties have an opportunity to speak with potential jurors regarding anything they may have learned about the case through media. This eliminates any reasonable presumption of prejudice, particularly where, as here, the publicity was directed to the Bitcoin community, where concern over Government overreach stifling vital technologies like digital currencies runs high. None of the public commentary was directed at the D.C. venire, it was directed at the Bitcoin and digital currency communities that face the brunt of the Government's current assault on digital currencies. Pre-trial motions are not the place to determine whether potential jurors have been exposed to media

---

[42] *See* Dkt. 46 at 6-9.
[43] *United States. v. Morrow*, Criminal Action No. 04-355 (CKK), at *12 (D.D.C. Mar. 21, 2005) ("Furthermore, the Court expressed its intention to engage in a careful voir dire inquiry into the level and type of pre-trial publicity to which potential jurors have been exposed. "); *United States v. Chwiesiuk*, Criminal Action 21-536 (CKK), at *8-9 (D.D.C. Mar. 17, 2023).
[44] See *United States v. Ballenger*, Criminal Action 21-719 (JEB), at *10 (D.D.C. Oct. 28, 2022) ("The Court finds no reason to presume prejudice on the part of this district's venire prior to *voir dire*, the appropriate tool here for rooting out prejudice. Like defendants in other scandals or January 6 cases, Ballenger and Price can be tried fairly and impartially in the District of Columbia."); *see also; United States v. Brock*, Criminal Action 21-140 (JDB) (D.D.C. Aug. 31, 2022); *United States v. Garcia*, Crim. Action 21-0129 (ABJ) (D.D.C. July 22, 2022); *United States v. Rhodes*, 610 F. Supp. 3d 29 (D.D.C. 2022).

attention on this case because at this point it impossible to determine whether any potential jurors have been exposed to media attention on this case. Voir Dire has served this screening function for centuries.

### III.    Mr. Sterlingov has a First Amendment Right to Reply to the Government's Media Campaign

Mr. Sterlingov was left with little choice but to publicly speak out in the face of the Government's pretrial seizure of his assets and the Government's and its agents, like Chainalysis's, extensive press releases and media commentary. A criminal defendant has a First Amendment right of reply to the Government's statements about their case.[45]

In *United States v. Ford*, the Sixth Circuit held that the defendant had a right to reply publicly, noting that the defendant's interest in replying to the charges and adverse publicity was "at a peak." The court emphasized the importance of the public's right to hear the defendant's reply to maintain confidence in the criminal justice system.

> "The accused has a First Amendment right to reply publicly to the prosecutor's charges, and the public has a right to hear that reply, because of its ongoing concern for the integrity of the criminal justice system and the need to hear from those most directly affected by it.'"[46]

A defendant has First Amendment rights to reply publicly to comments made by prosecutors, and the Defense's comments to the Blockchain community are Mr. Sterlingov's reply.[47] It is protected speech, and the drastic remedy of prior restraint is unwarranted and

---

[45] *See United States v. Ford*, 830 F.2d 596, 600 (6th Cir. 1987) ("The government is our servant, not our master."); *see also, United States v. Carmichael*, 326 F. Supp. 2d 1267 (M.D. Ala. 2004).

[46] *See Ford*, 830 F.2d at 599.

[47] *See e.g. United States v. Schock*, No. 16-cr-30061, at *5-6 (C.D. Ill. Dec. 9, 2016) (citing *Chi. Council of Lawyers v. Bauer*, 522 F.2d at 250, 253-54 (noting that attorneys are often in the position to act as a check on government by exposing abuses); *see also U.S. v. Scrushy*, CR-03-BE-0530-S, at *3 (N.D. Ala. Apr. 13, 2004) ("The Government, through press conferences, press releases, and statements created and/or played to the intense publicity surrounding

detrimental to Mr. Sterlingov's ability to mount a complete defense in the face of the Government's prosecutorial juggernaut.[48]

IV.     **Any Gag Order Violates Mr. Sterlingov's Fifth and Sixth Amendment Rights**

Mr. Sterlingov has a right to publicly discuss his case for investigative and fundraising purposes as part of his constitutional right to put on a complete defense.[49] He also has a Sixth Amendment right to a public trial.[50]

The Defense's public comments on this case have resulted in people approaching them with information related to the accuracy of the Chainalysis Reactor software and stories of false arrests based on faulty Chainalysis tracing that are quietly dropped before they show up in any official record. It has also helped raise funds for his defense. When the Blockchain community learned of this case, experts came forward to work on this case. The Defense's public comments have greatly aided Mr. Sterlingov's ability to mount a defense and inform interested members of the public of the matters of public policy related to this case and the DOJ's war on digital currencies.

## Conclusion

The Court should deny the Government's motion for an Order to Show Cause.

---

the SEC investigation and civil suits… Consequently, in the court's estimation, fairness called for an opportunity for some response from the defense.").

[48] *See United States v. Carmichael*, 326 F. Supp. 2d 1267, 1270 (M.D. Ala. 2004) ("the government has not convinced the court that such drastic relief is warranted.")).

[49] *See Carmichael*, 326 F. Supp. 2d at 1296 ("'Whether rooted in the Due Process Clause . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.'" (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, (1986) (citations omitted))); *id.* at 1298 ("However, the rules elucidated in these cases strongly imply that a criminal defendant has a right protected by the Fifth and Sixth Amendments to look for material evidence and witnesses."); *id* at 1270 ("the harm posed by the website does not warrant restricting Carmichael's Fifth and Sixth Amendment right to investigate his case by using the website to gather evidence.")).

[50] *See e.g. United States v. Mallory*, 40 F.4th 166, 175 (4th Cir. 2022).

Dated: June 14, 2023
New York, New York

Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
michael@torekeland.com

*Counsel for Defendant Roman Sterlingov*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June 2023, the forgoing document was filed with the Clerk of Court using the CM/ECF System, and sent by email to the attorneys for the Government listed below:

<u>s/ Tor Ekeland</u>

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov