UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S SUPPLEMENTAL NOTICE AND MOTION *IN LIMINE* TO ADMIT MT. GOX RECORDS

The United States respectfully files this supplement to the Government's Notice and Motion *in Limine* To Admit Certain Government Exhibits, ECF No. 62, to address the admissibility of Mt. Gox account records. Because the defendant has never challenged the Mt. Gox account records in a way that would allow the government to formally respond, the government files this supplemental notice to address the defendant's new challenge.

### ARGUMENT

The defendant has not filed any motion to exclude the Mt. Gox account records in this case, with a proposed order as required under the Local Rules and an opportunity for the government to respond. Nor did the defendant articulate any opposition to the Mt. Gox account records at all in his perfunctory 2-page Opposition to the government's original Notice and Motion *in Limine* seeking to admit them. *See* ECF No. 71. Instead, the defendant raised his opposition for the first time on June 7, 2023, in a filing to which the government was not even a party—the defendant's opposition to non-party Chainalysis's motion to quash the subpoena ad testificandum to Chainalysis CEO Michael Gronager, *see* ECF No. 131, at 1 (asking the Court to "bar any use at trial of the Mt. Gox data" as a remedy for not being able to call a witness from Chainalysis)—

depriving the government of an opportunity to respond. In any event, the defendant's procedurally improper challenge fails on the law and the facts.

The standard for authentication under Rule 901 is "minimal." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). "The threshold for proof of authenticity is low." *Klayman v. Judicial Watch, Inc.*, 297 F. Supp. 3d 80, 84 (D.D.C. 2018). The rule merely states that in order to authenticate evidence, the proponent must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

Here, the Mt. Gox account records are self-authenticating under Fed. R. Evid. 902. Whereas Rule 901 presents a non-exhaustive list of ways a proponent could satisfy the rule's requirements, Rule 902(a) provides categorically that certain items of evidence "are self-authenticating" and "require no extrinsic evidence of authenticity in order to be authenticated." Fed. R. Evid. 902(a). That rule means what it says: if the proponent has produced certifications meeting the requirements of any one of the 14 certifications outlined under the rule, then "no extrinsic evidence of authenticity" is required. *Id.* Here, the government has produced certifications meeting the requirements of Fed. R. Evid. 902(13) and 902(14). The defendant is not challenging those certifications. That should be the end of the Court's analysis.

The government writes further only to reiterate the legal foundation for the records' admissibility and to address the defendant's legally insufficient and factually inaccurate claims of unspecified errors in the Mt. Gox account records.

1. **Certifications Establish the Authenticity and Admissibility of the Self-Authenticating Mt. Gox Account Records Under Fed. R. Evid. 902(13) and 902(14)**

As outlined in the government's original filing, ECF No. 62, at 19-22, which is incorporated by reference herein, the government intends to introduce business records from Mt. Gox, a former virtual currency exchange that went bankrupt in 2014. Specifically, the government

intends to admit records for five Mt. Gox accounts with the following usernames: volfprius, roso987341870, peternfs, kolbasa, and aurumxchange.[1]

The roso987341870 account was the defendant's true-name account. It was opened in the name of "Roman Sterlingov," registered to an address in Gothenburg, Sweden, and includes a copy of the defendant's driver's license that was uploaded to Mt. Gox. *See* Ex. 1 (Photograph uploaded to roso987341870 Mt. Gox account). The aurumxchange account corresponds to the Mt. Gox account held by AurumXchange, another now-defunct virtual currency exchange. The remaining three accounts, volfprius, peternfs, and kolbasa, are accounts that were used to pay for the domain registration for the original Bitcoin Fog clearnet domain, www.bitcoinfog.com, which directed users to the Bitcoin Fog mixing service hosted on the darknet. The evidence at trial will show that volfprius, peternfs, and kolbasa were controlled by the defendant. For each account, the Mt. Gox account records contain a "notes.txt" document summarizing the account records, accompanied by voluminous spreadsheets logging account activity such as "transactions.csv" or "ip_log.csv,"[2]

---

[1] These specific account records have been produced in discovery. Pursuant to a defense request, the government has offered to allow a designated defense expert to inspect the full Mt. Gox database in the possession of the U.S. government (without conceding the relevance of any unrelated Mt. Gox records). The full Mt. Gox database contains potentially thousands of irrelevant and unrelated third-party account records, including third-party individuals' personal information, financial information, identification information, and other sensitive personal information. The full Mt. Gox database and its contents are designated as SENSITIVE pursuant to the terms of the Protective Order entered in this case, ECF No. 18, and may not be publicly disseminated or discussed. The government has specific concerns arising out of defense counsel's discussion of SENSITIVE-designated materials in their podcast appearances. *See* What Bitcoin Did, *The Case of Roman Sterlingov with Tor Ekeland & Mike Hassard*, at 39:50, available at https://www.youtube.com/watch?v=ITiUyFuk1vA (defense counsel describing contents of "a 40 or 50 page report that they had commissioned by, I forget the name of the organization, National Institute for Cyber Forensics or something like that," corresponding to a SENSITIVE-designated report commissioned by the National Cyber-Forensics & Training Alliance (NCFTA) which was produced in discovery).

[2] CSV or "comma-separated values" is a file format for data that is commonly displayed in spreadsheet form. *See Gaines v. L. Off. of Patenaude & Felix, A.P.C.*, 2014 WL 3894345, at *1 (S.D. Cal. July 2, 2014) ("CSV . . . is a universal format that is commonly used and is searchable").

plus (for roso987341870) a "user_upload_files" folder containing photographs uploaded for proof of identity and proof of residence. *See* Ex. 2 ("notes.txt" files for each of the five Mt. Gox accounts).

As stated in the government's original filing:

> The government will introduce records from Mt. Gox, a former virtual currency exchange. Mt. Gox operated from 2010 through 2014 until it filed for bankruptcy following the loss of hundreds of millions of dollars worth of bitcoin. As part of the bankruptcy proceedings, Mt. Gox's assets and records were transferred to the control of a trustee, led by Japanese attorney Kobayashi Nobuaki, the head of the Insolvency/Restructuring Practice Group at the Japanese law firm Nagashima Ohno & Tsunematsu.
>
> In 2019, pursuant to a request from the United States, the Tokyo District Prosecutors Office obtained from Mr. Nobuaki a 4TB hard drive containing Mt. Gox records, including a copy of the Mt. Gox customer database. The assistant officer for the Tokyo District Prosecutor's Office who took possession of the drive from Mr. Kobayashi completed a certification of the chain of custody, including the date and location of the transfer. Another assistant officer with the Public Prosecutors Office then took possession of the drive to make a forensic image of the contents. That officer completed another certification noting the transfer in the chain of custody and describing the imaging process. The certification, tracking the language of Fed. R. Evid. 902(14), indicates that the officer copied the drive using standard forensic software and confirmed that the hash value of the image matched the hash value of the original. The specific hash value is further noted in the certification. These certifications, in both the original Japanese and the English translation, are being provided to defense counsel in discovery. The hard drive containing the forensic image was then transferred from Japan to the United States, where it has been maintained as evidence in FBI custody.
>
> The Mt. Gox records on the hard drive included a SQL database of Mt. Gox customer records. SQL, or "Structured Query Language," is a computer language used for database management. A SQL database is a structured database that is commonly used by businesses, including financial institutions, to store records pertaining to customer accounts and business activity. SQL databases are made up of one or more tables, each of which include rows and columns of data. SQL databases allow businesses to efficiently store and organize data. Information stored in a SQL database can be viewed by manually viewing the entries in the database, or can be retrieved through SQL queries. SQL queries are searches of the SQL database for specific search terms. For example, a SQL database query for "user x" can produce all of the records for "user x" in the queried SQL Database.
>
> Law enforcement personnel familiar with the Mt. Gox SQL database conducted SQL queries to retrieve records related to the user accounts roso987341870, volfprius, peternfs, and kolbasa. Law enforcement has tested these SQL database queries for the Mt. Gox SQL database, including by comparing the

>returns to the raw records in the database, and has confirmed that the retrieved information is an accurate reflection of the records in the database. This SQL database query is an electronic process that produces an accurate result, within the meaning of Fed. R. Evid. 902(13). The government is in the process of obtaining a records certification pursuant to Fed. R. Evid. 902(13) to authenticate the resulting records from the SQL database query.

ECF No. 62, at 20-21. The government has since produced the records certifications referenced above to the defense, and is attaching them hereto—including the certification from the Tokyo District Prosecutor's Office official who took possession of the Mt. Gox customer database from the Japanese bankruptcy trustee, attorney Kobayashi Nobuaki, *see* Ex. 3 (Miyazaki Cert. in Japanese and English translation); and the certification from FBI Special Agent Kenneth W. Keller, who used a SQL database query to retrieve the records for the five user accounts that the government intends to admit at trial: volfprius, roso987341870, peternfs, kolbasa, and Aurumxchange, *see* Ex. 4 (Keller Cert.).

Under Fed. R. Evid. 902(13) and 902(14), these Mt. Gox account records are self-authenticating. Nothing further is required for authentication, even over defendant's objection. The defendant is not challenging the sufficiency of the government's certifications. Rule 902 is clear that self-authenticating evidence "require[s] no extrinsic evidence of authenticity in order to be admitted," Fed. R. Evid. 902, meaning that as long as the proponent has produced a certification meeting the requirements of 902(13) or 902(14), that is sufficient in itself to authenticate evidence even over the opposing party's objection. *See, e.g.*, *United States v. Scott*, 2014 WL 2808802, at *3 (E.D. Va. June 20, 2014) ("The evidence in the present case consists of inscriptions that purport to have been applied to the items in the course of business and they indicate origin, and thus fall squarely within Rule 902(7). The Defendant's assertion that 'the likelihood of inauthenticity is much greater with inscriptions indicating solely geographic origins' makes it so that 'the reasoning

5

supporting Rule 902(7) does not apply to such inscriptions' cannot be reconciled with the Rule's text, which explicitly lists 'inscription[s] . . . indicating origin' as self-authenticating.  Even if the risk of inauthenticity for 'Made in China' inscriptions is higher than for trademark inscriptions, the Federal Rules of Evidence have decided that such inscriptions are still sufficiently trustworthy to be self-authenticating.").  To hold otherwise would convert the methods of self-authentication listed under Rule 902 into a list of optional stipulations between adverse parties.

The Mt. Gox account records are computer-generated records and constitute business records of Mt. Gox (and now of the bankruptcy trustee) that are admissible under the hearsay exception for regularly conducted activity, pursuant to Fed. R. Evid. 803(6) and 902(11) and 18 U.S.C. § 3553.  *Cf.* ECF No. 73, at 25-27 (addressing admissibility of blockchain records under hearsay exception and as computer-generated non-hearsay).  Thus, they are self-authenticating, relevant and admissible records.  The Court should rule *in limine* that such records can be admitted at trial.

### 2. The Defendant's Generalized, Multiple-Hearsay Allegations Go to the Weight of the Evidence and Not Authenticity

The defendant has challenged the authenticity of the Mt. Gox account records the government intends to introduce at trial.  The defendant's sole basis for challenging these records appears to be a passage in the book *Tracers in the Dark* by WIRED journalist Andy Greenberg, which vaguely suggests, through multiple layers of hearsay, that data identifying the "counterparty" in certain trading records was deleted when Mt. Gox was hacked in 2014.  *See* ECF No. 131, at 5-6 (block-quoting *Tracers in the Dark*).  The defendant has offered no further explanation about how this unverified, multiple-hearsay allegation about the general *deletion* of Mt. Gox account records casts doubt on the five specific customer account records at issue in this

case. In any event, the defendant's argument goes to the weight of the evidence at trial; it is irrelevant to the threshold question of authenticity.

It is well-established that the standard for authentication is "minimal." *Gagliardi*, 506 F.3d at 151; *see also United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012) ("Only a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury."); *United States v. Jardina*, 747 F.2d 945, 951 (5th Cir. 1984) ("When confronted with evidence of questionable origin, the court should admit the evidence if a prima facie showing of authenticity is made. . . . 'Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court.'") (quoting *United States v. Goichman*, 547 F.2d 778, 784 (3d Cir. 1976)); *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury. . . . The burden to authenticate under Rule 901 is not high—only a *prima facie* showing is required."). Rule 901 requires only that "the proponent must produce evidence *sufficient to support a finding* that the item is what the proponent claims it is." Fed. R. Evid. 901(a) (emphasis added). As the D.C. Circuit has explained, this means that, in deciding the admissibility of disputed records, "the question is not whether the government conclusively proved their authenticity," but "only whether the government's showing permitted a reasonable juror to find that the evidence is what its proponent claims." *United States v. Khatallah*, 41 F.4th 608, 623 (D.C. Cir. 2022) (affirming admission of disputed telephone records over defendants' claims of error and inconsistency in records) (citations omitted). Once the government has met its threshold burden under Rule 901, the defendant's arguments "go to the *weight* of the evidence—not to its *admissibility*." *Id.* (citation omitted; emphasis in original); *see also United States v. Ortiz*, 776 F.3d 1042, 1045 (9th Cir. 2015)

7

("Once the offering party meets this burden, the probative value of the evidence is a matter for the jury.") (citation omitted).

As a preliminary matter, the defendant's arguments about the accuracy of the Mt. Gox account records do not actually address the actual question of authenticity, namely, whether "the item is what the proponent claims it is." Fed. R. Evid. 901(a). Here, the government is claiming the Mt. Gox account records to be introduced at trial *are* authentic Mt. Gox account records obtained from the Japanese bankruptcy trustee. Nothing about the defendant's allegations tends to disprove that the Mt. Gox account records produced in discovery and intended to be admitted at trial are anything other than an authentic copy of records obtained from the Japanese bankruptcy trustee.

Further, the party seeking admission is not obligated to disprove any question about the accuracy or integrity of the underlying records in order to secure their admission. For example, in *United States v. Safavian*, 435 F. Supp. 2d 36 (D.D.C. 2006), Judge Friedman rejected a similar challenge to the authentication of email records which, the defense claimed, could have been altered. *See id.* at 39-42. Judge Friedman began by restating the minimal threshold burden for authentication: "the Court need not find that the e-mails are necessarily what the proponent claims, only that there is evidence sufficient for the jury to make such a finding." *Id.* at 39. After finding that the emails could be authenticated through examination of distinctive characteristics and comparison to specimens otherwise authenticated,[3] *id.* at 40-41, he rejected the defense challenge based on the possibility of alteration:

> The defendant's argument is more appropriately directed to the weight the jury should give the evidence, not to its authenticity. While the defendant is correct that earlier e-mails that are included in a chain—either as ones that have been forwarded

---

[3] Notably, the emails at issue in *Safavian* were not self-authenticating, *see* 435 F. Supp. 2d at 39, in contrast to the Mt. Gox business records at issue here.

8

> or to which another has replied—may be altered, this trait is not specific to e-mail evidence. It can be true of any piece of documentary evidence, such as a letter, a contract or an invoice. . . . The *possibility* of alteration does not and cannot be the basis for excluding e-mails as unidentified or unauthenticated as a matter of course, any more than it can be the rationale for excluding paper documents (and copies of those documents). . . . The defendant is free to raise this issue with the jury and put on evidence that e-mails are capable of being altered before they are passed on. Absent specific evidence showing alteration, however, the Court will not exclude any embedded e-mails because of the mere possibility that it can be done.

*Id.* at 41. The ruling in *Safavian* is consistent with decisions in the D.C. Circuit and elsewhere. *See, e.g.*, *United States v. Sandoval*, 709 F.2d 1553, 1554-55 (D.C. Cir. 1983) (affirming admission of tape recordings over defense objection that recordings could have been altered, explaining: "The standard for authentication is that the possibilities of misidentification and adulteration must be eliminated, not absolutely, but as a matter of reasonable probability") (citations and alterations omitted); *Gagliardi*, 506 F.3d at 151 (affirming admission of emails and chats over defense objection that they could have been edited or fabricated, explaining: "The proponent need not rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be") (citations omitted).

Indeed, the 2017 amendments to Rule 902 anticipate this exact scenario, and confirm that *authentication* of self-authenticating records pursuant to the new Rules 902(13) and 902(14) is separate from any challenge to the *reliability* of the underlying data:

> A certification under this Rule can establish only that the proffered item has satisfied the admissibility requirements for authenticity. The opponent remains free to object to admissibility of the proffered item on other grounds—including hearsay, relevance, or in criminal cases the right to confrontation. For example, assume that a plaintiff in a defamation case offers what purports to be a printout of a webpage on which a defamatory statement was made. Plaintiff offers a certification under this Rule in which a qualified person describes the process by which the web page was retrieved. Even if that certification sufficiently establishes that the webpage is authentic, defendant remains free to object that the statement on the webpage was not placed there by defendant. Similarly, a certification authenticating a computer output, such as a spreadsheet, does not preclude an

9

> objection that the information produced is unreliable—the authentication establishes only that the output came from the computer.

Fed. R. Evid. 902(13), advisory committee note to 2017 amendment.

Here, as in *Safavian*, the defendant has not offered any "specific evidence" about alleged alterations of the five Mt. Gox account records actually at issue in this case. At most, the quoted passage from *Tracers in the Dark* suggests that the names of some "counterpart[ies]" might have been deleted from Mt. Gox databases. But the defendant has not identified missing "counterparty" information in any of the five customer account records at issue here. Indeed, the defendant points to no specific inaccuracies or missing information from these five accounts at all. Distilled to its essence, the defendant's argument is nothing more than the claim that if a bank or other financial institution has suffered any kind of computer intrusion—a phenomenon that occurs with unfortunate frequency these days—then customer account records from that financial institution cannot be authenticated. There is no legal authority for such a restrictive rule.

### 3. Additional Corroboration by Email Records and Blockchain Transaction Records Show There Was No Deletion of the Relevant Mt. Gox Account Records

Any further doubt about the *authenticity* of the Mt. Gox account records should be dispelled by the government's ability to corroborate those records with email transaction confirmations received by the defendant himself and by verifying the recorded transactions against the public Bitcoin blockchain. *See, e.g.*, *Khatallah*, 41 F.4th at 623 (relying in part on fact that "witness testimony corroborated that certain calls documented in the records actually were made by or to Khatallah"); *Safavian*, 435 F. Supp. 2d at 40 (relying in part on comparison with "specimens which have been otherwise authenticated" including "those e-mails that already have been independently authenticated under Rule 901(b)(4)").

For example, one of the key sequences of transactions in this case involves the defendant depositing 89.87 euros into his Mt. Gox account on October 11, 2011, converting those funds into

10

Bitcoin, and then sending 36 Bitcoin to an unhosted wallet on October 19, 2011. Those funds were transferred through a number of intermediary accounts and ultimately were used to pay the registration fees for Bitcoin Fog's clearnet website, www.bitcoinfog.com.

Mt. Gox account records[4] show the deposit of 89.87 euros credited to the defendant's Mt. Gox account, roso987341870, as of 10/12/2011 at 2:08 a.m. (time zone is not specified):

| USER_ID | USER_WALLET | INDEX | TIME | TYPE | AMOUNT |
|---|---|---|---|---|---|
| 908f8fe5-d8bb-4e7b-a7e9-d1120c78b5b7 | 19e6110a-57ac-4a9a-97a9-21b08d966f27 | 6 | 10/12/2011 2:08 | deposit | 89.87 |

| BALANCE | MEMO | IP_ADDRESS | REFERENCE_TYPE | REFERENCE | CURRENCY |
|---|---|---|---|---|---|
| 90.14867 | STERLINGOV,ROMAN MTG92441X /I05P11277160170 | 50.97.137.36 | Money_Bank_Entry | [a55cd645-8397-4cb2-81e5-576551a36eaa] | EUR |

The defendant received a confirmation email dated 10/11/2011 at 10:08 p.m. (time zone not specified) at his plasma@plasmadivision.com email address. The confirmation email shows the same 89.87 euro deposit with a matching transaction "reference" number (beginning a55cd645). These details independently confirm and corroborate the accuracy of the Mt. Gox account records:

---

[4] The Mt. Gox customer account records at issue consist of spreadsheets and certain additional files, such as the photograph of the defendant's driver's license uploaded to Mt. Gox for KYC purposes. The excerpts in this filing are exact copies of relevant spreadsheet entries, subject to minimal formatting to fit to the width of the page.

```
Subject: [mtgox] Funds Received
From: Mt.Gox <info@mtgox.com>
Date: 10/11/2011, 10:08 PM
To: roso987341870 <plasma@plasmadivision.com>

Dear roso987341870,

We have deposited 89.87000 € into your account roso987341870.

    Transaction Reference: a55cd645-8397-4cb2-81e5-576551a36eaa
    Transaction Date: 2011-10-06

Please note that any fees that may have been deducted by your bank, intermediate bank or by
the payment processor are not provided in this summary. If you plan to deposit funds in
different currencies, please make sure to review your wallet/deposit behaviors on your
accounts settings page.

-------------------------------------
Transaction Details

STERLINGOV,ROMAN
MTG92441X       /I05P11277160170


- The Mt.Gox Team
```

Next, Mt. Gox account records show that the defendant withdrew 36 Bitcoin from his Mt. Gox account on October 19, 2011 at 12:29 p.m. (time zone not specified). The 36 Bitcoin was sent to an unhosted Bitcoin wallet address beginning "1JzbuKkq":

| USER_ID | USER_WALLET | INDEX | TIME | TYPE | AMOUNT |
|---|---|---|---|---|---|
| 908f8fe5-d8bb-4e7b-a7e9-d1120c78b5b7 | 6949ad0d-4ebe-4bbf-bf43-c8c5d3799056 | 80 | 10/19/2011 12:29 | withdraw | 36 |

| BALANCE | MEMO | IP_ADDRESS | REFERENCE_TYPE | REFERENCE | CURRENCY |
|---|---|---|---|---|---|
| 7.93386033 | Bitcoin withdraw to 1JzbuKkqxoK6yZFi9TaCHC778U2NQyJtrg | 89.20.136.214 | Money_Bitcoin_Block_Tx | [41d901c4350e53dee523a7327eda94e7c39647cb7b10eae87a576a86ef9fdf3d] | BTC |

The defendant received a confirmation email on October 19, 2011 at 8:29 a.m. (time zone not specified) at his plasma@plasmadivision.com email address. The confirmation email shows that

12

there was a "withdrawal" with a matching transaction "reference" number (beginning 2a848a90) that occurred on October 19, 2011 at 12:29:43 GMT, *i.e.* Greenwich Mean Time or Universal Coordinated Time (UTC). Again, the confirmation email confirms and corroborates the accuracy of transactional information contained in the Mt. Gox account records:

```
Subject: [Mt.Gox] Withdraw from your account roso987341870
From: Mt.Gox <info@mtgox.com>
Date: 10/19/2011, 8:29 AM
To: roso987341870 <plasma@plasmadivision.com>

Dear roso987341870,

There has been a withdrawal from your Mt.Gox account:

Transaction reference: 2a848a90-10f1-48b9-bc2c-fa82423907f1
Date: 2011-10-19 12:29:43 GMT
IP: 89.20.136.214

You can access your account history for more details.

Please contact us as soon as possible by replying to this email if you did not request this
withdrawal.

Thanks,
The Mt.Gox Team
```

The October 19, 2011 transaction is also recorded on the Bitcoin blockchain,[5] showing that on October 19, 2011, at approximately 12:41 p.m. UTC, 36 Bitcoin was received by the Bitcoin wallet address beginning "1JzbuKkq":

---

[5] The attached Bitcoin blockchain transaction records are from the publicly available blockchain explorer mempool.space. The same blockchain records are viewable using numerous other publicly available blockchain explorers, as well as proprietary blockchain analysis software. In all instances, the ultimate source of transaction data is the publicly available distributed ledger known as the Bitcoin blockchain.



From there, the Bitcoin was rapidly transferred through a second unhosted address before being deposited back into Mt. Gox in the account belonging to the user peternfs. Specifically, blockchain records show that on the same day, at approximately 21:16 UTC, the Bitcoin wallet "1JzbuKkq" sent these funds minus transaction fee, amounting to 35.9995 Bitcoin, to a second Bitcoin wallet with address beginning "14RzfWf9":



At approximately 21:47 UTC the same day, Bitcoin wallet "14RzfWf9" sent these funds minus transaction fees, amounting to 35.9990 Bitcoin, to yet another Bitcoin address beginning "1HvkjK2L":

14



On the same date, Mt. Gox account records for the peternfs account record a deposit of 35.9990 Bitcoin into the account on October 19, 2011 at 22:45 UTC from the Bitcoin wallet "1HvkjK2L":

| USER_ID | USER_WALLET | INDEX | TIME | TYPE | AMOUNT |
|---|---|---|---|---|---|
| a16d5abe-2308-469e-baf7-274cc4177ff9 | 80f0d667-2567-42dc-844a-b3dbd985e147 | 3 | 10/19/2011 22:45 | deposit | 35.999 |

| BALANCE | MEMO | IP_ADDRESS | REFERENCE_TYPE | REFERENCE | CURRENCY |
|---|---|---|---|---|---|
| 35.999 | 1HvkjK2L2Hy6CF13KgpcWzvfVQfRKunbWq | 50.97.137.36 | Money_Bitcoin_Block_Tx_Out | [0fc05ba1866f4f648f57a04e43cb44b345cbefee3414bb02d3773613b5abfc53:0] | BTC |

In other words, the audit trail from the defendant's true-name account (roso987341870) to the first of his alias accounts (peternfs) is confirmed through email confirmations and publicly available blockchain records. Similar analysis applies to other transactions. There are no missing "counterpart[ies]," nor are there any other indications of data deletion from the five Mt. Gox accounts at issue. Thus, even if the government were required to go beyond the requirements of Fed. R. Evid. 901(a) and the self-authenticating certifications provided for by Fed. R. Evid. 920(13) and 902(14), the external corroboration provided by the defendant's own email records

15

and the Bitcoin blockchain would be more than sufficient "to support a finding" that the Mt. Gox account records "[are] what the proponent claims [they are]." Fed. R. Evid. 901(a).

## CONCLUSION

For the foregoing reasons, the defendant's challenge to the Mt. Gox account records should be rejected, and the Court should rule that they are authenticated and admissible at trial over the defendant's objection.

                                                         Respectfully submitted,
                                                         MATTHEW M. GRAVES
                                                         UNITED STATES ATTORNEY
                                                         D.C. Bar No. 481052

BY:    */s/ Christopher B. Brown*
           Christopher B. Brown, D.C. Bar No. 1008763
           Assistant United States Attorney
           U.S. Attorney's Office for the District of Columbia
           601 D Street, N.W.
           Washington, D.C. 20530
           (202) 252-7153
           Christopher.Brown6@usdoj.gov

           */s/ C. Alden Pelker*
           C. Alden Pelker, Maryland Bar
           Trial Attorney, U.S. Department of Justice
           Computer Crime & Intellectual Property Section
           1301 New York Ave., N.W., Suite 600
           Washington, D.C. 20005
           (202) 616-5007
           Catherine.Pelker@usdoj.gov