# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

_____

United States of America,

      Plaintiff,

        v.

Roman Sterlingov,

      Defendant.

_____

**21 - CR - 399 (RDM)**

### Defendant Roman Sterlingov's Opposition to Government's Supplemental Notice and Motion in Limine to Admit Mt. Gox Records – Dkt. 140

Defendant Roman Sterlingov, through his attorneys, submits this Opposition in response to the Government's Supplemental Notice and Motion In Limine to Admit Mt. Gox Records. For the reasons argued below, the Government cannot authenticate the Mt. Gox records by using a certification from the Mt. Gox bankruptcy trustee in Japan.

The bankruptcy trustee neither generated the records, nor kept them in the regular course of business, nor had anything to do with the operation of Mt. Gox. As an outsider, the trustee lacks sufficient knowledge, and is an after the fact custodian of the data and nothing more. The Government proffers no certification or witness from anyone who worked at Mt. Gox, or with sufficient knowledge of the data's generation and chain of custody to authenticate it.

The public record indicates that the Mt. Gox records are inauthentic and inadmissible. The primary custodian of the Mt. Gox records during the pendency of Mt. Gox's existence, Mark Karpeles, manipulated the records the Government seeks to certify and admit. A Japanese court sentenced Mr. Karpeles to prison for falsifying the Mt. Gox records.

The Government, without any sound basis, refuses to produce the Mt. Gox records to the Defense in a workable manner. The Government claims they are "Sensitive" under the protective order and that the Defense may only access them at FBI offices in Washington, D.C., after submitting to FBI clearance.[1] This is despite hackers leaking a version of the database years ago on the public internet.[2] This is unduly burdensome, costly, and prevents the Defense from properly forensically analyzing the records. It puts the Defense at the scheduling whim of the Government, requires travel time and expense both for counsel and experts, and does not allow for full forensic analysis from an expert's laboratory.

This Court should exclude the Mt. Gox records for their inauthenticity and inadmissibility or, in the alternative, order that the Government produce the full set of Mt. Gox records it used in this case to the Defense for unfettered examination, hold a hearing on this evidence, and order the Government to produce a witness or witnesses for cross examination who actually worked at Mt. Gox and handled the data or with sufficient of its generation and chain of custody, which the Japanese bankruptcy trustee lacks.

## BACKGROUND

The Government's case relies heavily on data from the defunct Bitcoin exchange Mt. Gox. In its Criminal Complaint, it prominently displays a diagram listing a multi-hop transaction trace between Mt. Gox accounts, alleging that Mr. Sterlingov registered the domain name for www.bitcoinfog.com.[3]

---

[1] Letter from Government to the Defense, June 12, 2023.
[2] *See, e.g.,* Alex Hern, Mt. Gox Database Leaked Online as Hackers Crowdsource Clues, The Guardian, Mar. 10, 2014, available at https://www.theguardian.com/technology/2014/mar/10/mtgox-bitcoin-database-leaked-online-as-hackers-crowdsource-clues.
[3] Dkt. 1 at 8.



The Government also uses the Mt. Gox data to attribute the online moniker "Akemashite Omedetou" to Mr. Sterlingov. According to the Criminal Complaint, someone using the moniker on BitcoinTalk.org chat forums claimed to be the owner and operator of Bitcoin Fog.[4]

Mt. Gox operated between 2010 and 2014.[5] Mt. Gox stands for "Magic the Gathering Online Exchange" as it was initially created to trade Magic the Gathering game cards before becoming one of the first Bitcoin exchanges, if not the first. Because it was the only viable Bitcoin exchange in the early days of Bitcoin, as an early adopter of Bitcoin, Mr. Sterlingov had an account with Mt. Gox.

From its inception, Mt. Gox was a target for hackers and suffered serious information security compromises.[6] Additionally, in early 2014, Mt. Gox was hacked and hundreds of millions of dollars of Bitcoin were stolen. This forced Tokyo-based Mt. Gox into bankruptcy.[7]

In 2015, Michael Gronager had just started Chainalysis alongside Jonathan Levin. He begins working for the Mt. Gox bankruptcy trustee in Japan to see if he can trace the stolen

---

[4] *Id* at 7.
[5] *See e.g.* Jake Frakenfield, *What Was Mt. Gox? Definition, History, Collapse, and Future* INVESTOPEDIA (May 30, 2023) https://www.investopedia.com/terms/m/mt-gox.asp.
[6] *Id.*
[7] *Id.*

Bitcoin.[8] As part of his investigation, the trustee sent Mr. Gronager an encrypted thumb drive containing data from Mark Karpelès, the CEO of Mt. Gox.[9]

Mr. Karpelès has a history of data fraud. On May 14, 2010, the Crown Court of Paris, after trying Mr. Karpelès in absentia, found him guilty of:  (1) fraudulent access to a data processing system and (2) fraudulent changes to data contained in an automated data processing system. The Crown Court sentenced him to one year of imprisonment.[10]

In 2015, Mr. Karpelès was arrested in Tokyo. According to a statement from the Tokyo Metropolitan Police Department, Mr. Karpelès "had 'unjustly inflated the balance' of an account held under his name by manipulating transaction records on a system that Mt. Gox used to swap Bitcoins for dollars," and that "[h]e created false information that $1 million had been transferred into the account, when in fact it had not been".[11]

In 2019, Mr. Karpelès was found guilty of illegally altering Mt. Gox's electronic records.[12] He was sentenced to two-and-a-half years in prison with a four-year suspension (meaning that if he committed no crimes within four years, he would serve no more jail time).[13]

In June 2020, a Japanese high court affirmed the lower court's conviction.[14] Upon information and belief Mr. Karpelès has been working closely with DOJ and was also on the phone with Mr. Sterlingov's arresting officer at the time of Mr. Sterlingov's arrest.

___

[8] *Tracers in the Dark:  The Global Hunt for the Crime Lords of* Cryptocurrency, Andy Greenberg, Doubleday (2022).
[9] *Id.*
[10] Crown Court of Paris, *Portha et al. v. Karpeles*, Case 0822491118, Verdict Passed May 14, 2010 (available at https://www.documentcloud.org/documents/1227216-karpeles-english.html).
[11] Jonathan Soble, *Mark Karpeles, Chief of Bankrupt Bitcoin Exchange, Is Arrested in Tokyo*, NEW YORK TIMES Aug 1, 2015 (last accessed June 6, 2023) https://www.nytimes.com/2015/08/02/business/dealbook/mark-karpeles-mt-gox-bitcoin-arrested.html.
[12] Ben Dooley, *Bitcoin Tycoon Who Oversaw Mt. Gox Implosion Gets Suspended Sentence*, NEW YORK TIMES (March 15, 2019) https://www.nytimes.com/2019/03/15/business/bitcoin-mt-gox-mark-karpeles-sentence.html.
[13] *Id.*
[14] Yuri Kageyama, *Japan court backs Karpeles conviction for data manipulation*, TECH XPLORE, (June 12, 2020), https://techxplore.com/news/2020-06-japan-court-karpeles-conviction.html.

4

Mr. Karpelès is the original and custodial source of the Mt. Gox data foundational to the Government's case. In 2015, Chainalysis co-founder Michael Gronager met personally with Mr. Karpelès in Tokyo to discuss the incompleteness, deletions, and missing counterparties Mr. Gronager saw in the Mt. Gox data.[15] As described by Andy Greenberg in his non-fiction book *Tracers in the Dark: The Global Hunt for the Crime Lords of Cryptocurrency*:

> Mt. Gox had, by the time of that meeting [between Mark Karpelès and Michael Gronager], been bankrupt for nearly a year – a year that Karpelès had spent under investigation by Japanese police while also being accused of gross incompetence and even outright theft by hordes of angry Bitcoin users. Gronager remembers that the Frenchman seemed mildly disheveled, in need of a haircut, and somewhat broken in spirit – "on hold," as Gronager put it, resigned to yet another meeting in the seemingly endless cycle of meetings that had become his life, all as a result of his company's epic downfall.
>
> Weeks before, Gronager had received an envelope in the mail from Mt. Gox's trustees containing a single encrypted USB thumb drive. The drive was supposed to contain all of Mt. Gox's financial data, including records of every trade made on the exchange in its four-year history. But when he decrypted it, Gronager found it was mysteriously incomplete. Many records of trades were missing the "counterparty" – the buyer or seller on the other side of the deal – and many more entries seem to have been deleted altogether.
>
> When Gronager asked Karpelès about those missing entries, Karpelès told him a strange story in his slightly clumsy, French-accented English. In early 2014, he said, around the time of the hacker breach that had stolen Mt. Gox's entire treasury of bitcoins, someone had physically broken into the exchange's server room and accessed its computers. The company hadn't been able to determine who the intruder was, but Karpelès suggested the break-in was related to the theft and believed it had allowed the burglar to delete the data that Gronager had found missing.
>
> And, Gronager asked incredulously, didn't the company have a backup of that data? Karpelès said no, that the backup system hadn't worked either.

---

[15] *Tracers in the Dark: The Global Hunt for the Crime Lords of* Cryptocurrency, Andy Greenberg, Doubleday (2022) at 103.

Gronager could see that Karpelès was almost certainly withholding something, if not outright lying.[16]

Additionally, according to the book, Mr. Gronager suspected Mr. Karpelès of falsifying trades on Mt. Gox by using automated programs to create trades at artificially high prices, "bolstering Bitcoin's exchange rate, and making Mt. Gox seem more dominant in the Bitcoin economy than it truly was."[17] The illegitimacy of the Mt. Gox data raises serious questions about the accuracy of Chainalysis's Reactor blockchain forensic software that incorporates the Mt. Gox data.

The Defense's initial review of the incomplete Mt. Gox records provided by the Government reveals multiple issues indicating that either someone modified the log files exported from the Mt Gox database, or that someone directly tampered with the records. This conclusion is supported by publicly published analysis by WizSec Bitcoin Research that documents problems with the Mt. Gox database and the reliability of their source - convicted Mt. Gox database fraudster Mark Karpeles.[18] The analysis states that when hackers accessed the Mt. Gox servers in 2011 (Mt. Gox was hacked multiple times), they wiped the logs.[19] Without full unfettered access to the records, which the Government is refusing to provide, the Defense cannot properly and efficiently forensically analyze the full extent of the Mt. Gox database's corruption.

**ARGUMENT**

The Defense seeks to exclude all the Mt. Gox data. The Japanese bankruptcy trustee had nothing to do with the operation of Mt. Gox, nor has sufficient knowledge of the data's

---

[16] *Id.* at 103-4.
[17] *Id.* at 104.
[18] *See, e.g.,* Kim Nilsson, The 80,000 Stolen MtGox Bitcoins, WizSec Bitcoin Sexurity Specialists Blog, June 19, 2020, available at https://blog.wizsec.jp/2020/06/mtgox-march-2011-theft.html#more.
[19] *Id.*

generation and chain of custody to attest to its integrity and authenticity. The data's apparent source, Mr. Karpelès, was criminally convicted for fraudulently altering this data.

The Government seeks to prevent the Defense from full unfettered access to the database, under the claim that it is "Sensitive" under the protective order. But nowhere in the protective order does it state that the Government can restrict access to exculpatory evidence by claiming it is "Sensitive." Particularly when a version of the evidence publicly leaked years ago. The Defense seeks the dataset the Government worked with; not the one on the internet. Based on the versions on the internet, the data does not meet the requirements of the Federal Rules of Evidence for admissibility.

## I.       The Mt. Gox Bankruptcy Trustee Cannot Authenticate the Mt. Gox Data

The Government represents to the Court that the data is authentic because the Japanese Mt. Gox bankruptcy trustee certified the copy of the Mt. Gox data in their possession, which they then gave to the Government.[20] But that certification merely attests that the trustee did not alter the data while it was in their possession; it does nothing to certify the authenticity of the data as it was provided to the bankruptcy trustee by Mr. Karpelès or anyone else. Quite simply put, the Mt. Gox bankruptcy trustee did not generate the data, nor was it the custodian of the data when it was generated, or during its time at Mt. Gox. The trustee was not involved with Mt. Gox's business operations in any way. If it was, it would be a party or a witness in the bankruptcy proceedings. The trustee has no knowledge of how the records were generated, nor of the day-to-day business operations of Mt. Gox, nor their record keeping practices.

The public record indicates that the data was corrupt when the Mt. Gox bankruptcy trustee took possession of it - in other words, what the trustee took possession of is inauthentic,

---

[20] *See* Dkt 62 at 20.

and does not meet the admissibility requirements of the Federal Rules of Evidence. The Government claims that "the Mt. Gox account records to be introduced at trial *are* authentic records obtained from the Japanese bankruptcy trustee."[21] That misses the point. The Mt. Gox data was inauthentic before it was handed over to the Japanese bankruptcy trustee. The trustee had nothing to do with the data's generation, custody during its time at Mt. Gox, nor has sufficient knowledge of its generation and custody. The trustee is an after-the-fact hop in the evidentiary chain, not its originator. The trustee is an improper custodian when it comes to authenticating the data and cannot attest to its accuracy in any way.

The Government proffers no certification from anyone involved in the actual operation of Mt. Gox, despite appearing to have worked with Mr. Karpeles. The Government seeks to certify the Mt. Gox records without the certification involving anyone from the business or with sufficient knowledge of it. There is nothing self-authenticating about this convoluted, questionable mishmash of digital evidence that public sources identify as corrupt.

The Government proffers no one that can be cross examined by the Defense as to the authenticity of the Mt. Gox records, whether as business records or otherwise. Hackers romped through Mt. Gox multiple times during the period Mr. Karpeles manipulated its dataset. If Mr. Karpeles is to be believed, hackers altered and deleted Mt. Gox data. The fact that the Government proffers no certification from anyone involved with the operation of Mt. Gox belies their claim that there is a sufficient basis for finding them authentic or admissible under any of the Federal Rules of Evidence.

The Government relies heavily on *United States v. Safavian,* 435 F. Supp. 2d 36 (D.D.C. 2006). In that case, the court rejected the Government's proffered certification of emails under

---

[21] Dkt. 140 at 8.

Federal Rule of Evidence 902(11). The *Safavian* court went on to admit the emails under Federal

Rule of Evidence 901 stating:

> The e-mails in question have many distinctive characteristics,
> including the actual e-mail addresses containing the "@" symbol,
> widely known to be part of an e-mail address, and certainly a
> distinctive mark that identifies the document in question as an e-
> mail. See *United States v. Siddiqui,* 235 F.3d 1318, 1322 (11th
> Cir.2000). In addition, most of the e-mail addresses themselves
> contain the name of the person connected to the address, such as
> "abramoffj@gtlaw.com," "David.Safavian@ mail.house.gov," or
> "david.safavian @gsa.gov." *See, e.g.,* Exhibits 101, 105, 106.
> Frequently these e-mails contain the name of the sender or
> recipient in the bodies of the e-mail, in the signature blocks at the
> end of the e-mail, in the "To:" and "From:" headings, and by
> signature of the sender. The contents of the emails also
> authenticate them as being from the purported sender and to the
> purported recipient, containing as they do discussions of various
> identifiable matters, such as Mr. Safavian's work at the General
> Services Administration ("GSA"), Mr. Abramoff's work as a
> lobbyist, Mr. Abramoff's restaurant, Signatures, and various other
> personal and professional matters.[22]

The Mt. Gox records are nothing like emails, and one cannot simply examine them for

indicia that witnesses may easily be cross examined about. The Government proffers no witness

involved with, or with sufficient knowledge of, their generation and subsequent custody until the

time after Mt. Gox collapsed, that the trustee took possession of the data.

This is not a matter involving the mere possibility of alteration.[23] It is one where the

public record contains evidence of manipulation, containing statements from Chainalysis co-

founder Michael Gronager and independent public analysis by Bitcoin researchers. To say

---

[22] *U.S. v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006).
[23] *Id* at 41. ("The *possibility* of alteration does not and cannot be the basis for excluding e-mails as unidentified or unauthenticated as a matter of course, any more than it can be the rationale for excluding paper documents (and copies of those documents).")

nothing of Mark Karpeles's data fraud convictions in Japan (for manipulating Mt. Gox data) and France.

## II.    The Government Cannot Corroborate the Data

False data produces false results. Garbage in, garbage out. The Government claims it corroborated the authenticity of the Mt. Gox records by matching email confirmations received by the Defendant from Mt. Gox with the public blockchain. But both the Government's expert witnesses at the June 23, 2023, Daubert Hearing testified that they had no evidence of the scientific validity and accuracy of the Chainalysis Reactor tracing software. The proffered expert from Chainalysis also testified that Chainalysis had no internal analysis of its error rates, nor could identify any scientific, peer-reviewed paper establishing the validity of their tracing heuristics and methodologies. The Government's purported corroboration assumes that partial corroboration proves complete corroboration. Their sample set is far too small. The whole dataset is necessary for any analysis of systemic error, random error, manipulation, and deletion. A broken clock tells the time correctly twice a day.

The public record indicates hackers at one point wiped Mt. Gox's logs and deleted records. Unfettered, cost and time efficient access to the full Mt. Gox data set, in its native format, is necessary for any sound forensic review of the dataset. This is not a national security case with top secret evidence. The Defense has neither the time nor the expense for multiple trips to D.C. to review the evidence at the Government's scheduling whim, and subject to its clearance. Nor does the Defense have the money to fly in experts. The data is covered by the Protective Order signed by the Defense and can be easily produced digitally to the Defense.

Nothing in the Government's alleged corroboration of the Mt. Gox data corroborates the IP Addresses the Government attempts to link Mr. Sterlingov to. The native source of the

Government's spreadsheet IP attributions needs to be produced to the Defense for the Defenses' review. The Government relies on the Mt. Gox data for its IP Address analysis allegedly linking the Defendant to Bitcoin Fog, and nothing in its alleged corroboration establishes anything as to the accuracy of the Mt. Gox server logs used to do this, if they even exist. Where, precisely, is this data coming from? What is its chain of custody? How accurate are its IP address attributions? It is impossible to tell without unfettered access to the full Mt. Gox dataset in its native format.

The Government has produced none of this data to the Defense in its native format, despite undersigned counsel having requested it from the start of its work on this case. Instead, the Government is doing everything in its power to deny the Defense unfettered access to the data. [24] The Government proffers no witness from Mt. Gox to attest to the data's authenticity, nor anyone outside of it with sufficient knowledge to authenticate it.

**CONCLUSION**

The Court should exclude the Mt. Gox data in its entirety. In the alternative, the Court should hold a hearing on the matter, and order the Government to produce witnesses that were the actual custodians of the Mt. Gox data when and after it was generated at Mt. Gox, or with sufficient knowledge of its generation and chain of custody at Mt. Gox, for cross examination by the Defense. The Court should also order the Government to produce to the Defense a copy of the Mt. Gox dataset used in this case in its original native format for unfettered forensic analysis by the Defense.

---

[24] *See Wye Oak Tech., Inc. v. Republic of Iraq*, Civil No. 1:10-cv-01182-RCL, at *3 (D.D.C. Apr. 18, 2019) ("The proponent of the evidence must also give the adverse party reasonable notice of the intent to offer the record and make the record and certification available for inspection so that the adverse party has a fair opportunity to challenge the record.").

Dated: July 5, 2023
New York, New York

Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
michael@torekeland.com

*Counsel for Defendant Roman Sterlingov*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of June 2023, the forgoing document was filed with the Clerk of Court using the CM/ECF System, and sent by email to the attorneys for the Government listed below:

<u>s/ Tor Ekeland</u>

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov