# Exhibit 'E'

DocuSign Envelope ID: B101C981-FA99-4B21-A9F7-6649FFB7D6DB

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br>v.<br><br>ROMAN STERLINGOV<br><br>Defendant. | No. 21-cr-399 (RDM) |

**SUMMARY OF QUALIFICATIONS AND EXPECTED TESTIMONY FOR J.W. VERRET**

Mr. Sterlingov intends to call **JOHN WALLACE "J.W." VERRET** JD, MPP, CPA/CFF, CFE, CVA ("Mr. Verret") as an expert witness. His qualifications, along with review and analysis of relevant records, reports, facts, and evidence set forth the basis for his expected testimony.

Mr. Verret is an expert in crypto forensics, financial privacy, forensic accounting, financial forensics, banking regulation, and anti-money laundering. An Associate Professor of Law at the George Mason University Antonin Scalia School of Law, he teaches legal courses in forensic accounting, corporate law, securities law, and banking law/AML. He is a practicing attorney and works in internal accounting investigations and financial regulatory enforcement, the latter with an emphasis on digital currency projects.

Mr. Verret was a Visiting Professor at Stanford Law School, where he taught a course in financial regulation. He has a J.D. from Harvard Law School, a Masters in Public Policy from the Harvard Kennedy School with an emphasis in financial regulation, and a B.S. from Louisiana State University in Accounting. He holds a certificate from the Wharton Business School in the Economics of Blockchain. He is a Certified Public Accountant in the state of Virginia, is

1

Certified in Financial Forensics (CFF) by the AICPA, is a Certified Fraud Examiner (CFE) and a Certified Valuation Analyst (CVA).

Mr. Verret serves on the Financial Accounting Standards Advisory Council, a group that advises the Financial Accounting Standards Board on the development of Generally Accepted Accounting Standards (GAAP) and where he recently advised on the development of a new accounting standard for cryptocurrency reporting by public companies.

He currently serves on the board of directors of the Zcash Foundation, a non-profit that funds research into the zero-knowledge proof cryptography that underlies the privacy enhanced cryptocurrency Zcash and that other cryptocurrencies like Ethereum and Monero use to preserve user financial privacy. He is a columnist on cryptocurrency regulation and privacy for CoinTelegraph.

In 2013 he led the first briefing for members of Congress on the operation of Bitcoin. From 2013-2015, he was a Chief Economist and Senior Counsel for the U.S. House Financial Services Committee, where he works on congressional oversight of the Federal Reserve, Treasury Department, AML/BSA compliance policy reform. While there he leads an investigation into insider trading at the Federal Reserve that results in the resignation of the President of the Federal Reserve Bank of Richmond. In his Senior Counsel role, he leads congressional oversight of the Treasury's Department's policy reforms to sanctions and money laundering and know your customer regulations regarding cryptocurrency. He has testified about financial and banking regulatory matters over a dozen times in the U.S. House of Representatives and the U.S. Senate. He is currently writing a book on cryptocurrency privacy and forensics for MIT Press.

Mr. Verret bases his expert opinions upon his extensive experience in cryptocurrency, financial privacy, financial forensic investigations, and law. His training and experience with federal regulators, combined with his proficiency and practice in cryptocurrency forensics, financial privacy, cryptocurrency, financial forensics, financial forensic investigations, professional accounting, banking regulations, anti-money laundering, and academia more than qualify him to present detailed expert opinion regarding this case.

At the July 19, 2023, hearing on Motions in Limine and *Daubert* challenges, as well as at trial, the Defense expects Mr. Verret to testify regarding the following:

1. Mr. Verret will testify to how the evidence offered by the government is consistent with Sterlingov being early to Bitcoin and using Bitcoin Fog for legitimate personal privacy interests. He will explain why the Government's evidence is not consistent with Mr. Sterlingov running the Bitcoin Fog mixer.

2. Mr. Verret will testify to two key points related to the government's assertion that funds transferred back to Mr. Sterlingov's KYC Kraken accounts from Bitcoin Fog were fees generated by the operator of Bitcoin Fog. First, Mr. Verret will show that the Bitcoin Fog fees were many times larger than the total crypto assets ever attributed to Sterlingov. Second, Mr. Verret will explain that the government has shown no non-crypto assets owned by Mr. Sterlingov, whose source is unaccounted for.

3. Mr. Verret will testify that the account balances in Mr. Sterlingov's seized accounts show less than 10% of the amount that someone running Bitcoin Fog would be expected to have. Mr. Verret will testify that an objective investigator in a case like this would typically use a "net worth analysis" and/or "net income analysis" to show a large

3

DocuSign Envelope ID: B101C981-FA99-4B21-A9F7-6649FFB7D6DB
Case 1:21-cr-00399-RDM   Document 145-5   Filed 07/07/23   Page 5 of 15

magnitude of assets owned by a suspect that had no known income source (net of expenses) or known assets (net of liabilities) to explain them. *See e.g.* Paul Eisenberg, Application of the Net Worth Method In Forensic Accounting Investigations, *International Research Journal of Multidisciplinary Studies*, 2019, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3324282#:~:text=Under%20the%20net%20worth%20method,during%20the%20period%20of%20investigation. Mr. Verret will rely upon his experience and knowledge as a Certified Fraud Examiner and explain that while the Government has done in this type of anti-money laundering analysis in prior crypto related cases, it failed to do so in this case.

4. Mr. Verret will testify to the pattern of transfers from what Chainalysis describes as the "Bitcoin Fog Cluster" to accounts owned by Mr. Sterlingov, and how they do not show any recognizable pattern that might in some way link Mr. Sterlingov the operation of Bitcoin Fog. Mr. Verret will rely upon his training as a Certified Valuation Analyst and experience as Chief Economist and Senior Counsel for the U.S. House Financial Services Committee to show how the Government's attributions appear to be just a random pattern more in line with a regular Bitcoin investor using Bitcoin Fog to obtain some measure of personal privacy.

5. Mr. Verret will display a chart of crypto prices since 2009 and present a narrative description to demonstrate how little fiat money one would need to buy 1600 bitcoin in the early years of Bitcoin.

6. Mr. Verret will explain how the creator of the Bitcoin Fog service displays an expert-level knowledge of blockchain privacy concepts like anonymity set, transaction history, and post-mix privacy. Mr. Verret will explain these concepts and how he teaches them to

his students at George Mason University. He will emphasize how someone with the expertise that the creator of Bitcoin Fog has exhibited would not send the proceeds from running a mixer back to their own KYC'd accounts. Mr. Verret will testify that a skilled privacy programmer would be significantly likely to send any proceeds into account logins purchasable on the TOR network sites and then swap them out or transfer them from there. Mr. Verret will also testify that an alternative to that method would be to trade the proceeds peer to peer to effectively obfuscate their source.

7. Mr. Verret will testify that because Mt. Gox was repeatedly hacked, there is a distinct possibility that a third-party hacker may have used Sterlingov's Mt. Gox account the purpose of obfuscating his own unlawful transactions.

8. Mr. Verret will testify that privacy measures are regularly employed by users of cryptocurrency and that efforts to maintain financial privacy are not, as the government repeatedly suggests in their filings, something suspicious or illicit in and of itself.

9. Mr. Verret will testify that "wrench attacks" (assaults and kidnapping) against bitcoin holders are a real threat to crypto users, in part because it is easier for a kidnapper or thief to demand that the victim transfer large quantities of money in the low friction environment of crypto self-custody relative to the higher friction environment of withdrawing large quantities of cash out of a bank. See, as one example, Department of Justice, U.S. Attorney's Office, Southern District of New York, Press Release, "Two Men Charged with Plan to Commit Home Invasion Robbery for Tens of Millions of Dollars in Bitcoin," https://www.justice.gov/usao-sdny/pr/two-men-charged-plan-commit-home-invasion-robbery-tens-millions-dollars-bitcoin. Mr. Verret will testify that

privacy measures such as mixing services, are one way that crypto users prevent such attacks.

10. Mr. Verret will testify that totalitarian regimes around the world have used blockchain tracing to abuse human rights protestors.

11. Mr. Verret will testify that the Bitcoin Fog mixing service was an early tool to address these legitimate privacy concerns and that according to the government's own estimates, most of the activity in the Bitcoin Fog mixer was legitimate.

12. Mr. Verret will testify to the findings in multiple public reports, including those done by Government-contractor Chainalysis, and testify that most transactions sent through mixing services like Bitcoin Fog are done for legitimate privacy concerns and are not illicit. Mr. Verret will describe how comparable analysis of BSA/AML regimes by international financial regulatory bodies demonstrate that a comparable percentage of illicit finance runs through traditional banking institutions and how simply using Bitcoin Fog would not lead one to automatically suspect that using it was somehow illicit. *See, e.g.,* Chainalysis, Crypto Mixer Usage Reaches All Time Highs in 2022, available at https://blog.chainalysis.com/reports/crypto-mixer-criminal-volume-2022/#:~:text=The%20increase%20in%20illicit%20cryptocurrency,up%20from%2012%25%20in%202021; Organization for Economic Development and Cooperation, Illicit Financial Flows from Developing Countries: Measuring OECD Responses, available at https://www.oecd.org/corruption/illicit_financial_flows_from_developing_countries.pdf; Michel Camdessus, Managing Director of the International Monetary Fund (IMF), address at the plenary meeting of the Financial Action Task Force (FATF), "Money Laundering: The Importance of International Countermeasures," February 10, 1998;

United Nations Office on Drugs and Crime (UNODC), Estimating Illicit Financial Flows Resulting from Drug Trafficking and Other Transnational Organized Crimes, October 2011.

13. Mr. Verret will testify that attribution of property ownership is a vital element to financial forensic investigations done in compliance with recognized standards. Mr. Verret will rely upon his CFF and CFE designations, his experience as a fraud examiner, and his review of the DOJ's published best practice that direct employees of federal agencies how to appropriately collect and process material in crypto financial forensic investigations. *See* Michele R. Korver, C. Alden Pelker and Elisabeth Poteat, "Attribution in Cryptocurrency Cases," Department of Justice Journal of Law and Practice (February 2019) at 233, available at https://www.justice.gov/media/991181/dl?inline.

14. Mr. Verret will testify that the Government's own advice to US attorneys, as published by the Department of Justice, recommends obtaining physical memorialization of private keys in possession of the defendant to assign control of the assets and the public key that is associated with that private key. *See* Michele R. Korver, C. Alden Pelker and Elisabeth Poteat, "Attribution in Cryptocurrency Cases," Department of Justice Journal of Law and Practice (February 2019) at 233, available at https://www.justice.gov/media/991181/dl?inline.

15. Mr. Verret will testify that tracing methods utilized by the Government and Chainalysis threaten user privacy because they rely upon probabilistic determinations to attribute cryptocurrency accounts to specific individuals.

16. Mr. Verret will testify that the tracing methodologies utilized by the Government and Chainalysis are probabilistic, not determinative, and that they should only be used to generate leads not to attribute conduct.

17. Mr. Verret will testify that the tracing methodologies utilized by the Government and Chainalysis may be used to commence an investigation and generate leads but should not substitute for empirical confirmation of traces. As part of this line of testimony, Mr. Verret rely upon publicly available documents produced by Chainalysis and available at: https://www.coindesk.com/business/2021/09/21/leaked-slides-show-how-chainalysis-flags-crypto-suspects-for-cops/.

18. Mr. Verret will testify that the word "heuristic" is a synonymous with the words "assumption" or "guess." He will emphasize that the heuristics employed by Chainalysis in this investigation, such as the common ownership heuristic, and the peel chain heuristic, are a novel approach in a nascent area of forensics, and that they have not been empirically tested or peer-reviewed. As part of this line of testimony, Mr. Verret will rely upon literature indicating that heuristics are probabilistic, not determinative. *See* Stockinger, J. (2021). *Analysis of decentralized mixing services in the greater bitcoin ecosystem* [Diploma Thesis, Technische Universität Wien]. reposiTUm. https://doi.org/10.34726/hss.2021.87269. See also Greg Maxwell, "Coinjoin: Bitcoin Privacy For The Real World," *Bitcoin Talk Forum*, at https://bitcointalk.org/index.php?topic=279249.0; Sarah Meiklejohn, Marjori Pomarole, Grant Jordan, Kirill Levchenko, Damon McCoy, Geoffrey M. Voelker and Stefan Savage, "A Fistful of Bitcoins: Characterizing Payments Among Men With No Names," *Proceedings of the Internet Measurement Conference* 2013; Harroon Yousaf, George

Kappos & Sarah Meiklejohn, Tracing Transactions Across Cryptocurrency Ledgers, available at https://arxiv.org/pdf/1810.12786.pdf; Matt Di Salvo, "Bitcoin's privacy problem–And What Cypherpunks are Doing to Solve It," *Decrypt*, August 12, 2022, available at https://decrypt.co/107376/bitcoin-privacy-problem-what-cypherpunks-are-doing; See Sarah Meiklejohn and Caludio Orlandi, "Privacy-Enhancing Overlays in Bitcoin," Financial Cryptography and Data Security (Springer 2015) pp 127-141. Available at https://link.springer.com/chapter/10.1007/978-3-662-48051-9_10; Rainer Stutz, Johann Stockinger, Bernard Haselhofer, Pedro Morena-Sanchez, Matteo Maffei, "Adoption and Actual Privacy of Decentralized Coinjoin implementations of Bitcoin," *Arvix* 2022, available at https://arxiv.org/abs/2109.10229.

19. Mr. Verret will testify that Sarah Meiklejohn, who is credited with inventing the methods and assumptions relied upon by Chainalysis in its investigation into Bitcoin Fog, has repeatedly emphasized the limitations of these techniques. *See* Andy Greenberg, Tracers in the Dark: The Global Hunt for the Crime Lords of Cryptocurrency, Doubleday (November 15, 2022). As part of this line of testimony, Mr. Verret will rely upon a presentation by Sarah Meiklejohn available at: https://www.youtube.com/watch?v=slZgOwXt2jM&t=7s.

20. Mr. Verret will testify that one simply way to break heuristics like the common ownership heuristic on the Bitcoin blockchain is to use CoinJoin or PayJoin transactions. These are transactions in which multiple inputs to a bitcoin transaction actually involve different individuals, which is directly contrary to the assumption underlying the common ownership heuristic employed by the Government and Chainalysis in their investigation into Bitcoin Fog.

9

21. Mr. Verret will testify that Chainalysis also uses these various heuristics opportunistically. He will explain how Chainalysis uses some heuristics to make assumptions, and when their assumptions do not obtain the result they are hoping to obtain they then use even more flexible, unexplained or "black box" heuristics, like the intelligence heuristic. Mr. Verret will emphasize that the approach taken by Chainalysis in its investigation into Bitcoin Fog is not objective and has high risk of misattributing ownership of blockchain assets. He will base this testimony on the Government's expert reports, testimony, disclosures and discovery.

22. Mr. Verret will testify that Chainalysis's application of probabilistic methodologies in this case appears in his judgment to have been tailored to generate evidence that improperly implicated a previously identified defendant.

23. Mr. Verret will testify that the heuristics employed by Chainalysis in its investigation into Bitcoin rely on default assumptions that transfers on the blockchain are self-transfers between the same person unless proven otherwise. Mr. Verret will emphasize that this is a dangerous assumption to rely upon because it simply assumes attribution, when attribution of property cannot be assumed in a forensic investigation, it must be demonstrated.

24. Mr. Verret will testify that it would violate core tenets of forensic accounting and financial forensics principles to use Chainalysis's' heuristic assumptions attribute blockchain activity to a specific individual. He will explain that without something more, like hard evidence on a server with a list of private keys associated with those addresses, there is no way to attribute ownership or activity to a specific individual.

25. Mr. Verret will testify that the heuristics cannot definitively prove ownership of cryptocurrency. Mr. Verret will explain that heuristics are guesses, guesses based in part on an assumption that most bitcoin transactions take place between public addresses owned by the same individual. Definitive assessments of identity linking non-KYC public keys with individuals based on these heuristics are inconsistent with the standards of the AICPA (for CPA/CFF designations) and ASCFE (for CFE designation). *See* AICPA Statement on Standards for Forensic Services, available at https://www.aicpa-cima.com/resources/download/statement-on-standards-for-forensic-services; Association of Certified Fraud Examiners, CFE Code of Professional Standards, available at https://www.acfe.com/about-the-acfe/-/media/E805D87A1E144558BF27A7F4B0B8317B.ashx

26. Mr. Verret will testify that in order to establish ownership by the Defendant at the end of a chain of transactions the government alleges were all conducted by Mr. Sterlingov, the Government would need proof that transfers from his KYC accounts were done so pursuant to his instruction, and were not to public keys along the chain of transactions that he did not own and control and that were instead owned and controlled by a third party.

27. Mr. Verret will testify that there are multiple situations that could have been misinterpreted by the Government and Chainalysis in their investigation into Bitcoin Fog. Mr. Verret will explain that a reasonable explanation for the misattributions in the Bitcoin Fog investigation may be that the Defendant transferred bitcoin to an individual in an exchange, and that individual or another in a chain of individuals, was the ultimate purchaser of the Clearnet domain. Mr. Verret will further explain that another reasonable

11

explanation is that whoever hacked Mt. Gox also hacked the Defendant's account and used it to facilitate external transfers.

28. Mr. Verret will testify that attribution of asset ownership can be a difficult problem in financial forensics generally. He will explain that forensic techniques are more settled in traditional financial investigations than in the blockchain context. Mr. Verret will explain that the extensive KYC measures implemented in traditional finance make it easier for investigators to attribute custody and control over assets in ways that are not necessarily applicable in the blockchain context. Mr. Verret will explain that despite recent efforts to incorporate KYC protocols in the blockchain space, these developments are not yet complete, and there are many ways users can avoid KYC protocols in blockchain finance.

29. Mr. Verret will testify that there is no way to definitively determine who controls a blockchain asset because the KYC regime lags that of traditional finance. Mr. Verret will explain the challenges associated with determining where a digital asset exists, who possesses custodial control of a digital asset, and even whether a digital asset exists.

30. Mr. Verret will testify that the nature of the blockchain has fundamentally altered the notion of property ownership itself, and that the nature of the blockchain makes it difficult to confirm ownership or control over digital assets. Mr. Verret will explain how he teaches his students that obtaining some physical representation of the seed phrase or private key on a suspect's hard drive is key to establishing an individual's connection to the public keys used to attribute ownership or control over digital assets. Mr. Verret will further explain that even the DOJ's own criminal practice journal emphasizes the importance of identifying seed phrases or private keys associated with digital assets to attribute custody or control. *See* Michele R. Korver, C. Alden Pelker and Elisabeth

12

Poteat, "Attribution in Cryptocurrency Cases," Department of Justice Journal of Law and Practice (February 2019) at 233, available at https://www.justice.gov/media/991181/dl?inline.

31. Mr. Verret will testify that there is a high risk of misidentification when relying upon heuristics in blockchain forensics. Mr. Verret will explain that the Government's characterization of bitcoin transactions as "beta transactions" is not reasonable, and that it is unlikely the identified transactions were in fact "beta transactions". Mr. Verret will explain that the evidence is consistent with these transactions being mundane transactions that any user could have done. Mr. Verret will explain that the pattern of activity identified by the Government as "beta transactions" could have simply been something as simple as a user testing a new wallet, or a user on-boarding new users to a crypto platform. Mr. Verret will emphasize that such mundane activity would appear identical to the evidence purported by the Government to be "beta transactions".

32. Mr. Verret will testify that there is not sufficient evidence in the record to determine the amount of illicit funds flowing from TOR-based marketplaces to what the Government purports is the Bitcoin Fog cluster. Mr. Verret will explain that there are legal products offered on the darknet marketplaces, and that it would be inaccurate to propose that all the funds flowing from TOR-based marketplaces constitute illicit funds. Mr. Verret will explain that there are many legal products and services available for purchase on TOR-based marketplaces that would not constitute illegal activity. Mr. Verret will testify that the Government has wrongfully categorized all funds originating from TOR-based marketplaces as illicit, and that the Government has failed to present a breakdown of

which funds are related to illegal products and purposes and which funds are associated with completely legal activity.

33. Mr. Verret will testify that this case has caused him to rethink how he teaches students about blockchain privacy tools.

Witness Attestation

I, J.W. Verret, have reviewed and approve the contents of this filing.

J.W. Verret            7/7/2023

J.W. Verret            Date

14