# Exhibit 2

Tor Ekeland
Managing Partner

(718) 737-7264
tor@torekeland.com

**September 23, 2022**

**Via Email**

Christopher B. Brown
Assistant U.S. Attorney
christopher.brown6@usdoj.gov

C. Alden Pelker
Trial Attorney
catherine.pelker@usdoj.gov

U.S. Attorney's Office for the District of Columbia
Computer Crime & Intellectual Property Section
Patrick Henry Building
601 D. Street. N.W.
Washington, D.C. 20530
(202) 252-7153

Re:   *United States v. Roman Sterlingov*, **21-CR-399 (D.D.C.): Def.'s First R. 16 Letter**

Counsel,

      This letter is Mr. Sterlingov's first formal discovery request under Federal Rules of Criminal Procedure ("Fed. R. Crim. Pro." or "Rules") 12 and 16, *Brady*[1], *Giglio*[2], *Rovario*[3], and their progeny. It is intended to invoke the full scope of discovery under the Rules, applicable case law, and statutes. Attached as Exhibit "A" are definitions for key terms.

### Requests

      As part of this request, we ask that all electronically stored information ("ESI") be produced in native format with all metadata intact. Specifically, we request the following, to the extent it has not been previously or fully provided:

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1983).
[2] *Giglio v. United States*, 405 U.S. 150 (1972).
[3] *Rovario* v. *United* States, 353 U.S. 53 (1957).



1. **Requests Under Fed. R. Crim. Pro. 12(b)(4)(B) & 16(a)(1)(A)(B) and (D)**

   1. A complete list of every specific criminal transaction you will use at trial as evidence against Mr. Sterlingov, and any evidence relating Mr. Sterlingov to those specific crimes.

   2. All oral, written, or recorded statements or testimony made by Mr. Sterlingov, which are in the possession, custody, or control of the government, or which could become known by the exercise of due diligence.

   3. Any statement made by Mr. Sterlingov to any law enforcement officer, government agent, informant, or other third party. This request includes any statement by defendant subsequently incorporated into any report, memorandum, transcript, or other document.

   4. Any statement made by Andrew White to any law enforcement officer, government agent, informant, or other third party. This request includes any statement by Mr. White subsequently incorporated into any report, memorandum, transcript, or other document.

   5. All communications between Catherine A. Pelker and Kathleen M. Kaderabek regarding this investigation.

   6. All communications between Mike Howell, the former CEO of highhosting.net and any law enforcement officer, government agent, informant, or other third party. This request includes any statement by Mr. Howell subsequently incorporated into any report, memorandum, transcript or other document.

   7. Any communications between Aaron Bice and Catherine Alden Pelker.

   8. Any communications between the government and reporters for WIRED or any other media outlet about anything related to this case, including investigators in this case, or private contractors involved in this case.

   9. Any communications related to the placement of Excygent in DOJ press releases announcing Mr. Sterlingov's arrest.

   10. Any communications between law enforcement agencies, entities and individuals mentioned as participating in this case in DOJ press releases including communications with Swedish law enforcement and the Swedish Government.

11. Any communications with Excygent.

12. Any communications related to Chainalysis, particularly any communications related to Mr. Sterlingov's arrest, and any press related to that arrest, as well as any communications in general about Mr. Sterlingov, before, during or after his arrest.

13. Any communications between the DOJ and IRS regarding this case.

14. Any methodologies used by Chainalysis to investigate this case.

15. Any methodologies used by the government, including any software platforms developed by Chainalysis, to investigate this case.

16. Any methodologies used by Excygent to investigate this case.

17. Any methodologies used by Elliptic Ltd. to investigate this case.

18. Any methodologies used by the government to identify all the IP addresses mentioned in discovery.

19. Any contracts, agreements, memorandums of understanding, and the like between Chainalysis and the government, and any billing records related to this case.

20. Any contracts, agreements, memorandums of understanding, and the like between Excygent, LLC and the government and any billing records related to this case.

21. Any contracts, agreements, memorandums of understanding, and the like between Elliptic Ltd. and the government and any billing records related to this case.

22. A complete list of contractors, vendors, agents and any other entities the government worked with in this case to conduct blockchain analysis.

23. All contracts, agreements, memorandums of understanding, and the like for anyone or any entity related to request *u* above, including billing records.

24. Any software used by the government to investigate this case.

25. Any software the government used to conduct blockchain analysis.

26. Any computer forensics program that has been used in investigating this case.

27. Any documents related to any National Security investigation into Bitcoin Fog or Mr. Sterlingov.

28. A complete list of people who performed or are performing blockchain analysis for the government in relation to this case.

29. A complete list of entities who performed or are performing blockchain analysis for the government in relation to this case.

30. A list of all employees, agents, and individuals who worked on the investigation into Mr. Sterlingov, including those no longer with the government.

31. Any billing records sent between the government and Elliptic Ltd., Chainalysis or Excygent, LLC regarding the investigation into Bitcoin Fog or Mr. Sterlingov.

32. Subpoena #GJ2017020737280 sent to highhosting.net regarding bitcoinfog.com.

33. The complete shormint.zip files as mentioned in STERLINGOV-0000740, and the shormint_v2.zip files mentioned in STERLINGOV-0000741.

34. A current copy of Mr. Sterlingov's prior criminal record, if any. This record should include at a minimum all arrests and convictions relevant to any sentencing issues under Chapter Four of the United States Sentencing Commission Guidelines.

35. Any communications involving Mr. Sterlingov acquired through surveillance, wiretaps, pentraps, or any other type of communication intercept. This request includes any statement by defendant subsequently incorporated into any report, memorandum, transcript or other document.

36. Notice of the government's intention to use any evidence obtained as a result of a search, seizure, electronic intercept, or statement by Mr. Sterlingov. Please specify, if applicable, whether electronic or video intercepts were used.

37. A copy of (or reasonable opportunity to inspect and copy) any books, papers, documents, data, photographs, or tangible objects obtained from or belonging to Mr. Sterlingov.

38. Any documents and communications related to any transaction involved with this case.

39. A copy of (or reasonable opportunity to inspect and copy) any books, papers,

documents, data, photographs, or tangible objects which will be used in the government's case in chief. This includes not only documents that will be marked and offered into evidence, but also documents or tangible objects that will be referred to in any way by any witness called by the government during its case in chief. It is requested that any documents or tangible objects in this category be specifically identified from among any other records that may be produced to enable the defense to prepare effectively for trial.

40. A copy of (or reasonable opportunity to inspect and copy) any books, papers, documents, data, photographs, or tangible objects ("Information") which are material to the preparation of the defendant's case at trial or at sentencing.

41. Native format access logs from Mr. Sterlingov's email accounts, covering the time of the alleged acts.

42. Native format and complete records of the Google drive search warrant return related to all Mr. Sterlingov's accounts.

43. Identify the start date of the government's investigation into Bitcoin Fog.

44. Identify the start date of the government's investigation into Mr. Sterlingov.

45. Produce the information relied upon by the Office of the Director of National Intelligence, Central Intelligence Agency, National Security Agency, Federal Bureau of Investigation, or Department of Homeland Security.

46. Any logs, including server logs for the IP address 212.117.160.123.

47. Identify any methodologies that the Government used to collect the information referenced above in *vi*.

48. Any logs, including server logs for IP address 70.90.169.13.

49. Identify any methodologies that the Government used to collect the information referenced above in *viii*.

50. Any logs, including server logs, for bitcoinfog.com.

51. Identify any methodologies that the Government used to collect the information referenced above in *x*.

52. Any Whois search results related to this investigation.

53. Any documents or communications between Mr. Sterlingov and bitcoinfog.com.

54. Any evidence, including logs, server logs, communications, or documents related to inva7id@gmail.com.

55. Any evidence, including logs, server logs, communications, or documents related to bayareaanarchy@gmail.com.

56. Any evidence, including logs, server logs, communications, or documents related to +1 (415) 265-3858.

57. Any evidence including logs, server logs, communications, or documents related to +1 (516) 387-2248.

58. Any evidence, including logs, server logs, communications, or documents related to any cryptocurrency transactions by Andrew White.

59. Any evidence of cryptocurrency accounts created by or related to Andrew White.

60. Any evidence including logs, server logs, communications, or documents related to highhosting.net.

61. Any evidence, including logs, server logs, communications, or documents related to BTC-e.

62. Any evidence, including logs, server logs, communications, or documents related to The Aurum Xchange Company

63. Any evidence including logs, server logs, communications, or documents related to lr4485@aurumxchange.com.

64. Any evidence including logs, server logs, communications, or documents related to Mauro Pilipis.

65. Any evidence including logs, server logs, communications, or documents related to Liberty Reserve.

66. Any evidence including logs, server logs, communications, or documents related to Liberty Reserve ID U9440180.

67. Any evidence including logs, server logs, communications, or documents related to Liberty Reserve username andrew415.

68. Any evidence including logs, server logs, communications, or documents related to email shormint@hotmail.com.

69. Any evidence including logs, server logs, communications, or documents related to plasma@plasmadivision.com.

70. Any evidence including logs, server logs, communications, or documents related to heavydist@gmail.com.

71. Any evidence including logs, server logs, communications, or documents related to Vasily Kunnikov.

72. Any evidence including logs, server logs, communications, or documents related to Akemashite Omedetou.

73. Any evidence including logs, server logs, communications, or documents related to Mt. Gox

74. Any evidence including logs, server logs, communications, or documents related to Mt. Gox username Roso987341870.

75. Any evidence including logs, server logs, communications, or documents related to plasma@plasmadivision.com.

76. Any evidence including logs, server logs, communications, or documents related to nfs9000@hotmail.com.

77. Any evidence including logs, server logs, communications, or documents related to Daniel Garcia Muñoz.

78. Any evidence including logs, server logs, communications, or documents related to Mt. Gox username volfprius.

79. Any evidence including logs, server logs, communications, or documents related to volf.prius@hotmail.com.

80. Any evidence including logs, server logs, communications, or documents related to

Mt. Gox username kolbasa.

81. Any evidence including logs, server logs, communications, or documents related to kolbasa99@rambler.ru.

82. Any evidence including logs, server logs, communications, or documents related to Payward Ventures, Inc., a.k.a., Kraken, accounts.

83. Any evidence including logs, server logs, communications, or documents related to open-source public records databases related to the investigation.

84. Any evidence including logs, server logs, communications, or documents related to any banking institutions related to the investigation.

85. Any evidence including logs, server logs, communications, or documents related to bitcoinfog.com, their employees, or volunteers.

86. Any evidence including logs, server logs, communications, or documents related to LocalBitcoins.

87. Any evidence including logs, server logs, communications, or documents related to bitcoinfog.com and communications with any U.S. customers of bitcoinfog.com.

88. Any information related to the chain of custody and authentication of all digital evidence, including email accounts, as well as all the items and property seized from Mr. Sterlingov.

89. Any search warrants and arrest warrants.

90. Any information related to the transactions from any website to and from bitcoinfog.com, including all subdomains of bitcoinfog.com (including but not limited to gate.bitcoinfog.com and ftp.bitcoin fog.com) to any other website.

91. Any communications regarding this case between the DOJ and any potential witnesses, particularly but without limitation any alleged victim and any staff employed by or working with bitcoinfog.com.

92. Any documents of FBI interviews including "302 reports", and any relevant video and audio recordings.

93. Any email logs, and other memorialized forms of communication that are referenced

in the government's pleadings, criminal complaint, statement of facts, and supporting affidavits and declarations.

94. Any evidence including logs, server logs, communications, or documents related to undercover transactions intended or conducted by the government to be with Bitcoin Fog since 2011.

95. Any evidence including logs, server logs, communications, or documents of all correspondence, communications, records, or materials received or collected by the government in relation to this case.

96. A list of all government agents who participated in the investigation.

97. A record of all government employees, agents, contractors, vendors and the like who worked on this investigation, and when they worked on it.

98. A list of all unique individual bitcoin addresses Mt. Gox assigned to users.

99. A list of all non-unique bitcoin addresses Mt. Gox assigned to users

100. Any noted differences and/or disparities between Chainalysis and Elliptic Ltd. Regarding issues of fact or opinion related to this case.

101. Any contracts, agreements, billing records, documents, and communications between MITRE Corporation and the Government related to this case, particularly those for Aaron Bice.

2. **Expert Disclosure under Fed. R. Crim. Pro. 16**

102. Disclosure of the names of expert witnesses the government intends to call at trial, their qualifications, subject of testimony, and any reports by those witnesses.

103. Any documents, communications, information, experiments, and methodologies relied upon in the creation of any reports in relation to *94* above.

104. The results of tests, examinations or experiments which are intended for use by the government as evidence at trial, or which are material to the preparation of the defense. This latter category includes any examinations or tests conducted by the government that are incomplete, inconclusive, or not intended to be used by the government at trial.



3. ***Brady, Giglio, Jencks, & Rovario* Material**

   The Defense hereby requests all material it is entitled to, as soon as it is entitled to it, under *Brady* v. *Maryland,* 373 U.S. 83 (1963); *Giglio* v. *United States,* 405 U.S. 150 (1972); *Jencks* v. *United States,* 353 U.S. 657 (1957); *Rovario* v. *United* States, 353 U.S. 53 (1957), and their respective progeny; and 18 U.S.C. § 3500 and any relevant Court Rule or Order. This includes, without limitation:

   a) Information which would tend to attenuate, exculpate, exonerate, or mitigate the defendant's involvement in the circumstances alleged in the Indictment.

   b) Any information affecting the credibility of any government witnesses, including prior criminal records, inconsistent statements, "deals" or immunity agreements with any state or federal governmental personnel, and any benefits of any kind the witness may receive in return for cooperation.

   c) Any information from whatever source which may benefit the defendant under the Federal Sentencing Guidelines, including deductions in base offense level, reductions in specific offense characteristics, reductions in role in the offense, disputing relevant conduct, reducing criminal history, etc.

4. **FRE 404(b) Evidence**

   The defense requests notice of the government's intention to introduce into evidence under Federal Rule of Evidence 404(b) any evidence of other crimes, wrongs, or acts allegedly committed by the defendant. Such notice should include the nature of this evidence, the pertinent witnesses, any supporting documentation, and the legal theory of admissibility to be relied upon by the government.

5. **Form of Production**

   For all non-publicly available electronic material the defense requests production in native formats with all metadata intact.

   This letter does not purport to exclusively list the material the defense seeks under the U.S. Constitution, the Federal Rules of Criminal Procedure, any relevant statute or common law authority, or any relevant Court Order or Rule. To the extent the government is in possession, custody, or control of material that it has an obligation to produce but that is not mentioned in this letter, we ask that you produce that material as soon as reasonably possible. Nothing in this letter is to be construed as an admission or any type of waiver. These are ongoing requests, and we reserve the right to make additional discovery requests.



Sincerely,

Tor Ekeland
Michael Hassard

*Counsel for Defendant Roman Sterlingov*



# EXHIBIT A



**Definitions**

1. The term "any" includes "any," "all" and "every."

2. The term "Document" shall be construed in the broadest sense allowed by law. The term "Document" includes, but is not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, reports, calendars, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically stored matter from which information can be obtained and translated, if necessary, into reasonable useable form. The term "Document" includes preliminary versions, drafts, and revisions.

3. The term "records" shall be construed in the broadest sense allowed by law and includes but is not limited to any communications, emails, text messages, bank records, financial statements, notes, recordings, or the like.

4. The terms "include" or "including" are used merely to emphasize certain types of information requested and should not be construed as limiting a subpoena in any way. "Including" should be construed in all cases as followed by the phrase "but not limited to."

5. The terms "person," "individual," or "entity" mean any natural person or any business, legal or governmental entity or association.

6. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this subpoena all documents and information that would be excluded if such words were not so construed. The present tense includes the past and future tenses.

7. The term "Chainalysis" includes the following entity and any affiliates, subsidiaries, agents, or vendors related to this matter:

    **CHAINALYSIS, LLC** (Delaware Division of Corporations File No. 5731603)



and its directors, members, contractors, employees, volunteers, agents, representatives, or any affiliated entities controlled or owned by the above listed entity.

8. The term "Excygent" means following entity and any affiliates, subsidiaries, agents, or vendors related to this matter:

**EXCYGENT LLC** (Virginia Corporation Commission Entity No. S6918975)

and its directors, members, contractors, employees, volunteers, agents, representatives, or any affiliated entities controlled or owned by the above listed entity.

9. The term "MITRE" means the following entity and any affiliates, subsidiaries, agents, or vendors related to this matter:

**MITRE ENGENUITY, INCORPORATED** (Virginia Corporation Commission Entity No. 11037123)

and its directors, members, contractors, employees, volunteers, agents, representatives, or any affiliated entities controlled or owned by the above listed entity.

10. The term "Bitcoin Fog" refers to the meaning of the same term as used by the Government in its pleadings and papers; and any evidence of its operations, directors, members, contractors, employees, volunteers, agents, representatives, or any affiliated entities.

11. The term "blockchain analysis" refers to the meaning of the same term as used by the Government in its pleadings and papers; and any source code, algorithms, digital, analog, textual, mechanical, or investigative, methodologies used to trace any cryptocurrency or transactions in this case.



12.     The term "communication" means the transmission of information by any means, electronic, paper or other (in the form of facts, ideas, inquiries or otherwise), including, but not limited to e-mails, text messages, chat messages, web postings, social media postings, and messages from any and all messaging applications (including but not limited to Facebook, Google, Twitter, Slack, Chanty, Microsoft Teams, Discord, Mattermost, Confluence, Whatsapp, Signal). All communications shall include Source Codes, metadata, time stamps, dates, and complete content.

13.     All "communications" include communications made in both professional and personal capacities.

14.     The term "Source Code" includes any computer code used to perform blockchain analysis, log communications, or conduct investigations.

15.     The term "methodologies" includes any practices, procedures, rules or sets of methods.

16.     The term "Native File Format" refers to the default file format that a computer application or program uses to create or save files in a proprietary format that only that program or application can recognize and includes all the metadata attached to those files. For example, Microsoft Word documents should be produced in .doc format and not as a .pdf, and with all metadata, including track changes, intact.