UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S SUPPLEMENTAL
NOTICE OF INTENT TO PRESENT EXPERT TESTIMONY**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, respectfully opposes the defendant's "Supplemental Notice of Intent to Present Expert Testimony," ECF No. 145. The government reiterates and incorporates by reference its arguments set forth in its prior Opposition to Defendant's Notice of Intent to Present Expert Testimony, ECF No. 130.

**INTRODUCTION**

On May 19, 2023, the defense filed its original Notice of Intent to Present Expert Testimony. *See* ECF No. 122. The government objected to the defense notice on numerous grounds, including its failure to meet the minimum requirements set forth in Fed. R. Crim. Pro. 16. *See* ECF No. 130. On June 23, 2023, the Court ordered the defense to file updated expert disclosures by July 7, 2023. *See* Minute Order (June 23, 2023). On July 7, 2023, the defense filed updated expert disclosures which nonetheless still largely fail to comply with Rule 16. *See* ECF No. 145. While the updated expert disclosures now specify which witness will cover which topics and retract some of the previous objected-to areas of testimony, the notice repeatedly fails to explain what the experts have *actually found* and their bases for their determinations. The defense still purports to notice individuals without appropriate qualifications to testify outside

1

their area of expertise. Multiple areas of noticed testimony have no bearing on the instant facts of this case and would not assist the jury in its efforts to understand the evidence or to determine a fact at issue. The government's specific concerns with the noticed witnesses and areas of testimony are set forth below, and in its prior opposition, ECF No. 130.

## WITNESSES

### A. Dr. Cabañas

The defense has noticed Dr. Cabañas, a former physicist and monero enthusiast, who the defense claims will present a critique of the government's blockchain analysis. *See* ECF No. 145-1. Dr. Cabañas testified at a *Daubert* hearing on June 16, 2023. In that testimony, Dr. Cabañas admitted that his work does not involve tracing blockchain transactions, 6/16/23 Tr. at 118:16-18, and that he has never used Chainalysis, 6/16/23 Tr. at 118:2-4. He admitted that he had not done a statistical analysis of blockchain analysis and conceded that the entire premise of his argument was based on a chart in a single report from the Financial Action Task Force. 6/16/23 Tr. at 116:17-24. Following Dr. Cabañas' testimony, the Court cautioned, "I had concerns about his testimony. It may be that the notice is just overbroad and you don't intend to offer him for all the purposes. But you certainly didn't lay a foundation of his expertise as to many of the topics in the expert notice. And, even more narrowly, I do have some concerns". 6/16/23 Tr. at 131:20-24. However, the defense's updated defense notice did little to narrow Dr. Cabañas' testimony or cure the defects of its notice.

Dr. Cabañas is a cryptocurrency enthusiast, but that is not sufficient grounds to be qualified as an expert on any specific issue that will before the jury in the instant case. Furthermore, Dr. Cabañas' focus is on monero, not bitcoin, making his background even less relevant to any fact in dispute in this case. Dr. Cabanas converted the bulk of his holdings to monero in 2015 and has

2

not even held bitcoin investments since 2017.  6/6/23 Tr. at 80:21-81:2.  Unlike the many cryptocurrencies that are modeled on bitcoin, monero is based on a completely different code, and a completely different transaction structure.  6/6/23 Tr. at 120:20-23.  Even if being a cryptocurrency enthusiast were somehow an appropriate qualification for expert witness testimony, Dr. Cabañas' experience with monero would not qualify him to testify regarding bitcoin, much less the specialized area of blockchain analysis.  Furthermore, any blockchain analysis testimony would be unnecessarily cumulative on top of the noticed testimony of the defense's blockchain analysis expert, Ms. Still.

During the *Daubert* hearing, Dr. Cabañas testified that a substantial portion of his financial assets were held in the cryptocurrency monero, 6/16/23 Tr. at 103:20-23, which had dropped in value following the delisting of monero from many mainstream virtual currency exchanges, 6/16/23 Tr. at 123-125.  The government introduced Dr. Cabañas' prior statements blaming blockchain analysis companies for the monero delisting, and describing monero as "under attack" by blockchain analysis companies.  *Id*.  Dr. Cabañas testified that he approached defense counsel at a conference where he heard that they were planning to "put Chainalysis on trial."  6/16/23 Tr. at 125:17-23.  Dr. Cabañas further admitted that he had appeared with defense counsel speaking publicly regarding the defendant's purported innocence before he had reviewed any of the discovery in the case.  6/16/23 Tr. at 107:25-109:25.  Dr. Cabañas' testimony is based on his uninformed personal bias against blockchain analysis firms and not on any relevant experience in the field of blockchain analysis.  This is not an appropriate basis for expert witness testimony under Fed. R. Evid. 702 and 703.

At the *Daubert* hearing on June 16, 2023, the Court astutely described Dr. Cabañas as "someone who is trained in physics, who didn't really have any expertise, as far as I can tell, in

blockchain analysis itself other than having read some papers and having been himself involved in the cryptocurrency industry as an investor and as an advocate". 6/16/23 Tr. at 132:9-14. Dr. Cabañas' testimony will not aid the jury in understanding the evidence in this case or determining a fact at issue. He lacks relevant qualifications and sufficient bases for the noticed areas of testimony, and his testimony should be excluded.

### B. Ms. Still

The defense has withdrawn Mr. Jonathan Scott and noticed Ms. Jonelle Still, an employee of the blockchain analysis firm Ciphertrace. *See* ECF No. 145. The government is familiar with Ciphertrace's work as a recognized company in the blockchain analysis field, similar to Chainalysis, and it does not anticipate objecting to Ms. Still's qualificiations. However, the defense's 8-bullet-point enumeration of Ms. Still's anticipated testimony falls far short of the detail required under Fed. R. Crim. Pro. 16. *See* ECF No. 145-4. The government still has not received any report or documentation of the defense's "review of the Government's blockchain tracing forensics." *See* ECF No. 145-4 at 3. Ms. Still's disclosure echoes prior defense disclosures indicating that the defense has completed alternative tracing, including reviewing "relevant traces that were not included in the Government's report" and additional tracing supporting Ms. Still's opinion that "the transactions are inconsistent with [Mr. Sterlingov's] ownership of the service." ECF No. 145-4 at 3. However, no such report has been provided to the government. At the June 23, 2023, hearing, the parties specifically discussed the issue of the missing defense blockchain analysis reports, with the government asking for confirmation that by July 7, the defense would produce any "actual reports of the defense blockchain analysis, as well as specifying what witness is testifying to what." 6/23/23 Tr. at 125:11-15. Earlier at that hearing, the court advised defense counsel that it had to provide updated disclosures "quickly enough so the government has a chance

4

to be prepared for a *Daubert* hearing." *See* 6/23/23 Tr. at 36:10-12.  Yet, less than a week out from the *third Daubert* hearing date in this matter, the government still lacks the information it needs to appropriately challenge the defense expert's findings — indeed, the government is still unaware of what those findings actually *are*.

While the government understands that Ms. Still was only recently retained by the defense, this is a problem of the defense's own making — after what the record suggests was a lengthy search by defense counsel for a blockchain analysis expert, the defense made a strategic decision to hire someone with no blockchain analysis experience.  After the government formally objected to Mr. Scott on June 2, 2023, *see* ECF No. 130, and raised "significant concerns," *id.* at 24, the defense nonetheless chose to continue putting him forward as their blockchain analysis expert, *see* ECF No. 133.  The defense has had ample time to retain an appropriate expert and draft a blockchain analysis report.

The defense should exclude Ms. Still's testimony for the defense's failure to comply with Rule 16, or, in the alternative, the court should limit Ms. Still's testimony to the background concepts set forth in the defense notice — explaining peel chains, wallets, and exchanges, but not presenting alternative tracing that the defense has repeatedly failed to disclose to the government.

### C.  Dr. Dror

The defense has noticed Dr. Dror as an expert in cognitive bias.  The updated defense disclosure does not remedy the government's fundamental objections to Dr. Dror's testimony, including that it is not relevant, will not help the jury understand any factual issue in dispute, is designed to confuse and inflame the jury, impermissibly encroaches on the role of the jury, and is not tailored to blockchain analysis or any other specific practices at issue in this case.  *See* ECF No. 130.  The defense's modifications to Dr. Dror's supplemental disclosure only highlight the

government's concerns.  For example, the supplemental disclosure clarified that Dr. Dror's prior-noticed testimony regarding "miscarriages of justice" generally, ECF No. 122 at 11, will now be testimony regarding about the "threat … in this case" of "miscarriages of justice," ECF No. 145-2 at 4.  This line of testimony only appeals to the jurors' emotions and is not a proper area for expert testimony under Rule 702.  Similarly, Dr. Dror's newly proposed testimony regarding "distorting effects of the financial and status incentives involved in the Government's use of private forensic investigators like Chainalysis and the Government's extensive use of publicity to promote this case" raises the same issues and concerns that the government discussed in its Motion *In Limine* to Preclude Certain Impermissible Defense Arguments and Evidence, ECF No. 65.

For the reasons set forth in the government's prior objection, Dr. Dror's testimony should be excluded in its entirety.  *See* ECF No. 130.  The defense can cross-examine the government's witnesses regarding any potential errors that the defense alleges exist in their analysis.

### D. Mr. Fischbach

The defense has noticed Mr. Fischbach as a computer forensics expert.  The government previously objected to Mr. Fischbach's testimony on numerous grounds, including that the disclosure was impermissibly vague and went well beyond Mr. Fischbach's line of work.  ECF No. 130.  The government reiterates those objections here.

The updated defense disclosure does not remedy the lack of specificity that plagued the original filing and was discussed in the government's prior objection.  *See* ECF No. 130.  For example, the disclosure states that Mr. Fischbach will testify to "issues in Valerie Mazars de Mazarin's IP Overlap Analysis" and Device Report, ECF No. 145-3 at 5, but does not identify what those supposed issues are; "the staffing requirements to run an enterprise like Bitcoin Fog," *id.* at 5, but does not state what he thinks the staffing requirements would be; and "errors in the

Mt. Gox data presented in discovery by the Government," *id.* at 3, but does not identify a single such error. The government has not received any reports drafted by Mr. Fischbach or any documentation of his review of the extensive electronic discovery in this case.

As noted in the government's prior objection, Mr. Fischbach's noticed testimony include areas far outside Mr. Fischbach's field of work in personal electronic device forensics. The defense indicates that Mr. Fischbach will present a critique of "Chainalysis' forensic methodologies," ECF No. 145-3 at 4, but there is no indication that Mr. Fischbach has any experience with Chainalysis or blockchain analysis. Similarly, Mr. Fischbach's noticed testimony includes multiple areas of discussion surrounding "what is involved in operating a Tor network site and custodial mixer like Bitcoin Fog," and "staffing requirements to run an enterprise like Bitcoin Fog," but there is no suggestion that Mr. Fischbach has any experience in or familiarity with running a custodial cryptocurrency mixer on the darknet, or running any major service on the darknet for that matter.

Numerous areas of Mr. Fischbach's updated noticed testimony would constitute impermissible encroachments on the role of this Court in deciding legal issues. The updated defense notice indicates that Mr. Fischbach will be testifying to numerous legal conclusions — including that the Mt. Gox data "cannot be authenticated as a business record" and that it "should be excluded from evidence." ECF No. 145-3 at 3. The defense further indicates that Mr. Fischbach will testify as to the inadequacy of the Mt. Gox records certification "as this requires an individual with knowledge of the data's generation and chain of custody." ECF No. 145-3 at 5. Mr. Fischbach is not a lawyer and is not qualified to opine on the applicability of the Federal Rules of Evidence to the evidence in this case, nor would that be appropriate grounds for testimony even if he were so qualified.

### E. Mr. Verret

The updated defense disclosure regarding Mr. Verret includes additional detail regarding the areas of Mr. Verret's testimony and the bases for his opinions. ECF No. 145-5. However, this has raised additional questions and issues regarding Mr. Verret's work and the insufficiency of the defense disclosure. The defense description of Mr. Verret's work indicates that he has done an independent review of Mr. Sterlingov's financials and the flow of funds to and from Mr. Sterlingov's accounts and Bitcoin Fog. For example, Mr. Verret's notice states that he will testify that "the Bitcoin Fog fees were many times larger than the total crypto assets ever attributed to Sterlingov," and that "the account balances in Mr. Sterlingov's seized accounts show less than 10% of the amount that someone running Bitcoin Fog would be expected to have." This and other language in the disclosure suggests that Mr. Verret has documented financial analysis that serves as the basis for his opinion and which has not been turned over to the government. If such reports, documents, or spreadsheets exist, they must be promptly disclosed.

As noted in the government's prior objection, Mr. Verret's lines of proposed testimony go beyond his areas of work. For example, the defense indicates that Mr. Verret will testify that "because Mt. Gox was repeatedly hacked, there is a distinct possibility that a third-party hacker may have used Mr. Sterlingov's Mt. Gox account," ECF No. 145-5 at 6, and that there is a possibility that "whoever hacked Mt. Gox also hacked the Defendant's account and used it to facilitate external transfers," *id.* at 13-14. Mr. Verret is not an expert in computer forensics or hacking. This line of testimony is pure speculation on Mr. Verret's part, with no connection to specific evidence or an area of Mr. Verret's experience. Similarly, Mr. Verret's disclosure indicates that he will testify to law enforcement best practices regarding cryptocurrency cases. *See* ECF No. 145-5 at 8. However, Mr. Verret does not appear to have any experience in law

enforcement. His basis for his opinions is a single article, co-authored by undersigned counsel and intended as a general backgrounder for a public audience, not a policy manual. *See id*. Mr. Verret's testimony should be narrowed to exclude areas outside of his line of work and experience.

The defense notice for Mr. Verret includes numerous areas of testimony with no relevance to any fact at issue in this case. For example, the defense disclosure indicates that "Mr. Verret will testify that totalitarian regimes around the world have used blockchain tracing to abuse human rights protestors," ECF No. 145-5 at 7, and that "tracing methods utilized by the Government and Chainalysis threaten user privacy," *id.* at 8. This line of testimony serves only to appeal to jurors' emotions and will not "help the trier of fact to understand the evidence or to determine a fact in issue" as required by Rule 702. *See* Fed. R. Evid. 702. Similarly, testimony that "this case has caused [Mr. Verret] to rethink how he teaches students about blockchain privacy tools" has no relevance to any fact in dispute in the case.

## **CONCLUSION**

For the foregoing reasons, the Court should exclude the testimony of Dr. Dror and Dr. Cabañas in its entirety; should significantly narrow the testimony of Mr. Verret and Mr. Fischbach; and should either exclude testimony from Ms. Still for failure to comply with Rule 16 or preclude testimony that goes beyond the basic background facts enumerated in the defense disclosure.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

BY:   */s/ Christopher B. Brown*
        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorney
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7153
        Christopher.Brown6@usdoj.gov

        */s/ C. Alden Pelker*
        C. Alden Pelker, Maryland Bar
        Trial Attorney, U.S. Department of Justice
        Computer Crime & Intellectual Property Section
        1301 New York Ave., N.W., Suite 600
        Washington, D.C. 20005
        (202) 616-5007
        Catherine.Pelker@usdoj.gov