**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | **No. 21-cr-399 (RDM)** |
| Plaintiff, | |
| v. | |
| ROMAN STERLINGOV | |
| Defendant. | |

# DEFENDANT'S REPLY TO GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## Introduction

The Government's sole basis for venue in this case consists of three sham transactions by Government agents. The first two allegedly mix Government Bitcoin through the Bitcoin Fog mixer; the third alleges to have sent an unacknowledged message to Bitcoin Fog representing that the sender intended to mix illicit funds through the mixer alongside a transaction. As the Government admitted at the recent oral argument on the Defendant's Motion to Dismiss on the bases of unconstitutional venue, there is nothing else supporting venue in this District. Outside of the Government's unilateral actions there is no evidence of any conduct by Bitcoin Fog in the District of Columbia, to say nothing of the complete lack of evidence of any contact by Mr. Sterlingov with the District of Columbia until he was haled into this District by the Government upon his arrest at Los Angeles International Airport in April of 2021.

In 2017, when the Government had Mr. Sterlingov under extensive surveillance during his visit to Miami, they did not arrest him for the operation of Bitcoin Fog - presumably because their surveillance turned up nothing that supported this speculative investigation. To date, there

isn't a single piece of direct evidence showing Mr. Sterlingov operating Bitcoin Fog. And all the circumstantial evidence is entirely consistent with his innocence and him being nowhere near the District of Columbia. For the entirety of this investigation, from 2014 until his arrest, he never set foot in Washington D.C. There isn't a single piece of evidence of him having any contact with D.C. The Government's venue allegations rest solely on its three sham transactions – none of which Mr. Sterlingov ever knew about until after his arrest.

At the recent Daubert hearings the Government's expert witnesses, including the Head of Investigations for Chainalysis, Ms. Elisabeth Bisbee, admitted they knew of no scientific, peer reviewed papers attesting to the accuracy of the black box forensic software used to level these baseless charges against Mr. Sterlingov. Nor could they cite their junk science blockchain forensic software's, Chainalysis Reactor, rate of false positives, nor its rate of false negatives. Ms. Bisbee further testified that Chainalysis had no internal information regarding this heavily marketed blockchain forensic software.

This is relevant because the Government's money laundering and conspiracy charges turn on the tracing done using Chainalysis Reactor. The Government's venue allegation for its charges turns on the accuracy of Chainalysis Reactor's clustering assumptions for its speculative attributions that Mr. Sterlingov ran Bitcoin Fog. But none of the blockchain tracing and clustering show Mr. Sterlingov operating Bitcoin Fog. The Government's primary evidence is Mr. Sterlingov's alleged registration of a Clearnet domain name in 2011, an entirely legal act well outside any relevant statute of limitations in this case, and tracings consistent with him being a user of Bitcoin Fog and nothing more.

Perhaps recognizing that they've gotten in over their head, at the recent Daubert hearing Ms. Bisbee testified that nothing in her expert report attributed anything to Mr. Sterlingov. Not

only is Chainalysis's work speculative and unscientific; it is irrelevant to this case. As for the expert testimony of FBI Analyst Luke Scholl, nothing in his expert report demonstrates Mr. Sterlingov operating Bitcoin Fog. Mr. Scholl admitted in his testimony that the Government doesn't have the Bitcoin Fog servers and that he isn't aware of any witnesses that can attest to Mr. Sterlingov ever operating Bitcoin Fog. In short, the Government's two main witnesses brought in to support its case cannot attest to a single piece of evidence showing Mr. Sterlingov operating Bitcoin Fog, to say nothing of the complete lack of evidence of any connection to the District of Columbia beyond the Government's three sham transactions.

      Why three? Presumably, because the first two lacked any representation that the Government funds mixed were illicit. The third sham transaction was proceeded by a message to Bitcoin Fog that received no response. Yet somehow, years after Mr. Sterlingov purportedly registered the domain name to a website and used Bitcoin Fog as a mixer, without any evidence that he ever operated it, he is being charged in a multiple felony count indictment for money laundering and operating an unlicensed money laundering business in Washington D.C., thousands of miles from his home in Sweden. Even if you can count these sham transactions as criminal conduct, it is not essential conduct, nor are Mr. Sterlingov's contacts with D.C. substantial enough by any means to meet the "extraordinarily important" constitutional limitations on venue.[1] Simply put, no crime occurred in D.C. except one of the Government's own making. And those sham transactions are too inessential and insubstantial to establish venue for multi-count felony indictment in the District of Columbia against a defendant who has never set foot there nor done any business there.

---

[1] *United States v. Auernheimer*, 748 F.3d 525, 540 (3d Cir. 2014).

On the bases of junk science Mr. Sterlingov has been dragged into a court thousands of miles from his home in Sweden, far away from his family, friends, and witnesses who can attest to the fact that he never did what the Government accuses him of. He has been jailed in a hostile, foreign jurisdiction for almost three years now, and all his assets seized. This is precisely the situation the Constitution's venue clauses were meant to prevent when they demand that a Defendant's trial happen where the crime occurred, not where the Government in its overzealousness wishes it occurred.[2]

## Argument

It is a mistake to anthropomorphize the operation of computer networks in a case like this. The presence of an individual on the other side of the Government's sham transactions is presumptive, not deductive, or empirical. The only way you can connect Mr. Sterlingov to the sham transactions is to speculate wildly based on forensic evidence for which there is no evidence as to its scientific accuracy. The Government makes no allegation, because it cannot, that Mr. Sterlingov knew of the sham transactions. And outside its sham transactions it can't point to any conduct, or locus of activity in the District of Columbia. If the Constitution's venue clauses are to have any meaning in the digital age, they cannot permit these threadbare transactions with no empirical corroboration, and speculation based on junk forensics, to support venue in a federal criminal case.

Venue must be analyzed independently for each count of an indictment.[3] And it must be narrowly construed.[4] Even if the Government's sham transactions can be stretched to cover

---

[2] *U.S. v. Mallory*, Criminal No. 1:17-CR-154, at *15 (E.D. Va. July 26, 2018) ("The purpose of the constitutional and statutory venue requirements is to "protect criminal defendants from the inconvenience and prejudice of prosecution in a far-flung district bearing no connection to their offenses." (citations omitted)).
[3] *U.S. v. Root,* 585 F.3d 145, 155 (3d Cir. 2009); *see also U.S. v. Auernheimer*, 748 F.3d 525, 535 (3d Cir. 2014).

venue in this District, and they cannot without deforming the Constitution's venue clauses, at best they support a charge for the operation of an unlicensed money transfer business. There is nothing in the Government's sham transactions that supports the Indictment's conspiracy count. Nor can the sham transactions support venue for the money laundering count beyond the Government's own transaction.

In the end, the Government's sham transactions fail to support venue because they meet none of the three tests for venue: neither the locus delicti test, the substantial contacts test, nor the essential conduct test. This Court should dismiss the Indictment for improper venue before Mr. Sterlingov suffers the harm the Constitution's venue clauses are meant to prevent - trial in a hostile district far from the where the Defendant was when the alleged crimes were committed, and far from any witnesses, family, friends, and resources.

**1. There is No Venue for Count One's Conspiracy Charge**

Nothing in the Government's sham transactions support venue for Count One's Conspiracy charge. There is no conspiratorial agreement, much less any conspiratorial communications between the Government's agents and Mr. Sterlingov. No act in furtherance of the alleged conspiracy is contained in the Government's sham transactions. Indeed, the sham transactions are entirely lacking in mens rea. Like everything else in this prosecution, one must engage in conspiracy theories to arrive at any conspiracy.

**2. Mens Rea is Lacking in the District of Columbia**

There is no counterparty to any of the Government's sham transactions. In the September 2019, and July 2016 transactions the Government did not attempt to send any type of communication to Bitcoin Fog. Before the November 2019 transaction the Government

---

[4] *See U.S v. Johnson,* 323 U.S. 275, 276 (1944).

attempted to solicit a response from the unknown administrators of Bitcoin Fog by sending a message through a message portal on the Bitcoin Fog TOR website indicating that the funds they intended to send through Bitcoin Fog were the proceeds of an illegal narcotics sale. The Government received no response. The Government then sent funds through the TOR-based Bitcoin Fog service.

There is no allegation that the Government communicated with the Defendant. Yet it is the Defendant's mens rea that matters here, and there is no evidence of it at all. In essence, the Government claims venue here based on a theory of strict liability. It does not allege that Mr. Sterlingov knew of any of the sham transactions.

The problem the Government faces with the third sham transaction, that was proceeded by a message allegedly to the Bitcoin Fog administrators, is that there is no way to connect the message with the mixed funds. Nothing in a TOR-based mixing transaction identifies a user, or even the geographical origin of a transmission. It is impossible for anyone running a mixer to match a message to a transaction.

The Government has presented no direct or corroborating evidence implicating Mr. Sterlingov. Even if one assumes, somehow, that the operation of Bitcoin Fog in 2019 is sufficient to attribute mens rea for purposes of venue to Mr. Sterlingov, there is no dispute that Mr. Sterlingov was in Europe, primarily Sweden, for all relevant time periods - barring his short trips to the United States during which the Government chose not to arrest him. There are no computer logs, no communications, no servers, and no course of conduct in Washington D.C., nothing. The Government's entire prosecution relies upon blockchain tracing lacking any scientific support.

### 3.   There is No Essential Conduct in the District of Columbia

At best, the Government's sham transactions are circumstantial elements to the crimes charged. They are not essential to the money laundering alleged to have occurred through the use of Bitcoin Fog. There is zero evidence or allegations that either the Bitcoin Fog servers, or Mr. Sterlingov, were in the District of Columbia during any of the charged conduct.[5] There simply is no essential conduct either alleged or actual in the District of Columbia.

### 4.   Mr. Sterlingov Has No Substantial Contacts with the District of Columbia

Likewise, the Government neither alleges, nor is there, any actual evidence of any substantial contacts between Mr. Sterlingov, Bitcoin Fog, and the District of Columbia.

### 5.   There is No *Locus Delicti* in the District of Columbia

If any crime occurred, it occurred in Sweden, Europe, or wherever the Bitcoin Fog servers are. Again, there is not a shred of evidence, or a credible allegation, that the *locus delicti* of the charged crimes is the District of Columbia.[6] The *locus delicti* test requires the finders of fact to initially identify the conduct constituting the offense and then discern the location of the commission of the criminal acts.

Here, the Government fails to identify a single illegal act committed by the Defendant. They rely upon unilateral sham transactions to establish venue and have presented no evidence that Mr. Sterlingov ever operated or administrated Bitcoin Fog. At best, the Government has established that Mr. Sterlingov utilized Bitcoin Fog as a user of the popular mixing site.

---

[5] *See U.S. v. Rodriguez-Moreno*, 526 U.S. 275, 280 & n. 4 (1999); *U.S.* v. *Cabrales,* 524 U.S. 1, 4 (1998); *U.S. v. Bowens*, 224 F.3d 302 , 304 (4th Cir. 2000); *U.S. v. Auernheimer*, 748 F.3d 525, 533 (3d Cir. 2014).
[6] *See U.S v. Cabrales,* 524 U.S. 1 (1998); *U.S. v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) ("In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.");
 *U.S. v. Auernheimer*, 748 F.3d 525, 532-33 (3d Cir. 2014).

**6.   Venue by Omission is Improper**

Venue based on omission is generally improper in criminal cases, as the constitutional and statutory venue requirements are meant to protect defendants from being prosecuted in a district that has no connection to their offenses. There are some exceptions, such as when the crime is a continuing offense that crosses district lines, or when the defendant's conduct in one district assists in the commission of a crime in another district. None of those exceptions apply here because the Government fails to allege any essential conduct or substantial contacts by the Defendant with the District of Columbia. In order to establish venue by omission for failure to license a business, a defendant's business in the venue must be regular and well-established.[7] That just isn't the case here.

## Conclusion

If the Constitution's venue clauses are to have any meaning in the digital age, the Court should dismiss the Indictment in its entirety for lack of Constitutional venue. Otherwise, the Government can claim universal jurisdiction over the internet on the flimsiest of manufactured pretexts, as has happened here. The point of the Constitution's venue clauses is to protect a defendant from the harms caused by a trial in a faraway hostile venue. To allow a trial to occur in the face of Constitutionally improper venue is to vitiate a right so fundamental that it appears not once, but twice in the United States Constitution. This Court should dismiss this speculative prosecution in its entirety because no crime occurred in the District of Columbia.

---

[7] *See Roblor Marketing Group, Inc. v. GPS Industries, Inc*., 645 F. Supp. 2d 1130, 1146 (S.D. Fla. 2009); *U.S. v. Stewart*, 256 F.3d 231 (4th Cir. 2001); *see also U.S. v. Bah*, 574 F.3d 106 (2d Cir. 2009).

Dated: July 24, 2023
Brooklyn, New York

Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
michael@torekeland.com

*Counsel for Defendant Roman Sterlingov*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2023, the forgoing document was filed with the Clerk of

Court using the CM/ECF System and sent by email to the attorneys for the Government listed

below:

<u>s/ Tor Ekeland</u>

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov