IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ROMAN STERLINGOV,**<br><br>Defendant. | Criminal No. 21-CR-399 (RDM) |

**MOTION TO QUASH TRIAL SUBPOENA AND PRECLUDE TRIAL TESTIMONY BY NON-PARTIES MICHAEL GRONAGER, JONATHAN LEVIN, AND YOULI LEE AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. BACKGROUND .......................................................................................................... 2

III. LEGAL STANDARDS ................................................................................................ 4

IV. ARGUMENT ............................................................................................................... 5

    A. Ms. Lee's Testimony Is Inadmissible and Irrelevant............................................. 5

    B. Mr. Gronager's and Mr. Levin's Testimony Is Irrelevant ..................................... 6

    C. Lay Opinions or Hearsay Relating to Mt. Gox Records or Other Subjects Are Inadmissible ................................................................................................... 8

    D. Defendant's Fourth Round of Subpoenas Continues to Harass Chainalysis and Its Employees ................................................................................................ 9

V. CONCLUSION........................................................................................................... 12

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Berkley Ins. Co. v. Fed. Hous. Fin. Agency*,
 2023 WL 4744155 (D.D.C. July 25, 2023)..................................................................................7

*Cheney v. United States Dist. Ct.*,
 542 U.S. 367 (2004).....................................................................................................................5

*In re Grand Jury Subpoena for THCF Med. Clinic Recs.*,
 504 F. Supp. 2d 1085 (E.D. Wash. 2007)....................................................................................9

*Jones v. Dist. of Columbia*,
 314 F. Supp. 3d 36 (D.D.C. 2018)...............................................................................................8

*Stern v. United States Dist. Ct.*,
 214 F.3d 4 (1st Cir. 2000)............................................................................................................4

*United States v. Bebris*,
 4 F.4th 551 (7th Cir. 2021)......................................................................................................4, 8

*United States v. Davis*,
 596 F.3d 852 (D.C. Cir. 2010).....................................................................................................9

*United States v. Libby*,
 432 F. Supp. 2d 26 (D.D.C. 2006)...............................................................................................4

*United States v. Michel*,
 2023 WL 2388501 (D.D.C. Mar. 6, 2023)...............................................................................7, 9

*United States v. Nixon*,
 418 U.S. 683 (1974).....................................................................................................................4

*United States v. North*,
 713 F. Supp. 1448 (D.D.C. 1989)................................................................................................4

*United States v. Palfrey*,
 2007 WL 842770 (D.D.C. Mar. 16, 2007)................................................................................11

*United States v. Riego*,
 627 F. Supp. 3d 1254 (D.N.M. 2022).........................................................................................4

*United States v. Valenzuela-Bernal*,
 458 U.S. 858 (1982).....................................................................................................................8

*United States v. Watson*,
    952 F.2d 982 (8th Cir. 1991) ................................................................................................6

**Other Authorities**

28 C.F.R. §§ 16.21 *et seq*..................................................................................................................5

Non-parties Michael Gronager, Jonathan Levin, and Youli Lee move to quash the purported subpoena for testimony at trial directed to Ms. Lee and, in addition, to preclude defendant Sterlingov from further attempts to call Mr. Gronager or Mr. Levin as witnesses at trial.

I.   **PRELIMINARY STATEMENT**

Non-parties Chainalysis Inc. ("Chainalysis") and its employees have now been before this Court multiple times to quash defendant Sterlingov's repeated and abusive subpoenas. Despite this Court quashing earlier subpoenas and instructing defendant to explain the specific relevance of the documents and testimony he seeks, defendant persists in harassing Chainalysis and its employees with irrelevant subpoenas. This time, defendant demands trial testimony from Youli Lee, former AUSA and current in-house counsel at Chainalysis. Earlier this month, defendant demanded trial testimony from Chainalysis executives Michael Gronager and Jonathan Levin before withdrawing the requests for Mr. Gronager's and Mr. Levin's testimony. None of these three Chainalysis employees is a percipient or expert witness in this case.

Now entering the *fourth* round of briefing on these subpoenas, defendant has had repeated opportunities to explain how any of the documents or testimony he seeks is relevant. He cannot do so. The latest raft of subpoenas confirms what has long been apparent. Defense counsel is abusing the subpoena power of this Court to try to wage a parallel campaign against Chainalysis because defense counsel does not believe that cryptocurrency transactions should be traceable, because defense counsel is using it as a fundraising ploy, and because defense counsel has affirmatively stated an intent to bring some misguided civil action. Additionally, and in violation of this Court's orders, defense counsel continues to speak with the media and misstate the facts and the record regarding this case in a manner aimed at falsely characterizing Chainalysis and its employees. This misuse of the legal process and violations of the Court's

1

sf-5613549

orders to harass witnesses and third parties should stop.

As with his earlier subpoenas, defendant's latest installment for trial testimony is inappropriate. Calling Ms. Lee to testify at trial would be improper as her work in government investigating Bitcoin Fog while an AUSA is subject to attorney-client privilege and defendant has not shown the relevance of such testimony. As for her work at Chainalysis, she is not involved in any Bitcoin Fog-related matter and it, too, is subject to attorney-client privilege. Defendant's other subpoenas would have sought testimony from Mr. Gronager and Mr. Levin, Chainalysis co-founders and executives. Mr. Gronager and Mr. Levin were not involved in the Bitcoin Fog investigation and do not have any firsthand knowledge of the facts alleged in this case. Although defense counsel has said that they are withdrawing the requests for Mr. Gronager's and Mr. Levin's testimony, given counsel's past and current behavior and to avoid unnecessary future motions, the Court should preclude defendant from further attempts to call either Mr. Gronager or Mr. Levin as witnesses at trial.

Defendant's subpoenas are one further episode in his long harassment of Chainalysis. The ulterior motives of defense counsel have no place at this trial and are not a valid basis for a subpoena. The Court should quash the subpoena that defendant has attempted to serve[1] on Ms. Lee and preclude defendant from calling Mr. Gronager and Mr. Levin at trial.

**II.    BACKGROUND**

Given that this is the fourth motion relating to subpoenas of Chainalysis and its

---

[1] Technically, the witnesses have not been served at this point. Defense counsel asked if undersigned counsel would accept service on behalf of the witnesses. Undersigned counsel stated that he was authorized to do so with one condition – that defense counsel not make the same ridiculous argument made previously: that acceptance of service prohibits a witness from moving to quash a subpoena. (*See* ECF No. 131 at 9-10.) As of this filing, defense counsel has not responded to this request from undersigned counsel. This motion is being filed now because, unlike defense counsel, undersigned counsel is making every effort to provide the Court adequate time and information to evaluate issues brought before it.

employees, the Court is by now familiar with defendant's repeated attempts to obtain testimony and documents from Chainalysis and its employees.[2] On August 2, 2023, defense counsel purported to serve a third subpoena on non-party Michael Gronager, co-founder and CEO of Chainalysis, and a second subpoena on non-party Jonathan Levin, co-founder and Chief Strategy Officer of Chainalysis. (Ex. A, Ex. B.)[3] On August 9, 2023, defendant made a second attempt to subpoena Chainalysis Senior Legal Director Youli Lee. (Ex. C.) All of these subpoenas demand trial testimony. On August 20, 2023, defense counsel stated that they are withdrawing the subpoenas seeking testimony from Mr. Gronager and Mr. Levin.

These subpoenas come after defendant's (1) November 18, 2022 subpoenas directed to all three non-parties and their employer, Chainalysis; (2) May 5, 2023 subpoena served on Mr. Gronager; and (3) August 2, 2023 motion for leave to issue a subpoena to Chainalysis. The government and the Chainalysis non-parties moved to quash those subpoenas or oppose defendant's motion under Federal Rules of Criminal Procedure 17(c) and 17(a). (ECF No. 93, ECF No. 95, ECF No. 126, ECF No. 160, ECF No. 161.) Following argument on the matter, the Court granted Chainalysis' motions to quash on June 16, 2023. (June 16, 2023 Minute Order.) Chainalysis and the government opposed defendant's motion for reconsideration of the court's order to quash the subpoenas on August 10, 2023. (ECF No. 160; ECF No. 161.)

Despite this long procedural history and despite the approaching trial date, defense counsel has not provided any indication as to the subject matter of the trial testimony he seeks or

---

[2] A fuller recitation of the relevant procedural background is contained in the Chainalysis non-parties' Motion to Quash Subpoena and Chainalysis' Opposition to defendant's Motion for Reconsideration for the Court's Oder to Quash Rule 17(c) Subpoenas. (ECF No. 95 at 2-4, ECF No. 160 at 2-5.)

[3] References to "Ex. A," "Ex. B," and "Ex. C" are to the exhibits filed concurrently with this motion containing the subpoenas attempted to be served on non-parties Michael Gronager, Jonathan Levin, and Youli Lee.

its relevance. None of these individuals is a percipient witness in this case. None has been noticed as an expert witness by either side. Defense counsel only requested that counsel for Mr. Gronager, Mr. Levin, and Ms. Lee accept service of these subpoenas. Counsel for Mr. Gronager, Mr. Levin, and Ms. Lee responded that he would accept service if defense counsel acknowledged that acceptance does not waive any right to challenge the subpoenas. Defense counsel did not respond. While Mr. Gronager, Mr. Levin, and Ms. Lee have not yet been served, they move to quash now to allow the Court adequate time to decide this motion ahead of trial.

### III. LEGAL STANDARDS

"Federal Rule of Criminal Procedure 17(a) governs subpoenas *ad testificandum* in criminal proceedings." *United States v. Riego*, 627 F. Supp. 3d 1254, 1258 (D.N.M. 2022). "Although Rule 17(a) . . . does not provide explicitly for quashal or modification, courts routinely have entertained motions seeking such relief and decided them by reference to comparable principles. Specifically, a subpoena ad testificandum survives scrutiny if the party serving it can show that the testimony sought is both relevant and material." *Stern v. United States Dist. Ct.*, 214 F.3d 4, 17 (1st Cir. 2000). "Where the sought testimony is cumulative or immaterial, a court does not abuse its discretion by quashing a Rule 17(a) subpoena." *United States v. Bebris*, 4 F.4th 551, 559 (7th Cir.), *cert. denied*, 142 S. Ct. 489 (2021). In other words, "[r]oughly the same standard applies to subpoenas compelling the attendance of witnesses" as to subpoenas *duces tecum*. *Stern*, 214 F.3d at 17. That standard requires that the subpoena "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). "The specificity requirement ensures that a Rule 17(c) subpoena will not be used as a fishing expedition to see what may turn up." *United States v. Libby*, 432 F. Supp. 2d 26, 32 (D.D.C. 2006) (citation omitted). A defendant must "demonstrate with requisite specificity" that the testimony is "material and essential to the defense." *United States v. North*,

4

sf-5613549

713 F. Supp. 1448, 1449 (D.D.C. 1989). The burden of "satisfy[ing these] exacting standards" falls "on the party requesting the information." *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 386 (2004).

IV. **ARGUMENT**

    A. **Ms. Lee's Testimony Is Inadmissible and Irrelevant**

A subpoena for Ms. Lee's testimony is particularly inappropriate. As defendant well knows, Ms. Lee was an investigator of Bitcoin Fog, among other cryptocurrency matters, when she worked as an AUSA in the District of Columbia. Matters related to her representation of the government are subject to attorney-client privilege and therefore inadmissible. Should she be called as a witness at trial, all former AUSAs could be witnesses in the matters that they worked while in government. In addition, testimony from Ms. Lee could only be provided subject to the DOJ's *Touhy* regulations, which prohibit unauthorized disclosure of materials contained in DOJ records. *See* 28 C.F.R. §§ 16.21 *et seq*.

That defendant has made no effort to explain how or why attorney-client privilege should be overcome or to apply for an exception to the *Touhy* regulations shows that he is not serious about compelling Ms. Lee to testify at trial. The Chainalysis non-parties raised these same arguments in response to defendant's first round of subpoenas in December 2022. (ECF No. 95 at 11-12.) Defendant is well aware of these significant hurdles as to admissibility, at a minimum from prior briefing in this case, and has done nothing to address them.

Nor would Ms. Lee's testimony be relevant to the criminal charges that will be at issue during the trial. In connection with defendant's earlier attempt to subpoena Ms. Lee, defendant stated that he sought "her testimony in relation to her business communications and negotiations in relation to her leaving the government for paid employment with the government's forensic contractor in this case." (ECF No. 103 at 14.) Defendant is charged with money laundering,

operating an unlicensed money transmission business, and money transmission without a license. (ECF No. 43.) Ms. Lee's employment history has nothing to do with any of those charges.

Defendant has already attempted to call as a witness one of the AUSAs prosecuting this case and been denied. (June 23, 2023 Minute Order.) In that context, the government argued that defendant failed to meet his burden in "demonstrat[ing] that the evidence is vital to his case, and that his inability to present the same or similar facts from another source creates a compelling need for the testimony." *United States v. Watson*, 952 F.2d 982, 986 (8th Cir. 1991); *see also* ECF No. 64 at 3-5. The Court agreed:

> I don't see anything that you've done that shows me some element or material fact in this case that would be admissible to the jury where you've shown me or indicated to me, Ms. Pelker is the only person who we can call who would know this.

(June 23, 2023 Hr'g Tr. at 13:23-14:2.) The Court went on to ask defense counsel to explain "some fact that is material in the case, and not something atmospheric" that would permit the testimony to be admitted. (*Id.* at 15:14-15.) Defense counsel was unable to do so. This is again what defense counsel is attempting to do here in seeking Ms. Lee's testimony. They plan to suggest to the jury something untoward in Ms. Lee's decision to "leav[e] the government for paid employment" at Chainalysis. (ECF No. 103 at 14.) In fact, Ms. Lee worked at Coinbase after leaving the government and before joining Chainalysis. Regardless, defendant's logic is the definition of "atmospheric" and has nothing to do with the facts that will be at issue at trial. Defendant has not come close to meeting his burden. Like the rest of his subpoenas, his subpoena of Ms. Lee is a stunt.

### B. Mr. Gronager's and Mr. Levin's Testimony Is Irrelevant

Although defense counsel has now said that they are withdrawing the subpoenas seeking Mr. Gronager's and Mr. Levin's testimony at trial, the Court should enter an order precluding defendant from calling either as a witness at trial. This is now the *fourth* round of briefing that

6

sf-5613549

the Chainalysis non-parties have had to undertake on substantially the same issues. Defense counsel's harassing behavior suggests that they may continue their campaign to seek irrelevant materials and testimony. To avoid unnecessary briefing that would waste the parties' and the Court's resources, we respectfully request that the Court address the issue of Mr. Gronager's and Mr. Levin's trial testimony now to avoid any further last-minute surprises from defendant.

Mr. Gronager's and Mr. Levin's testimony, as with the materials and testimony defendant seeks in his other subpoenas, is wholly irrelevant. The defendant stands accused of money laundering, operating an unlicensed money transmission business, and money transmission without a license. (ECF No. 43.) Neither Mr. Gronager nor Mr. Levin is a percipient witness to any alleged conduct supporting these charges. Neither had anything to do with the Bitcoin Fog investigation that gathered the facts that support the government's allegations. They have no personal knowledge of any allegations against the defendant. Defendant has done nothing in his previous filings to show otherwise. As a result, defendant cannot meet his burden and their testimony should be precluded for failure to meet the requirements of Federal Rules of Evidence 401 and 403. *See, e.g.*, *United States v. Michel*, 2023 WL 2388501, at *4 (D.D.C. Mar. 6, 2023) (quashing trial subpoena that sought irrelevant, confusing, or time-wasting testimony).

Defendant's prior arguments on relevance seemed to be that Mr. Gronager and Mr. Levin founded a company that has subsequently been employed by the government to provide asset tracing services and an expert witness in this case. That is no valid basis. Speculation that Mr. Gronager or Mr. Levin somehow has personal knowledge relevant to this case is not a valid basis either. *See, e.g.*, *Berkley Ins. Co. v. Fed. Hous. Fin. Agency*, 2023 WL 4744155, at *12 (D.D.C. July 25, 2023) (excluding witness testimony because it was based on speculation instead of personal knowledge). Nor are conclusory platitudes about defendant's Sixth Amendment

rights a valid basis without a showing of relevance: a defendant's right to compulsory process is "limited" and he "must make a plausible showing that the witness's testimony would be both material and favorable to his defense." *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Defendant has failed to meet his burden in showing that the testimony he seeks is relevant.

Finally, as to the relevance of any testimony about Chainalysis' Reactor software, this issue has been extensively briefed elsewhere. (*See* ECF No. 160; ECF No. 161.) Expert witness Elizabeth Bisbee will testify about how she used Reactor to identify "clusters" of wallet addresses that are associated with darknet markets. Mr. Gronager and Mr. Levin are not noticed experts in this case by either side and have nothing to add to this testimony. "Where the sought testimony is cumulative or immaterial, a court does not abuse its discretion by quashing a Rule 17(a) subpoena." *Bebris*, 4 F.4th at 559. Mr. Gronager and Mr. Levin have nothing of any relevance to contribute to this trial, and their testimony should be precluded for this reason alone.

      **C.**    **Lay Opinions or Hearsay Relating to Mt. Gox Records or Other Subjects Are Inadmissible**

In earlier filings, defendant argued that Mr. Gronager's alleged examination of Mt. Gox records and conversations with former Mt. Gox CEO Mark Karpelès are relevant to the question of authenticity. (ECF No. 103 at 4, 11-12; ECF No. 131 at 7-9.) As the government has explained repeatedly, Mt. Gox records are self-authenticating records under Federal Rule of Evidence 902. (ECF No. 61 at 19-22; ECF No. 140 at 2-6; ECF No. 146 at 1-2.) Testimony from Mr. Gronager or anyone else on the authenticity of these records is unnecessary.

But even assuming that defendant's position were correct, Mr. Gronager's testimony on these subjects is inadmissible. First, "[o]pinion testimony from lay witnesses is generally inadmissible in federal court." *Jones v. Dist. of Columbia*, 314 F. Supp. 3d 36, 60 n.16 (D.D.C.

2018). Defendant alleges that Mr. Gronager observed a data set and formed opinions about that data set, which anyone else could have done. Second, any conversations with Mr. Karpelès – which are not informative of any issue in dispute in this case – are hearsay. "[A] party generally may not obtain inadmissible evidence through a Rule 17 subpoena." *Michel*, 2023 WL 2388501, at *7 (quashing trial subpoena where proposed testimony was hearsay). That is because the witness would not testify on the basis of personal knowledge but rather would relay what someone else told him. *See, e.g.*, *United States v. Davis*, 596 F.3d 852, 856-57 (D.C. Cir. 2010) (holding witness testimony was properly excluded where witness' knowledge derived from what another person told her). Defendant cannot show that any testimony from Mr. Gronager would be admissible at trial.

### D.  Defendant's Fourth Round of Subpoenas Continues to Harass Chainalysis and Its Employees

These subpoenas are defendant's *fourth* attempt at procuring documents or testimony to further his or defense counsel's extrajudicial campaign to harass, disparage, and otherwise harm Chainalysis and its employees. Courts have quashed subpoenas where they are "abusive or harassing." *In re Grand Jury Subpoena for THCF Med. Clinic Recs.*, 504 F. Supp. 2d 1085, 1088 (E.D. Wash. 2007).

Defense counsel has publicly stated their intent to "sue the crap out of" Chainalysis and made similar threats in a variety of public online forums. (*See* ECF 160 at 14-16.) Because of these and other extrajudicial comments from defense counsel, the Court warned: "[I]f you're doing stuff that is being posted on the internet, on Twitter and YouTube, I think that there is a risk that you're tainting the jury venire." (June 16, 2023, Hr'g Tr. at 74:3-5.) The Court also warned defense counsel against "making statements that could be reasonably perceived to be threatening to a potential witness." (*Id.* at 41:7-8.) Even after the Court's warning, defense

9

sf-5613549

counsel ignored it and has been repeatedly promoting false reports regarding this case. (*See* ECF 160 at 14-16; *infra*.) Despite disregarding clear direction from the Court and being called out for it recently, defense counsel apparently will not stop. Defense counsel's most recent public outreach was apparently to discuss the case with an op-ed writer for *Bitcoin Magazine* to fuel another false and inaccurate report regarding this case. That writer thanked Mr. Ekeland and Mr. Hassard "for their insights" as he was writing the op-ed that the magazine published online on August 15, 2023. The article inaccurately and falsely tracked defense counsel's own prior rants to try to disparage Chainalysis as a "threat to our financial privacy that lurks in the shadows." Kudzai Kutukwa, *Your Financial Privacy Is Under Attack: How State-Sponsored Attacks on Bitcoin Are Growing*, BITCOIN MAGAZINE (Aug. 15, 2023), https://bitcoinmagazine.com/culture/state-sponsored-attacks-on-bitcoin-privacy-are-growing. It goes on to misleadingly recount Ms. Bisbee's statements in this case. As he has done recently for other publications that discuss this case, Mr. Hassard retweeted the author's thanks and a link to the op-ed:





Mike Hassard (@mikehassard), Twitter (Aug. 15, 2023).

    Defense counsel has shown complete disdain for this Court's orders and the ethical rules. These subpoenas, like all of defendant's subpoenas directed at Chainalysis and its employees, are not aimed at procuring relevant and admissible testimony at trial. Instead, they manifest defense counsel's improper motivations to harass and disrupt witnesses and non-parties to this case. *See, e.g.*, *United States v. Palfrey*, 2007 WL 842770, at *1 (D.D.C. Mar. 16, 2007) ("As at least two courts of appeals have recognized, threats of litigation against potential victims or witnesses in a criminal case discourage and dissuade them from testifying."), *order vacated in part on other*

11

sf-5613549

*grounds*, 2007 WL 1954181 (D.D.C. July 5, 2007).

Defense counsel's recent behavior is emblematic of their intent to harass and burden witnesses, non-parties, and the Court with meritless arguments. Upon receiving the emailed subpoenas from defense counsel, counsel for Mr. Gronager, Mr. Levin, and Ms. Lee replied to inform defense counsel that he would accept service if defense counsel would acknowledge that acceptance of service does not waive any right to challenge the subpoenas. This request was prompted by defense counsel's baseless argument in earlier briefing that acceptance of service somehow waived any ability to challenge a subpoena. (ECF No. 131 at 9-10.) Defense counsel did not respond. That such a basic legal point should go unacknowledged and ultimately require the Court's time is a mark of how little defense counsel themselves believe in the proper purpose of their subpoenas.

Defense counsel's public statements and conduct toward the Chainalysis non-parties leave little doubt that they believe cryptocurrency transactions should be entirely untraceable and seek funding and compliments from those who believe the same. They are willing to feed false narratives and ignore the Court's orders in pursuit of these goals. They should not be rewarded for this behavior. The Court should quash the latest subpoena seeking testimony from Ms. Lee and should preclude defendant from calling Mr. Gronager or Mr. Levin at trial. In addition, these non-parties respectfully suggest the Court should hold defense counsel in contempt for a violation of a direct Court order, as it warned it would do. (June 16, 2023 Hr'g Tr. at 75:15-19.)

## V. CONCLUSION

It is respectfully submitted that the Court should quash the subpoena for testimony issued by defendant to Ms. Lee and preclude defendant from further attempts to call Mr. Gronager or Mr. Levin as a witness at trial.

Dated this 22nd day of August, 2023.

sf-5613549

Respectfully submitted,

MORRISON & FOERSTER LLP

By: */s/ William Frentzen*
William Frentzen (D.C. Bar No. 1740835)
WFrentzen@mofo.com
425 Market Street, 32nd Floor
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

OF COUNSEL:

Michael Komorowski
MKomorowski@mofo.com
Emani N. Oakley
EOakley@mofo.com
425 Market Street, 32nd Floor
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Non-parties Michael Gronager, Jonathan Levin, and Youli Lee*

13

sf-5613549