**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

        Plaintiff,

v.

ROMAN STERLINGOV

        Defendant.

**No. 21-cr-399 (RDM)**

# DEFENDANT'S RESPONSE TO GOVERNMENT'S NOTICE OF ONGOING VIOLATIONS OF LOCAL CRIMINAL RULE 57.7(b)

## Introduction

Defense Counsel for Roman Sterlingov submits this Response to the Government's Notice of Ongoing Violations of Local Criminal Rule 57.7(b) for retweets, and a tweeted translation, of third-party statements criticizing the Government's prosecution.[1] As argued below the Defense has not violated Local Criminal Rule 57.7, nor is any gag order warranted under the three-part test used by courts in this District. Nonetheless, in the interests of avoiding unnecessary distractions before trial, the Defense has removed from X (formerly known as Twitter) all of the retweets identified in the Government's Notice. Additionally, the Defense has removed case commentary from the law firm's fundraising website. Therefore, this Court should disregard the Government's Notice as moot.

## Background

On May 18, 2023, the Government filed a Notice and Motion for Order to Show Cause Regarding Ongoing Violations of Local Criminal Rule 57.7(b) against the Defense.[2] On May 23, 2023, the Defense filed a reciprocal Motion against the Government for Order to Show Cause Regarding Government's Ongoing Violations of Local Criminal Rule 57.7(b).[3] On June 16, 2023, the Court denied both motions without prejudice.[4] On August 18, 2023, the Government filed its 57.7(b) Notice at issue here, complaining of retweets on one of Defense counsel's X account. These retweets consisted of public criticism about the Government's prosecution, as well as one tweet translating a Spanish language tweet criticizing the prosecution.

---

[1] Dkt. 165.
[2] Dkt. 121.
[3] Dkt. 125.
[4] Minute Order, June 16, 2023.

## Argument

This Court should disregard the Government's notice of violation and request for relief as moot as the Defense has removed the complained of retweets and tweeted translation of public criticism of the Government's prosecution. The Defense has also removed case commentary from its fundraising webpage. Additionally, for the same reasons argued in Defendant's Motion for Order to Show Cause Regarding Government's Ongoing Violations of Local Criminal Rule 57.7(b), and argued below, the Defense has not violated Local Criminal Rule 57.7.

In general, the right to a public, fair trial belongs to the defendant under the United States Constitution.[5] The concern is that pretrial publicity will unduly prejudice the potential jury before the trial starts. The Government implies that they enjoy the same fair trial rights as the Defendant, and that pretrial publicity may unreasonably impinge upon that right. However, for the same reasons that courts in this District have long held that the Government's pretrial statements do not affect a defendant's fair trial rights, any implied Government right to a fair trial has not been violated by the pretrial publicity in this case. As courts in this District have long held, the size of the venire and voir dire eliminate the potential for any jury prejudice from pretrial publicity, except in the most extreme circumstances.[6]

### I.     The Size of this District's Venire Cures any Issue

Courts in this District and Federal Circuit Courts of Appeals find no prejudice to a Defendant's (not the Government's) right to a fair trial even in the face of national negative press

---

[5] *See e.g. United States v. Mallory*, 40 F.4th 166, 175 (4th Cir. 2022).
[6] *See e.g. United States v. Morrow*, Criminal Action No. 04-355 (CKK), 9 (D.D.C. Mar. 21, 2005) ("This Court, following long-established tradition and precedent within this Circuit, finds that the voir dire process should be adequate to root out any potential undue prejudice facing Defendant")

exposure like the January 6th cases.[7] Courts in this District do so because the size of the venire in

the District of Columbia, roughly 600,000, guarantees that there are jurors who have not been

exposed to pretrial publicity.[8] As the D.C. District Court in *United States v. Nassif* stated last

September:

> 'The mere existence of intense pretrial publicity is not enough to
> make a trial unfair, nor is the fact that potential jurors have been
> exposed to this publicity.' And "[i]t is not required . . . that . . .
> jurors be totally ignorant of the facts and issues involved.". "It is
> sufficient if the juror can lay aside his impression or opinion and
> render a verdict based on the evidence presented in court." The
> Supreme Court has presumed prejudice based on pretrial publicity
> only once, in a case where a defendant's unlawfully obtained
> confession was broadcast three times shortly before his trial to
> large audiences, in a community of only 150,000 people. Courts
> have successfully empaneled juries and conducted trials in the
> locations of highly publicized crimes. And importantly, "[w]hen
> publicity is about the event, rather than directed at the individual
> defendants, this may lessen any prejudicial impact."[9]

Pretrial, before a jury has been empaneled, the presumption of prejudice belongs only to

the extreme case.[10] *Skilling v. United States* lays out the basic analysis for juror prejudice, taking

into account: (1) the venire size; (2) whether the publicity contains "[a] confession or other

---

[7] *See United States v. Chwiesiuk*, Criminal Action 21-536 (CKK), at *7 (D.D.C. Mar. 17, 2023);
*United States v. Taylor,* 942 F.3d 205, 223 (4th Cir. 2019) (affirming denial of venue transfer
motion where local population "was approximately 621,000 residents")).
[8] *See United States v. Nassif*, Criminal Action 21-421 (JDB) (D.D.C. Sep. 12, 2022) *Skilling v. United States,* 561
U.S. 358, 382 (noting that there is a "reduced likelihood of prejudice where the venire was drawn from a pool of
over 600,000 individuals" (citing *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1044 (1991) (plurality opinion));
*United States v. Taylor,* 942 F.3d 205, 223 (4th Cir. 2019) (affirming denial of venue transfer motion where local
population "was approximately 621,000 residents").
[9] *United States v. Nassif*, Criminal Action 21-421 (JDB), at *19 (D.D.C. Sep. 12, 2022) (citing *United States v.
Childress,*58 F.3d 693, 706 (D.C. Cir. 1995); *Irvin* v. *Dowd*, 366 U.S. 717, 722-23 (1961); *Rideau v. Louisiana,*373
U.S. 723, 724-25, 727 (1963); *see United States v. Brock,* Crim. A. No. 21-140 (JDB), 2022 WL 3910549, at *7;
*Skilling v. United States,*561 U.S. at 358, 384 n.17 (2010)).
[10] *United States v. Nassif*, Criminal Action 21-421 (JDB), at *16 (D.D.C. Sep. 12, 2022) ("Where a jury has not yet
been empaneled, a defendant may show that jury bias has violated his rights based on a presumption of prejudice,
but that 'presumption of prejudice . . . attends only the extreme case.'"(citing *Skilling* at 381 (2010) ("Prominence
does not necessarily produce prejudice, and juror *impartiality*, we have reiterated, does not require *ignorance*."
quoting *Irvin* v. *Dowd*, 366 U.S. 717, 722 (1961)).

blatantly prejudicial information of the type readers or viewers could not reasonably be expected

to shut from sight;" and, (3) the temporal distance between the alleged crime and trial.[11]

First, courts in this District hold that the size of venire ensures there are members that

have not been exposed to pretrial publicity.[12] This is especially true for any of the Defense's

retweets as they were made on an X account that currently only has 1,022 followers at the time

of writing.

Second, none of the protected speech in question - and it is all protected speech under the

First Amendment, and any restriction of it is a prior restraint or censorship - reaches the level of

extremity required to find prejudice in the pretrial setting.[13] As the United States Supreme Court

says in *Skilling* when it discusses its cases where it has overturned convictions because of press

coverage:

> In each of these cases, we overturned a "conviction obtained in a
> trial atmosphere that [was] utterly corrupted by press coverage";
> our decisions, however, "cannot be made to stand for the
> proposition that juror exposure to . . . news accounts of the crime .
> . . alone presumptively deprives the defendant of due process."
> Prominence does not necessarily produce prejudice, and juror
> *impartiality*, we have reiterated, does not require *ignorance*. *Irvin*
> v. *Dowd*, 366 U.S. 717, 722 (1961) (Jurors are not required to be
> "totally ignorant of the facts and issues involved"; "scarcely any of
> those best qualified to serve as jurors will not have formed some
> impression or opinion as to the merits of the case."); *Reynolds* v.
> *United States*, 98 U.S. 145, 155-156 (1879) ("[E]very case of
> public interest is almost, as a matter of necessity, brought to the
> attention of all the intelligent people in the vicinity, and scarcely
> any one can be found among those best fitted for jurors who has
> not read or heard of it, and who has not some impression or some
> opinion in respect to its merits."). A presumption of prejudice, our
> decisions indicate, attends only the extreme case.[14]

---

[11] *Skilling* 561 U.S. at 382 - 83 (discussing 3 prong analysis for potential juror prejudice) (2010).

[12] *See United States v. Chwiesiuk*, Criminal Action 21-536 (CKK), at *8-9 (D.D.C. Mar. 17, 2023)

[13] *See United States v. Chwiesiuk*, Criminal Action 21-536 (CKK), at *8-9 (D.D.C. Mar. 17, 2023).

[14] *Skilling v. United States*, 561 U.S. 358, 380-81 (2010) (citing *Murphy* v. *Florida*, 421 U.S. 794, 798-799 (1975);
*Patton* v. *Yount*, 467 U.S. 1025 (1984).

Third, at least three years, if not more, separate any of the alleged crimes, none of which have any apparent connection to D.C., from Mr. Sterlingov's September 14th, 2023, trial date.

Given the United States Supreme Court case law, and the case law of this District, which generally do not find prejudice, it is entirely reasonable to infer that there is no jury prejudice resulting from the pretrial publicity in this case as the referenced cases document far more extensive pretrial publicity than retweets on a small X account.

## II.      Voir Dire Cures any Potential Prejudice

Voir Dire cures what the size of the venire does not. Both the Court and the parties can ask the jurors if they have viewed or heard anything about the case. [15] Courts in this District hold that voir dire eliminates any presumed prejudice from pretrial publicity, even with the intensity of the media coverage of the January 6th cases.[16]

The point of voir dire is to discover bias, whatever the source, thereby ensuring a fair trial. Conducting an open conversation with the jurors during the jury selection process is a critical part of this. Through voir dire, the Court and the Parties have an opportunity to speak with potential jurors regarding anything they may have learned about the case through media. This eliminates any reasonable presumption of prejudice, particularly where, as here, the publicity was directed to the Bitcoin community, where concern over Government overreach stifling vital technologies like digital currencies, and use of standardless black-box proprietary

---

[15] *United States. v. Morrow*, Criminal Action No. 04-355 (CKK), at *12 (D.D.C. Mar. 21, 2005) ("Furthermore, the Court expressed its intention to engage in a careful voir dire inquiry into the level and type of pre-trial publicity to which potential jurors have been exposed."); *United States v. Chwiesiuk*, Criminal Action 21-536 (CKK), at *8-9 (D.D.C. Mar. 17, 2023).

[16] See *United States v. Ballenger*, Criminal Action 21-719 (JEB), at *10 (D.D.C. Oct. 28, 2022) ("The Court finds no reason to presume prejudice on the part of this district's venire prior to *voir dire*, the appropriate tool here for rooting out prejudice. Like defendants in other scandals or January 6 cases, Ballenger and Price can be tried fairly and impartially in the District of Columbia."); *see also; United States v. Brock*, Criminal Action 21-140 (JDB) (D.D.C. Aug. 31, 2022); *United States v. Garcia*, Crim. Action 21-0129 (ABJ) (D.D.C. July 22, 2022); *United States v. Rhodes*, 610 F. Supp. 3d 29 (D.D.C. 2022).

blockchain forensics for prosecutorial purposes, runs high. Pre-trial motions are not the place to determine whether potential jurors have been exposed to media attention on this case because at this point it is impossible to determine whether any potential jurors have been exposed to any media attention on this case. Given the case law in this Circuit and others, it is entirely reasonable to presume no prejudice, both because of the size of the venire and the prophylactic function of voir dire. Voir Dire has served this screening function for centuries.

**III.      Mr. Sterlingov has a First Amendment Right to Reply to the Government's Media Campaign**

As documented in the Defense's prior Motion for an Order to Show Cause Regarding Government Violations of Rule 57.7(b), the Government and its agents have engaged in extensive pretrial publicity for years regarding this case.[17] The Government, in its press releases, has accused Mr. Sterlingov of conducting a nearly decade-long money laundering scheme and alleged that he laundered over $300 million of drug money. This is to say nothing of the Government's and its agent's extensive interviews given to Andy Greenberg for his book *Tracers in the Dark:  The Global Hunt for the Crime Lords of Cryptocurrency*, published last November by DoubleDay. The book directly discusses Mr. Sterlingov's case and arrest and has had a far wider circulation than any commentary by the Defense. Mr. Sterlingov is the last person to the press party.

A criminal defendant has a First Amendment right of reply to the Government's statements about their case.[18] In *United States v. Ford*, the Sixth Circuit held that the defendant had a right to reply publicly, noting that the defendant's interest in replying to the charges and

---

[17] Dkt. 125.
[18] *See United States v. Ford*, 830 F.2d 596, 600 (6th Cir. 1987) ("The government is our servant, not our master."); *see also, United States v. Carmichael*, 326 F. Supp. 2d 1267 (M.D. Ala. 2004).

adverse publicity was "at a peak." The court emphasized the importance of the public's right to

hear the defendant's reply to maintain confidence in the criminal justice system:

> "The accused has a First Amendment right to reply publicly to the
> prosecutor's charges, and the public has a right to hear that reply,
> because of its ongoing concern for the integrity of the criminal
> justice system and the need to hear from those most directly
> affected by it."[19]

A defendant has First Amendment rights to reply publicly to comments made by

prosecutors, and the Defense's retweets are part of this right to reply.[20] They are protected

speech, and the drastic remedy of prior restraint or a gag order is unwarranted and detrimental to

Mr. Sterlingov's ability to mount a complete defense in the face of the Government's

prosecutorial juggernaut.[21]

**IV.     Any Gag Order Violates Mr. Sterlingov's Fifth and Sixth Amendment Rights**

Mr. Sterlingov has a right to publicly discuss his case for investigative and fundraising

purposes as part of his constitutional right to put on a complete defense.[22] He also has a Sixth

Amendment right to a public trial.[23]

---

[19] *See Ford*, 830 F.2d at 599.

[20] *See e.g. United States v. Schock*, No. 16-cr-30061, at *5-6 (C.D. Ill. Dec. 9, 2016) (citing *Chi. Council of Lawyers v. Bauer*, 522 F.2d at 250, 253-54 (noting that attorneys are often in the position to act as a check on government by exposing abuses); *see also U.S. v. Scrushy*, CR-03-BE-0530-S, at *3 (N.D. Ala. Apr. 13, 2004) ("The Government, through press conferences, press releases, and statements created and/or played to the intense publicity surrounding the SEC investigation and civil suits... Consequently, in the court's estimation, fairness called for an opportunity for some response from the defense.").

[21] *See United States v. Carmichael*, 326 F. Supp. 2d 1267, 1270 (M.D. Ala. 2004) ("the government has not convinced the court that such drastic relief is warranted.")).

[22] *See Carmichael*, 326 F. Supp. 2d at 1296 ("'Whether rooted in the Due Process Clause . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.'" (quoting *Crane v. Kentucky,* 476 U.S. 683, 690, (1986) (citations omitted))); *id.* at 1298 ("However, the rules elucidated in these cases strongly imply that a criminal defendant has a right protected by the Fifth and Sixth Amendments to look for material evidence and witnesses."); *id* at 1270 ("the harm posed by the website does not warrant restricting Carmichael's Fifth and Sixth Amendment right to investigate his case by using the website to gather evidence.")).

[23] *See e.g. United States v. Mallory*, 40 F.4th 166, 175 (4th Cir. 2022).

The Defense's public comments on this case have resulted in people approaching them with information related to the accuracy of the Chainalysis Reactor software, stories of false arrests based on faulty Chainalysis tracing, and have led directly to the Defense's retention of experts who have exposed deep flaws in the Government's and Chainalysis's speculative, over inclusive, forensics. This indeed seems to be the true issue that the Government complains of – that they do not like the light of day being shined on this prosecution where they, rather than Mr. Sterlingov, seek to hide things from the public. The Defense's public comments have greatly aided Mr. Sterlingov's ability to mount a complete defense and have a fair trial.

No gag order is warranted in this case. Courts use a three-part test to determine whether a gag-order is appropriate, which requires (1) a clear or serious threat to the fairness of the trial; (2) that less restrictive alternatives are not adequate to mitigate harm, and (3) that the order would effectively prevent the threatened danger.[24]

There is no clear and serious threat to the fairness of the trial because courts in this District and others routinely hold that the size of the venire and voir dire ameliorate any potential prejudice. Moreover, the Government fails to identify a single member of the D.C. venire that has viewed any of the public criticism of this prosecution that was retweeted. Second, the Defense, in the interests of avoiding distractions from the upcoming trial, has deleted the complained of retweets and translation, and updated the fundraising copy on its website to remove any substantive discussion of the case. Third, given this, there is no threatened danger and there never was.

---

[24] *United States v. Morrow*, Criminal Action No. 04-355 (CKK) (D.D.C. Mar. 21, 2005) citing *In re Russell*, 726 F.2d 1007, 1010 (4th Cir. 1984*); In re Application of Dow Jones Co*., 842 F.2d at 610; *Radio Television News Ass'n*, 781 F.2d at 1446-47; *United States v. Tijerina*, 412 F.2d 661, 666 (10th Cir. 1969); but see *United States v. Ford*, 830 F.2d 596, 598 (6th Cir. 1987) (adopting a "clear and present danger" standard).

## Conclusion

This Court should disregard the Government's notice because it is moot. Given the case law of this District and courts across the country, it is entirely reasonable to presume that the retweets in question do not prejudice Mr. Sterlingov's constitutional right to a fair trial or any implied Governmental right to a fair trial. Indeed, Mr. Sterlingov has a First Amendment right of reply to the Government's and Chainalysis' public commentary on this case on top of his Sixth Amendment right to a public trial. For the reasons argued above, the Defense has not violated Local Criminal Rule 57.7. Nonetheless, in the interests of avoiding unnecessary distractions before trial, Defense Counsel has deleted the complained of retweets and removed commentary from the firm's fundraising webpage.

Dated: August 25, 2023
Brooklyn, New York

Respectfully submitted,


/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
michael@torekeland.com

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com


*Counsel for Defendant Roman Sterlingov*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August 2023, the forgoing document was filed

with the Clerk of Court using the CM/ECF System, and sent by email to the attorneys for the

Government listed below:

s/ Michael Hassard

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov

Jeffrey Pearlman
Jeffrey.Pearlman@usdoj.com