# Exhibit 2

 

Karima M. Woods, Commissioner

**BULLETIN**
**22-BB-001-08/04**

TO: ALL LICENSED AND PROSPECTIVE ENTITIES THAT ENGAGE OR PLAN TO ENGAGE IN MONEY TRANSMISSION OF VIRTUAL CURRENCY BUSINESS IN THE DISTRICT OF COLUMBIA

FROM: KARIMA M. WOODS, COMMISSIONER

SUBJECT: CERTAIN BITCOIN ACTIVITY SUBJECT TO DISTRICT OF COLUMBIA MONEY TRANSMISSION LAWS

DATE: AUGUST 4, 2022

The purpose of this bulletin is to provide information to industry participants engaging in or planning to engage in money transmission with Bitcoin or other virtual currency used as a medium of exchange, method of payment or store of value in the District.

**Money Transmission**
Pursuant to DC Code § 26-1001(10), "'[m]oney transmission' means the sale or issuance of payment instruments **or** engaging in the business of receiving money for transmission **or** transmitting money within the United States, or to locations abroad, by any and all means, including but not limited to payment instrument, wire, facsimile, or electronic transfer." (emphasis added)

A payment instrument is defined as "any written or electronic check, draft, money order, travelers check, or other electronic or written instrument or order for the transmission or payment of money, which is sold or issued to one or more persons, whether or not such instrument is negotiable", under DC Code § 26-1001(12). Additionally, pursuant to DC Code § 26-1002(a), in the District, a person must be licensed to engage in the business of money transmission.

**Bitcoin is Money for Money Transmission Purposes**
In a July 2020 ruling, the United States District Court for the District of Columbia held in *United States v. Larry Dean Harmon*, 474 F.Supp.3d 76 (D.D.C. 2020), that Bitcoin qualifies as money under its ordinary meaning as adopted by the DC Money Transmitters Act of 2000 ("MTA"), DC Code §26-1001 *et seq.* See also, Bank Secrecy Act (BSA), 31 USC 5311 *et seq.* The Court's decision provided that although money transmission is vaguely defined in DC Code, it relied on the common use of the term "money" which is a "medium of exchange, method of payment or

store of value." Therefore, based on Bitcoin's characteristics, this cryptocurrency functions like money.

Further, the Court determined that because the DC Council chose to define specialized banking and financial terms, yet also chose to leave the term money undefined, it signaled that there was no intent for the term money to have a specialized definition for purposes of the MTA. As such, the Court adopted the ordinary meaning of money under the MTA which it found also encompasses Bitcoin. Therefore, the Court reasoned that the goal of the MTA is to regulate all kinds of transfers of funds, whether fiat currency, virtual currency or cryptocurrencies.  The Court reaffirmed its ruling when Mr. Harmon filed a motion to dismiss counts in his indictment as being void for vagueness.  *U.S. v. Harmon,* 19-cr-395 (BAH), April 16, 2021, 2021 WL 1698616.

**DISB's Position on Entities Engaging in Bitcoin or Virtual Currency-Related Activity**
DISB views the transactions where entities receive for transmission, store, and/or take custody, of Bitcoin and other virtual currencies from consumers via kiosks (aka BTMs), mobile applications and/or online transactions, as engaging in the business of "money transmission." Such entities require a money transmitter license to operate in the District.

DISB does not view transactions where entities proposing to sell and buy Bitcoin and other virtual currencies and cryptocurrencies from consumers in exchange for cash payments via kiosks and/or online transactions as engaging in the business of "money transmission."

Should the business activities in which entities plan to engage fall within DC Code § 26-1001(10), then those proposed business activities would subject the company to DISB's money transmission licensing requirements.

A company seeking a money transmitter license is required to submit an application so that the Banking Bureau may determine whether to grant the license. Furthermore, the application process is fact-driven, and whether an entity is considered a money transmitter requiring a license to operate in the District depends on the facts and circumstances of each applicant, including, but not limited to, the applicant's proposed business plan and proposed flow of funds. Additionally, information about an applicant's business model may also be required in order to make a determination on whether to grant a money transmitter license.

A prospective licensee is encouraged to explore whether its business activities require a money transmitter license in consultation with its attorneys or advisors.

Any questions or concerns regarding this Bulletin may be directed to the Banking Bureau of the Department of Insurance, Securities and Banking by email at **bankingbureau@dc.gov**.

**DISB Mission**

Our mission is three-fold: (1) cultivate a regulatory environment that protects consumers and attracts and retains financial services firms to the District; (2) empower and educate residents on financial matters; and (3) provide financing for District small businesses.