UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO SEPTEMBER 8, 2023 MINUTE
ORDERS REGARDING EXPERT TESTIMONY ON STATUTORY AND
REGULATORY CONTEXT AND COGNITIVE OR CONFIRMATION BIAS**

The United States of America, by and through the United States Attorney for the District of Columbia, files the following response to the Court's orders on September 8, 2023, directing the government to submit, *inter alia*, a notice directing the Court's attention to (a) "any evidence, reports, analyses or other material or experience tending to confirm Reactors reliability"; "any caselaw or other material addressing the admissibility of expert testimony about the relevant statutory and regulatory context"; and (b) "cases addressing the admissibility of expert testimony about cognitive or confirmation bias." *See* Minute Orders (Sept. 8, 2023). In partial response whereof, the government submits the following:

I. **Admissibility of Expert Testimony About Relevant Statutory and Regulatory Context**

The traditional rationale for excluding opinion testimony about matters of law is that it may be "so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be." *Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir. 1990). Such testimony is not helpful to the trier of fact under the first prong of Fed. R. Evid. 702. *See id.* By contrast, it is often helpful to present expert testimony explaining complex regulatory schemes that may have informed a party's actions, but which are not themselves at issue in a case. As one district court has explained:

> We live in a highly complex and often bureaucratic society with a multitude of legal and regulatory requirements; it is frequently the case that the acts or omissions of the parties, or their legal or contractual obligations, can only be fully understood in the context of a particular regulatory environment. Such a regulatory environment often needs to be explained to lay persons, and therefore expert testimony may be helpful to the jury to understand the issues in the case.

*Adams v. New England Scaffolding, Inc.*, 2015 WL 9412518, at *5 (D. Mass. Dec. 22, 2015).

Consistent with this principle, courts routinely permit expert testimony about the Bank Secrecy Act ("BSA") and the obligations it imposes in a variety of cases, including money laundering and cash structuring prosecutions. For example, in *United States v. Caro*, 454 F. App'x 817, 2012 WL 48038 (11th Cir. Jan. 10, 2012) (unpublished), the Eleventh Circuit affirmed the admission of expert testimony about the BSA in a prosecution of check cashers for violations of currency transaction reporting requirements under the BSA. The expert testified generally "as to the content and purposes of the BSA, and the CTR obligations of domestic financial institutions." *Id.* at 833. The Eleventh Circuit found that such testimony "was not . . . a witness inappropriately instructing the jury on the law applicable to the case," and it was accompanied by a jury instruction that the jury was free to accept or reject opinions offered by any expert. *Id.* at 833-34. *See also*, *e.g.*, *United States v. $61,900.00*, 802 F. Supp. 2d 451, 459 & n.15 (E.D.N.Y. 2011) (admitting expert testimony about "the background of the Bank Secrecy Act" and "the reason for the CTR filing requirements" in bench trial following "a full *Daubert* analysis in deciding the weight to accord [the expert's] testimony").[1]

Other courts have emphasized that testimony about the BSA's regulatory scheme is helpful

---

[1] In addition, as noted during the hearing on September 8, 2023, the government presented expert testimony in this District from an official with U.S. Customs and Border Protection, without objection, about FinCEN Form 105, also known as a Report of International Transportation of Currency or Monetary Instruments (CMIR), and its purposes and regulatory context. *See United States v. Tai Tan Nguyen*, No. 17-cr-238 (D.D.C. Oct. 16, 2018) (testimony of CBP Officer Steve Ehrlich), attached as Ex. 1.

because it provides context that is not likely to be within the common knowledge of the average juror. As one district court concluded after summarizing the relevant case law, "courts have allowed expert testimony to explain the BSA, its obligations on financial institutions to file Currency Transaction Reports ('CTRs'), and structuring deposits in general" because such matters "are beyond the realm of general knowledge of the average juror." *United States v. Ventura*, 2013 WL 2182831, at *2 (E.D. Ky. May 20, 2013) (collecting cases); *see also, e.g.*, *United States v. Campbell*, 347 F. App'x 923, 2009 WL 3326412, at **3 (4th Cir. Oct. 16, 2009) (unpublished) (affirming admission of expert testimony about "the Bank Secrecy Act, and its requirement that a financial institution must submit a currency transaction report whenever an individual made a transaction with more than $10,000 in cash," and "that the Bank Secrecy Act made it a crime to attempt to structure a transaction in order to evade the filing of a CTR" because it "was likely very helpful to the jury"); *United States v. Nektalov*, 2004 WL 1469487, at *3 (S.D.N.Y. June 30, 2004) (admitting expert testimony about "the regulatory framework that exists to combat money laundering, and . . . some of the ways money launderers attempt to avoid this framework" because "the techniques about which [the expert] will testify are not likely within the understanding of an average juror," and such testimony "will assist the jury both in understanding the evidence and in determining the facts at issue, much like expert testimony admitted in other money laundering cases"); *United States v. Monaco*, 199 F.3d 1324, 1999 WL 980946, at * (2d Cir. Oct. 21, 1999) (unpublished) (affirming admission of expert testimony about "Currency Transaction Reports, the significance of cashier's checks in laundering transactions, Form 8300, and the use of nominee owners" because "[w]e cannot say that these matters are within the common understanding of lay jurors"); *United States v. Ortiz*, 112 F.3d 506, 1997 WL 225108, at *5 (2d Cir. May 5, 1997) (unpublished) (affirming admission of expert testimony about "the complex statutory and

regulatory requirements imposed by the currency transaction reporting laws; [and] the meaning of financial structuring," because it was "reasonably perceived as beyond the ken of the jury") (citations omitted).

These authorities overwhelmingly support admission of the government's proposed fact testimony from FinCEN employee Theodore Vlahakis regarding the BSA regulatory scheme and its application to money transmitting businesses. The specific obligations imposed by the BSA—such as know-your-customer (KYC) requirements, anti-money laundering obligations, and the filing of suspicious activity reports—are highly relevant to understanding the factual context of Bitcoin Fog's operations, including why criminal actors seeking to launder their illicit proceeds would seek out non-compliant exchanges such as Bitcoin Fog, and why BSA compliance is important to combatting illicit financial activity involving drugs, child sexual abuse material, cyber crime, and other criminal activity.

In addition, such background information will be helpful to the jury in understanding the defendant's motives and state of mind in operating a non-compliant money transmitting business. For example, in a March 9, 2014 post on BitcoinTalk, the defendant's alter-ego, Akemashite Omedetou, distinguished Bitcoin Fog from Blockchain.info (now Blockchain.com), a large cryptocurrency wallet provider, by referring to Blockchain's regulatory obligations: "We would personally never use them as the only step in the washing. Blockchain is a public company and is required by law to comply with anti- money laundering laws, as well as revealing user information and logs, should the law require that." In another post on BitcoinTalk on June 27, 2013, the defendant's attributable account, Killdozer, observed: "FinCEN said they are now regulating bitcoins, so all companies need licenses." The proposed testimony regarding the BSA and its obligations, as well as the role FinCEN plays in enforcing the BSA, will assist the jury in

understanding the significance of the defendant's statements.

## II.     Admissibility of Expert Testimony About Cognitive or Confirmation Bias

The government is aware of two prior instances in which Dr. Dror was permitted to testify in U.S. courts as an expert witness regarding his theories of cognitive bias. In each of those instances, however, it appears that Dr. Dror was presenting testimony related to fingerprint analysis, a forensic discipline to which he has devoted a substantial amount of time and study. *United States v. Shameke Walker*, No. 15-cr-388 (E.D.N.Y. July 11, 2016) (fingerprint analysis); *United States v. John Rooney*, No. NOCR2010-404 (Mass. Super. Ct. Apr. 25, 2016) (fingerprint analysis). Neither of those instances is comparable to the proposed testimony here, where Dr. Dror would testify in abstract terms about his theories of human nature with no understanding of the specific factual context of the case, such as how blockchain analysis works or they types of data evaluated by blockchain analysis technicians. The government reiterates its concern that such abstract testimony, presented in the context of this criminal trial, would pose a risk of being misconstrued by the jury as commentary about the specific experts and analytic methods employed in this case. Under both Rule 702 and Rule 403, the danger of jury confusion militates against admission of such testimony.

While expert testimony regarding cognitive bias appears to have been introduced in a handful of state and federal cases, the government is aware of only one written decision addressing its admissibility under Rule 702. In *United States v. Wells*, 2019 WL 3229912 (D. Alaska July 17, 2019), a district court allowed limited expert testimony in a murder case about cognitive bias as it related to "generalized discussion of investigative best practices" but "without specific reference to the investigation done in [the defendant's] case." *Id.* at 14. That decision, however, was grounded in the witness's qualifications "as an expert in the fields of crime scene analysis and police practices." *Id.* at *13. That contrasts to Dr. Dror, who testified repeatedly that he had no

5

understanding or experience with blockchain analysis. *See, e.g.*, 7/19/23 Tr. at 77:11-18 (agreeing that he had never spoken to a blockchain analyst, observed blockchain analysis, or reviewed any literature related to blockchain analysis, and confirming "I have no knowledge of blockchain analysis"). To the extent Dr. Dror proposes to testify about "best practices" or other steps that could be taken to reduce cognitive bias, such testimony would fail under Rule 702 because he admitted that he has never validated the efficacy of his own cognitive bias training and that, "as to measures to minimize them [*i.e.* minimize cognitive biases], there is no scientific proven data on that." *Id.* at 79:19-20; *see also id.* at 79:3-4 ("If they're taught the measures [to reduce cognitive bias], there's not any quantification if and to what degree it actually reduces bias.").

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

BY:    */s/ Christopher B. Brown*
        Christopher B. Brown, D.C. Bar No. 1008763
        Assistant United States Attorney
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7153
        Christopher.Brown6@usdoj.gov

        */s/ C. Alden Pelker*
        */s/ Jeffrey Pearlman*
        C. Alden Pelker, Maryland Bar
        Jeff Pearlman, D.C. Bar No. 466901
        Trial Attorneys, U.S. Department of Justice
        Computer Crime & Intellectual Property Section
        1301 New York Ave., N.W., Suite 600
        Washington, D.C. 20005
        (202) 616-5007 (Pelker)
        (202) 579-6543 (Pearlman)
        Catherine.Pelker@usdoj.gov
        Jeffrey.Pearlman2@usdoj.gov