IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **ROMAN STERLINGOV,** <br><br> Defendant. | Criminal No. 21-CR-399 (RDM) |

**CHAINALYSIS' NOTICE OF REQUEST FOR CLARIFICATION OF THE COURT'S MINUTE ORDER REGARDING HEURISTIC INFORMATION TRADE SECRETS**

Non-party Chainalysis Inc. ("Chainalysis") submits this request for clarification of the Court's Minute Order of September 21, 2023 in light of recent developments. Given the uncertainty around the defense's intentions and their apparent misuse of the original protective order in this case with respect to material shared with expert witnesses, Chainalysis makes two requests at this time. First, the Court should clarify that both the original protective order and the Heuristic Information Protective Order prohibit any disclosure or use outside of this case of the materials subject to the protective orders. This prohibition should encompass both disclosure and use, including thoughts and impressions generated from reviewing the protected material, and should apply regardless of who the expert is who ultimately reviews the heuristic information. Second, Chainalysis requests that if the defendant proposes a new expert to review the materials subject to the Heuristic Information Protective Order, this individual should not be a Chainalysis competitor and should be bound by the terms of the [Proposed] Heuristic Information Protective Order at ECF No. 195-1.

## BACKGROUND

At a hearing on September 21, 2023, defense counsel and counsel for Ciphertrace expressed doubt about Jonelle Still's ability to review the heuristic information subject to the

Heuristic Information Protective Order entered by the Court on September 13, 2023 (ECF No. 196). Subsequently, defendant notified the Court that "neither Ms. Still nor Ciphertrace are willing and able to review" the heuristic information subject to the Heuristic Information Protective Order. (ECF No. 205 at 1.) At the hearing, however, both parties agreed to and the Court adopted a "categorical[]" rule that there would be "[n]o new experts." (Sept. 21, 2023 Hr'g Tr. at 40:5-9.)

Also at the hearing on September 21, defense counsel informed the Court that while Ciphertrace's counsel had signed the original protective order (ECF No. 18), no individual at Ciphertrace with whom sensitive materials had been shared signed it. (Sept. 21, 2023 Hr'g Tr. at 6:4-7.) This was despite the clear language of that protective order which requires each "individual" to whom discovery is disclosed and "the person to whom disclosure is made" to sign Attachment A. (ECF No. 18 at 2, 5.) The Court agreed that this "is an individual responsibility." (Sept. 21, 2023 Hr'g Tr. at 19:11-12.)

Following the hearing, the Court issued a Minute Order, which stated in part: "Any individual who receives information provided by Chainalysis (1) may not disclose that information to any other person who is not subject to the protective order at Dkt. [18] and who has not also signed Attachment A." (Sept. 21, 2023 Minute Order.) At the hearing, the Court invited Chainalysis to raise any concerns with it. (Sept. 21, 2023 Hr'g Tr. at 44:15-16.)

## REQUEST FOR CLARIFICATION

In light of defense counsel's admission that they have not followed the explicit instructions of the original protective order and their filing confirming that Ms. Still will not review the heuristic information (ECF No. 205), substantial uncertainty exists about how the

2

sf-5639413

heuristic information may be reviewed or disseminated by the defense.[1] Chainalysis is concerned that its trade secrets may not be adequately protected if either Ms. Still were to review the heuristic information and share that information with other Ciphertrace employees or if defendant were to select a new expert – despite the rule adopted by the Court – to review that information. At a recent hearing, the Court agreed with Chainalysis' counsel that Chainalysis "certainly should be served with [a] request [to modify the Heuristic Information Protective Order] and have an opportunity to be heard on it." (Sept. 13, 2023 Hr'g Tr. at 89:17-18.) In keeping with this discussion, Chainalysis requests an opportunity to be heard if the defense proposes a new expert to review the heuristic information or if there is any attempt to modify the protective orders in this case.

      To prevent any future confusion about the terms of the protective orders and to make crystal clear to the defendant, the government, and Chainalysis what Chainalysis understands to be the Court's intent, Chainalysis requests that the Court clarify that both the original protective order and the Heuristic Information Protective Order – regardless of who the expert is who ultimately reviews the heuristic information – prohibit any disclosure or use of trade secrets outside of this litigation, including by using thoughts and impressions generated from reviewing the protected material. This clarification of the Court's September 21 Minute Order would make explicit what it has already stated on the record during recent hearings. The Court has stated that both the original protective order and the Heuristic Information Protective Order require that anyone who receives information under either order "may not use that material or information

---

[1] Given defense counsel's admission that they did not require each individual who received materials subject to the protective order to sign Attachment A of that protective order, Chainalysis requests that defendant be required to provide signed copies of Attachment A for each individual to whom Chainalysis materials have been disclosed to the Court, the government, and Chainalysis.

3

sf-5639413

for any purpose whatsoever other than this case." (Sept. 21, 2023 Hr'g Tr. at 44:8-10.) The Court has recognized the significant risks of misappropriation here, observing that if an expert were to share the heuristic information "with somebody who is a software engineer or somebody who is designing the algorithms, that person may find it harder to segregate in their own head what it is they've learned from the source versus their own creative instinct." (Sept. 13, 2023 Hr'g Tr. at 19:23-20:2.) This sort of use is of particular concern given the highly technical nature of the materials being disclosed, and the Court's order should expressly state that use of thoughts and impressions gained through review of these materials is prohibited.

The Court's September 21 Minute Order may be read by defense counsel to permit other Ciphertrace employees (or, in light of the defendant's notice of Ms. Still's inability to review the heuristic information, the employees of the organization that employs a new expert) to review Chainalysis' heuristic information by signing Attachment A of the original protective order entered by the Court on September 17, 2021 and filed as ECF No. 18. (Sept. 21, 2023 Minute Order.) Chainalysis requests that the Court clarify that such a reading of the Minute Order would run contrary to the explicit language of the Heuristic Information Protective Order, which limits access to the heuristic information to Ms. Still and defense counsel only. (*See* ECF No. 196.) In keeping with this limitation, the Heuristic Information Protective Order allows Ms. Still to serve as the expert who reviews Chainalysis' heuristic information, not other Ciphertrace employees. (ECF No. 196 at 2.) In fact, it specifically prohibits Ms. Still from sharing the heuristic information "with Ciphertrace, any of its employees or contractors, or any investors in Ciphertrace." (*Id.*) Chainalysis makes this request now to avoid future confusion – or the pretense of confusion, as defense counsel has asserted regarding the requirement that each individual to whom sensitive information is disclosed sign the protective order.

District courts have broad discretion to enter protective orders to protect sensitive materials. "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). "[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969). Such protective orders are standard where competitive concerns are at issue. "Ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to attorneys and experts, particularly where there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party." *Alexander v. F.B.I.*, 186 F.R.D. 54, 58 (D.D.C. 1998) (citation omitted).

The Heuristic Information Protective Order protects Chainalysis' proprietary information by restricting defense expert Ms. Still, who works for Chainalysis competitor Ciphertrace, from using the information to compete with Chainalysis. It expressly prohibits using the heuristic information and "any thoughts or impressions or ideas derived therefrom in order to engage in any competitive behavior with Chainalysis." (ECF No. 196 at 2.) It also expressly prohibits Ms. Still from sharing any heuristic information with Ciphertrace, its employees, contractors, or investors. (*Id.*) Defense counsel has agreed that the Heuristic Information Protective Order prevents Ms. Still from sharing what she learned from reviewing the heuristic information with Ciphertrace, any employee of Ciphertrace, or anyone other than defense counsel. (*See* Sept. 13, 2023 Hr'g Tr. at 15:16-18.)

Allowing Ciphertrace employees – or the employees of an organization to which a new expert belongs – to review the heuristic information would risk irreparable harm to Chainalysis.

sf-5639413

"Misappropriation" of trade secrets includes both "disclosure or use of a trade secret of another." 18 U.S.C. § 1839(5)(B). Courts regularly prevent individuals and organizations from misappropriating trade secrets that could be used by competitors. *See, e.g.*, *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 76-78 (D.D.C. 2001) (granting temporary restraining order to protect confidential client list that former employee had misappropriated). Ciphertrace competes with Chainalysis, as may the organization to which a new expert belongs, and such risks are heightened in these situations. Indeed, as defendant recently disclosed, Ciphertrace's counsel acknowledged that "Ciphertrace and Chainalysis, Inc. are direct competitors, and sharing proprietary data raises competition concerns," and Ciphertrace may not "accept, receive, handle, analyze, or otherwise opine on any of the heuristic data from Chainalysis, Inc." (ECF No. 199 at 1-2.)

Disclosure of trade secrets includes sharing those trade secrets with individuals who have expertise in the subject of the trade secrets. Were a competitor's employees to gain access to the heuristic information, they would inevitably form impressions about Reactor's clustering heuristics that they would later rely upon in competing with Chainalysis. Such "inevitable disclosure" occurs when the nature of a competitor's business "will inevitably lead [the competitor's employee] to rely on" the trade secrets. *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995). As courts have recognized, "it is impossible for someone to 'lock-up trade secrets in [her] mind.'" *Cheryl & Co. v. Krueger*, 2019 WL 3334329, at *5 (S.D. Ohio July 25, 2019) (quoting *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000)).

Trade secrets of technology companies are the paradigmatic case. When their trade secrets are exposed to "employees who had expertise in highly technical industries" and the employees' "knowledge would allow a competitor to improve its business with little or no

sf-5639413

effort," courts have granted injunctive relief. *Int'l Paper Co. v. Suwyn*, 966 F. Supp. 246, 258 (S.D.N.Y. 1997) (citing cases, including computer software case). That is because there can be no remedy after the fact. Once a trade secret is misappropriated, it is "lost forever." *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984).

The Heuristic Information Protective Order prohibits defense counsel and their expert witness from using the heuristic information outside of this litigation or disclosing it and information generated from it to anyone else, full stop. That includes both sharing information with others and loading information onto devices or systems, where it may later be reviewed. These provisions are critical in preventing Chainalysis' trade secrets from falling into the hands of competitors – even through the thoughts and impressions gained by reviewing the heuristic information.

To avoid any later ambiguity about the terms of the Heuristic Information Protective Order, Chainalysis simply asks that the Court clarify that its September 21 Minute Order does not alter or expand the scope of those authorized to gain access to the heuristic information. In keeping with its comments at recent hearings, the Court should clarify that, regardless of who the expert is who ultimately reviews the heuristic information, the protective orders entered in this case prohibit any disclosure or use of trade secrets outside of this litigation, including thoughts and impressions generated from reviewing the protected material, as the Court has previously discussed on the record. Clarifying this order now will reduce the likelihood that Chainalysis will later need to move for a temporary restraining order or an injunction (and, potentially, appeal any adverse decision), which would risk significantly delaying the already twice rescheduled trial date.

sf-5639413

**REQUEST FOR PROTECTIVE ORDER GOVERNING NON-COMPETITOR**

Currently, the defense has no expert to review the materials subject to the Heuristic Information Protective Order. (*See* ECF No. 205.) In the event that the defendant were to propose an acceptable expert to review the materials, Chainalysis requests that such an expert not be a competitor. (Chainalysis had agreed to Ms. Still's review as a compromise and to expedite what appeared at the time to be a tight timeline before trial began.) There should be no dissemination of any Chainalysis materials without Chainalysis first having the opportunity to be heard as to any potential competitive or enforcement concerns with the proposed expert. Chainalysis requests that the new expert sign a protective order with a five-year noncompete requirement, as proposed at ECF No. 195-1. Chainalysis also requests that the Court order the defendant to provide it, the government, and the Court with copies of both protective orders signed by the expert.

Given the developments following entry of the Heuristic Information Protective Order on September 13, Chainalysis respectfully requests that the Court clarify that both the original protective order and the Heuristic Information Protective Order prohibit any disclosure or use of trade secrets outside of this litigation, including thoughts and impressions generated from reviewing the protected material. Additionally, should the defendant propose a new expert to review the materials subject to the Heuristic Information Protective Order, the Court should require any new expert not be a Chainalysis competitor and to abide by the terms of the [Proposed] Heuristic Information Protective Order at ECF No. 195-1.

Dated this 5th day of October, 2023.

Respectfully submitted,

MORRISON & FOERSTER LLP

By: */s/ William Frentzen*
William Frentzen (D.C. Bar No. 1740835)
WFrentzen@mofo.com
425 Market Street, 32nd Floor
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

OF COUNSEL:

Michael Komorowski
MKomorowski@mofo.com
Emani N. Oakley
EOakley@mofo.com
425 Market Street, 32nd Floor
San Francisco, CA  94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Non-party Chainalysis Inc.*