**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NO. 21-cr-399 (RDM)** |
| | **:** | |
| **ROMAN STERLINGOV,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S NOTICE AND RENEWED MOTION**
**FOR ORDER TO SHOW CAUSE REGARDING DEFENSE**
**COUNSEL'S VIOLATION OF LOCAL CRIMINAL RULE 57.7(b)**

The United States of America, by and through the United States Attorney for the District of Columbia, provides notice of defense counsel's planned appearance on a live "X Space" Internet broadcast tomorrow, January 17, 2024, "to discuss their upcoming trial defending Roman Sterlingov" and "to share new details about Roman Sterlingov's case," in violation of Local Criminal Rule 57.7(b) and this Court's Order.  The government further moves for an Order To Show Cause why defense counsel should not be held in contempt for their repeated violation of Rule 57.7(b) despite numerous warnings from the Court.  This case should be tried in a court of law, in front of an unbiased jury, and not through defense counsel's efforts to taint the jury pool through *ad hominem* attacks and inflammatory public statements.

**NOTICE OF DEFENSE COUNSEL'S "X SPACE" INTERNET BROADCAST**

On January 15, 2024, the organizers of a Dallas-based cryptocurrency conference posted an advertisement for an "X Space" event (formerly known as "Twitter Space") scheduled for tomorrow, January 17, 2024, in which the defendant's two attorneys are slated to appear on a live Internet broadcast "to discuss their upcoming trial defending Roman Sterlingov":



Defense counsel Mr. Hassard then used his X account to advertise for the event, stating: "Gunna

be a good one! #FreeRoman" and "Looking forward to this opportunity *to share new details* about

Roman Sterlingov's case! #FreeRoman #Bitcoin" (emphasis added):





**ARGUMENT**

**1.  Defense Counsel's Record of Extrajudicial Statements in Violation of Rule 57.7**

This new Internet broadcast comes on the heels of extensive litigation regarding defense counsel's inflammatory and inaccurate public media campaign attacking the government's witnesses—in particular, its expert witness from the blockchain analytic company Chainalysis— as well as its investigators and attorneys.  *See* ECF Nos. 121, 125, 127, 134, 138, 161, 165.

During the motions hearing on June 16, 2023, the Court engaged in the following colloquy with defense counsel regarding Rule 57.7(b):

| | |
|---|---|
| The Court: | I'm just saying that there are rules of conduct of attorneys in criminal cases here.  I expect the lawyers appearing in front of me to comply with them.  And I don't think it's an answer to say, yeah, we might taint some prospective jurors, but we can just strike them. |

* * *

| | |
|---|---|
| The Court: | I do not think you should be violating this rule, and I don't think the answer is to say we'll just strike people from the venire based on my reading of the rule.  I expect you to comply with this rule. |
| Mr. Ekeland: | Okay, Your Honor. We submit that we are complying by the rule because we don't think there's any reasonable probability that any juror – |
| The Court: | You're posting stuff on Twitter.  If you're having a private conversation that's not being placed on the internet with people in Europe, fine; I don't see a problem there.  I get that. |
| | But if you're doing stuff that is being posted on the internet, on Twitter and YouTube, I think that there is a risk that you're tainting the jury venire by doing that. |

6/16/23 Tr. at 72-74.

The Court then warned defense counsel that any further violations of Rule 57.7 would be met with entry of an Order enforced by contempt:

> The Court:   Okay. At this point in time, I don't think it's necessary for me to enter an order.  But I will say this.  If I do see other violations, and other violations of Rule 57.7(b) are brought to my attention, at that point in time I'm just going to enter an order.  If you violate that order, you will be in contempt, and there will be consequences for that.
>
> But as of now, I expect everyone to comply with the rule.  As I said, if any further violations are brought to my attention, I will actually issue an order directing compliance and hold the violating parties in contempt after that.

6/16/23 Tr. at 75.

Following the Court's clear warning on June 16, 2023, the government advised the Court that defense counsel continued to post inflammatory statements about the merits and evidence of this case on X, including references to the government's expert witness and her company as "rats" and "parasites."  ECF Nos. 161, 165.  The Court then entered an Order enforcing Rule 57.7(b) during the hearing on August 29, 2023:

> The Court:   So I am going to enter an order directing the parties act in compliance with Rule 57.7.  I do understand that the defense has taken some steps to bring their conduct into conformance with that rule, and I appreciate that.

8/29/23 Tr. at 4.

During the Pretrial Conference hearing on September 13, 2023, after moving for a trial continuance over the government's objection, defense counsel informed the Court that they were withdrawing from public funding under the Criminal Justice Act (CJA), and wished to engage in further fundraising related to the defendant's case.  The Court cautioned them about their public statements:

> The Court:   Well, I will just caution you with respect to your fundraising that I've already issued my order with respect to publicity and potential

tainting of the jury. I would just urge you to be very careful about what you're posting and saying about the case.

9/13/23 Tr. at 48.

And finally, in ruling on the defendant's motion for a Rule 17(c) subpoena directed toward Chainalysis, the Court observed that defense counsel's inflammatory public statements raised questions about whether the defense was engaged in witness intimidation and harassment:

> The Court:    And then a final note is Chainalysis and the government have suggested that the requests here are abusive, intended to intimidate, and are ultimately harassing. And I will note that I do have questions about what the purpose was that's been served by this entire exercise given the fact that the defense has filed numerous filings and has fought hard on this issue but has never done the work of actually finding an expert to explain to the Court why the code is necessary or useful.
>
> But in addition to that, this case strikes me as highly unusual in that in the cover letter to the November 2022 subpoenas, Mr. Ekeland alluded to bringing a malicious prosecution case against Chainalysis, which, as I've previously indicated, I can't imagine what the basis would be for that based on what I've seen.
>
> He and Mr. Hassard have repeatedly referred to Chainalysis as "The Theranos of blockchain analysis." On a podcast, defendant's counsel threatened to "Sue the crap out of Chainalysis after defendant's trial concludes."
>
> And I think that does support somewhat the – Chainalysis's contention and the government's contention that the requests here are intended to dissuade Chainalysis from participating in this case in particular, but perhaps other cases more generally, and at least, arguably, constitute a form of harassment.
>
> I don't think I need to go that far for purposes of my ruling today other than to say that I think that the statements by defense counsel do provide important context with respect to the history here and at least the concerns that I think Chainalysis has legitimately raised in light of those threats.

*Id.* at 114-16.

## 2. Defense Counsel's Repeated Defiance of this Court and the Local Criminal Rules Threatens To Interfere with a Fair Trial

Given this history, defense counsel's planned "X Space" broadcast—and their promise to "share new details" about the case—represents willful defiance of this Court's authority as well as their professional responsibilities under the Local Criminal Rules. As the Court has already recognized, Rule 57.7 is binding on all attorneys in this case, and it prohibits extrajudicial statements about the merits of the case or the evidence in the case, or about the identity, testimony, or credibility of prospective witnesses. *See* LCrR 57.7(b)(3)(iv), (vi). The Court has further recognized that defense counsel's public statements on Twitter and elsewhere have created "a risk that you're tainting the jury venire by doing that." 6/16/23 Tr. at 74. Under these circumstances, there is no excuse for further violations of the Rule.

The government understands that defense counsel may wish to raise more money for this case, but that does not overcome the rights of both parties (and the public) to a fair trial in front of an unbiased jury. It was defense counsel's choice to withdraw from public funding under the CJA, and it was defense counsel's choice to seek two successive continuances—over the government's objections—that have delayed this trial and prolonged the defendant's pretrial detention for more than a year.

Accordingly, the government moves for immediate enforcement of Rule 57.7 by means of an Order To Show Cause why defense counsel should not be held in contempt for their violations of Rule 57.7(b) despite numerous warnings from the Court.

## CONCLUSION

For the foregoing reasons and the record in this case, the Court should enter the attached Order To Show Cause.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:    */s/ Christopher B. Brown*
       Christopher B. Brown, D.C. Bar No. 1008763
       Assistant United States Attorney
       U.S. Attorney's Office for the District of Columbia
       601 D Street, N.W.
       Washington, D.C. 20530
       (202) 252-7153
       Christopher.Brown6@usdoj.gov

       */s/ C. Alden Pelker*
       */s/ Jeffrey Pearlman*
       C. Alden Pelker, Maryland Bar
       Jeff Pearlman, D.C. Bar No. 466901
       Trial Attorneys, U.S. Department of Justice
       Computer Crime & Intellectual Property Section
       1301 New York Ave., N.W., Suite 600
       Washington, D.C. 20005
       (202) 616-5007 (Pelker)
       (202) 579-6543 (Pearlman)
       Catherine.Pelker@usdoj.gov
       Jeffrey.Pearlman2@usdoj.gov