UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 21-cr-399 (RDM) |
| : | |
| ROMAN STERLINGOV, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S EMERGENCY MOTION *IN LIMINE* FOR
RULE 16 EXPERT DISCOVERY IN LIGHT OF DISCLOSURE THAT
"PARTS OF THE CIPHERTRACE REPORT ARE UNRELIABLE"**

The United States of America respectfully moves the Court *in limine* for an emergency order to compel discovery pursuant to Fed. R. Crim. P. 16(b)(1)(C) from the defense relating to the proffered defense expert Jonelle Still, *see* ECF Nos. 145, 157, 159, in light of the disclosure by counsel for Jonelle Still's employer, Ciphertrace—but not defense counsel themselves—that "parts of the Ciphertrace Report are unreliable."  Ltr. from J. Jay III to the Hon. R.D. Moss (Feb. 1, 2024), attached as Ex. A (the "Ciphertrace Letter") (emphasis added).  This revelation comes after months of *Daubert* proceedings concerning Ms. Still's proffered expert testimony, and it casts into doubt whether Ms. Still's testimony "is the product of reliable principles and methods," and whether it "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(c)-(d) (emphases added).

To avoid disruption of the trial schedule, the Court should compel *immediate* updated disclosure by the defense of Ms. Still's expert opinions and the "bases and reasons" for them, *see* Fed. R. Crim. P. 16(b)(1)(C)(ii), (iii), to include any information that has come to light in the months following Ms. Still's *Daubert* testimony in August 2023 relating to the newly discovered unreliability of her Ciphertrace Report.  The Court should also order pretrial production of Ms. Still's communications and any other out-of-court statements relating to the subject matter of her

anticipated expert testimony pursuant to Fed. R. Crim. P. 26.2(a). Further relief—including preclusion and/or limiting of Ms. Still's testimony because of these revelations' impact on the reliability of any testimony or as a sanction for defense counsel's breaches of their Rule 16 discovery obligations—may be appropriate, depending on the disclosures.

## BACKGROUND

The extended *Daubert* proceedings in this case are familiar to the Court. On the eve of jury selection before the prior trial date in September, the defense moved (for the second time) for a continuance over the government's objection. *See* Minute Order (Sept. 13, 2023). The Court rescheduled the trial to begin on February 12, 2024. *See* Minute Order (Sept. 22, 2023). The Court granted the continuance on the express condition that the defense "will not seek leave to designate any additional expert witnesses at this late date (which is long past the date for identifying experts)." *Id.*

Between the disclosure of Ms. Still's Ciphertrace Report on August 8, 2023, and February 1, 2024, the government has received no further expert disclosure or discovery from the defense.

On February 1, 2024, counsel for Ciphertrace, which is a wholly owned subsidiary of Mastercard, sent a letter to Chambers, attached hereto as Exhibit A. In the letter, Ciphertrace's counsel revealed for the first time:

> It recently came to Mastercard's attention that, contrary to the wording of the Ciphertrace Report, some of the data relied upon may be unverifiable and unauditable. . . . It also appears that at least some of the data relied upon in the Ciphertrace Report may have come from other companies, including Chainalysis.

Ciphertrace Letter at 1. Notably, defense counsel has not made any accompanying disclosures regarding this significant revelation. No further detail was provided to explain what data in the

2

Ciphertrace Report was found to be "unverifiable and unauditable," or what data may have originated from other companies "including Chainalysis."

The Ciphertrace Letter continued:

> As soon as Mastercard counsel learned about the potential data issues, Mastercard launched an expedited, privileged investigation involving internal and outside counsel and an outside forensics team. This investigation is ongoing, but we have learned enough to conclude that parts of the Ciphertrace Report are unreliable.

*Id.* Again, no further detail was provided to explain which "parts" of the Ciphertrace Report have been deemed unreliable. The Ciphertrace Letter also revealed for the first time that Ciphertrace conducted an internal investigation involving "an outside forensics team"—but provided no detail about when the investigation was initiated, how long it has proceeded, what "outside forensics team" was retained, or what, specifically, this investigation has concluded.

The Ciphertrace Letter stated that "Mastercard has advised defense counsel of this matter." *Id.* The letter, however, was silent about when defense counsel and Ms. Still first became aware of these issues with "unverifiable and unauditable data" in the Ciphertrace Report, the use of data "from other companies, including Chainalysis," the existence of an internal investigation involving "an outside forensics team," and Ciphertrace's conclusion that "parts of the Ciphertrace Report are unreliable."

## ARGUMENT

Rule 16 governs both the substance and the timing of expert disclosures. The defense must disclose "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" as well as "the bases and reasons for them." Fed. R. Crim. P. 16(b)(1)(C)(iii). These disclosures must be made well in advance of trial: "The time" for such disclosures "must be sufficiently before trial to provide a fair opportunity for the government to

meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii). There is also a continuing duty of disclosure: "A party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court." Fed. R. Crim. P. 16(c).

The Ciphertrace Letter indicates that the defense has not complied with its duties under Rule 16 to disclose—"promptly" and on a continuing basis—the substance and the "bases" and "reasons" for Ms. Still's anticipated expert testimony. Ms. Still gave sworn testimony before this Court during a two-day *Daubert* hearing on August 22 and 23, 2023, regarding her expert opinions and their bases. If Ms. Still has been informed since then of critical infirmities in the data she relied on and testified to, and that "parts" of her expert report "are unreliable," then she would presumably plan to update the substance of her expert testimony.

If so—if Ms. Still has changed or adjusted her expert conclusions as a result of information that came to light through Ciphertrace's internal investigation—then the government is entitled to discovery of her updated "opinions" under Rule 16. Given the untimely nature of such a disclosure, the Court could properly preclude Ms. Still's amended testimony under Rule 16. If Ms. Still plans to testify to the same opinions, but is no longer relying on data that she now knows is "unverifiable" and "unauditable," then the government is entitled to discovery of her updated "bases and reasons" under Rule 16. And if Ms. Still plans to make no changes whatsoever to her expert opinions or the bases and reasons for them, despite being informed that parts of her report "are unreliable," that raises significant questions for the Court about whether her testimony should be allowed at all under Rule 702.[1]

---

[1] Depending on the substance of the updated defense expert disclosure, the government reserves the right to reopen *Daubert* proceedings concerning Ms. Still. The impending trial date makes immediate disclosure imperative.

That this disclosure did not come from defense counsel, but instead was made by outside counsel for Ms. Still's employer, Ciphertrace—and that it came more than five months after Ms. Still's *Daubert* testimony on August 22 and 23, 2023, and just eleven days before jury selection on February 12, 2024—should disturb the Court as much as the government. Indeed, to date, the defense has made no disclosure at all about the defects in Ms. Still's expert report. This context—the timing, lack of disclosure, and the significance of the Ciphertrace revelations—underscores the need for the Court to order compliance with Rule 16's continuing disclosure obligations.

Further, in light of the Ciphertrace revelations, the defense's production of Rule 26.2 materials for Ms. Still is particularly important. Ms. Still is a member of the defense team. If she communicated with Ciphertrace's internal investigation team regarding the subject matter of her testimony, that would fall within the ambit of Rule 26.2. If she communicated with defense counsel regarding the internal investigation and its findings as to the unreliability of her expert report, that, too, would be discoverable under Rule 26.2. Other defense witnesses confirmed the existence of defense-expert email chains or other written communications related to blockchain analysis, which presumably involved Ms. Still. *See, e.g.*, 7/19/23 Tr. at 141:2-4 (Prof. Verret) ("We have had discussions with the experts [about blockchain analysis]. Memorialized – I mean, we've had emails. We have an email chain discussion among the experts."); 7/20/23 Tr. at 291:17-19 (Fischbach) ("I have conversed with counsel and the rest of the team. So to some degree there's some memorialization there."). To date, the government has received no production from the defense pursuant to Fed. R. Crim. P. 26.2(a). In order to avoid interruptions during trial, the government requests that the defense make a pretrial production of Ms. Still's Rule 26.2 statements.

Finally, depending upon the nature of the disclosures, further relief—including preclusion of testimony—may be appropriate. Because the propriety of such relief depends on as-yet undisclosed facts about the substantive impact of the defects in Ms. Still's expert report and when they became known to the witness and the defense, prompt and immediate disclosure will assist all parties to address them and avoid disruption of next week's trial date.

## CONCLUSION

The Court should order the defense to immediately update its expert disclosure as to the complete opinions of Ms. Still and the bases and reasons for them, pursuant to Fed. R. Crim. P. 16(b)(1)(C) and (c), in light of the Ciphertrace Letter's revelation that "parts" of Ms. Still's report "are unreliable." The Court should also order the defense to produce any statements of Ms. Still relating to the subject matter of her testimony, pursuant to Fed. R. Crim. P. 26.2(a), no later than February 12, 2024.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY: */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
*/s/ Jeffrey Pearlman*
C. Alden Pelker, Maryland Bar
Jeff Pearlman, D.C. Bar No. 466901
Trial Attorneys, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007 (Pelker)
(202) 579-6543 (Pearlman)
Catherine.Pelker@usdoj.gov
Jeffrey.Pearlman2@usdoj.gov