UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE ANY TESTIMONY ABOUT "DEEPWEB" MARKETPLACES**

The United States of America respectfully opposes the defendant's "Motion To Exclude Any Testimony About Deepweb Marketplaces," ECF No. 247. The defense seeks to exclude evidence that directly shows elements of the offenses the government is required to prove: the existence of a conspiracy between the defendant and "darknet vendors and darknet market administrative teams," Superseding Indictment, ECF No. 43, ¶ 1; the fact that the defendant, through Bitcoin Fog, laundered the proceeds of online drug trafficking and promoted online drug trafficking, and laundered funds represented to be the proceeds of online drug trafficking, *see id.* ¶¶ 1.a-b (Count One), ¶ 2 (Count Two); and the fact that the defendant, through Bitcoin Fog, operated a money transmitting business that transmitted the proceeds of unlawful activity or funds intended to promote unlawful activity—including both Darknet drug markets and the child sexual abuse material (CSAM) website known as Welcome To Video, *see id.* ¶ 3.c (Count Three). Such material may be prejudicial, to be sure—as all relevant evidence is prejudicial—but it is not *unfairly* prejudicial under Rule 403; it is clearly probative of the gravely serious harms the defendant facilitated through Bitcoin Fog. There is no unfair prejudice, much less any that could substantially outweigh its strong probative value.

The defendant has long been on notice that testimony and evidence relating to these illicit Darknet websites will be presented in the government's case-in-chief—through the very criminal complaint that initiated this case, ECF No. 1-1; through discovery; through the government's formal notice regarding authentication of Darknet marketplace data, ECF No. 62, at 19-32, ECF No. 78, at 12-13; through the government's notice of arguable Rule 404(b) evidence relating to the defendant's use of and knowledge of Tor, Silk Road, and other Darknet markets, ECF No. 63, at 7-9, ECF No. 79, at 2-4; and through the government's opposition to the same argument raised here when it was originally raised in the defendant's omnibus motions *in limine*, ECF No. 73, at 37-40.[1]  The defendant's last-ditch effort to exclude direct evidence of his crimes—four days before trial—should be denied.

## ARGUMENT

Rule 403 does not require exclusion of evidence merely because it is prejudicial.  "'Unfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party.  Virtually all evidence is prejudicial or it isn't material." *United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) (quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)); *see id.* at 795 ("Rule 403 'tilts, as do the rules as a whole, toward the admission of evidence in close cases' . . . . '[T]he balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged.'") (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)).  Indeed, it has long been the "familiar, standard rule" that "the prosecution is entitled to prove its case by evidence of its own choice." *Old Chief v. United States*, 519 U.S. 172, 186 (1997).

---

[1] The government incorporates these filings by reference.

**1. Darknet Evidence Is Directly Relevant to Elements of the Charged Offenses**

In this case, evidence relating to Darknet[2] drug markets and the CSAM website Welcome To Video goes directly to elements of the charged offenses. These elements include the existence of a conspiracy involving the defendant and Darknet vendors and Darknet market administrative teams, the flow of funds between Bitcoin Fog and Darknet markets, and the defendant's knowledge that Darknet markets traffic in illegal goods and services. The probative value of such evidence is therefore extremely high.

As the D.C. Circuit has recognized, direct evidence of a defendant's crimes is inherently prejudicial. *See Cassell*, 292 F.3d at 796. The question of admissibility is not about the mere existence of prejudice, but whether the probative value of the evidence will be "*substantially* outweighed" by the risk of "*unfair* prejudice." Fed. R. Evid. 403 (emphases added). Unfair prejudice means "an undue tendency to suggest decision on an improper basis." *Id.* Advisory Committee Notes to 1972 Proposed Rules. As the Supreme Court has explained, this means

---

[2] Contrary to the defense characterization, the Deep Web (or "deepweb") is not a synonym for the Dark Web or Darknet. The Deep Web is simply the portion of the open Internet that is not publicly accessible and not indexed by search engines, and it includes a significant volume of legitimate content. The Darknet, by contrast, is a portion of the Deep Web that is hosted on the Tor network and is often used for illicit services. These terms are well-accepted and seldom confused by computer experts. *See, e.g.*, *United States v. Glowacki*, No. 22-3279, 2023 WL 179887, at *1 (6th Cir. Jan. 13, 2023) ("The affidavit describes the 'dark net' as 'a part of the deep web that not only cannot be discovered through a traditional search engine, but also has been intentionally hidden and is inaccessible through standard browsers and methods.'"); Sophia Dastagir Vogt, *The Digital Underworld: Combating Crime on the Dark Web in the Modern Era*, 15 Santa Clara J. Int'l L. 104, 109 (2017) ("In contrast to the surface web, the deep web refers to the portion of the Internet that cannot be, or is not indexed through traditional search engines. Most of the content on the Internet is located on the deep web, outside the reach of traditional web browsers. . . . Within the deep web exists a hidden space called the dark web, which is inaccessible through standard web browsing methods. This hidden space is popularly known as a platform for hosting illicit activity, ranging from terrorist recruitment to drug trading, child pornography, stolen information, and money laundering services.").

evidence that would induce the jury to find guilt "on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. But where, as here, the disputed evidence is squarely probative of an element of a charged offense—where it constitutes direct evidence of guilt—it *is* "proof specific to the offense charged," *id.*, and can hardly be considered *unfairly* prejudicial. And even if so, the substantial probative value of the evidence far outweighs any prejudicial risk.

The defense knocks down a strawman in arguing that "Mr. Sterlingov is not charged with possessing or dealing in child pornography," ECF No. 257, at 5. That ignores the relevance of the Welcome To Video evidence. The defendant is charged with, among other things, operating a money transmitting business that transmitted funds "intended to be used to promote or support unlawful activity." 18 U.S.C. § 1960(b)(1)(C); *see* ECF No. 47, ¶ 3.c (Count Three). This Count is not limited to drug trafficking activity, but includes any form of "unlawful activity." Welcome to Video was a CSAM website that accepted Bitcoin for users to gain access to the site and its illegal CSAM content. At least ten Welcome To Video users utilized the defendant's service, Bitcoin Fog, to launder their payments to the CSAM site. Evidence of these payments *and* their illegal purpose is directly relevant to the government's proof of the § 1960(b)(1)(C) theory of liability.

The government does not intend to introduce graphic images of CSAM material. The government will describe the CSAM material available on Welcome to Video only through spreadsheets and summary charts, and as described verbally in witness testimony. *See* ECF No. 79, at 3 n.2.

**2. Darknet Evidence Is Relevant, Not Conditionally Relevant**

The defense attempts to dress up its evidentiary challenge with a contorted argument about "conditional relevance." According to the defense, "[b]efore the issue of money laundering through Bitcoin Fog by Mr. Sterlingov becomes relevant, the Government needs to meet its burden of proof on the question of whether Mr. Sterlingov operated Bitcoin Fog at all." ECF No. 247, at 5.

This makes about as much sense as arguing, in a bank robbery prosecution, that the government cannot present evidence to prove that the bank robbery *occurred* until after it proves that the defendant was the one who committed the bank robbery. Tellingly, the defense offers no legal authority for this illogical claim. This (already lengthy) trial should proceed as every other trial proceeds, not in a novel, bifurcated proceeding divided into an attribution trial to be followed by an elements-of-the-offense trial.

**3. All of the Darknet Evidence Is Relevant to the Continuing Offenses Charged in the Indictment**

The defendant also claims that some (not all) of the Darknet marketplaces serviced by Bitcoin Fog were shut down "outside the statute of limitations." ECF No. 247, at 2. It is black-letter law, however, that both the money laundering conspiracy alleged in Count One and the illegal money transmitting business offenses alleged in Counts Three and Four are continuing offenses.[3]  *See* ECF No. 52, at 29-31; *see United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999) (characterizing "conspiracy to commit money laundering" as a "continuing offense");

---

[3] The undercover money laundering transaction charged in Count Two (November 21, 2019) plainly occurred within five years of the original Indictment (June 14, 2021), and Darknet evidence is relevant to establishing the defendant's knowledge, intent, and state of mind, as well as understanding the context for the undercover agent's representation that he was transacting in the proceeds of specified unlawful activity from Darknet drug sales.

5

*United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987) ("The classic example of a continuing offense is conspiracy."); *United States v. Elfgeeh*, 2004 WL 3767299, at *9 (E.D.N.Y. Apr. 13, 2004) (characterizing violations of 18 U.S.C. § 1960 as "continuing offenses"). And the statute of limitations for "continuing offenses" only begins to run "from the last day of the continuing offense." *McGoff*, 831 F.3d at 1079.

Here, Bitcoin Fog operated continuously up until slightly after the defendant's arrest at the end of April 2021. The defendant did not withdraw from the conspiracy during that time (which, as an affirmative defense, would be his burden to show). Transactions with Darknet markets during any period of Bitcoin Fog's lifespan are therefore directly relevant to multiple elements of the charged offenses.

Defendant's "argument[s] that evidence of acts occurring prior to the statute of limitations period are not relevant and admissible . . . . are routinely rejected because it is necessary for the jury to understand the context of the scheme developed by the defendants." *United States v. Battle*, 473 F. Supp. 2d 1185, 1199 n.12 (S.D. Fla. 2006). *See also Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 497 (7th Cir. 2006) ("[S]tatute of limitation put time limits on when actions may be brought; they are not evidentiary rules that blind courts from consideration of relevant facts ... There is a distinction between acts that are prosecuted and acts that would be barred by the statute of limitations but are admissible to show that an act being prosecuted actually occurred."); *United States v. Pharis*, 298 F.3d 228, 233 (3d Cir.2002) (evidence of time-barred conduct was relevant because a "fraudulent scheme can span many years with the mailings occurring only at the end of the period."); *United States v. Barnes*, 230 F.3d 311, 315 (7th Cir. 2000) ("Relevant pre-limitations evidence is admissible to show the existence of a scheme to complete an illicit transaction" and thus "relevant to interpret" offense conduct within the limitations period); *United States v.*

*Wellman*, 830 F.2d 1453, 1464 (7th Cir. 1987) ("The fact that the scheme, and acts committed in furtherance of it, may have extended over a period in part barred by the statute of limitations does not mean that they are irrelevant in determining whether mailings occurring within the statutory period were in furtherance of a scheme to defraud and thus proscribed by 18 U.S.C. § 1341."); *id.* at 1464 (conduct outside the statute of limitations "was highly relevant to the existence of the very same scheme to defraud which the mailings in this case were alleged to have furthered.").

The Court should follow the same well-established principle here.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY: */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
*/s/ Jeffrey Pearlman*
C. Alden Pelker, Maryland Bar
Jeff Pearlman, D.C. Bar No. 466901
Trial Attorneys, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007 (Pelker)
(202) 579-6543 (Pearlman)
Catherine.Pelker@usdoj.gov
Jeffrey.Pearlman2@usdoj.gov