UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S REPLY IN SUPPORT OF MOTION TO EXCLUDE
"SUPPLEMENTAL" EXPERT TESTIMONY BY PROFESSOR
VERRET FIRST DISCLOSED IN THE MIDDLE OF TRIAL**

In 10 pages of the defendant's opposition to the government's motion, the plain text of Rule 16 appears nowhere. That is because the defense cannot reconcile Professor Verret's mid-trial production of an entirely new "supplemental expert report" with Rule 16's unambiguous mandate that all defense expert testimony be disclosed "sufficiently *before trial* to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii) (emphasis added).

Nor does the defendant's opposition provide a "complete statement of all opinions" that Professor Verret intends to testify to with his cryptic PowerPoint slides, or disclose any of his "bases and reasons"—also as required under the plain text of the Rule. Fed. R. Crim. P. 16(b)(1)(C)(iii). And the defense makes no effort to reconcile Professor Verret's plainly impermissible testimony with the Court's detailed *Daubert* rulings on September 8 and 15, 2023. Rather than heed the Court's rulings—as Mr. Ekeland specifically promised to do on September 8, 2023, *see* 9/8/23 Tr. at 83:17-84:5—the defense now claims, incredibly, that those rulings never happened. *See* ECF No. 258 (Def. Opp.) at 7 (asserting that "[t]his Court has yet to offer a final *Daubert* ruling as to the scope of Professor Verret's testimony").

The defense made a strategic decision to withhold Professor Verret's expert disclosure, in plain violation of Rule 16, in order to sandbag the government and further delay this already lengthy and complicated trial. This is not the first time. The same defense team—including defense counsel and Mr. Fischbach—attempted the same gambit in a trade secrets trial in 2017, deliberately withholding disclosure of Mr. Fischbach's expert testimony before trial, and then attempting to introduce it mid-trial without prior disclosure by labeling it "rebuttal" testimony. *See United States v. Grupe*, No. 17-cr-90 (PJS) (D. Minn.), 10/5/2017 Trial Tr. at 743-49, attached as Ex. 1. The District Judge in *Grupe* made a straightforward ruling excluding the undisclosed expert testimony as a violation of Rule 16. *See id.* at 749:7-11 ("The government has objected to your expert testifying on the basis of a lack of disclosure. I agree with the government that you didn't make the disclosures required by Rule 16 and so I will not allow Mr. Fischbach to testify."). This Court should do the same with respect to Professor Verret.

1. **Minimizing the Defendant's New Slides Does Not Excuse Introduction of Previously Undisclosed Expert Testimony**

Rather than addressing Rule 16, the Court's prior rulings, or any of the government's arguments, the defense raises a series of unpersuasive distractions.

First, the defense claims (at 3) the new PowerPoint slides are just a "slimmed down" or "more concise" version of Professor Verret's August 7, 2023 slide deck docketed at ECF No. 158. That is obviously not so. As noted in the government's motion, the new slides appear to cover numerous topics not previously addressed by Professor Verret ("Mixing Report," "Professional Responsibility," "Bitcoin Meetups," "Blocket," "Gift Cards," "Co-operators," "Prepaid Phone Cards," "Failed Business," "Freelance Work," "Invoices," "Client Privacy," "Mt. Gox to Aurum Exchange to Liberty Reserve = Common Practice," and on and on). Calling these new slides "slimmed down" only underscores the lack of disclosure: the government and the Court are

2

entirely in the dark about what Professor Verret intends to say about *any* of these topics. In no way do these cryptic statements comprise a "complete statement of all opinions" that Professor Verret intends to testify to. Fed. R. Crim. P. 16(b)(1)(C)(iii).

Further, the government never waived its right to object to Professor Verret's *original* slides—which, at best, were supposed to summarize and did not replace the defense's pretrial disclosures of Professor Verret's expert testimony, ECF Nos. 122 &145-5.[1] The government's *Daubert* objections to the scope of Professor Verret's testimony were discussed and ruled on on September 8 and 15, 2023, subsequent to the filing of Professor Verret's August 7, 2023 slides. This Court should hold the defense to the rulings made on the record.

The defense attempts to shift focus by pointing to various updated government *exhibits* that have been disclosed before or (in isolated instances) during trial, but this is an apples-to-oranges comparison. None of the government's updated *exhibits* altered the scope or content of its previously disclosed experts' opinion testimony. Some of the exhibits have been refined during the course of witness preparation, and others—such as the updated summary charts for the government's forensic accountant Sarah Glave—were specifically revised in response to, and in accordance with, the Court's pretrial *Daubert* rulings. The government has not sought to dramatically alter the scope or substance of any of its experts' testimony in the same way that Professor Verret's new "supplemental expert report" does.[2]

---

[1] The government reserves the right to object to the use of Professor Verret's new "Supplemental Expert Report" as a demonstrative exhibit, as it includes argumentative textual assertions on virtually every slide that will not serve as a pedagogical aid without wasting time or confusing the jury.

[2] The defense faults Exhibits 325 and 356 introduced through the testimony of FBI Staff Operations Specialist Luke Scholl. Exhibit 325 is a summary of straightforward mathematical calculations reflecting essentially factual testimony. The defense, by contrast, has represented that Professor Verret is appearing purely "as an expert witness" and "[h]e is not a fact witness to

3

## 2. Rule 16 Does Not Carve an Exception for So-Called "Rebuttal" Expert Testimony by the Defense

Second, the defense claims that Professor Verret's new testimony should be allowable as "rebuttal" testimony. This finds no support in the text of Rule 16, which nowhere provides for a separate defense "rebuttal" case in which undisclosed expert testimony can freely be admitted.

Rule 16 was amended in 2022 to eliminate the exception that previously allowed the *government* to introduce new expert testimony in its (formally recognized) rebuttal case, *see, e.g.*, *United States v. Frazier*, 387 F.3d 1244, 1269 (11th Cir. 2004) ("[C]onsistent with the plain language of the Rule, the government's presentation of rebuttal testimony without prior notice does not violate Rule 16, since the Rule's notice requirements apply only to the government's case-in-chief.").[3] As amended, Rule 16 now requires the government to make pretrial disclosure of expert testimony for both its "case-in-chief" *and* "its rebuttal to counter testimony that the defendant has timely disclosed under [Rule 16](b)(1)(C)." Fed. R. Crim. P. 16(a)(1)(G)(i). The defense is required to make pretrial disclosure of expert testimony for "the defendant's case-in-chief," reflecting the fact that the defense portion of a trial is considered its case-in-chief (there is no separate defense "rebuttal" case). Fed. R. Crim. P. 16(b)(1)(C)(i). In other words, Rule 16 now requires pretrial disclosure of expert testimony for all stages of a trial: in the government's case-in-chief, in the defendant's case-in-chief, and in the government's rebuttal case. Nothing in Rule

---

anything." 2/27/24 Tr. at 36:20-22. Exhibit 356, meanwhile, directly summarizes calculations included in Mr. Scholl's expert report. *See* Scholl Report, at 19-31.

[3] The defense inaccurately claims (at 4) that courts "routinely allow for rebuttal testimony without notice," but this is based on cases discussing the *government's* (not the defendant's) ability to present undisclosed rebuttal expert testimony under the pre-2022 version of Rule 16. That is no longer the applicable law.

16 supports the novel defense claim that there is a silent carve-out for undisclosed defense expert testimony as long as it is styled as "rebuttal" testimony.

Allowing the defense to present previously undisclosed "rebuttal" expert testimony would presumably open the door to the government presenting additional expert testimony of its own to rebut the defense "rebuttal," creating an ongoing cycle of undisclosed expert testimony (as well as mid-trial *Daubert* litigation). This would upset Rule 16's deliberate scheme for front-loading the "reciprocal" exchange of expert testimony before trial in order to "allow[] the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." Fed. R. Crim. P. 16, Advisory Committee Notes to 2022 Amendments. There is no authority for this Court to ignore the plain mandate of Rule 16 requiring disclosure "before trial."

### 3. Professor Verret's "Forensic Interviews" Represent a New, Previously Undisclosed Expert Methodology that Requires *Daubert* Inquiry

Finally, the defense reveals for the first time (at 5) that Professor Verret intends to testify about inadmissible hearsay reflecting "*roughly 20 hours*" of the defendant's out-of-court statements. As a preliminary matter, this is an astonishing revelation to be made by way of attorney proffer in an opposition brief three weeks into trial. The defense has made no previous disclosure of any of these interviews, let alone an expert disclosure disclosing "a complete statement of all opinions" that Professor Verret purports to have gleaned from these *20 hours* of interviews, or the "bases and reasons" for those opinions. Fed. R. Crim. P. 16(b)(1)(C)(iii).[4] Needless to say, there is no way to characterize 20 hours of interviews conducted *before* trial as any sort of "rebuttal" of the government's case.

---

[4] This lack of disclosure underscores the need for the defense to comply with Fed. R. Crim. P. 26.2 by producing all of Professor Verret's prior statements that relate to the subject matter of his anticipated testimony.

Further, taking the defense claims on their face, these "forensic interviews" represent an entirely new and previously undisclosed field of expert methodology that now requires thorough *Daubert* scrutiny. On Tuesday, the defense represented to the Court that "[i]t is not our intent at this time to present [Professor Verret] as a fact witness," and "[h]e is not a fact witness to anything." 2/27/24 Tr. at 36:20-22. If Professor Verret intends to simply parrot the substance of 20 hours of the defendant's un-cross-examined out-of-court statements, such testimony would plainly be inadmissible hearsay. To the extent the defense attempts to obscure the hearsay nature of such statements by asking questions about what Professor Verret has "learned" or "knows" about the defendant's story, he would be incompetent to testify on the basis of personal knowledge as a fact witness under Fed. R. Evid. 602—to say nothing of the defense's prior representation to this Court (made in order to avoid witness sequestration rules) that Professor Verret "is not a fact witness to anything." 2/27/24 Tr. at 36:21-22.

Instead, the defense attempts an end-run around bedrock hearsay rules by dressing up Professor Verret's testimony as the product of "forensic" interviews. Thus, according to the defense, Professor Verret's testimony would not be inadmissible hearsay but "expert" testimony. There are two fatal defects to this framing.

First, as noted above, there has been no pretrial disclosure of *any* of Professor Verret's "forensic" interviews. The plain text of Rule 16 is unambiguous and requires complete disclosure of both opinions and their bases "before trial." Fed. R. Crim. P. 16(b)(1)(C)(ii). Lack of disclosure alone is a sufficient basis to exclude this strategically withheld "expert" testimony. *See United States v. Grupe*, No. 17-cr-90 (PJS) (D. Minn.), *supra*.

Second, such testimony would violate *Daubert* and Rule 702. This Court is required to satisfy itself that expert testimony "will help the trier of fact," that it is "based on sufficient facts

6

or data," that the testimony "is the product of reliable principles and methods," and that the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). Right now, the defense has disclosed nothing to satisfy any one of these prongs. There has been no disclosure of what "forensic" methodology Professor Verret supposedly applied, what it is based on, or how Professor Verret purportedly applied it. Baldly asserting that an interview was "forensic" does not satisfy Rule 702.[5]

The government has grave concerns under both Rule 702 and Rule 403 that, by allowing Professor Verret to testify as to the defendant's out-of-court statements, not only will inadmissible hearsay be presented uncritically to the jury without the benefit of cross-examination, but those statements will actually be amplified because they are framed as "expert" testimony by a Harvard-trained forensic accountant. This implicates one of the core concerns of *Daubert* and Rule 702 that jurors may be over-swayed by the authority of a well-credentialed expert. These circumstances require full disclosure of Professor Verret's supposed "forensic" methodology as well as a particularly searching *Daubert* inquiry. Such an exercise cannot be completed in a single Friday afternoon in the middle of trial on the basis of zero disclosure.

Finally, the government is alarmed that the defense continues to use the defendant's Fifth Amendment privilege against self-incrimination as both a sword and a shield in this trial. The

---

[5] The sum of the defense showing on this point (at 6) is the strained assertion that courts "repeatedly" have allowed experts to rely on "forensic interviews." But neither of the two cases cited by the defense is remotely similar (nor does either case apply to the current version of Rule 16). In *United States v. Affleck*, 776 F.2d 1451 (10th Cir. 1985), the court specifically noted that the out-of-court interviews (of multiple employees in a securities fraud investigation) were "not offered to prove the truth of the assertions made by the out-of-court declarants." *Id.* at 1457. In *Trustees of Boston University v. Everlight Electronics Co., Ltd.*, 141 F. Supp. 3d 147 (D. Mass. 2015), the court only allowed an expert to rely on (not simply parrot) employee interviews as part of "applying his extensive experience and a reliable methodology to the inadmissible materials." *Id.* at 148.

defense has repeatedly and improperly tried to suggest that the government's inability to interview the defendant represents an investigative failure. These arguments are not only improper, because the government is constrained in its ability to respond without commenting on the defendant's exercise of his Fifth Amendment rights, but also false. As the defense is well aware, the government has repeatedly attempted to interview the defendant and give him an opportunity to tell his side of the story—upon his arrest (the defendant declined to be interviewed and asked for a lawyer); during a reverse proffer at Northern Neck Regional Jail on July 20, 2021, when the government offered the defendant a debriefing letter and an opportunity to tell his story (then-defense counsel informed the government that the defendant declined); and in numerous communications with current defense counsel offering to speak under the protection of a debriefing letter (all declined).

The government is concerned that Professor Verret's "forensic" interview testimony—*especially* if presented under the guise of so-called "expert" methodology—will be framed in this same inaccurate way, as an implicit criticism of the government for failing to follow the "forensically" sound methodology of interviewing the defendant. This further heightens the Rule 403 concerns about his testimony, in addition to Rule 702 and black-letter hearsay rules.

## CONCLUSION

The defense made an opportunistic, strategic decision to flout the pretrial disclosure mandate of Rule 16. This Court should not allow the defense to benefit from its deliberate and opportunistic defiance of the rules. The Court should grant the government's motion to exclude any testimony relating to the subject matter of Professor Verret's February 24, 2024 "Supplemental Expert Report," and order that Professor Verret's testimony be limited to his prior disclosures as ruled upon by the Court during the September 8 and 15, 2023 hearings. The Court should also

require defense counsel to confer with Professor Verret and confirm that Professor Verret will not testify outside of the parameters set by the Court's rulings on September 8 and 15, 2023.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:  */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
*/s/ Jeffrey Pearlman*
C. Alden Pelker, Maryland Bar
Jeff Pearlman, D.C. Bar No. 466901
Trial Attorneys, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007 (Pelker)
(202) 579-6543 (Pearlman)
Catherine.Pelker@usdoj.gov
Jeffrey.Pearlman2@usdoj.gov