```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA


   UNITED STATES OF AMERICA,
                                              Criminal Action
              Plaintiff,                      No. 1: 21-399

        vs.                                   Washington, DC
                                              March 11, 2024
   ROMAN STERLINGOV,
                                              3:27 p.m.
              Defendant.
   _____/


                      TRANSCRIPT OF JURY TRIAL
                BEFORE THE HONORABLE RANDOLPH D. MOSS
                     UNITED STATES DISTRICT JUDGE



   APPEARANCES:

   For the Plaintiff:      CATHERINE PELKER
                           U.S. DEPARTMENT OF JUSTICE
                           950 Pennsylvania Ave NW
                           Washington, DC 20530

                           CHRISTOPHER BRODIE BROWN
                           DOJ-USAO
                           601 D Street, N.W.
                           Suite 5.1527
                           Washington, DC 20530

                           JEFFREY PEARLMAN
                           DOJ-CRM
                           Ccips
                           US Dept of Justice
                           1301 New York Ave NW
                           Washington, DC 20005


                APPEARANCES CONTINUED ON NEXT PAGE
```

```
 1                    APPEARANCES CONTINUED

 2   For the Defendant:        TOR EKELAND
                               MICHAEL HASSARD
 3                             TOR EKELAND LAW PLLC
                               30 Wall Street
 4                             8th Floor
                               Brooklyn, NY 10005
 5


 6
     Court Reporter:           SHERRY LINDSAY
 7                             Official Court Reporter
                               U.S. District & Bankruptcy Courts
 8                             333 Constitution Avenue, NW
                               Room 6710
 9                             Washington, DC 20001

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE COURTROOM DEPUTY: Criminal case, 21-399, *United States versus Roman Sterlingov*.

Would counsel please state their names for the record starting with government counsel.

MR. BROWN: Good afternoon, Your Honor. AUSA Chris Brown for the government. And with me at counsel table are C Alden Pelker and Jeffrey Pearlman.

THE COURT: Good afternoon.

MR. EKELAND: Good afternoon, Your Honor. Tor Ekeland for Defendant Roman Sterlingov, who is present in court. And joining me at counsel table is Michael Hassard.

THE COURT: All right. Good afternoon to you as well.

So we have a note from the jury, which has been provided to all of you. And the note reads as follows: "For Count 4, the first element recites: 'The defendant knowingly engaged in the business of money transmission in the District of Columbia.' Does the knowledge requirement apply to both engaging in the business and in the District of Columbia that is, is knowledge of the location required?"

And I think, unless I am missing something, the answer to this is yes. But I will hear what the parties have to say.

MR. BROWN: Your Honor. Based on our initial reading

1     of this and our quick research, the answer should be no.  And I
2     would start out with the plain text of the statute, which is
3     D.C. Code section 26-1001 and 1023.  23 defines -- 23(c)
4     defines the criminal offense.  It says nothing about any sort
5     of knowledge, let alone knowledge that the money transmitting
6     business is within the District of Columbia.  26-1001,
7     subsection 10, defines money transmission.  And, similarly,
8     money transmission itself is defined very, very broadly.  It
9     includes the transmission of money within the United States, or
10    to locations abroad by any and all means.  Again, there is no
11    reference limiting the geographic scope of this to the District
12    of Columbia, either in sweep or in certainly the defendant's
13    knowledge.
14              As we have looked at this, the statute, it appears
15    obvious to us that the statute should be read as a general
16    intent crime.  There is no specific mens rea spelled out at all
17    here.  But there is a presumption in favor of reading criminal
18    statutes as general intent crimes.
19              However, that presumption in favor of this being a
20    general intent crime doesn't mean that the knowledge
21    requirement travels to every element of the offense.  And let
22    me just reiterate, being in DC or having a business located in
23    DC, that is not actually spelled out in any of the statutory
24    elements of the offense.  If there is a geographic limitation
25    to DC, that is a limitation on the District's regulatory power,

1    but that is not an element of the offense that the DC lawmakers
2    enacted here.
3            And in terms of scienter, we would liken this to a
4    jurisdictional element, that if the Court is going to read in a
5    jurisdictional element, which makes sense, that the conduct
6    occur in DC, the Supreme Court in *Rehaif versus United States*,
7    and that is one 39 S. Ct. 2191, emphasized that the presumption
8    in favor of scienter generally does not apply to jurisdictional
9    elements.  Because that is -- the jurisdictional element goes
10   to the limits of the legislative power.  It doesn't go to "The
11   evil that Congress seeks to prevent."  And so based on the
12   plain text of the statute, based on the structure of the
13   statute and based on Supreme Court case law, there are a couple
14   other cites I can give the Court:  *United States versus Campa*,
15   529 F.3d 980.  That is an Eleventh Circuit case holding that
16   intent that a murder occur within the special maritime and
17   territorial jurisdiction of the United States is not an element
18   of a 18 U.S.C. 111 --
19            THE COURT:  Although you are dealing there with a
20   crime that is -- I am going to blank on the Latin phrase for
21   it.  Is one that is on its face a --
22            MR. BROWN:  Malum in se.
23            THE COURT:  Thank you very much.
24            Malum in se versus malum prohibitum.  And this
25   statute here is more in the category malum prohibitum.

1          MR. BROWN:  Yes, Your Honor.  And, therefore, we
2    agree that it is appropriate to read this as a general intent
3    crime.  But the approach with this statute with -- I think this
4    statute should be read, number one, similar to the way that --
5    so what should be informative to the Court is the way that
6    courts construe 18 U.S.C. 1960, which also similarly deals with
7    malum prohibitum.  And 1960 was explicitly based on 18 U.S.C.
8    1955, the prohibition on operation of unlicensed gambling
9    businesses.
10         And courts have been quite uniform in construing 18
11   U.S.C. 1955 as requiring scienter only to the factual elements
12   of the offense, only to the element that you are operating a
13   business that sort of fits these factual predicates, not that
14   it was required to be -- not that there is any sort of state --
15   there is no heightened willfulness requirement.
16         THE COURT:  The deputy clerk lined the jurors up.
17   And I think this may take longer than that, so why don't you
18   tell them they can go back to the jury room so they are not
19   just standing there.
20         THE COURTROOM DEPUTY:  Okay.
21         MR. BROWN:  Your Honor, I think this -- and this --
22   let me back up a second.  I think that the approach for 1955,
23   1960 and -- should also inform this Court's approach to the
24   D.C. Code offense in this case.  Which is that the scienter
25   requirements really only apply to the factual predicates.  They

1     don't apply to, in this case what is on atextual jurisdictional
2     element.  It is not an element of the offense that the
3     legislature wrote down into the elements of the offense.  It is
4     something that -- and it is --
5                THE COURT:  Okay.
6                MR. BROWN:  I would just add, it is important to
7     distinguish in terms of understanding that the wrongfulness of
8     the defendant's conduct -- the wrongfulness just has to do with
9     operating the business.  And I think it is fair to look at
10    either the willfulness requirement or knowledge as to
11    jurisdiction as both falling in the same general category of,
12    these are additional sort of scienter requirements that are not
13    based in the text of the statute.  And it is appropriate for
14    the Court not to require additional proof on those -- on either
15    of those two elements or either of those two -- they are not
16    even elements.  They are just sort of parts of the offense.
17               THE COURT:  So when you say the wrongfulness is just
18    in operating the business, I get that, for example, with
19    respect to the subsection of the federal registering
20    requirement, subpart C, that you are engaged in or that the
21    money laundering is furthering unlawful conduct for example.
22    But it is a little hard to know how the failure to comply with
23    registration or a licensing requirement that the wrongful
24    conduct is operating the business.  The wrongful conduct is
25    operating the business without getting the license or

1   registering.  And I realize, it is not an expressed term in the
2   statute itself, but it does seem at least plausible.  And I
3   want to hear from Mr. Ekeland on this.  And it does seem
4   plausible to infer that actually as an element of the offense
5   under the theory that I don't think that the DC Council thought
6   to itself, our goal here is to require registration of anyone
7   who is engaged in running a money transferring business or
8   whatever the language was -- money transmission business
9   anywhere in the world.  That is our goal.  That is what we are
10  doing.  You have got to go to DC and you have to register.  But
11  we realize we only have so much jurisdiction and we realize
12  there will be a jurisdictional element that will limit the
13  reach of what we are doing.  But what we are saying is if you
14  are running this business, come to DC and register.  That seems
15  implausible to me.

16           MR. BROWN:  Your Honor, I think the intent -- the
17  legislative intent behind the Money Transmitters Act -- it is a
18  consumer protection statute.  So I think the intent is to
19  capture any conduct that affects the citizens of the District
20  of Columbia.  But that is not the same as saying the intent is
21  to capture the conduct of somebody who knowingly affect -- you
22  know, does business with District of Columbia citizens.  I
23  think that the whole legislative scheme for any sort of money
24  transmitter is regulation, is it is an action-enforcing
25  mechanism.  If you are running a business, especially these

1     days, if are running a business online, it is incumbent upon
2     you -- I mean, this is why there is no heightened willfulness
3     requirement, which I think this is almost a backdoor way of
4     having a heightened willfulness requirement.  It is incumbent
5     on the business to either make sure they have an appropriate
6     license or to make sure they are not doing business in a
7     jurisdiction that requires a license.
8               And the one other point I'd point out to the Court is
9     that we briefed this is in ECF 176.  And one of the -- we
10    briefed the Court's question on ECF 176, which was a little bit
11    different, which was about a brick and mortar physical location
12    requirement under the DC --
13              THE COURT:  I remember this.
14              MR. BROWN:  And in what we attached as Exhibit 1 was
15    a bulletin from the Commissioner of DISB, which basically said
16    that they are not requiring a brick and mortar location because
17    their intent is to capture money transmitting activity, even if
18    it is conducted by -- this is -- actually, I think it is
19    Exhibit 2, where they said that in light of the *Harmon* decision
20    by Chief Judge Howell, they are no longer -- they want to
21    clarify that the Money Transmitters Act applies to mobile
22    applications and/or online transactions.  Those also count as
23    engaging in the business of money transmission.
24              I think it would be a little bit inconsistent with
25    the evident intent of the commissioner of DISB to capture any

1   sort of online conduct that affects District residents by
2   requiring that -- well, qualifying that and saying that, well,
3   because Helix, for example, Larry Harmon's mixer, maybe Larry
4   Harmon didn't know the particular fact that he was doing
5   business with a resident of the District of Columbia, there is
6   nothing in the DC -- the DISB commissioner's advisory that
7   suggests that is what they were thinking.
8              To the contrary, they are thinking we need to capture
9   online activity as a whole.  And, again, this is an action
10  enforcing mechanism.  It is a consumer protection mechanism.
11  So if you are out there doing business online, it is up to you
12  to figure out if you need a license, not to, you know, wait
13  until you know, you have knowledge that you are doing business
14  in a given jurisdiction.
15             THE COURT:  I can't remember which of you argued the
16  issue, but wasn't one of the theories that the government
17  presented as to why a willful blindness instruction was
18  appropriate because there was evidence or reason to think that
19  Mr. Sterlingov was willfully blind with respect to the location
20  where the money laundering was occurring?
21             MR. BROWN:  Yes.  Yes, Your Honor.  And, I mean, that
22  is a separate argument.  That maybe -- you know, maybe there is
23  knowledge as to, you know, doing business in the District of
24  Columbia.
25             THE COURT:  But wasn't that the premise of that

1  argument is that knowledge was required?
2         MR. BROWN:  I don't think -- I don't think that was
3  the premise of our -- the government's argument.  I think that
4  to the extent that there is a knowledge requirement, certainly
5  that the willful blindness of definition of knowledge would
6  apply there.  But again, Your Honor, I think that this is a
7  jurisdictional element akin to an interstate commerce nexus,
8  maybe something that is little less malum in se-ish is the
9  transportation of counterfeit securities under the National
10 Stolen Property Act, *United States versus Squires*, 581 F.2d
11 408, Fourth Circuit case saying that under the National Stolen
12 Properties Act, the government isn't required to prove
13 knowledge of the interstate nature of the transportation.  And
14 I think that this is similar.  And, if anything, it is even
15 having to prove an interstate commerce nexus, at least there is
16 a textual basis for that in Federal criminal statutes.  There
17 is no textual basis for reading a knowing in the District of
18 Columbia element into the DC Money Transmitters Act.
19        THE COURT:  All right.  Let me hear from Mr. Ekeland.
20        MR. EKELAND:  I agree with the Court in that the -- I
21 think that the government is taking an incredibly broad reading
22 of this DC municipal statute in trying to read out the
23 requirement of scienter as to knowledge of the money
24 transmission occurring in DC.  I think, if anything, the rule
25 of lenity requires here where we have a question --

1     interpretation of the statute, one which is incredibly broad
2     and the other which is more specific and narrow, I think the
3     rule of lenity requires that we find that there is a scienter
4     requirement in relation to Mr. Sterlingov having to know that
5     money transmission was occurring in DC.  And I also think that
6     accords with just the plain textual reading of the statute.  I
7     think to take out, you know, knowing that the money
8     transmission was occurring in DC, you have to sort of take a
9     few interpretative jumps that I think take you outside the
10    plain text.
11              THE COURT:  Although that seems to me where the
12    government's argument is the strongest, the statute doesn't say
13    anything about in DC.
14              MR. EKELAND:  Well, it is a DC municipal statute.
15    And I would argue that the interpretative background of the
16    statute as it is being promulgated, I don't think they need to
17    say, oh, look, we are in DC and promulgating a DC statute.  I
18    think just looking at it against its interpretive background,
19    which is quite plain, I think the plain textual reading and the
20    rule of lenity just requires knowing -- it is not, as the Court
21    says, just a general statute against money transmission
22    anywhere in the world.  And I think that combined with the rule
23    of lenity requires the Court read a scienter requirement that
24    Mr. Sterlingov knew that the money transmission was occurring
25    in DC.

| | |
|---|---|
| 1 | THE COURT:  Anything else? |
| 2 | MR. EKELAND:  No, Your Honor. |
| 3 | THE COURT:  All right.  Anything else, Mr. Brown? |
| 4 | MR. BROWN:  Just on the rule of lenity, the rule of |
| 5 | lenity requires there to be a statutory provision that can be |
| 6 | read in a more or less lenient way.  Here, the rule on lenity |
| 7 | doesn't require the Court to invent atextual elements in |
| 8 | criminal statutes and then impose those.  There is no grievous |
| 9 | ambiguity that requires the Court to construe a specific |
| 10 | textual provision of the DC Money Transmitters Act in favor of |
| 11 | the defendant, because there is no textual provision of the DC |
| 12 | Money Transmitters Act that requires knowledge or conduct |
| 13 | within the District of Columbia. |
| 14 | THE COURT:  So in your view then, if there was a |
| 15 | money transmission business that was located in Sweden, all of |
| 16 | the websites and materials are in Swedish in that -- for that |
| 17 | money transmission system.  It is advertised only in Sweden. |
| 18 | And somebody sitting in the District of Columbia perhaps in a |
| 19 | sting operation sends a request for a transmission in Swedish |
| 20 | to that site and says, I am in Stockholm and I'd like you to |
| 21 | make the following transmission or transaction for me as I am |
| 22 | sitting here in Stockholm.  The person engages in that |
| 23 | transaction and the jurisdictional element is satisfied because |
| 24 | the person who sent that sting email was sitting in DC at the |
| 25 | time.  That person has committed a DC crime by responding to |

1  that.

2  MR. BROWN: Your Honor, I think potentially. The
3  focus of the DC Money Transmitters Act is on the consumer. It
4  is on the DC consumer who is being protected by the regulation
5  of money transmitting businesses. And I think this does point
6  out the fact that most global or national level money
7  transmitting businesses do some sort of screening. If they
8  don't want to do business in the United States, they will
9  screen out US customers through IP blocking or other ways. I
10 think in that case, what you would have is almost a mistake of
11 fact defense, if anything. But I don't think that would be a
12 situation where the Court would be required to read in an
13 atextual jurisdictional, not just a jurisdictional element, but
14 a knowledge -- a scienter element as to a jurisdictional
15 element that doesn't exist in the statute.

16 THE COURT: All right. Well, give me a couple of
17 minutes. I want to take a look at a couple of things. If you
18 want to all wait here, I will come back and let you know when I
19 am done reading.

20 MR. BROWN: Yes.

21 (Recess taken at 3:47 p.m.)

22 THE COURT: All right. So I am going to answer this
23 question in the affirmative and indicate that both are
24 required. And I realize this is a difficult question. This is
25 a variant of the question I raised with the parties early on in

1   the case. But I am going to answer yes for a number of
2   reasons.
3   　　　　　First of all, I think that was our understanding when
4   I crafted the instructions the way I did. And I think this is
5   literally what the instruction actually requires. It is not
6   only that sentence of the instruction, but later in the
7   instruction, I say you are not required to find that the
8   defendant knew that he was required to register under DC law,
9   but you are required to know that he engaged in the business in
10  the District of Columbia. And so I say it twice in that same
11  instruction. And I think that was my understanding at the time
12  we gave the instruction. And when we crafted the instructions,
13  that is how I understood it. And that is how I thought the
14  parties understood it and the parties closed on based on that
15  understanding of the instruction.
16  　　　　　And I raised this issue as well during the charging
17  conference with respect to the willful blindness. And I am not
18  saying that the government conceded the point. I think that
19  Mr. Brown in response to my question was careful, but did
20  concede at least that if the knowledge requirement applied, the
21  willful blindness instruction would be justified for that
22  reason as well, although that wasn't the principle reason.
23  　　　　　But the other reason that I reached this conclusion
24  is that the law is not particularly receptive to strict
25  liability crimes, particularly felonies. They are permissible

1     and there is actually some D.C. Circuit precedent that suggests
2     that the D.C. Code provision that we are talking about here is
3     a strict liability provision.  But I think it is strict
4     liability in the way that I gave the instruction and that you
5     don't have to know that you had to register.  But you had to
6     know that you were at least engaging in the underlying conduct.
7             And the Supreme Court in the *Staples* case notes that
8     even when you are dealing with a strict liability crime -- and
9     this may or not be one -- I think the government is indicating
10    in their view a general scienter crime.  But in any event, even
11    if it were a strict liability crime, under Supreme Court
12    precedent, the government would still have the burden of
13    proving the person knew they were engaged in the relevant
14    underlying conduct.  And this is not a malum in se crime, it is
15    a malum prohibitum crime.  And I think that then drives me back
16    to this question that was framed by our discussion a little
17    while ago about whether the nexus to DC purely jurisdictional
18    nexus or whether it is an element of the statute itself.
19            And although I disagree with Mr. Ekeland that the
20    statute or the text includes a nexus to DC requirement, it is
21    hard for me to imagine that the District of Columbia when it
22    passed this law actually intended for people to register where
23    they were not engaged in any conduct in the District of
24    Columbia.  And that it was simply viewed as a jurisdictional
25    nexus in that DC just wouldn't have the power to reach beyond

1     the District of Columbia.  And I can't imagine that the
2     District of Columbia would want people engaged in money
3     transmission businesses across the world to start registering
4     in DC, saying, you know, I know we are not engaged in any
5     business in DC, but we are registering here because it is just
6     a jurisdictional element of the crime.
7           I realize that this is a close question though.  But
8     I think this was, at least as I understood the instructions at
9     the time I gave them and at the time the parties closed.  And I
10    also do think that it would be a very harsh rule and one that I
11    think courts would do their best to avoid to conclude that
12    someone who has no knowledge whatsoever or even reason to know
13    that they are engaged in money transmitting in the District of
14    Columbia, nonetheless can commit a felony if they don't obtain
15    a license in the District of Columbia if by chance there is a
16    transaction or two that hit upon the District of Columbia
17    unbeknownst to that person for some reason.  So that is what I
18    will do.
19          And I am happy to do it however the parties want.  I
20    can -- we can bring the jury in and I can say the answer to
21    your question is yes or if you prefer I can just write on the
22    jury note that the answer to your question is yes.
23          MR. BROWN:  Your Honor, the government doesn't have a
24    preference.
25          THE COURT:  Mr. Ekeland.

```
1                MR. EKELAND:  You can bring the jury in.
2                THE COURT:  That is your preference?
3                MR. EKELAND:  Yes, Your Honor.
4                THE COURT:  All right.  Just to clarify something, I
5     may have said D.C. Circuit statute is strict liability, I meant
6     the DC Court of Appeals.
7                But I will tell the jury they should consider my
8     instructions as a whole in making that determination.
9                (Jury in at 4:05 p.m.)
10               THE COURT:  Well, good to see all of you.  I have a
11    note from you.  And the note says "For Count 4, the first
12    element recites the defendant knowingly engaged in the business
13    of money transmission in the District of Columbia.  Does the
14    knowledge requirement apply to both, engaged in the business
15    and in the District of Columbia?  That is, is knowledge of the
16    location required?"
17               And the answer to that question is, yes, it applies
18    to both.  And in answering that question, you should consider
19    my instructions as a whole.  Okay.  So thank you.
20               (Jury out at 4:06 p.m.)
21               THE COURTROOM DEPUTY:  You may be seated.
22               THE COURT:  All right.  Anything else before we
23    switch up again here?
24               MR. BROWN:  No, Your Honor.
25               MR. EKELAND:  No, Your Honor.
```

1             THE COURT: All right. I will keep you posted if we
2    here anything else.
3             (Proceedings concluded at 4:07 p.m.)

Case 1:21-cr-00399-RDM   Document 292   Filed 04/19/24   Page 20 of 20

20

# C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 18th day of April, 2024.

_____
Sherry Lindsay, RPR
Official Court Reporter