### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 21-cr-399 (RDM)** |
| | : | |
| **ROMAN STERLINGOV,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENSE
### REQUEST TO SPEAK WITH JURORS

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully files its opposition to the defendant's letter request[1] to engage in post-verdict "discussions with jurors who served during the trial."  ECF No. 295.

### FACTUAL BACKGROUND

Upon conclusion of the trial and the forfeiture phase of trial, the Court dismissed the jury and gave the following instruction: "You are all discharged.  You are free to discuss the case or not discuss the case with anyone as you see fit."  3/12/24 Tr. at 46:19-20.  No attorney or party requested leave of Court to speak with members of the jury after their discharge.  Following dismissal of the parties, members of the defense team approached jurors in the hallway and engaged some of them in conversation about the case.

Following the jury verdict, the defense team has engaged in a publicity campaign of inaccurate commentary about the trial, including about the jury and speculation about how the jury reached its verdict.    In one episode on or about March 15, 2024, Mr. Ekeland commented to a large public audience about his conversations with jurors, made the absurdly baseless allegation

---

[1] Local Criminal Rules 47 and 49(f)(4) provide substantive and formatting guidance for motions to the Court.

that race played some sort of role in the jury deliberations, and publicly identified the occupation

of one of the jurors:

- "One of the jurors, who was sort of a law and order type, was a little upset when she said, you know when we asked the jurors about their verdict, she said, 'Well, you can't say that there wasn't any evidence,' yeah OK so there wasn't any direct evidence." Finney Forum Day 1, https://x.com/i/broadcasts/1mrxmyNgXEgxy, at 29:10.

- "From what I could tell, there was sort of a, um, split in the jury room, between the white people who, um, you know believe that the government's there to protect them, and the black people who've, um, a little bit more skeptical of the government for some reason I don't know why." *Id.* at 49:30

- "But I think what we had at the end of the day was somebody who was a [OCCUPATION], who I didn't know was a [OCCUPATION], who sort of took over the jury a little bit. But now I'm speculating because I wasn't inside the room." *Id.* at 49:50.

## ARGUMENT

### 1. Requests To Communicate with Jurors Are Disfavored and Must Be Supported by Substantial and Incontrovertible Evidence

"District courts have wide discretion to restrict contact with jurors to protect jurors from

fishing expeditions by losing attorneys." *United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir.

2007) (internal quotations omitted). In this District, requests to speak with members of the jury

after trial are governed by Local Criminal Rule 24.2(b), which "prohibits parties from speaking

with jurors after a verdict has been rendered 'except when permitted by the court for good cause

shown in writing.'" *United States v. Davis*, 402 F. Supp. 2d 252, 264 n.8 (D.D.C. 2005) (quoting

LCrR 24.2(b)). Even if the Court finds good cause, it has discretion to impose "such conditions

as it deems appropriate, including but not limited to the requirement that the juror be examined

only in the presence of the Court." LCrR 24.2(b).

Rules restricting post-trial contact with jurors, such as Local Criminal Rule 24.2(b),

represent an important safeguard against juror harassment and compromising the confidentiality

of juror deliberations.  "These rules are said to (1) encourage freedom of discussion in the jury room; (2) reduce the number of meritless post-trial motions; (3) increase the finality of verdicts; and (4) further Federal Rule of Evidence 606(b) by protecting jurors from harassment and the jury system from post-verdict scrutiny."  *Cuevas v. United States*, 317 F.3d 751, 753 (7th Cir. 2003). As the Supreme Court explained in *Tanner v. United States*, 483 U.S. 108, (1987), "long-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry." *Id.* at 127.  "[F]ull and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct." *Id.* at 120-21.

These concerns are embodied in Federal Rule of Evidence 606(b), which generally prohibits juror testimony about any aspect of the jury's deliberations, other than clerical errors, "extraneous prejudicial information," or improper "outside influence."  Fed. R. Evid. 606(b)(1)-(2).  These are narrow exceptions.  They limit post-verdict inquiry to instances in which truly extraneous sources of influence improperly and prejudicially intrude upon the jury's deliberations—such as an outside media report being read in the jury room, or a threat made to a juror's safety.  *See Tanner*, 483 U.S. at 122-23 (quoting legislative history of Rule 606(b)).  As Judge Hogan explained in *United States v. Wilkerson*, 656 F. Supp. 2d 11 (D.D.C. 2009), "[s]uch extraneous influences must be distinguished from intra-jury influences," and "'evidence of discussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict is within the rule, rather than the exception, and is not competent to impeach a verdict.'"  *Id.* at 15-16 (quoting *United States v. Wilson*, 534 F.2d 375, 378-79 (D.C. Cir. 1976)); *accord United States v. Edelin*, 283 F. Supp. 2d 8, 13 (D.D.C. 2003) ("[N]obody may

3

inquire into so-called 'inside' influences on the jury—such as pressure among jurors, misunderstanding of instructions, a compromise verdict, or a self-imposed time limit—but only into outside influences.").

Accordingly, post-verdict requests to interview jurors are "disfavored" in this District. As Judge Boasberg recently ruled, the standard for finding good cause to allow counsel to interview jurors after a conviction "is not a simple bar to clear." *United States v. Taylor*, 18-cr-198 (JEB), 2022 WL 17820341, at *1 (D.D.C. Dec. 20, 2022).

> The Second Circuit, for example, has held: "Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." . . . . In other words, "good cause" exists when a Rule 24.2(b) motion is grounded in something concrete, and not when a party seeks to conduct a "fishing expedition."

*Id.* (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983), and *United States v. Birchette*, 908 F.3d 50, 58 (4th Cir. 2018)). This standard "reflects the principle that courts should generally be 'hesitant to haul jurors in after they have reached a verdict.'" *Id.* (quoting *Moon*, 718 F.2d at 1234).

## 2. The Defense Has Offered No Basis To Communicate with Jurors, and the Defense Team's Behavior Raises Substantial Concerns About Juror Harassment

The defense has not shown good cause to communicate with jurors. Indeed, the defense offers no reason at all for its request—only a bald request for permission to do what defense counsel already had an opportunity to do right after the verdict. Even in public appearances, the defense has offered nothing more than speculation ("But now I'm speculating because I wasn't inside the room.") about matters that may have occurred during deliberations. Even if these speculations were true, they would constitute only "intra-jury influences" that are outside the scope of any permissible inquiry. *See Wilkerson*, 656 F. Supp. 2d at 15. Because the defense has not

articulated *any* basis for its request, let alone "clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant," *Moon*, 718 F.2d at 1234, the request should be denied as the pure fishing expedition it is. *See Taylor*, 2022 WL 17820341, at *2 (denying motion to interview jurors where defendant "fail[ed] to identify any evidence whatsoever that such impropriety occurred, much less substantial and incontrovertible evidence'").

Further, the tone and tenor of the defense team's public comments about the trial raise considerable concern about juror harassment. Mr. Ekeland belittled a female juror in front of a large public audience, using a mocking tone to imitate her voice and dismissing her as "sort of a law and order type." Mr. Ekeland admitted that this juror "was a little upset" when he spoke to her—a strong indication that further contact would not be welcome. Mr. Ekeland has arguably violated the Local Criminal Rules already by identifying another juror's occupation in front of the same public audience, *see* LCrR 24.1(b)(1) (requiring parties to maintain the confidentiality of "identifying information" about jurors, "including . . . employment information").[2] Such behavior raises substantial concern that the jurors will be "harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict." *Tanner*, 483 U.S. at 120 (quoting *McDonald v. Pless*, 238 U.S. 264, 267 (1915)).

Although the defense has shown no basis at all for such post-verdict contact (much less the high bar required), should the Court authorize the defense team to engage in post-verdict communication with jurors, the government requests that the Court exercise close control over the proceedings, including the procedure specifically approved by the Local Rules that "the juror be

---

[2] Mr. Ekeland's apparent surprise at learning the juror's occupation after the verdict is difficult to understand, as that information was disclosed to the defense during voir dire.

examined only in the presence of the Court." LCrR 24.2(b); *see Wilkerson*, 656 F. Supp. 2d at 16

("A 'trial court has wide latitude in determining the method of inquiry into possible prejudice.'")

(quoting *Leisher v. Conrad*, 41 F.3d 753, 756 (D.C. Cir. 1994)).

## CONCLUSION

For the foregoing reasons, the defense request should be denied, and the defense should

continue to be subject to the Court's May 27, 2024 Minute Order requiring defense counsel to

"refrain from contacting any juror pending further order of the Court."

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:      */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ C. Alden Pelker*
*/s/ Jeffrey Pearlman*
C. Alden Pelker, Maryland Bar
Jeff Pearlman, D.C. Bar No. 466901
Trial Attorneys, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 616-5007 (Pelker)
(202) 579-6543 (Pearlman)
Catherine.Pelker@usdoj.gov
Jeffrey.Pearlman2@usdoj.gov