UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully files this motion pursuant to Fed. R. Crim. P. 32.2(b)(2) for entry of the attached Preliminary Order of Forfeiture.

### 1.  Overview of Applicable Forfeiture Procedure

"Forfeiture is an element of the sentence imposed following conviction . . . ."  *Libretti v. United States*, 516 U.S. 29, 38-39 (1995).  The standard of proof for a forfeiture determination is preponderance of the evidence.  *United States v. DeFries*, 129 F.3d 1293, 1312 (D.C. Cir. 1997).

The Court must determine (1) what property is subject to forfeiture under the specific statute, (2) whether the government has established the requisite nexus between the specific property it seeks to forfeit and the offense, (3) the amount of any forfeiture money judgment, and (4) if the government has met the statutory criteria to forfeit substitute property.  Fed. R. Crim. P. 32.2(b)(1)(A), (b)(2)(A).  Here, the jury has already determined the forfeitability of the six specific properties listed in the Superseding Indictment, pursuant to Fed. R. Crim. P. 32.2(b)(5)(A).  *See* ECF No. 274 (Special Verdict Form for Forfeiture Proceeding).  If the Court determines that property is subject to forfeiture, it must enter a preliminary order of forfeiture.  Fed. R. Crim. P. 32.2(b)(2)(A).  "Unless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications

before the order becomes final as to the defendant." Fed. R. Crim. P. 32.2(b)(2)(B). A preliminary order becomes final as to the defendant at sentencing. Fed. R. Crim. P. 32.2(b)(4)(A).

The Court's forfeiture determinations "may be based on evidence already in the record," including evidence during the guilt phase, "and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). The Federal Rules of Evidence do not apply to the forfeiture phase. Fed. R. Evid. 1101(d)(3); *United States v. Smith*, 770 F.3d 628, 641 (7th Cir. 2014); *see also, e.g.*, *United States v. Ivanchukov*, 405 F. Supp. 2d 708, 709 n.1 (E.D. Va. 2005) (relying on case agent's affidavit in determining forfeiture); *United States v. Gaskin*, No. 00-CR-6148, 2002 WL 459005, at *9 (W.D.N.Y. Jan. 8, 2002) (relying on narcotics detector dog handler's affidavit in determining forfeiture, and holding that "reliable hearsay is admissible"), *aff'd*, 364 F.3d 438 (2d Cir. 2004).

## 2. All of the Deposits Into Bitcoin Fog Represent Property "Involved In" the Defendant's Crimes for which Forfeiture Is Mandatory

Under Counts One, Two, and Three of the Indictment, the defendant is required to forfeit "any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1).[1]

This Court has already addressed how § 982(a)(1) applies to Bitcoin Fog in its ruling on the defendant's *Monsanto* motion, ECF No. 116. Specifically, with respect to the money laundering offenses, this includes not only the defendant's proceeds, but also any property that facilitated operation of the Bitcoin Fog mixer:

> The relevant forfeiture statute, 18 U.S.C. § 982(a)(1), "sweeps broadly" to cover all funds "involved in" money laundering, money laundering conspiracy, or operating an unlicensed money transmitting business. *United States v. Bikundi*, 926 F.3d 761, 793 (D.C. Cir. 2019). Because money laundering typically "depends

---

[1] Count Four charged an offense under the D.C. criminal code, for which there is no corresponding federal statute authorizing criminal forfeiture of property.

upon the use of legitimate monies to advance or facilitate the scheme," even funds that are not themselves the proceeds of illegal activity can become "involved in" a money laundering operation. *Id.* (internal quotation marks omitted).  To be sure, the D.C. Circuit has yet definitively to interpret this provision. But it has observed—without qualification or disapproval—that "other circuits have held that funds 'involved in' money laundering include those that 'facilitate' the money laundering scheme, which encompasses unlaundered funds when they are transferred 'in order to conceal the nature and source' of [criminal] proceeds." *Id.*

ECF No. 116, at 11. The Court further explained that, because Bitcoin Fog's business model depended on pooling tainted and untainted funds, all deposits into Bitcoin Fog facilitated its money laundering operations:

> [T]he very essence of Bitcoin Fog's service was commingling—that is, mixing— funds. Dkt. 106-1 at 2 ("[U]sing our service you mix up your bitcoins in our own pool, with other users' bitcoins, and get paid back to other accounts from our mixed pool, which, if properly done by you can eliminate any chance of finding your payments and mak[e] it impossible to prove any connection between a deposit and a withdraw[al] inside our service.").  It anonymized bitcoins by combining them with other bitcoins, and, importantly, without a sufficiently large pool of bitcoins to mix, it would not have worked.  *Id.*  Each deposit of funds into Bitcoin Fog therefore contributed to its efficacy and facilitated its activities—both lawful and unlawful.

*Id.* at 14-15. Accordingly, property "involved in" the money laundering conspiracy charged in Count One should include the volume of all deposits into Bitcoin Fog. *Cf. United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1353 (D.C. Cir. 2002) (noting that property "involved" in a money laundering transaction in violation of § 1956 can include funds "used as the bankroll facilitating the fraud").

With respect to the unlicensed money transmitting business offense charged in Count Three, the Court has held that all deposits into Bitcoin Fog facilitated the money transmitting business and thus were "involved in" the offense:

> There is less precedent on forfeiture related to the operation of an unlicensed money transmitting business, but such law as there is suggests that all money transmitted through such a business is subject to forfeiture.  In *United States v. Elfgeeh*, 515 F.3d 100, 122, 138 (2d Cir. 2008), for instance, the defendants had been convicted

of running an unlicensed money transmitting business out of an ice cream shop. The Second Circuit upheld, albeit in part under a plain-error standard, the forfeiture of "all assets that passed through the [ice cream shop's] account"—a number that appears to have included all money unlawfully transferred as well as any proceeds the ice cream shop collected.  *See id.*  As the court saw it, funds "transferred in the unlicensed operation" of the business were "involved in" it, which is all 18 U.S.C. § 982(a)(1) requires.  *Id.* at 138–39; id. at 139 (treating the "total amount" deposited in and withdrawn from the ice cream shop's account as "integral to the offenses"); *see also United States v. $715,031.27*, 587 F. Supp. 2d 1275, 1277–78 (N.D. Ga. 2008) (same under identically worded civil forfeiture statute); *cf. United States v. Hodge*, 558 F.3d 630, 635 (7th Cir. 2009) (explaining that "[w]hen a business has both lawful and unlawful aspects, only income attributable to the unlawful activities is forfeitable," but when "the business as a whole was overwhelmingly [unlawful], . . . everything is forfeitable").  Here, however, the Court need not go as far as the Second Circuit did in *Elfgeeh*.  Unlike what may have been true of funds in the ice cream shop's account, all funds deposited with Bitcoin Fog were intermingled (or tumbled) with other funds, and thus all of the funds were "involved in" the alleged operation of an unlicensed money transmitting business.

*Id.* at 13.

At trial, FBI Staff Operations Specialist Luke Scholl and Beth Bisbee of Chainalysis both testified about the Bitcoin Fog cluster and the total amount of funds deposited into it.  In particular, Mr. Scholl testified that the Bitcoin Fog cluster received deposits totaling approximately 1,284,251 BTC, valued at approximately $395.5 million valued as of the time the funds were received. 2/21/24 Afternoon Tr. at 74:7-75:23; Gov't Ex. 308.[2]  Mr. Scholl further testified about the operation of the Bitcoin Fog cluster.  Initially, users deposited Bitcoin into deposit addresses, which flowed into consolidation addresses, and in turn peel chains would form out of the consolidation addresses as funds were withdrawn by users.  *Id.* at 29:16-44:13; Gov't Ex. 323. That pattern eventually became more complicated, but Bitcoin Fog continued to pool users' funds

---

[2] In pretrial *Daubert* hearings, Ms. Bisbee testified and introduced her expert report, in which she calculated that "Bitcoin Fog received a total of 1,284,251.08225937 BTC, valued at USD $395,563,025.39061."  *See* 6/23/23 Tr. at 108:18-26:23; Gov't Ex. 5, Bisbee Report at 9.  Ms. Bisbee's report is "relevant and reliable" and may be considered by the Court in connection with forfeiture.  Fed. R. Crim. P. 32.2(b)(1)(B).

before sending out payments.  *Id.* at 44:14-45:10.  Thus, as the Court previously explained, the

Bitcoin Fog cluster "anonymized bitcoins by combining them with other bitcoins."  ECF No. 116,

at 14.

### 3. The Court Should Impose a Forfeiture Money Judgment Equal to the Value of the Entire $395 Million in Bitcoin Fog Deposits

If the government seeks a forfeiture money judgment, "the court must determine the

amount of money that the defendant will be ordered to pay."  Fed. R. Crim. P. 32.2(b)(1)(A).

Defendants are not entitled to a jury determination on the amount of a money judgment.  *See*

*United States v. Gregoire*, 638 F.3d 962, 972 (8th Cir. 2011) (holding that adjudication by a jury

is unavailable as to money judgments, because Rule 32.2(b)(5)(A) only applies to the forfeitability

of specific property).

As then-Judge Ketanji Brown Jackson explained in *United States v. Young*, 330 F. Supp.

3d 424 (2018), the purpose of a forfeiture money judgment is to ensure that "a convicted criminal

defendant should not be able to evade the economic impact of criminal forfeiture by rendering the

forfeitable property unavailable."  *Id.* at 432.  Accordingly, the court is authorized to impose a

forfeiture money judgment equal to the entire amount of forfeitable property, regardless of the

defendant's present ability to cover the money judgment.  *See id.* ("[T]he court should ensure that

the defendant realizes the economic impact of a forfeiture order, even in cases where the defendant

has inadequate assets at the time of sentencing as a result of the defendant's own dissipation of the

forfeitable assets."); *accord United States v. Day*, 524 F.3d 1361, 1377-78 (D.C. Cir. 2008) (noting

that the forfeiture statute 21 U.S.C. § 853 "contains no language limiting the amount of money

available in a forfeiture proceeding to those assets in the defendant's possession at the time

forfeiture is ordered."); *United States v. Blackman*, 746 F.3d 137, 143-44 (4th Cir. 2014) ("The

fact that a defendant is indigent or otherwise lacks adequate assets to satisfy a judgment does not operate to frustrate entry of a forfeiture order.").

The government's forfeiture calculations need not be exact, because criminals rarely keep detailed records of their criminal activities. *See DeFries*, 129 F.3d at 1315 ("[T]he the punitive purpose of the forfeiture provision should not be subverted by a rule that could obscure that purpose with technical . . . calculations. Indeed, construing the statute more narrowly could hinder the actualization of [the statute's] punitive intent."); *United States v. Roberts*, 660 F.3d 149, 166 (2d Cir. 2011) ("[T]he law does not demand mathematical exactitude in calculating the proceeds subject to forfeiture . . . because the purpose of forfeiture is punitive rather than restitutive, district courts are not required to conduct an investigative audit to ensure that a defendant 'is not deprived of a single farthing more than his criminal acts produced.'") (quoting *United States v. Lizza Indus., Inc.*, 775 F.2d 492, 498 (2d Cir.1985)); *United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011) (explaining that the "calculation of forfeiture amounts is not an exact science"); *United States v. Del Giudice*, 594 F. Supp. 3d 998, 1006 (N.D. Ill. 2022) (explaining that the calculation of the "total money judgment for [the] forfeiture allegation . . . must be reasonable but not exact").

As explained above, the measure of the property "involved in" the defendant's money laundering conspiracy and unlicensed money transmitting business offenses is the total value of Bitcoin deposited into Bitcoin Fog: approximately 1,284,251 BTC, valued at approximately $395,563,025.39, based on the trial evidence and evidence presented in pretrial *Daubert* hearings. A money judgement in the amount of $395,563,025.39 is therefore appropriate.

### 4. The Jury's Forfeiture Verdict Is Binding as to the Specific Properties Subject to Forfeiture

Federal Rule of Criminal Procedure 32.2(b)(1)(A) requires the government to establish the "requisite nexus" between the specific property it seeks to forfeit and the offense of conviction.

6

Fed. R. Crim. P. 32.2(b)(1)(A).  "The inquiry into the nexus between the property and the offense is the same regardless of whether the judge or the jury is the factfinder."  *United States v. Neal*, 2003 WL 24307070, at *2 (E.D. Va. Sept. 29, 2003) (citing advisory committee's notes to Fed. R. Crim. P. 32.2).  For the money laundering and unlicensed money transmitting business offenses charged in Counts One, Two, and Three, as discussed above, that means determining whether the property alleged to be subject to forfeiture was "involved in" the offenses within the meaning of 18 U.S.C. § 982(a)(1).

In this case, the defendant elected to retain the jury to determine the forfeitability of the specific property listed in the Forfeiture Allegation of the Superseding Indictment, and the jury returned verdicts finding each of the properties was "involved in" the defendant's crimes.  The jury's verdict was supported by Mr. Scholl's testimony during the forfeiture phase of trial, *see* 3/12/24 Tr. at 18:15-26:23, and by the trial evidence and testimony, which showed how each of the specific properties represented either the defendant's proceeds from operating Bitcoin Fog, or facilitated the money laundering conspiracy and unlicensed money transmitting business offenses alleged in Counts One and Three, *see generally id.* at 29:9-37:15 (summarizing trial and forfeiture phase evidence).

The jury's forfeiture verdict is final.  The Court "has no discretion to second guess the jury's verdict," and while "[a] defendant is given the option to have the jury determine the issue of forfeiture, . . . this does not allow the defendant to reargue the issue to the trial judge."  *Neal*, 2003 WL 24307070, at *3 & n.2.

5.  **The Court Should Forfeit Bitcoin Seized from the Defendant's Mycelium Wallets as Substitute Property**[3]

Where the government obtains a forfeiture money judgment and one or more conditions of 21 U.S.C 853(p) exist, the government is entitled to pursue substitute assets to satisfy the money judgment.  *See* 21 U.S.C. § 853(p).  The Court "shall order the forfeiture of any other property of the defendant" if the government cannot collect a money judgment because, as a result of any act or omission of the defendant, directly forfeitable property:

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1)(A)-(E), (2).  Section 853(p)(2) provides that "any other property of the defendant" may be forfeited as a substitute asset.  Whether the requirements of § 853(p)(1) have been satisfied is solely an issue for the Court to determine when the government has included substitute assets in a proposed Preliminary Order of Forfeiture.  *See* Fed. R. Crim. P. 32.2(e)(3); *United States v. Alamoudi*, 452 F.3d 310, 315 (4th Cir. 2006).

The forfeiture of substitute assets is mandatory.  *See* 21 U.S.C. § 853(p)(2) (the Court "shall order" the forfeiture of substitute property if directly forfeitable property is not available);

---

[3] The Mycelium wallet discussed herein contained funds traceable to Bitcoin Fog and which represent the defendant's proceeds.  *See* 2/22/24 Afternoon Tr. at 67:19-81:11.  Because the seizure of the Mycelium wallet funds occurred after the Superseding Indictment was returned, the Mycelium wallet funds were not listed in the Forfeiture Allegation of the Superseding Indictment and thus were not included in the post-verdict forfeiture phase of trial.  As these funds also squarely fit within the statutory definition of substitute assets, as set forth above, the Government is pursuing the assets here under the alternative theory.

*Alamoudi*, 452 F.3d at 314 ("Section 853(p) is not discretionary . . . . [W]hen the Government cannot reach the property initially subject to forfeiture, federal law requires a court to substitute assets for the unavailable tainted property."). If the Court finds the requirements of Section 853(p) are met, and that the value of the substitute property does not exceed the value of the missing asset, it must include the substitute property in the preliminary order at that time. *See* Fed. R. Crim. P. 32.2(b)(2)(A). The Court must enter the order without regard to any third party's interest in the property. *Id.*[4] The Court may order the forfeiture of substitute assets by including the substitute property in a preliminary order of forfeiture. *See United States v. Smith*, 2010 WL 4962917, *1 (E.D. Ky. Dec. 1, 2010).

Here, the government seeks forfeiture under § 853(p) of the approximately 10.25623378 BTC seized from the defendant's Mycelium wallets located on one of his Samsung mobile phones. As noted above, the total value of the property "involved in" the defendant's crimes is at least $395,563,025.39. The specific properties subject to forfeiture will not come close to satisfying that amount. Even at contemporary exchange rates, the specific properties seized from the defendant's Kraken account (U.S. dollars, Bitcoin, Ethereum, Stellar, and Monero cryptocurrencies) will amount to slightly more than $1.1 million, and the Bitcoin Fog cluster (approximately 1,354 BTC), which has not been recovered to date, would amount to approximately $95 million at current values. Trial evidence and testimony, moreover, satisfies the factual predicates under § 853(p)(1). Most of the funds laundered through Bitcoin Fog were forwarded to destination addresses designated by Bitcoin Fog users—other than unspent deposits and the defendant's percentage fee. The corpus of these laundering transactions, accordingly, "ha[ve] been

---

[4] Third-party claims to both specific property and substitute property are adjudicated later, in the third-party ancillary proceeding, as set forth in 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c).

transferred or sold to, or deposited with, a third party," and they "cannot be located upon the exercise of due diligence."  21 U.S.C. § 853(p)(1)(A), (B).  And this was by design—it was part of the operation of Bitcoin Fog as intended by the defendant.  Thus, this Court should find that the conditions specified in § 853(p)(1) are satisfied, and order the forfeiture of the additional 10.25623378 BTC as substitute property.

### 6.  The Value of Specific and Substitute Properties Will Be Credited Toward the Defendant's Forfeiture Money Judgment

The value of any asset found forfeitable must be credited to the money judgment.  *See United States v. Ponzo*, 2014 WL 3893790, at *5 (D. Mass. Aug. 6, 2014) ("The Court is also mindful of the fact that, under Fed. R. Crim. P. 32.2(e), the value of the specific assets found forfeitable by the jury will be applied to the money judgment as will any assets that are located and identified after the entry of this Order."); *Bikundi*, 926 F.3d at 792 (affirming forfeiture order that "ordered [two co-defendants] to forfeit specific pieces of property, including cash, vehicles, jewelry, and real property, with the values of the forfeited properties to be credited on a fifty-fifty basis toward each of their forfeiture money judgments"); *United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999) (affirming forfeiture order where district court ordered forfeiture of substitute property "up to the amount described in the money judgment").  "This eliminates any concern" that the total value of the forfeited property will exceed the money judgment amount and subject the defendant to a "double forfeiture."  *United States v. Tardon*, 56 F. Supp. 3d 1309, 1320 (S.D. Fla. 2014).

Here, the forfeited specific and substitute properties will be liquidated following entry of a final order of forfeiture, and the net proceeds realized by the government (allowing for costs incurred by the government in seizing, maintaining, storing, selling, and otherwise disposing of

the property, and paying off any third-party interests in the property) will be credited toward the defendant's forfeiture money judgment.

## CONCLUSION

For the foregoing reasons, and for good cause, the Court should enter the government's proposed Preliminary Order of Forfeiture.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY:     */s/ C. Alden Pelker*
        */s/ Jeffrey Pearlman*
        C. Alden Pelker, Maryland Bar
        Jeff Pearlman, D.C. Bar No. 466901
        Trial Attorneys, U.S. Department of Justice
        Computer Crime & Intellectual Property Section
        1301 New York Ave., N.W., Suite 600
        Washington, D.C. 20530
        (202) 616-5007 (Pelker)
        (202) 579-6543 (Pearlman)
        Catherine.Pelker@usdoj.gov
        Jeffrey.Pearlman2@usdoj.gov