UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-399 (RDM) |
| | : | |
| ROMAN STERLINGOV, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
REVISED MOTION TO SPEAK WITH JURORS

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully files its opposition to the Defendant's Motion To Speak With Jurors, ECF No. 300, a revised version of the defendant's prior letter "request" for the same relief, ECF No. 295.  The government renews its opposition to this meritless request, and incorporates its prior opposition filed at ECF No. 296.  The government writes further to address the defendant's claims not previously raised in the letter request and the unbelievable "declaration" by defense witness Jeffrey Fischbach.

1.    The renewed defense motion rests—now—on Mr. Fischbach's June 6, 2024 "declaration," which defense counsel declined to have sworn or submitted under penalty of perjury.[1]  In his "declaration," Mr. Fischbach makes a series of bizarre and inherently incredible claims about statements allegedly made by jurors immediately following the verdict and forfeiture phase of trial in this case, further embellished by Mr. Fischbach's speculation (apparently relying in part on "conferring" with (not further defined) Mrs. Fischbach) that some jurors may have felt "intimidated" by other jurors.  ECF No. 300-1, at 1-2.

---

[1] Should the Court deem this matter worthy of any further consideration, the government requests that Mr. Fischbach be required to appear and testify, in person, under oath and under penalty of perjury.

2. For three months since the verdict, the defense team has embarked on a months-long publicity tour of speeches, international conferences, podcasts, media interviews, and online commentary about the trial, *including on other aspects of the jurors' deliberations and their alleged statements to the defense team*. The government has not located any examples—not even in the defense filing of May 27, 2024—of defense counsel ever mentioning elements of the Fischbach June 6, 2024 declaration on which the defense suddenly relies, that "In answering one of my [unstated in the declaration] questions, I believe I heard [one of the jurors] opine that they weighed the evidence based on a "preponderance." Nor does the declaration state what Mr. Fischbach's question even was, a noteworthy omission given Mr. Fischbach's awareness that the Court had instructed the jury that day on the use of the preponderance of evidence standard for the forfeiture stage of the trial. 3/12/24 Tr. at 13.[2] Nor does the declaration explain why Mr. Fischbach waited three months to attest to the declaration. Nor does the declaration distinguish between what is Mr. Fischbach's memory and what is Mrs. Fischbach's memory. (Nor indeed does it explain why a member of the defense team apparently violated Local Criminal Rule 24.2(b) and did not promptly bring such violation to the Court's attention.) Such circumstances render Mr. Fischbach's unsworn declaration beyond belief and unworthy of consideration.

---

[2] As Mr. Fischbach was aware, the trial was bifurcated so that on the date of his observations, the parties and the Court conducted a trial concerning the property subject to forfeiture. The Court instructed on reasonable doubt on March 7, 2024. On March 12, 2024, in the second phase of the trial, in the presence of Mr. Fischbach (and possibly Mrs. Fischbach, the record is not clear) the Court instructed "You should find that the government has met its burden if it has established that connection by a preponderance of the evidence." 3/12/24 Tr. at 13. As the Court further explained, "Preponderance of the evidence means that the government has to prove evidence which considered in light of the facts leads you to believe that what the government is more likely true than not true. To put it differently, if you were to put the government's evidence and the defendant's evidence on opposite sides of a balance scale, the government's evidence would have to make the scale tip slightly on its side of the balance." *Id*. at 13-14.

3. This Court, however, need not make any finding as to the credibility of Mr. Fischbach's "declaration." At most, Mr. Fischbach's "declaration" alleges that the jurors misunderstood or misapplied the Court's instructions, or that there was internal pressure among the jurors. These are precisely the kinds of "intra-jury influences," that are outside the bounds of any permissible post-verdict inquiry. *United States v. Wilkerson*, 656 F. Supp. 2d 11, 15 (D.D.C. 2009); *see also United States v. Edelin*, 283 F. Supp. 2d 8, 13 (D.D.C. 2003) ("[N]obody may inquire into so-called 'inside' influences on the jury—such as *pressure among jurors*, *misunderstanding of instructions*, a compromise verdict, or a self-imposed time limit-but only into outside influences.") (emphasis added); *United States v. Davis*, 402 F. Supp. 2d 252, 264-65 (D.D.C. 2005) ("*Whether the jury followed the court's instructions is not subject to inquiry by the defendant*. Although a jury has a certain obligation to follow the law as it is given by the trial court, it is a peculiar facet of the jury institution that *once a verdict is rendered, no judicial inquiry is permitted into the jury's deliberative process to determine if in fact the court's instructions were properly followed*. Allegations of 'inside' influences on the jury—such as pressure among jurors, misunderstanding of instructions, a compromise verdict, or a self-imposed time limit—do not entitle a convicted defendant to question the jurors or trigger a hearing requiring jurors to testify about their verdict. Federal Rule of Evidence 606(b) even bars a juror from testifying on most matters relating to deliberations and the verdict, to prevent the harassment of jurors by the defeated party and to ensure that what is intended to be a private deliberation can remain out of public scrutiny.") (emphases added, cleaned up). Accordingly, the defense cannot satisfy its burden of showing good cause to communicate with jurors.

4. The government remains highly concerned about juror harassment, based on the post-trial comments of defense counsel in public forums to date—as well as defense counsel's

history during pretrial proceedings of publicly commenting in speeches and on social media about the trial participants (including witnesses, agents, and prosecutors), including with over-the-top and false allegations and personal invective. *See* ECF No. 296, at 4-6. Based on this history, the Court should have particular concerns that jurors could be harassed through public comments disparaging their service or deliberations even if outside the bounds of any permissible post-verdict inquiry, a concern heightened by the criticism of the jurors already filed and this motion.

5. The government vehemently objects to any *ex parte*, unsupervised contact between the defense team and members of the jury. Should the Court authorize any post-verdict communications with jurors, the Court should mandate the procedure specifically approved in the Local Rules that "the juror be examined only in the presence of the Court." LCrR 24.2(b).

## CONCLUSION

For the foregoing reasons and the reasons stated in the Government's Opposition to Defense Request To Speak with Jurors, ECF No. 296, the defense motion should be denied.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

BY:   */s/ C. Alden Pelker*
       */s/ Jeffrey Pearlman*
       C. Alden Pelker, Maryland Bar
       Jeff Pearlman, D.C. Bar No. 466901
       Trial Attorneys, U.S. Department of Justice
       Computer Crime & Intellectual Property Section
       1301 New York Ave., N.W., Suite 600
       Washington, D.C. 20005
       (202) 616-5007 (Pelker)
       (202) 579-6543 (Pearlman)
       Catherine.Pelker@usdoj.gov
       Jeffrey.Pearlman2@usdoj.gov