**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

       *Plaintiff,*

       v.

ROMAN STERLINGOV,

       *Defendant.*

**21-CR-399 (RDM)**

## Defendant's Opposition to Government's Motion for Preliminary Order of Forfeiture

## Table of Contents

Introduction ................................................................................................................. 3

Argument ..................................................................................................................... 3

I.      The Government's Forfeiture Order Violates the Eighth Amendment .............. 5

   A.   The Proposed Forfeiture is Grossly Disproportional to the Gravity of the Crimes ... 7

II.     The Preponderance of the Evidence Does Not Establish that the Majority of

Funds Run Through Bitcoin Fog were Illicit. ............................................................. 8

   A.   The Government Has Not Established That Mr. Sterlingov Ever Had Possession of

Any Wallets in the Bitcoin Fog Cluster with Root Address 1YZJK…. .......................... 10

III.    The Government is Double Counting ............................................................... 11

   A.   Under *Honeycutt* Joint and Several Liability is Improper ......................................... 13

   B.   The Government's Substitute Forfeiture Request does not Satisfy § 853(p)(1) ........ 14

IV.     The Majority of Illicit Funds sent through Bitcoin Fog are outside the Statute

of Limitations ............................................................................................................ 15

V.      The Proposed Forfeiture Funds Are Not Instrumentalities of the Crime ......... 15

Conclusion ................................................................................................................. 15

## Introduction

Defendant Roman Sterlingov submits this opposition to the Government's Motion for Preliminary Order of Forfeiture.[1] For the reasons argued below, this Court should deny the Government's motion because:

1. The proposed asset forfeiture of $395,563,025.39 violates the Eighth Amendment as it is grossly disproportional to the gravity of the crimes.

2. The preponderance of the evidence fails to establish that most of the funds were illicit.

3. The Government is double counting by including funds it has previously seized from other darknet markets and individuals.

4. The Government cannot impose joint and several liability on a criminal asset forfeiture.

5. The Government has not met its burden for substitute forfeiture.

6. Most of the funds the Government seeks to seize involve darknet markets shut down outside the statute of limitations.

7. The proposed forfeiture funds are not instrumentalities of the crime.

## Argument

In determining property subject to forfeiture this Court must determine (1) what property is subject to forfeiture under the specific statute, (2) whether the Government has established the requisite nexus between the specific property it seeks to forfeit and the offense, (3) the amount of any forfeiture money judgment and (4) that the Government has met its statutory requirements for forfeiture.[2] The Government must establish by a preponderance of the evidence that the

---

[1] Dkt. 297 Government's Motion for Preliminary Order of Forfeiture (June 7, 2024).
[2] Fed. R. Crim. P. 32.2(b)(1)(A), (b)(2)(A).

property is subject to forfeiture.[3] The Eight Amendment's excessive fines clause limits this analysis by prohibiting forfeitures that are grossly disproportional to the gravity of the crime.[4]

The Government does not identify a single specific crime that Defendant allegedly laundered money for. This is why it requested and received a willful blindness jury instruction, out of a concern that the Defendant lacked knowledge of any specific illicit funds being run through Bitcoin Fog. The Government only makes general allegations that illicit funds were laundered through Bitcoin Fog without any details or precise amounts.  The preponderance of the evidence does not support the conclusion that the Defendant ever acquired the $395,563,025.39 sought by the Government. Its own expert, Luke Scholl, testified that the maximum amount of service fees that the operator of Bitcoin Fog would have received for the time-period in question totals less than $12 million. The Government also fails to account for the fact that it has already seized assets from darknet markets and individuals that it is now wants the Defendant to forfeit. Similarly, it impermissibly seeks to impose joint and several liability upon Mr. Sterlingov for assets he never possessed.

The Government has failed to establish the requisite nexus to the funds sought, and instead makes general forfeiture allegations about assets it lacks evidence that the Defendant ever acquired and that it does not trace to any specific crimes. Nor does the evidence support the conclusion that all the money run through Bitcoin Fog was illicit. The Government has simply not met its burden when it comes to the requested preliminary forfeiture order.

---

[3] 18 U.S.C §983.
[4] *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

## I.      The Government's Forfeiture Order Violates the Eighth Amendment

The Government's forfeiture order seeks to impose an excessive fine in violation of the Eight Amendment to the United States Constitution.[5] "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense. "[6] "It is … irrelevant whether [a defendant's] currency is an instrumentality… the test for the excessiveness of a punitive forfeiture involves solely a proportionality determination."[7]

Here, the Government's proposed asset forfeiture is punitive in that it seeks $395,563,025.39 allegedly laundered through Bitcoin Fog, even though Bitcoin Fog was a software service with legitimate uses and users. Bitcoin Fog sent mixed funds back to its users after charging a variable service fee between 1-3%.

The nature of a Bitcoin mixing service is fundamentally different than the fiat money laundering strategies discussed by the Government. Bitcoin Fog was a software program that mixed Bitcoin using peel chains and other methods. Bitcoin Fog did not rely upon legal funds to hide illicit sources or illegal funds. Illicit funds were unnecessary for its operation, it was a privacy service that was entirely functional solely with the use of legal funds.

Nowhere does the Government provide an accurate accounting of the amounts of legal and illicit funds run through the service, or anywhere provide an accounting of the funds it has seized elsewhere from darknet markets and individuals who used Bitcoin Fog. The fact that the Government double counts in its asset forfeiture demand evidences its punitive nature. The amount demanded of Mr. Sterlingov is grossly disproportionate to anything that the preponderance of the evidence shows he ever acquired.

---

[5] VIII Am. U.S. Const.
[6] *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).
[7] *Id.* at 333-34.

Any forfeiture amount that exceeds the value of the service fees is grossly disproportional to the gravity of the offense, as Bitcoin Fog users' money was sent back to them shortly after their funds were run through the service. The Government's own undercover transactions in 2019 are proof of this.[8] They ran their money through Bitcoin Fog and received all of it back minus the small service fee.[9] There is no evidence that Mr. Sterlingov was ever in possession of the $395,563,025.39 the Government seeks forfeiture from him.

Government Expert Witness Luke Scholl testified that even if Bitcoin Fog was charging a 3% fee, the high end of the possible fees, the service fees paid to Bitcoin Fog total a maximum of $11,865,059.

> Q. Now, assuming 2 percent, could you walk us through how much Bitcoin Fog would have earned each year?
> A. So we're here. In 2011, that would have been $276.
> In 2012, $85,120.
> In 2013, $705,470.
> In 2014, 1,850,896.
> In 2015, $1,170,572.
> In 2016, $767,180.
> In 2017, $839,521.
> In 2018, $896,647.
> In 2019, $516,456.
> In 2020, $731,603.
> In 2021, $346,298.
> Q. What would the total amount earned by Bitcoin Fog have been, assuming a 2 percent fee?
> A. Approximately $7,910,039.
> Q. And what if it had been just 1 percent?
> A. If it was 1 percent, the total would have been approximately $3,955,020.
> Q. And if it had been 3 percent?
> A. If it had been 3 percent, approximately $11,865,059.[10]

---

[8] *See* Gov't Ex. 205(c) admitted at trial.
[9] *See e.g.* Trial Tr., Dir. Ex. Matthew Price 24:22-2512 (Feb. 14, 2024).
[10] *See* Trial Tr., Dir. Ex of Luke Scholl, 91:20-92:15, (Feb. 21, 2024).

Because Bitcoin Fog charged a variable 1-3% fee the actual service fee amount is lower. As Mr. Scholl testified, if Bitcoin Fog had charged on average a fee of 2%, a reasonable assumption for purposes of determining service fees generated from the operation of Bitcoin Fog, the total would not exceed $7,910,039. And that total includes fees earned from legally mixed money.

## A.     The Proposed Forfeiture is Grossly Disproportional to the Gravity of the Crimes

No direct evidence came out at trial of Mr. Sterlingov ever administrating Bitcoin Fog. The verdict is consistent with Mr. Sterlingov aiding and abetting the operation of Bitcoin Fog without being its administrator, or him creating a legitimate privacy service but turning a blind eye to criminal users (as shown by the Government's willful blindness jury charge). Nor was Mr. Sterlingov convicted of committing any of the crimes the purported illicit proceeds of which were allegedly laundered through Bitcoin Fog. The Government only makes general allegations as to the amount of illicit funds run through Bitcoin Fog, without identifying the specific crimes and sources of the illicit funds.

One of the reasons the Government is unable to precisely identify the amount of illicit funds that went through Bitcoin Fog is because the software used to generate its assumptions, Chainalysis Reactor, is incapable of geographical or jurisdictional breakdowns of the cashflows it purports to trace.

> Q. And Chainalysis Reactor's clustering -- correct me if
> I'm wrong -- it doesn't contain any geographical data, does
> it?
> A. I'm not aware of Chainalysis using geographical data in
> clustering.
> Q. And it doesn't contain any jurisdictional data, does it?
> A. The clustering heuristics, sir?
> Q. Yes.
> A. I'm not aware of Chainalysis using jurisdictional

information in clustering.[11]

A geographical or jurisdictional breakdown is necessary to establish which funds constituted illegal activity, as what is illegal in one jurisdiction may be legal in another. Unable to precisely identify illicit transactions, the Government takes a blunderbuss approach and claims that all transactions run through Bitcoin Fog involve illicit funds.

Exacerbating the gross disproportionality of the Government's proposed $395,563,025.39 forfeiture is the fact that according to a published report by the Government's own expert Chainalysis, roughly 90% of users of mixers use them for privacy and other legitimate reasons.[12] This implies that at least 90% of the funds the Government seeks forfeiture of are legitimate. That results in the Government seeking forfeiture of over $300,000,000.00 of legitimate funds that there is no evidence Mr. Sterlingov ever acquired.

## II.     The Preponderance of the Evidence Does Not Establish that the Majority of Funds Run Through Bitcoin Fog were Illicit.

The Government has admitted, and this Court has held that using a Bitcoin Mixer per se is not illegal.[13] The Government's own expert, Chainalysis, has published reports showing that the vast majority of Bitcoin mixer users mix for personal privacy purposes and not for illicit ends.[14] For 2022, Chainalysis found that less than 10% of mixer users were mixing illicit funds.[15] This means that over 90% of the funds the Government seeks forfeiture of were legal. And the less than 10% that were illicit funds were unnecessary for the functionality of the mixer as most

---

[11] *See e.g.* Trial Tr., Cr. Ex. Luke Scholl 22:15-24 (Feb. 23, 2024).

[12] *See e.g. Chainalysis: Most Mixed Bitcoin Not Used For Illicit Purposes* Aaron Van Wirdum BITCOIN MAGAZINE (Aug. 26, 2019) (attached as Ex. A).

[13] *See e.g.* Tr. Det. Hearing 45:13 (Oct. 25, 2021) ("There's nothing per se illegal about mixing Bitcoins" – AUSA Christopher Brown).

[14] *See e.g. Chainalysis: Most Mixed Bitcoin Not Used For Illicit Purposes* Aaron Van Wirdum BITCOIN MAGAZINE (Aug. 26, 2019); *see also Crypto Mixers and AML Compliance* Chainalysis Team CHAINALYSIS (Aug. 23, 2022) ("A small percentage of crypto mixer users are cybercriminals") (available at https://www.chainalysis.com/blog/crypto-mixers/).

[15] *Id.*

of the funds mixed were entirely legal. Nowhere has the Government provided a breakdown of licit and illicit funds sent through Bitcoin Fog. Rather, it asserts that all funds run through Bitcoin Fog are subject to forfeiture because they comingled with illicit funds. But the Government has identified no specific transactions where legal funds were commingled with illicit funds. Nor is it clear that brick and mortar fiat currency money laundering paradigms involving commingling apply in relation to the software running Bitcoin Fog, which the Government does not have. The preponderance of the evidence does not establish that illicit and licit funds were commingled. Regardless, the commingling is irrelevant to the gross disproportionality analysis under the Eighth Amendment which solely looks at the proportional relationship between the assets the Government seeks seizure of and the gravity of the crime.[16]

Here, the $395,563,025.39 asset forfeiture sought by the Government is grossly disproportionate because at best, according to the Government's own expert, Luke Scholl, the operators of Bitcoin Fog made a maximum of $11,865,059 in service fees from a mixer where it's likely that over 90% of the funds run through it were entirely legal, and which had legitimate financial privacy uses. The Government seeks forfeiture of over $300,000,00.00 of legitimate funds that it is unable to determine the location of and that there is no evidence Mr. Sterlingov ever acquired.

The Government has not shown anywhere that Mr. Sterlingov ever possessed $395,563,025.39. Despite a decade-long investigation, the Government has only been able to show that Mr. Sterlingov had roughly $2 million in assets when he was arrested. There is no evidence that Mr. Sterlingov ever possessed all the funds the Government seeks forfeiture of.

---

[16] *United States v. Bajakajian*, 524 U.S. 321, 333-34 (1998).

**A.      The Government Has Not Established That Mr. Sterlingov Ever Had Possession of Any Wallets in the Bitcoin Fog Cluster with Root Address 1YZJK…**

Despite arresting Mr. Sterlingov and seizing his electronic devices and notes, having access to his bank accounts, and cooperation with Swedish Law Enforcement, the preponderance of the evidence does not support the Government's position that Mr. Sterlingov was ever in possession of $395,563,025.39 worth of bitcoin. The Government does not have any of the private keys to these wallets, there is no evidence that Mr. Sterlingov ever possessed the private keys, nor does the Government have the Bitcoin Fog servers, Bitcoin Fog ledger, or Bitcoin Fog server logs. The attribution of ownership is entirely speculative. Indeed, the Government admits in its Motion for Preliminary Order of Forfeiture that this amount was simply a total of Bitcoin received by wallets identified by Chainalysis to be in the Bitcoin Fog cluster. Luke Scholl testified that addresses within the Bitcoin Fog cluster formulated by Chainalysis received a total of $395,563,025.39 but the Government fails to present a breakdown of what percentage, if any, were illicit.

The Government asserts that Mr. Sterlingov dissipated illicit assets while providing no evidence of this purported dissipation. None came in at trial. How Mr. Sterlingov purportedly dissipated the assets is nowhere mentioned by the Government.

The Government repeatedly refers to approximately 1,354 bitcoin that is currently held in the Bitcoin Fog wallet, identified by an address starting with 1YZJK… But a simple blockchain explorer search of this address shows that there is 0 BTC in this address and that the last transaction for this address occurred on March 25, 2012.[17]

---

[17] *See* Blockchain.com Address Search, available at
https://www.blockchain.com/explorer/addresses/btc/1YZJKaAx2HRWvcbCXDBtQbBZcRU46WJqw (attached as Ex. B).

Nevertheless, the Government claims that 1YZJK… is a "root" address, and that other addresses exist within a cluster of addresses associated with Bitcoin Fog. The use of the term "root address" in relation to blockchain tracing is arbitrary and not recognized by any scientific body or standards organization related to the blockchain surveillance industry. Because no such blockchain forensic standards or scientific bodies exist. It appears to be an invention on the part of the Government and Chainalysis. The Government's use of a "root address" holding no bitcoins as the basis for claiming $395,563,025.39 in asset forfeiture is pseudo-scientific and arbitrary, particularly given the lack of evidence that Mr. Sterlingov had custody or control over the "root address" at any time or the addresses purportedly associated with it in Chainalysis' 'cluster'.

## III.    The Government is Double Counting

The Government seeks what the United States Supreme Court has recently cautioned against: to hold Mr. Sterlingov jointly and severally liable for all funds that went through Bitcoin Fog regardless of whether he had acquired the assets and regardless of whether the government recovered those assets from their owners. Not only does the request implicate the Eighth Amendment, the Supreme Court's decision in *Honeycutt v. United States*, 581 U.S. 443, 450 (2017), but it also calls for double counting.[18]

There is no real dispute that Mr. Sterlingov never obtained $395,563,025.39, or that the Government has already recovered from the users of Bitcoin Fog funds possibly in excess of $395,563,025.39. The Government for example, recovered "94,000 bitcoin that had been stolen from Bitfinex… valued at over $3.6 billion…" from Ilya Lichtenstein, who testified to using

---

[18] *See United States v. Young*, 330 F. Supp. 3d 424, 439 (D.D.C. 2018) ("courts have routinely recognized that double counting is flatly prohibited in the context of criminal forfeiture.")

Bitcoin Fog.[19] The Government similarly recovered substantial assets from marketplaces like Silk Road that utilized Bitcoin Fog.[20] Yet by requesting a money judgment forfeiture of $395,563,025.39, the Government attempts to hold Mr. Sterlingov jointly and severally liable with the users of Bitcoin Fog as if it never recovered much, if not all, of those funds.[21] These recoveries, however, are significant and potentially eclipse the $395,563,025.39 that the Government seeks in its money judgement forfeiture. In essence, the Government seeks to forfeit what it has already recovered not in the interest of recovering "ill-gotten gains" but to punitively and perpetually punish Mr. Sterlingov through an astronomical money judgment that the Government will seek to satisfy through future earnings for the remainder of his life.[22]

The Government seeks forfeiture for all funds sent through Bitcoin Fog but fails to subtract the amounts already forfeited to the Government from seized darknet marketplaces and other convicted criminals, such as co-operating criminal witnesses Larry Dean Harmon and Ilya Lichtenstein.[23] Many of the darknet markets the Government claims sent funds through Bitcoin Fog were shut down by the Government and had their assets seized.[24]

---

[19] *See* https://www.justice.gov/opa/pr/two-arrested-alleged-conspiracy-launder-45-billion-stolen-cryptocurrency.

[20] *See e.g.,* https://www.justice.gov/usao-sdny/pr/us-attorney-announces-historic-336-billion-cryptocurrency-seizure-and-conviction (government recovered "50,676.17851897 Bitcoin, then valued at over $3.36 billion" which were taken from Silk Road).

[21] *See* Dkt. 297 at 9-10 (arguing "[m]ost of the funds laundered through Bitcoin Fog were forwarded to destination addresses designated by Bitcoin Fog users—other than unspent deposits and the defendant's percentage fee. The corpus of these laundering transactions, accordingly, "ha[ve] been transferred or sold to, or deposited with, a third party," and they "cannot be located upon the exercise of due diligence." 21 U.S.C. § 853(p)(1)(A), (B)."). The government has discovery for these cases and, in certain instances, the benefits of cooperation agreements. It could and should provide full details concerning what it has already recovered from the "corpus" of Bitcoin Fog. Indeed, it is the government that has the burden of proving forfeiture. *United States v. Cunan*, 156 F.3d 110, 116 n.7 (1st Cir. 1998) ("In a criminal forfeiture … the government must show by a preponderance of the evidence that the defendant's property is forfeitable").

[22] *See United States v. Fischer*, 394 F. App'x 322, 323 (7th Cir. 2010) ("This lien remains in effect until satisfied and thus requires no renewal under 28 U.S.C. § 3201 or any other statute. Until the lien is satisfied, the government may at any time seek the forfeiture of substitute assets under 21 U.S.C. § 853(p).").

[23] *See e.g.* Gov't Ex. 601 admitted at trial.

[24] *See e.g.* Scholl Report p. 12-18.

The Government is seeking forfeiture of assets it has already seized is punitive. Nowhere does the Government provide an accounting of the funds it seized from the darknet marketplaces it shut down that it claims laundered funds through Bitcoin Fog. The preponderance of the evidence does not establish that the Defendant received $395,563,025.39 in illicit funds. Rather, the Government double dips as it has already seized post-mix funds from darknet markets and other criminals that it is now including in its proposed asset forfeiture. In the least, this Court should order the Government to provide an accounting of seized funds from all the darknet marketplaces that it alleges used Bitcoin Fog.

The Government's criminal witnesses, Larry Dean Harmon and Ilya Lichtenstein, both admitted to laundering the proceeds of their criminal activity through Bitcoin Fog, and those funds were part of the totals of their forfeiture agreements. Mr. Lichtenstein's plea agreement admitted to using Bitcoin Fog to launder his illicit funds.[25] Following the plea agreement, Mr. Lichtenstein forfeited $72,618,825.60 to the Government.[26] The Government cannot now be permitted to double-dip and require Mr. Sterlingov to forfeit funds that were never in his possession and were forfeited to the Government by other users of Bitcoin Fog.

### A.    Under *Honeycutt* Joint and Several Liability is Improper

Money judgment forfeitures are not authorized by statute. Instead, they are judicial creations.[27] In *Honeycutt*, the Supreme Court disallowed the use of joint and several liability in criminal asset forfeiture cases.[28] The Court was asked "whether, under § 853, a defendant may be held jointly and severally liable for property that his co-conspirator derived from the crime but that

---

[25] *See e.g. United States v. Lichtenstein* 23-cr-00239-CKK, Tr. Plea Hrng. 29:18-21 (Aug. 3, 2023).
[26] *See e.g. United States v. Lichtenstein* 23-cr-00239-CKK, Consent Preliminary Order of Forfeiture, Dkt. 99 at 2 (Aug. 3, 2023)
[27] *See United States v. Day*, 524 F.3d 1361, 1377 (D.C. Cir. 2008).
[28] *Honeycutt v. United States*, 581 U.S. 443 (2017).

the defendant himself did not acquire."[29] The Court examined the statute and determined that "Congress … authorized the government to confiscate assets only from the defendant who initially acquired the property and who bears responsibility for its dissipation."[30] The reasoning is clear, *Honeycutt* limits forfeiture up to the amount acquired by a defendant to avoid the inequitable and unconstitutional situation the Court observed in its example:

> Suppose a farmer masterminds a scheme to grow, harvest, and distribute marijuana on local college campuses. The mastermind recruits a college student to deliver packages and pays the student $300 each month from the distribution proceeds for his services. In one year, the mastermind earns $3 million. The student, meanwhile, earns $3,600. If joint and several liability applied, the student would face a forfeiture judgment for the entire amount of the conspiracy's proceeds: $3 million. The student would be bound by that judgment even though he never personally acquired any proceeds beyond the $3,600.[31]

While *Honeycutt* dealt with § 853(a)(1), the same reasoning should apply to cases under § 982(a)(1).[32] Otherwise, Mr. Sterlingov, like the student in the *Honeycutt* case, will be made perpetually liable for funds that he never acquired.

## B.      The Government's Substitute Forfeiture Request does not Satisfy § 853(p)(1)

The government seeks, pursuant to § 853(p), the substitute forfeiture of Mr. Sterlingov's Mycelium wallets. The Defense believes that any forfeiture obligations have already been satisfied by the assets that were recovered in this case and from Bitcoin Fog's users, as detailed above. Accordingly, the Government's substitute forfeiture request should be denied for failure to prove that the conditions of § 853(p)(1) are satisfied.

---

[29] *Id.* at 445.
[30] *Id.* at 452; *id.* at 454 ("§ 853(a)(1) is limited to property the defendant himself actually acquired as the result of the crime.").
[31] *Id.* at 448.
[32] *See United States v. Bikundi*, 926 F.3d 761, 794 (D.C. Cir. 2019) (not reaching the issue).

## IV.    The Majority of Illicit Funds sent through Bitcoin Fog are Outside the Statute of Limitations

All but one of the darknet markets the Government claims ran funds through Bitcoin Fog were shut down well outside the statute of limitations. To the extent that the Government seeks seizure of illicit assets that were laundered outside the statute of limitations, they are barred.

## V.    The Proposed Forfeiture Funds Are Not Instrumentalities of the Crime

The proposed forfeiture funds are not an instrumentality of the crime of money laundering because they were not necessary to the operation of Bitcoin Fog. Bitcoin Fog did not need illegal money to operate.[33]

## Conclusion

The Court should deny the Government's Motion for Preliminary Order of Forfeiture in its entirety. In the alternative, this Court should order the Government to provide an accounting of funds it has already seized from darknet markets and individuals who used Bitcoin Fog along with a breakdown of specific traceable illicit funds run through Bitcoin Fog.

---

[33] *United States v. Bajakajian*, 524 U.S. 321, 334 n.9 (1998)

Dated: June 21, 2024
New York, New York

Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY 10005
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

/s/ Michael Hassard
Michael Hassard (NYS Bar No. 5824768)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY 10005
t:  (718) 737 - 7264
f:  (718) 504 - 5417
michael@torekeland.com

/s/ Maksim Nemstev
*Pro Hac Vice*
Maksim Nemstev, PC
20 Park Plaza, Suite 1000
Boston, MA
t: (617) 227-3700
f: (718) 701-5922

*Counsel for Defendant Roman Sterlingov*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June 2024, the forgoing document was filed with the Clerk of Court using the CM/ECF System. I also certify that a true and correct copy of the foregoing was sent to the following individuals via e-mail:

s/ Michael Hassard

U.S. Department of Justice
District of Columbia
555 Fourth St. N.W.
Washington, D.C. 20530

Catherine Pelker
Catherine.Pelker@usdoj.gov

Christopher Brown
Christopher.Brown6@usdoj.gov

Jeffrey Pearlman
Jeffrey.pearlman@usdoj.gov

17