UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROMAN STERLINGOV,<br><br>Defendant. | No. 21-cr-399 (RDM) |

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENSE MOTION TO EXTEND TIME TO FILE DEFENDANT'S SENTENCING SUBMISSION BY ONE WEEK**

Roman Sterlingov, by and through undersigned counsel, hereby respectfully submits his reply to the Government's Response to his Motion to Extend Time to file Defendant's Sentencing Submission by One Week.

As the Government is aware, the majority of Mr. Sterlingov's defense team is located about a four-hour drive from the D.C. Jail. This means that each round trip requires eight hours, plus the time spent entering and exiting the facility and visiting Mr. Sterlingov. While we did not claim in our opening submission that the defense has not visited Mr. Sterlingov regarding his sentencing submission, the Government's sentencing brief introduces new issues that were unforeseen and will require additional time to address.

Just as an example, there are 127 Westlaw cases hitting on "2S1.1!" & "value of the laundered funds." In seeking to saddle Mr. Sterlingov with every dollar that allegedly passed through Bitcoin Fog — over $400 million — and cage him for the rest of his natural life, the Government cites a total of three stale cases construing an old and materially different version of the money laundering guideline that has since been repealed and no longer applies. Indeed, one of the Government's own three cases — *Martin* — explicitly recognizes the discrepancy. *See United*

*States v. Martin*, 320 F.3d 1223, 1227 n.3 (11th Cir. 2003) ("This case only involves the interpretation of 'value of the funds' in § 2S1.1(b)(2) of the 1998 Guidelines. Given the substantial changes to the money laundering provisions, our holding today does not apply to the 'value of the laundered funds' in § 2S1.1(a)(2) of the 2001 Guidelines. In other words, although the district court properly aggregated the funds from layered transactions in determining the 'value of the funds' under § 2S1.1(b)(2) of the 1998 Guidelines, it might be improper for a district court to do so when determining the 'value of the laundered funds' under § 2S1.1(a)(2) of the 2001 Guidelines…"); *see* Dkt. 315 at 31. So, the defense must now do what the Government — the party with the burden to justify a *de facto* life sentence — should have done in the first place: review all 127 cases to determine the true meaning of the phrase "value of the laundered funds" in the guideline that actually controls. We cannot effectively accomplish that task, amongst many others, under the current compressed briefing schedule.

To be clear, we are not requesting a change to the sentencing date. We simply seek sufficient time to perform our obligations competently and diligently, and to ensure we have the opportunity to review the final submission with Mr. Sterlingov.

Respectfully Submitted,

**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
menemtsev@gmail.com

Dated: August 6, 2024

## **CERTIFICATE OF SERVICE**

     I, Maksim Nemtsev, hereby certify that on this date, August 6, 2024, a copy of the foregoing documents has been served via Electronic Court Filing system on all registered participants.

                                              **/s/ Maksim Nemtsev**
                                              Maksim Nemtsev, Esq.