```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,
                                          Criminal Action
 4              Plaintiff,                No. 1: 21-399

 5         vs.                            Washington, DC
                                          August 21, 2024
 6    ROMAN STERLINGOV,
                                          1:36 p.m.
 7              Defendant.
      _____/
 8

 9              TRANSCRIPT OF MOTION HEARING
            BEFORE THE HONORABLE RANDOLPH D. MOSS
10              UNITED STATES DISTRICT JUDGE

11

12    APPEARANCES:

13    For the Plaintiff:     CATHERINE PELKER
                             U.S. DEPARTMENT OF JUSTICE
14                           950 Pennsylvania Ave NW
                             Washington, DC 20530
15
                             CHRISTOPHER BRODIE BROWN
16                           DOJ-USAO
                             601 D Street, N.W.
17                           Suite 5.1527
                             Washington, DC 20530
18
                             JEFFREY PEARLMAN
19                           DOJ-CRM
                             Ccips
20                           US Dept of Justice
                             1301 New York Ave NW
21                           Washington, DC 20005

22

23              APPEARANCES CONTINUED ON NEXT PAGE

24

25
```

```
 1                         APPEARANCES CONTINUED

 2      For the Defendant:        TOR EKELAND
                                  MICHAEL HASSARD
 3                                TOR EKELAND LAW PLLC
                                  30 Wall Street
 4                                8th Floor
                                  Brooklyn, NY 10005
 5

 6
        Court Reporter:          SHERRY LINDSAY
 7                               Official Court Reporter
                                 U.S. District & Bankruptcy Courts
 8                               333 Constitution Avenue, NW
                                 Room 6710
 9                               Washington, DC 20001

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S
2            THE COURTROOM DEPUTY:  Criminal case number 21-399,
3    United States of America versus Roman Sterlingov.
4            Would counsel please approach the podium, state your
5    name for the record starting with government counsel.
6            MR. BROWN:  Good afternoon, Your Honor.  Chris Brown,
7    Alden Pelker and Jeffrey Pearlman for the Government.
8            THE COURT:  Good afternoon.
9            MR. EKELAND:  Good afternoon, Your Honor.  Tor
10   Ekeland and Michael Hassard for defendant, Roman Sterlingov,
11   who is present in court.
12           THE COURT:  All right.  And good afternoon to all of
13   you.
14           So thank you for convening.  The reason I wanted to
15   have this hearing is that under the rules I am required to
16   provide you all with a proposed order of forfeiture in advance
17   of sentencing, so you have an opportunity at that proceeding to
18   comment on the proposed order.  And in working on that proposed
19   order, I was struggling with a number of questions.  And I
20   thought it would be helpful for me to hear from you all about
21   some of those questions.  In my order setting today's hearing,
22   I highlighted for you what I thought were the two issues that I
23   was perhaps most interested in.  But I would be happy to hear
24   anything that you want to add.
25           So since it is the government that is seeking
```

1    forfeiture, why don't I go ahead and start with you.  And then

2    I will give Mr. Ekeland an opportunity to respond.

3            MR. BROWN:  Yes, Your Honor.  And I am happy to sort

4    of follow the Court's direction, but having reviewed the

5    Court's order, I can address, number 1, the offsetting

6    question.  And number 2, the Eighth Amendment analysis under

7    *Bajakajian*.  So on the offsetting issue, Your Honor, we think

8    it is important to start with just the plain text of the

9    forfeiture statute here, 18 U.S.C. 982(a)(1), which is

10   mandatory.  And it is relatively broad and sweeping in its

11   scope.  Unlike other aspects of sentencing, forfeiture is not

12   something that is subject to the Court's discretion, it is

13   mandatory.  The Court is required, it shall order forfeiture of

14   all property involved in money laundering and unlicensed money

15   transmission offenses.

16           As the Court has construed this phrase, "Involved in

17   money laundering or unlicensed money transmitting offenses"

18   that phrase sweeps very broadly.  It includes not just the

19   defendant's proceeds.  And Congress used a different word other

20   than proceeds for money laundering in 1960 forfeiture, it used

21   the "involved in" phrasing.  But it also includes the corpus of

22   those money laundering transactions as well as facilitating

23   property.  And as this Court has construed in ECF 116,

24   facilitating property based on the business model of Bitcoin

25   Fog, which relied on the pooling of funds, facilitating

1    property includes the so-called innocent funds or licit funds

2    that are pooled and help to facilitate the mixing methodology.

3         It is also --

4         THE COURT:  Is that right here?  I was thinking

5    through this factually a little bit.  I -- in a traditional

6    money laundering scheme, that is the way I understand it works.

7    And you run the car wash and there is a certain amount of

8    lawful funds that are going through the car wash and you mix in

9    the unlawful funds in it.  And here the idea of the mixer,

10   wouldn't the mixer work if they were all illicit?  For example,

11   do you need the licit funds to make the mixer work?  Because

12   the whole point is you can't trace it anymore.  If they are all

13   illegal funds, why does that matter if you can't trace them?

14        MR. BROWN:  Your Honor, two points here.  I think

15   just factually, the way the Bitcoin Fog was advertised and

16   going back to the evidence at trial, the Bitcoin Talk thread

17   that sort of explained what Bitcoin Fog was and what it

18   accomplished, it didn't say you can use Bitcoin Fog to get

19   somebody else's illegal proceeds that law enforcement will be

20   interested in.  It said you can use Bitcoin Fog to get clean

21   proceeds.  That was the advertised purpose.

22        And, Your Honor, to your point, I think in theory,

23   yes.  Like you could have a mixer that simply breaks up the

24   transaction path using only illicit funds.  But if there are

25   licit funds -- but the key mechanism here is just the pool of

1   funds that are available.  Going back to the example that

2   Mr. Licthenstein testified to, if there is a bag of $20 bills,

3   you have a marked $20 bill from your bank robbery, you put it

4   in that bag, shake it up and you pull out another $20 bill,

5   what matters is the fact that there are other $20 bills in that

6   bag.  It doesn't matter whether those bills are from licit

7   sources or illicit sources.  So I think it is a little bit of a

8   red herring in this situation.  I think it is clear and it is

9   well founded in the record to say that all of the funds pooled

10  in Bitcoin Fog, whatever their origin helped to facilitate the

11  money laundering purpose.

12          THE COURT:  Okay.

13          MR. BROWN:  Go back to the -- just looking at the way

14  the statute is constructed, another, I think, very key piece of

15  evidence in terms of congressional intent is looking at the

16  safe harbor provision in 18 U.S.C. 982(b)(2).  And the safe

17  harbor provision applies to third-party money launderers.  So

18  that is what Mr. Sterlingov was.  So there are some people who

19  commit the crime themselves and then self-launder their illegal

20  proceeds.  That is like the Ilya Licthenstein example.  For a

21  third-party money laundering, they are, by definition, taking

22  funds from somebody else, and laundering those funds, taking

23  the cut or commission and then passing those funds along.

24          So congress recognized in certain instances, that the

25  Court should not impose a substitute property obligation, which

1    is essentially what a forfeiture money judgment is, for small

2    scale third-party money launderings.  And the conditions are

3    set forth in 982(b)(2).  And this is where the defendant "Acted

4    merely as an intermediary who handled but did not retain the

5    property in the course of the money laundering offense."  So

6    that does describe what Mr. Sterlingov did.  But that safe

7    harbor provision is not available if the defendant conducted

8    three or more separate transactions involving a total of

9    $100,000 or more in any 12-month period.  So that takes

10   Mr. Sterlingov out of that safe harbor provision.

11        Why is all of this important?  It is important

12   because it shows the congressional intent in enacting this

13   statutory scheme that the Court almost by definition is going

14   to be imposing a forfeiture money judgment for the funds that

15   the defendant does not presently have.

16        THE COURT:  So I also have focused on 892(b)(2) or

17   (b)(1).  And the question I had about that is this is what then

18   triggers your ability to obtain a substitute money judgment

19   borrowing from 21 U.S.C. 853.  And both the safe harbor

20   provision as well as 853 talk in terms of being or -- let me

21   focus first on the safe harbor provision, which it talks about

22   being an intermediary for purposes of the money laundering and

23   where the money that was laundered was not actually the

24   property of the defendant.  And that sort of -- I was

25   scratching my head over that a little bit as well where I see

1    that might get you -- that probably does get you to the

2    proposition that you can get a substitute money judgment for

3    the funds that were laundered.  And I realize that 982 -- yeah,

4    982(a)(1) is broader than a lot of forfeiture provisions that

5    reaches the property involved in the offense.  But I was

6    scratching my head about whether putting all of these pieces

7    together, you are entitled to actually get a substitute money

8    judgment for funds that were perhaps involved, but were never

9    actually the property of the defendant and that were not

10    laundered on behalf of a third party.  And so I was wondering

11    whether that is actually a limitation.  Because one of the

12    things that is just odd about the circumstance here is that you

13    get to very massive numbers where a large portion of the funds

14    involved were licit funds that Mr. Sterlingov never had any

15    legal right to as far as we know.

16              They were other people's -- it was other people's

17    money that he then used to hide the illicit transactions under

18    this theory here.  But it feels an awful lot more like just a

19    straight up fine than a forfeiture.  He is not forfeiting

20    anything because it is nothing that he ever had or even that he

21    retained illicitly for somebody else.  And so, you know, the --

22    well, I will let you answer that.  Because I think this is what

23    leads me to the excessive fines question, because there has to

24    be some limiting proposition here.  Because if that is the

25    reading of what the statute means, it would mean that if, you

1    know, a teller at Citibank hid one dollar in illegal proceeds

2    in the billions and billions of dollars of funds, you know,

3    legally maintained at Citibank and that individual never had

4    any right to, but they used the massive coffers of Citibank to

5    hide that $1 in funds that under the government's theory if it

6    was money laundering, that would mean that person should have

7    to pay a $100 billion forfeiture for the $1 transaction.  There

8    has to be some either limiting statutory principle or

9    constitutional principle to say that can't possibly be right.

10            MR. BROWN:  Yes, Your Honor.  And let me sort of

11    break that down.  And I think in that situation, I mean there

12    would also be just a question of whether hiding it in all of

13    Citibank's books is truly in furtherance of the laundering.

14    And it is not just fortuitously co-mingled.

15            THE COURT:  Yeah, fair enough.  But also, I mean, you

16    also want this to apply to simply failing to register.  And so

17    again, you know, this is more of an excessive fines question.

18    But somebody doesn't register and they are doing billions of

19    dollars of business and that failure to register as a money

20    transacting business then means that they are subject to a

21    billion dollar forfeiture order.

22            MR. BROWN:  Yes, Your Honor.  And on that point, I

23    mean that is the fact pattern of the Second Circuit's decision

24    in *United States versus Elfgeeh,* 515 F.3d 100 where the

25    unlicensed money service business processed about $22 million

1   worth of transactions and there was a forfeiture money judgment

2   for about $2 million representing the flow of funds through

3   that business.  So that is exactly what the Second Circuit has

4   done.

5          THE COURT:  I am jumping ahead to excessive fines, so

6   let's come back to the statutory interpretation.  I guess my

7   question at this point is whether 982(b) should be read to say

8   that one looks to 8 -- 21 U.S.C. 853, which by the way, is a

9   narrower provision in that that is more focused I believe on

10  the proceeds than it is on the money involved in.  But I

11  realize that 982 at least borrows some of the procedural rules

12  in the Title 21 forfeiture provision and borrows the provision

13  relating to substitute assets.

14         But I am wondering whether that provision dealing

15  with substitute assets that is borrowed should be construed in

16  such a way that it only applies to funds that were actually

17  proceeds, property of, ever belonged to, the person involved or

18  were actually the funds that were laundered for a third party,

19  but not entirely licit funds that may have been involved in the

20  offense, but not themselves the funds that were being

21  laundered.

22         MR. BROWN:  Your Honor, if I can sort of break that

23  down into a couple of discrete pieces.

24         THE COURT:  Sure.

25         MR. BROWN:  Number 1, there is just no statutory

1    basis to look at 21 U.S.C. 853(p) and say this implicitly rules

2    out forfeiture of -- when this is dealing with money laundering

3    forfeiture, this implicitly rules out anything that is not the

4    defendant's proceeds and that would be contrary to the plain

5    text of 982(a)(1).

6         THE COURT:  Let me point you to the language if you

7    say that there is no linguistic hook.  The question I have is

8    under (b)(2) it says the substitution of assets provision of

9    Title 21 shall not be used were a defendant to forfeit assets

10   in place of the actual property laundered.  So it is there at

11   least congress seems to be thinking about substitution for the

12   actual property laundered versus substitution for the actual

13   property involved in the offense.

14        MR. BROWN:  So the Court is saying that there is --

15   the difference -- actual property laundered is not sort of

16   coterminous with property involved in --

17        THE COURT:  Correct.

18        MR. BROWN:  -- under --

19        THE COURT:  At least I am raising that as a question.

20   I really don't -- everyone should know that I don't have any

21   fixed views on this.  I am asking these questions because I am

22   really trying to understand this.

23        MR. BROWN:  Your Honor, I think part of the

24   difficulty here is the reason why or a big part of the reason

25   why congress enacted a different forfeiture provision for money

1    laundering offenses is because of the commingling problem.  It

2    is by design money laundering offenses are making it harder to

3    trace and they, by design, involve commingling with

4    facilitating property.  So to read (b)(2) as somehow saying,

5    well, we don't -- I mean, you have to take a couple analytic

6    steps.  Number one, you have to say that using the phrase

7    actual property laundered, by using that phrase congress

8    intended to have a completely different standard than what was

9    codified in (a)(1).  And number 2, you have to say that, by

10   extension congress was saying -- and this is just the safe

11   harbor provision.  And this doesn't apply to someone at all in

12   Mr. Sterlingov's position.

13           Number 2 you have to say that this implicitly places

14   a restriction on the substitute assets provision and the money

15   laundering judgment, which is grounded in Rule 32.2 as well as

16   821(p)(1), and say that somehow congress was saying, when

17   this -- when (b)(2) doesn't apply, so (b)(2) is off the

18   table --

19           THE COURT:  Right.

20           MR. BROWN:  That the Court still needs to view 821(p)

21   and Rule 32.2 through the lens of a provision that doesn't

22   apply in this case, (b)(2), to somehow conclude that based on

23   something that no court in -- no federal court has ever found

24   before to say that substitute assets forfeiture is different

25   for money laundering forfeiture under (a)(1) than it is for any

1   other substitute assets.

2          Your Honor --

3          THE COURT:  I guess I am wondering --

4          MR. BROWN:  -- there is no basis for that.

5          THE COURT:  What I am wondering though is -- you are

6   right that (a)(1) is sweeping.  So if the FBI sweeps in and

7   they seize the bank accounts that are being used in money

8   laundering or seize the car wash and all of the money that is

9   in the cash register at the car wash, yes, (a)(1) applies.  The

10  substitute assets provision is an unusual asset provision.  It

11  is saying, okay, we didn't -- we weren't able to seize -- we

12  didn't actually seize the actual funds that were involved here.

13  And it is because of one of five reasons.  We can't locate them

14  upon exercise of due diligence.  They have been transferred or

15  sold to somebody else, placed beyond the jurisdiction of the

16  Court, substantially diminished in value or commingled with

17  other property.  In this case then you can get something

18  unusual, which is an order saying you owe us X dollars.  We

19  don't have the money.  We didn't seize the money.  We are not

20  forfeiting the money.  It is not like in the cases that I see

21  all of the time where it is a drug offense and someone forfeits

22  the gun or the drugs or they forfeit the thousand dollars they

23  have in their pocket at the time they are engaged in a drug

24  transaction.  It is not forfeiture in the literal sense of

25  forfeiture.  It is actually money judgment which is a lot more

1    like a fine saying you have done something really bad and you

2    are therefore going to have to pay a lot of money for it.  And

3    we don't know where the funds are and therefore we can't

4    forfeit them, but it is -- it is just a little strange to me to

5    say -- particularly given the fact that this is barring the

6    language in 853 and 853 is narrower, in that 853 doesn't apply

7    to anything involved in the transaction, but it applies to

8    property constituting or derived from or any proceeds or

9    property actually used or intended to be used in the offense.

10              MR. BROWN:  Your Honor, which subsection of --

11              THE COURT:  853(a), I am looking at.  And I realize

12    that -- I realize that 982 is broader, but I am saying that

13    when 992 then borrows the substitute property provision of 853,

14    should you look through it through that lens.

15              MR. BROWN:  And, Your Honor, I'd read -- I'd like to

16    go back and address something you said earlier.  I read

17    853(P)(1) where it says if any property described -- and here

18    it says in subsection A, so it is referring back to the drug

19    forfeiture provision that you were looking at.

20              THE COURT:  Right.

21              MR. BROWN:  As a result of any -- and it lays out the

22    statutory preconditions that allows for forfeiture of

23    substitute assets.

24              THE COURT:  Right.

25              MR. BROWN:  The way that cross-reference works, the

1    way I'd read it and the way that most courts read it is instead

2    of where it says described in subsection A, you would say

3    described in and insert the relevant forfeiture provision,

4    which in this case is 982(a)(1), property involved in the money

5    laundering or 1960.  It is not (b)(2).  No part of this refers

6    back to 982(b)(2).  It refers back to the statute that

7    authorizes the forfeiture of certain property, because it

8    had -- it played a certain role in the offense.  So some crimes

9    that is proceeds.  Some crimes that is proceeds and

10   facilitating property in RICO forfeiture.  It is enterprise in

11   terrorism forfeiture.  It can be any property belonging to the

12   person.  But you just take that referring to in subsection A

13   and replace it with whatever is the statute authorizing

14   forfeiture here, which here is 982(a)(1).

15            Your Honor, if I could address the bank example that

16   the Court just raised.

17            THE COURT:  Right.

18            MR. BROWN:  I think that the difficulty here is under

19   the sort of alternative reading that the Court is exploring

20   here, you know, so there is scenario 1 where the defendant uses

21   a bank account, uses -- commingles clean and dirty money.  The

22   government seizes the whole bank account and is able to seize

23   and forfeit the total amount.

24            THE COURT:  Right.

25            MR. BROWN:  Scenario 2, the defendant does the exact

1    same conduct.  And it just so happens that before the defendant

2    is sentenced, the defendant is able to liquidate some or all of

3    that bank account.  Maybe the defendant spends it, maybe he

4    puts it beyond the ken of the Court so it is just not

5    traceable.  Maybe he transforms into other assets that can't be

6    traceable.  If in scenario 2, under the alternative reading,

7    the defendant would then essentially have a lesser penalty

8    because he took action to place that property beyond the reach

9    of the Court.

10          THE COURT:  Remind me --

11          MR. BROWN:  That is very counterintuitive and I think

12   it would go against any of the purposes and the way that -- of

13   the forfeiture statutes and the way the courts have

14   consistently interpreted the forfeiture statutes.

15          THE COURT:  Remind me what the Supreme Court has said

16   though.  I remember there was the case where there was I think

17   a state court case where a guy used a car and went down and was

18   arrested for prostitution and forfeited the car.  And it turned

19   out that it was his wife's or someone else's car.  The case

20   went to the Supreme Court about who had the claim on the car.

21          And more generally though, I guess the question is,

22   how does it work where somebody is running a legitimate

23   business and they are taking and holding money for people who

24   are completely unwitting, that the person is then using the

25   business as well to launder funds or to engage in other illegal

1    conduct?  And authorities come in and they seize the accounts.

2    And then the people who are the unwitting participants in this

3    show up and they say, that is my life savings that you just

4    seized in that account.  I had no idea that that criminal was

5    using my money to hide funds that he was laundering.  Does a

6    person have a claim to have those funds released to them, the

7    innocent person to release them or do they have a claim against

8    the defendant for reimbursement?  I can't recall how that

9    works.

10           MR. BROWN:  Yes, Your Honor.  So there is a separate

11    proceeding -- and we'll go through it in this case.  Following

12    the sentencing of the defendant in which the government -- for

13    the specific property, so properties that the government has

14    seized and forfeited, the government will provide notice to

15    anybody who reasonably appears to be a valid claimant.

16           THE COURT:  Right.

17           MR. BROWN:  And there is an opportunity for those

18    claimants to come forward and assert their interests in the

19    property.  And that is governed under the innocent owner

20    statute.

21           THE COURT:  So doesn't that then flip your

22    hypothetical to me on its head, which is to say if the

23    government had come into Bitcoin Fog and frozen all of the

24    Bitcoin and got their hands somehow on the servers and locked

25    it down and said, okay, we are seizing all of the assets that

1    are being currently held through Bitcoin Fog, and you would

2    say, but people who were like innocent folks who deposited

3    Bitcoin into Bitcoin Fog could show up and they could say, no,

4    you know that -- I am an entirely legitimate merchant.  I

5    deposit my funds there because I just don't like traceability.

6    I am afraid that someone may be using it to my disadvantage in

7    some way, not the authorities but other people.  And so,

8    therefore, I want the anonymity.  I did it there and now I want

9    my $100,000.  And if I were convinced that they were entirely

10    legitimate, they would get their $100,000 back and that would

11    reduce the amount of forfeiture by that.  So why shouldn't it

12    work the same way with respect to a substitute judgment?

13             MR. BROWN:  Your Honor, in that situation -- so going

14    back a little bit -- so what the forfeiture proceeding does in

15    this case is it extinguishes the defendant's title to the

16    defendant's property interest in any of the properties that are

17    being forfeited.

18             THE COURT:  It does me more than that.  I mean --

19             MR. BROWN:  It is in personam judgment and it applies

20    only to the defendant.  The question with third parties is --

21    you know, assuming the defendant's title in the property is

22    extinguished and title vests in the government pursuant to 21

23    U.S.C. 853(n), the relation back doctrine, upon the commission

24    of the acts giving rise to forfeiture.  Then the question is,

25    does a third-party claimant nevertheless have superior legal

1    title to the government's title in that case or -- and in this

2    situation -- in the Bitcoin Fog situation, I think the moment

3    that a Bitcoin Fog user deposits funds into Bitcoin Fog, the

4    deposit of those funds is part of what facilitates the money

5    laundering enterprise and the unlicensed money services

6    business enterprise.  So the government's title vests -- it

7    relates back to that date.  So if the third-party claimant's

8    claim is, I have a superior claim to the government, no, the

9    government has title based on the act of -- based on the act

10   and as of the time those funds were deposited into Bitcoin Fog.

11   If this were a different case, if Mr. Sterlingov were running,

12   you know, a legitimate bank and he just used it -- you know,

13   some accounts to launder funds for drug dealers and peddlers of

14   child pornography, then -- and there were preexisting

15   customers, in that situation, yes, I can see there is an

16   argument that those customers who had accounts at that bank

17   before Mr. Sterlingov took over and started using it to launder

18   money for cybercriminals, those customers would have a superior

19   legal interest.  But if this is the bank of, we hide your

20   money, especially if you are dealing drugs online or you want

21   to buy drugs online and customers are coming in nonetheless and

22   knowing that every deposit, every account they open is part of

23   the laundering process for all of the other customers.  Then in

24   that case, I think that, you know, the -- well, in legal terms

25   the government's interest -- in legal terms, that property of

1    those customers will be subject to forfeiture, because it is

2    involved in the laundering and unlicensed money transmitting

3    offenses.  And in terms of the customer's competing claim

4    vis-a-vis the government, the customer is not going to have a

5    superior legal claim because the government's title vests at

6    the moment of the deposit.

7              I think this is a little far afield from the facts of

8    this case.  And --

9              THE COURT:  Well, maybe.  Although I guess I still am

10    curious as to what happens if I enter the judgment you are

11    asking and the government over the years collects some portion

12    of the forfeiture judgment, could someone then show up at your

13    door and say you collected, you know, X percentage of the funds

14    there.  I was unwitting.  I didn't know that Bitcoin Fog was

15    involved in money laundering.  I didn't think I was aiding and

16    abetting money laundering by depositing my funds there.  And,

17    therefore, I want 3 cents for every dollar you collect, because

18    I actually had 3 percent of the funds in Bitcoin Fog came from

19    me.  And, therefore, I want you to give me 3 cents of every

20    dollar you collect.  Could that happen?

21              MR. BROWN:  Your Honor, I think two points.  Number

22    1, if the government is collecting those by way of substitute

23    assets -- third-party claimants don't have claims to --

24              THE COURT:  Right.

25              MR. BROWN:  -- substitute assets that are collected.

1          And, number 2, I think in that situation, again, the

2    standard, as it is coming back to me, the standard is really

3    who has superior legal title.  And, you know, regardless of the

4    customer's claim, if that money is subject to forfeiture based

5    on it being involved in the money laundering offenses, then the

6    only question is, you know, who has the superior title in time?

7    And that is going to be governed by 853(n).  And maybe --

8          THE COURT:  Maybe they have a claim against

9    Mr. Sterlingov, is that the way it would work?

10          MR. BROWN:  Your Honor, I don't think it is necessary

11    for the Court to decide that.  Potentially there could be

12    something totally outside the realm of forfeiture.  There could

13    be a customer or user of Bitcoin Fog who just sues

14    Mr. Sterlingov in contract or tort or something like that.

15          THE COURT:  Right.

16          MR. BROWN:  That is not -- that is totally separate

17    from the rubric of what the Court is called upon to decide here

18    just as part of the in personam judgment against

19    Mr. Sterlingov, you know, what is the forfeiture that has to be

20    applied.  And Congress has spoken clearly and in mandatory

21    terms.  The Court simply does not have discretion to depart

22    from the plain text of 982(a)(1).

23          THE COURT:  Okay.

24          MR. BROWN:  Your Honor, I can address -- going

25    factually, I am happy to address the sort of factual

1    question --

2              THE COURT:  I would appreciate that.

3              MR. BROWN:  -- about Ilya Licthenstein and --

4              THE COURT:  That would be helpful to me.

5              MR. BROWN:  So there are a couple of problems with

6    what defense has proposed.  Number 1, there is just no

7    statutory mechanism to compel such result, but we can set that

8    aside.  Practically speaking, let's look at Ilya Licthenstein.

9    Just the fact that government has forfeited some money from

10   Ilya Licthenstein.  And Ilya Licthenstein laundered a small --

11   a relatively small amount of money through Bitcoin Fog doesn't

12   mean that Roman Sterlingov is entitled to a setoff of every

13   cent that is forfeited from Ilya Licthenstein.  Even assuming

14   that these are -- Ilya Licthenstein hasn't been sentenced yet.

15   There are funds that have been seized.  There is a proposed

16   final order of forfeiture.

17             Factually speaking, maybe sort of rewinding a little

18   bit.  Ilya Licthenstein hacked a major cryptocurrency exchange.

19   And he stole approximately 119,000 Bitcoin.  And at the time of

20   the hack, that 119,000 Bitcoin was valued at about 71 or

21   $72 million.  Imagine this is like a big roll of dollar bills.

22   Ilya Licthenstein did not spend all 112,000 Bitcoin that he

23   stole.  He peeled off a relatively small amount and laundered

24   that relatively small amount to pay for his lifestyle and his

25   wife's lifestyle.

1            When the government ultimately arrested Ilya

2    Licthenstein, the primary thing that the government seized was

3    that original wad of stolen funds.  In the plea paperwork, I

4    think it is referred to as the hacker wallet.  So the wallet

5    that received the stolen funds from Bitfinex.  And that wallet

6    had about 94,000 Bitcoin in it.  And due to the appreciation of

7    the price of Bitcoin, what was worth 10s of millions of dollars

8    was now worth more than $3 billion.  But that primary seizure,

9    none of that was laundered through Bitcoin Fog.

10            What Ilya Licthenstein testified to is that for that

11   relatively small piece that he peeled off, he laundered that

12   relatively small piece in a lot of different ways.  He ran it

13   through various darknet markets.  He conferred it in and out of

14   untraceable currencies like Monero.  He used unlicensed

15   exchanges, like BTC-e.  He used overseas exchanges.  And among

16   other things, he ran some of the money actually through Helix

17   and he ran some of the money through Bitcoin Fog.  That is a

18   very small sliver of the total amount that was stolen.  And it

19   is an even smaller sliver of the total amount that he actually

20   peeled off and laundered.  And then laundered all of the funds

21   in a lot of different ways.  It is just not possible -- it is

22   impossible for us to look at any of the other assets -- the

23   government has seized a few other assets sort of downstream

24   from the laundering process, his fiat bank accounts, some other

25   cryptocurrencies.  But there is such a convoluted path -- there

1    is no point at which he simply sent funds from the hacker

2    wallet through Bitcoin Fog and he set them down in a bank

3    account that the government has seized.  It is simply not

4    possible for the government to trace back the exact amount of

5    funds that were laundered through Bitcoin Fog, even if, in

6    theory, Roman Sterlingov is entitled to that.

7              The government is able to forfeit the downstream

8    funds, because by a preponderance of the evidence, we can prove

9    those funds are proceeds of Ilya Licthenstein's Wire Fraud and

10   Computer Fraud and Abuse Act violations.  They are not

11   property -- they are not being forfeited as property involved

12   in the Bitcoin Fog money laundering conspiracy.

13             But even if it were, we just -- there is no way to

14   identify the property.  And even if we could, it would be a

15   tiny, tiny sliver of the total amount of property involved in

16   the Bitcoin Fog money laundering conspiracy.

17             THE COURT:  Are there cases where there have been

18   money laundering conspiracies and the Court has entered

19   forfeiture orders that are independent or there is no setoff

20   against the operator of the money laundering service and the

21   user of the service, if you follow what I am getting at?

22             MR. BROWN:  Yes, Your Honor.  So, in other words,

23   like there is a bank robbery -- so I think that --

24             THE COURT:  I have got $100 I want to launder.  I

25   come to you.  You say, I will launder the $100 for you.  You

1    launder the $100 for me.  We both get caught, tried, convicted.
2    And the Court says, okay, you owe $100 and you owe $100 in
3    forfeiture.
4              MR. BROWN:  So, Your Honor, off the top of my head, I
5    am not aware of that particular fact pattern.  I am aware of
6    cases, and we cited them in our reply brief, where a defendant
7    has been convicted of different counts.  So maybe in a self
8    laundering situation, the defendant might have been convicted
9    of wire fraud or the original theft, whatever that offense is.
10             THE COURT:  Right.
11             MR. BROWN:  And defendant self-laundered, there is a
12   separate count.  And there are situations where courts
13   independently impose separate forfeiture obligations.  There is
14   nothing that says the Court can't, you know, sort of separately
15   impose those forfeiture obligations.
16             THE COURT:  Do I have to decide this issue with
17   respect to whether there is some type of setoff that might be
18   claimed with respect to funds that are received?  Because it
19   strikes me as bordering on the inconceivable that if the Court
20   were to enter a $395 million forfeiture order in this case,
21   that there would ever come a time in which the government has
22   collected everything from Ilya Licthenstein that he arguably
23   could have laundered through Bitcoin Fog and where
24   Mr. Sterlingov has paid his $390 million, if at that point and
25   there is that $5 million that arguably was money that

1    Mr. Licthenstein laundered through Bitcoin Fog.  We are dealing

2    with a circumstance in which is just never going to occur.

3             MR. BROWN:  Yes, Your Honor, I agree with that.  I

4    think that is inconceivable.  And I think that just factually,

5    whatever the government ultimately forfeits from Ilya

6    Licthenstein, it is simply not traceable to the Bitcoin Fog

7    conspiracy.

8             THE COURT:  So then what was the other example you

9    wanted to address?

10             MR. BROWN:  Your Honor, just the other example that

11    the defense brought up was seizures and forfeitures from

12    darknet markets and --

13             THE COURT:  Yes.

14             MR. BROWN:  I think that bottom line conclusion is

15    the same, but the reasoning is a little bit different that it

16    is again -- this is not an exercise that is just practicable.

17    It may be impossible to determine exactly from any one of those

18    given seizures which funds and how much of those funds

19    represent property that was involved in the Bitcoin Fog money

20    laundering conspiracy.  And so to think about this, the first

21    key concept is the difference between stock and flow, Your

22    Honor.  I have a meager bank account and I have a meager

23    paycheck.  Whatever is in my bank account at any one moment, I

24    am getting a paycheck coming in and I am spending money.  The

25    same thing worked on the ledgers of all these darknet markets.

1    There is money coming in over time.  And some of that money is

2    coming in from Bitcoin Fog, directly or indirectly, that is

3    part of the trial evidence.  At the same time, customers,

4    users, are going on sending money from Bitcoin Fog and they are

5    buying drugs.  So that money is no longer on the books.  It

6    goes to the vendor, maybe the vendor withdraws the money, maybe

7    the user uploads the funds and then withdraws them.  So at any

8    given moment, so any seizure from Silk Road or from any other

9    darknet markets where the government did seize Bitcoin wallets,

10   that is a snapshot in time.  And you would have to figure out,

11   you know, how much of those funds that came in and had not yet

12   left are funds that you can link to Bitcoin Fog.  And all of

13   these darknet markets operated on a pooled funds model.

14           So the addresses that Silk Road had, if you were a

15   customer and you uploaded funds into your account, that was not

16   a uniquely generated address for you.  It was a pooled address

17   held by Silk Road on behalf of the market and your individual

18   account would be credited.  And I think in particular, I point

19   the Court to -- there was discussion of this specifically in

20   reference to Mr. Sterlingov's Silk Road account.  The testimony

21   of Mr. Scholl on February 22nd, the morning transcript between

22   pages 28 and 33, Exhibits -- and this relates to the

23   transactions described in Exhibit 316, 309, and Exhibit 603D,

24   603D being the ledger of Roman Sterlingov's Silk Road account.

25   And as this was explained in the testimony, when Mr. Sterlingov

1    uploaded about 60 Bitcoin into his account, it went into one

2    Bitcoin address 12MDVJ.  And then he almost immediately

3    withdrew 60 Bitcoin from his account.  On the blockchain, that

4    withdrawal of the 60 Bitcoin corresponding to the deposit from

5    the same address, it was from a completely different address,

6    14DJPK.  And the only way that Mr. Scholl was able to

7    determine -- was able to identify that specific transaction on

8    the blockchain, the withdrawal transaction, is because he went

9    in, looked at the date and time of that withdrawal shown on the

10   Silk Road transaction ledger, compared it to the blockchain and

11   found during that particular date and time, the only

12   transaction matching that time stamp of 60.8 Bitcoin was the

13   withdrawal from a completely different address.

14           So this is a situation where just looking at the

15   public blockchain as the government -- as the trial evidence

16   showed, it is very -- it is relatively easy to show the

17   aggregate flow of funds in and out of these markets.  It is

18   next to impossible, however, to show at an account-by-account

19   level how much of those funds had been withdrawn or still

20   remain on a market's books at a given snapshot in time.  And

21   for any seizure, what we have seized is just what is there at a

22   snapshot in time.  Again, this is not something that is -- that

23   it is not something that is traceable to any sort of reasonable

24   standard.  And I think this does also go back to the general

25   principle announced by the D.C. Circuit in *United States versus*

1    *DeFries* and as well as the Second Circuit, *United States versus*

2    *Roberts,* 660 F.3d 149, that the government is not required to

3    establish the amount of forfeiture to mathematical exactitude.

4    The purpose of forfeiture is punishment.  It is depriving

5    criminals of the ill-gotten gains of their offenses.  It is

6    discouraging others from engaging in the same activity and the

7    Court does not -- there is no case law holding that the

8    government needs to meet at an atomic level of mathematical

9    certainty in calculating a forfeiture.

10             So -- I mean, number 1, there is no statutory right

11   to a setoff.  And number 2, even if there were, that setoff

12   amount could not be calculated within any level of certainty.

13             THE COURT:  Okay.

14             MR. BROWN:  Your Honor, I am prepared to discuss the

15   Eighth Amendment argument.

16             THE COURT:  Yes.

17             MR. BROWN:  I think -- so a few key points, just to

18   level set here, I know the Court is concerned about the

19   question of future ability to pay or future ability to maintain

20   a livelihood.

21             THE COURT:  I know that the -- I am trying to recall

22   if it was the Supreme Court and D.C. Circuit that said ability

23   to pay is not a significant factor for purposes of the

24   excessive finds clause.  I think it was the Supreme Court that

25   said that.

1          MR. BROWN:  Yes, Your Honor.  So the Supreme Court in

2     *Bajakajian* did not consider -- it simply did not say one way or

3     the other whether livelihood -- ability to maintain a

4     livelihood is a factor.

5          THE COURT:  Yeah.

6          MR. BROWN:  The D.C. Circuit in *Bikundi* pointed out,

7     this is not a recognized factor, at least in the D.C. Circuit.

8     In fairness, it is true that some other circuits have

9     recognized future livelihood or future ability to pay as a

10    relevant consideration under *Bajakajian*.  But even those

11    courts -- and I am thinking of -- for example, the Fourth

12    Circuit, *United States versus Bennett*, 986 F.3d 389, it says,

13    "We have never expressly considered a defendant's means in

14    evaluating the proportionality of a forfeiture judgment.

15    However, to the extent it is an appropriate consideration, it

16    is merely one factor to be weighed among all of the other

17    factors."

18         So this is -- even if the Court here were to

19    recognize this as a matter of constitutional law, it is only

20    one factor.

21         THE COURT:  I suppose you don't need to consider

22    Mr. Sterlingov's means though to say, just objectively that

23    there is virtually nobody who could pay a judgment of this size

24    or a forfeiture judgment of this size.  I mean, you know, there

25    are probably fewer than 100 people in the world who could pay a

1    judgment of this size.

2            MR. BROWN:  Your Honor, I would actually push back a

3    little bit and I want to make two points here.  Number 1,

4    crypto cases are different in this regard.  There are multiple

5    examples of cryptocurrency cases where just owing to the in

6    some cases astronomical increase in the value of these assets

7    where defendants are able to wipe away even extremely

8    significant forfeiture money judgments.

9            THE COURT:  I think Donald Trump convinced the New

10   York Court of Appeals that he couldn't post a bond for this

11   amount to take an appeal in a case.

12           MR. BROWN:  Your Honor, we don't have to look for

13   hypotheticals.  I will give you two concrete examples.  Number

14   1, *United States versus Gary Harmon*, which was in front of

15   Judge Howell.

16           THE COURT:  Yeah.

17           MR. BROWN:  It is related to Larry Harmon's case, it

18   is not the same.  It is his brother.

19           THE COURT:  Okay.

20           MR. BROWN:  And in that case, Gary Harmon stole about

21   721 Bitcoin that had actually been seized as part of the case

22   against Larry Harmon.  And at the time it was worth about $4.8

23   million.  He went out, he spent a bunch of that money.  And

24   eventually he was prosecuted, he pled, he was sentenced.  At

25   the time of sentencing, even though he had spent maybe I don't

1    know a third or a quarter of those funds, at the time of

2    sentencing, he had assets that were now -- that were traceable

3    to the original theft that were now worth more than

4    $20 million.

5                THE COURT:  More than 20 million, you said?

6                MR. BROWN:  Yes, Your Honor.  So he had a forfeiture

7    money judgment of $4.8 million.

8                THE COURT:  Right.

9                MR. BROWN:  And he had specific properties that upon

10   the final forfeiture of those properties, they were liquidated.

11   And I'm not sure if they have been totally finally liquidated.

12   But that is $20 million that wipes out his forfeiture judgment.

13               Example number 2, Ilya Licthenstein, as we discussed

14   earlier, he stole Bitcoin that at the time was valued at about

15   $71 or $72 million.  In his proposed preliminary order of

16   forfeiture, there is a forfeiture money judgment in the amount

17   that he stole, for 71 or whatever that sum is, 71 or

18   $72 million.  As we have discussed, the government has seized

19   property traceable to the offense from Mr. Licthenstein that is

20   valued in excess of $3 billion.  His $72 million money judgment

21   will be wiped away once the forfeiture of those specific

22   properties is completed.

23               And one last piece of this, Your Honor, the jury in

24   the forfeiture phase of trial found that the defendant's

25   interest in the Bitcoin Fog cluster about 1,300 -- I think it

1    is 1,354 Bitcoin, that was one of the specific properties

2    subject to forfeiture.  The jury found that that was indeed

3    involved in the offense and it was subject to forfeiture.  The

4    government has not recovered that cluster.  Mr. Sterlingov

5    could facilitate recovery of that cluster.  And the value of

6    that cluster as of yesterday it was about $80 million.  I think

7    when we filed our opening forfeiture brief, it was $95 million.

8    It may not be $395 million, but we are not talking about a

9    situation where it is inconceivable that the defendant is able

10   to wipe away perhaps as much as a quarter of that $395 million

11   in the blink of an eye.

12            THE COURT:  I take it the government does recognize

13   that the amount of the substitute judgment should be setoff or

14   reduced by the amount of the specific property forfeited;

15   correct?

16            MR. BROWN:  Yes, Your Honor.  That is well

17   established.  As a matter of Eighth Amendment analysis, all we

18   can do is we can look at *Bajakajian* and the specific *Bajakajian*

19   factors and the way they have been applied in this circuit.

20   And ticking through those four factors, each of those factors

21   weighs in favor of applying the forfeiture money judgment as

22   written by Congress.

23            THE COURT:  Do you know what the largest money

24   laundering forfeiture judgment has ever been?

25            MR. BROWN:  Your Honor, I do not know.

1          THE COURT:  Okay.

2          MR. BROWN:  There was a case that was based on joint

3    several liability in the D.C. Circuit, *United States versus*

4    *Cano-Flores*.  But that was joint and several liability in which

5    a cartel money launderer was held liable for the whole, you

6    know --

7          THE COURT:  Although the D.C. Circuit said, no good.

8          MR. BROWN:  And the -- significantly, the D.C.

9    Circuit did not say no good as a matter of constitutional law.

10         THE COURT:  They didn't reach that.  They didn't have

11   to reach that question.

12         MR. BROWN:  Yes, Your Honor.  They found that it did

13   not fit within the statute.

14         THE COURT:  How much was that judgment?  I can't

15   remember.

16         MR. BROWN:  It was a figure in the billions.

17         THE COURT:  Yeah.  Okay.

18         MR. BROWN:  Oh, Your Honor, my cocounsel has pointed

19   out that in the FTX case there is a forfeiture money judgment

20   of $1.5 billion.

21         THE COURT:  Okay.

22         MR. BROWN:  And I think that is also significant

23   because in that case there are arguably innocent third parties.

24   And, you know, as has been reported in the news, the bankruptcy

25   estate was able to make the third parties whole through funds

1    recovered through the bankruptcy.  But there is still a $1.5

2    billion forfeiture money judgment in that case.

3              THE COURT:  But I take it the government concedes

4    that the excessive finds clause does apply here?  And at some

5    point in time, you'd cross the line and it would be excessive

6    if, hypothetically, this was a case in which the amount of

7    illicit funds was in the thousands of dollars and the amount of

8    licit funds was in the billions of dollars, but everything else

9    was exactly the same in this case.  I take it at some point you

10   would say, well, Your Honor, a $10 billion forfeiture order for

11   somebody who made a few hundred dollars laundering a couple

12   thousand dollars is excessive.  Is that fair?

13             MR. BROWN:  Yes, Your Honor.  And I think that to

14   address that situation, the way that we could frame this is

15   within the rubric of the *Bajakajian* factors.

16             THE COURT:  Yes.

17             MR. BROWN:  So you are looking at --

18             THE COURT:  I agree.

19             MR. BROWN:  You are looking at the essence of the

20   crimes specifically, as well as the nature of the harm.  If you

21   are in a situation where somebody laundered thousands of

22   dollars, the essence of the crime and the nature of the harm is

23   likely to be much less significant relevant to that

24   billion-dollar figure.  Here, we are much, much closer.  And I

25   think the other key part of this is, as we keep emphasizing,

1    the innocent funds were part of what made Bitcoin Fog work.

2    And so I think getting hung up on the idea that the government,

3    you know, can only show that, you know, it is in the 10s of

4    millions of dollars, you know, maybe 67 million direct to

5    darknet markets, the higher number --

6            THE COURT:  You don't know that the entire 67 million

7    itself was illicit?  Because there can be licit transactions on

8    the darknet from darknet sites.

9            MR. BROWN:  Your Honor, these were transactions

10   traced directly or indirectly to known darknet markets.  Yes,

11   Silk Road sold the occasional T-shirt.

12           THE COURT:  Right.

13           MR. BROWN:  But let's be realistic here, Silk Road

14   was a drug marketplace.  It was not Amazon.  You do not go on

15   Tor, you do not go through the time and hassle and expense of

16   converting your funds into Bitcoin, engaging in maybe in mixing

17   transactions and purchasing stuff just to get a T-shirt.  This

18   is not somebody using Silk Road as Amazon.

19           THE COURT:  So fair enough.  Let's assume $67 million

20   in illicit money laundering.

21           MR. BROWN:  Your Honor, I think it would be the

22   higher number.  It would add in the indirect exposure to

23   darknet markets.  In other words, the 67 million is one hop.

24   So Bitcoin Fog to Silk Road or Silk Road direct to Bitcoin Fog.

25           THE COURT:  Right.

```
1              MR. BROWN:  If there is one more hop in there, if it
2      is two hops, then that is not captured in the direct exposure.
3              THE COURT:  What would the number be then?
4              MR. BROWN:  Your Honor, I don't have it off the top
5      of my head, but it would be -- I believe it is Exhibit -- it
6      would be the table in Exhibit 601, which shows by Bitcoin and
7      by US dollar value, direct and indirect exposure for each of
8      those itemized darknet markets.
9              THE COURT:  Do you have that number in front of you?
10             MR. BROWN:  I have the exhibit in front of me.  Your
11     Honor, it is --
12             THE COURT:  Is there a bottom line in the exhibit?
13             MR. BROWN:  No, Your Honor.  There is not.
14             THE COURT:  Okay.  All right.
15             MR. BROWN:  But so I'm sorry to interrupt.
16             THE COURT:  I am just trying to pose the question --
17     or so say it was $100 million in funds that were laundered.
18     And say that Mr. Sterlingov received profits in the amount
19     of -- I can't remember if it was 8 million.  What was the
20     figure?  That is not coming to the top of my head, Your Honor.
21             MR. BROWN:  It depends, Your Honor.  It depends on
22     when he would have cashed that out, so there is a window
23     between 8 million if he cashed out everything, you know --
24             THE COURT:  Right.  And I understand the fee changed
25     over time too.
```

```
1              MR. BROWN:  Yeah.

2              THE COURT:  Let's just say it was 10 million and

3    100 million laundered.  And I am not sure I entirely agree with

4    where the government is with respect to the fine amount.  But.

5              MR. BROWN:  Your Honor, the fine amount -- it is

6    plain as day in 1956(a) which is the fine is the greater of

7    500,000 or twice the value of property involved in the offense.

8              THE COURT:  Right.  But I think you suggested the

9    whole 400 million is involved in the offense.  I am not sure

10   whether that is right or not.  It may be just the 100 million

11   perhaps.

12             MR. BROWN:  Well, Your Honor, based on this Court's

13   decision in ECF 116, all of the property that flowed through

14   Bitcoin Fog is property involved in the offense.  That is what

15   this Court held.

16             THE COURT:  No.  I didn't hold that for purposes of

17   determining what the appropriate fine would be.

18             MR. BROWN:  Yes, Your Honor.  But it is the same

19   statutory word or set of words, property involved in, involved

20   in the laundering offense.

21             THE COURT:  But humor me for a moment and assume it

22   is not the whole amount there and it is $100 million, I

23   suppose.  And I am just making these numbers up as you are at

24   this point, but it is for purposes of conversation.  If -- and

25   you say it is twice the amount -- is that what the statutory
```

1    language is or is it -- the fine up to twice the amount

2    involved in the offense?

3              MR. BROWN:  Your Honor, it -- under 1956(a)(1), which

4    includes both objects of the conspiracy at 1956 is the

5    defendant, "Shall be sentenced to a fine" -- "Shall be

6    sentenced to a fine of not more than $500,000 or twice the

7    value of the property involved in the transaction, whichever is

8    greater."

9              THE COURT:  Okay.  So twice the -- so that would

10   mean, I guess, maybe a fine of up to $200 million under our

11   hypothetical.

12             MR. BROWN:  Yes, Your Honor.  The D.C. Circuit

13   reasoning in *Bikundi* when they look at the *Bajakajian* factors

14   in relation to an offense involving $80 million in Medicare

15   fraud, the D.C. Circuit looked at this and said well, because

16   they were convicted of money laundering, they could have been

17   fined twice $80 million.  And, therefore, a forfeiture of half

18   the maximum fine is not -- it is not something that counts as

19   constitutionally excessive under that *Bajakajian* factor.

20             THE COURT:  Right.  I think the fine language from

21   1956 is not involved in the offense, but is involved in the

22   transaction.

23             MR. BROWN:  Yes, Your Honor.  But --

24             THE COURT:  And the transaction is the money

25   laundering presumably.

1          MR. BROWN:  Yes, Your Honor.  In 1956(h) is the

2     conspiracy.  The scope of the conspiracy is all of the

3     transactions involved in it.  We are not asking the Court to

4     impose a forfeiture money judgment based on transactions that

5     never happened.  Although, you could make that argument in a

6     conspiracy case.  We are asking the Court to impose a

7     forfeiture money judgment on the transactions that occurred as

8     part of the laundering activity, the laundering conspiracy, so

9     actual transactions that occurred.

10          THE COURT:  All right.  Anything else?

11          MR. BROWN:  No, Your Honor, unless the Court has

12     further questions.

13          THE COURT:  So why don't we go ahead and take a

14     10-minute break to give the court reporter a chance to rest for

15     a moment.  And then we'll come back and I can hear from

16     Mr. Ekeland.

17          MR. BROWN:  Thank you, Your Honor.

18          (Recess taken at 2:39 p.m.)

19          THE COURT:  All right.  Mr. Ekeland, your turn.

20          MR. EKELAND:  Thank you, Your Honor.  I am just going

21     to briefly touch on the basic questions that the Court asked

22     and then answer any questions that the Court may have.

23          THE COURT:  However you want to proceed.  I am happy

24     to hear anything you have to say.

25          MR. EKELAND:  To begin with on what we are calling

1    the double counting issue, there is a number of cases where

2    courts offset what the government has seized or where the

3    courts refuse to basically double count.  I think the most

4    informative one that I have seen and I think the Court is aware

5    of is *United States v. Young*, which is 330 F. Supp. 3d 424.

6    And that is Judge Jackson when she was in this court.  And on

7    pages 434 through '37 she goes through cases that discuss

8    offsets.  And in that case, she said, I think the government

9    had seized $180,000 worth of heroin and was seeking $180,000 in

10   forfeiture and she said no.  This was under 853, which is not

11   the particular statute here.

12           THE COURT:  Right.

13           MR. EKELAND:  But in *United States versus Thompson*

14   which is a Ninth Circuit case, 990 F.3d 680, the Ninth Circuit

15   does an analysis and says, well, these statutes -- and they

16   were doing a different provision.  They were doing 982(a)(1).

17   They said the difference between 853 and 982 are immaterial.

18   And I think Judge Jackson said something else that really

19   struck me.  She said, it is also common sense that you

20   shouldn't allow the government to double count.

21           And here you have the situation where I think it is

22   very interesting, the Court made a really good point like it

23   is -- you don't need licit funds for Bitcoin Fog to function.

24   But regardless we have got funds going in and we are tracing

25   funds going out.  And the government is saying that is roughly

1   $395 million.  These are coming from markets, most of which

2   were seized or shut down by the government before 2015.  I

3   think only one of them and, you know, maybe I am remembering

4   this wrong, was seized after 2015.  I think that was AlphaBay.

5   This is all listed in Luke Scholl's expert report, which came

6   into evidence at the *Daubert* hearing and I believe also it was

7   a line of cross-examination at trial.

8        If the government has seized almost all the assets or

9   shut down these markets before 2015, Bitcoin Fog was operating

10   from the end of October 2011 to what the government said at

11   trial, was just a couple of days after Mr. Sterlingov was

12   arrested, was it April 27th, 2021.  That means that roughly

13   half of the time that Bitcoin Fog is operating, the government

14   besides I think 2019, sort of DC transaction where they, you

15   know, laundered whatever, 1 Bitcoin or whatever it was -- the

16   government doesn't have anything saying that illicit funds are

17   going through Bitcoin Fog.  You have to speculate to get there.

18   They are just pointing to specific markets that are in I

19   believe it was Exhibit 601 that Mr. Brown just referenced.

20        The government has seized a lot of this money.  And

21   Mr. Brown said it is not traceable.  Well, assuming that is

22   accurate, right, because the, you know, markets like Silk Road

23   are pooling the funds.  When the government seized at least

24   from what I heard from Mr. Brown and I am not privy to what the

25   government has from these seizures -- and I think one thing

1    that would be useful is for the government to tell us what they
2    have and provide an accounting of what they seized and why they
3    can't account for things.  Because it is not just the
4    traceability.  What I heard Mr. Brown say was that when we
5    seized Silk Road, we also got the ledgers from Silk Road.  Now,
6    that is not the same thing as tracing on the blockchain.  That
7    is a ledger that is -- and I don't know what the Silk Road
8    ledgers look like, but that is like the accounting book for
9    Silk Road and the darknet markets.  So I think that what would
10   be useful is if the government could provide an accounting of
11   what they have seized from these markets and provide an
12   explanation of why they can't tell us certain numbers.  Because
13   just from the fact that it is not traceable doesn't mean that
14   the government isn't getting a double recovery here.

15         I think *Bikundi*, which the government referenced, was
16   125 F. Supp. 3d 178, they found that there was no double
17   counting there, because there was basically a one-to-one match
18   between -- I think that case was Medicare fraud -- and the
19   forfeiture.  And they actually said it was the defense in that
20   case that was double counting.

21         These funds went into Bitcoin Fog.  And they went out
22   of Bitcoin Fog.  And I think the Court made a good point when
23   it said, it is not at all clear that Mr. Sterlingov had legal
24   title to any of these funds.  You know, as custodial mixer
25   maybe he was in control of them for that moment but most of

1    those funds left Bitcoin Fog and went to markets that the

2    government seized.  And I think that is where, you know, you

3    have got an offset issue, you have got a potential

4    double-counting issue.  And it is not clear to me that that

5    can't be figured out from what the government has seized.  And

6    I am not privy to what the government has seized, because all

7    of those records -- those aren't in discovery.  And that wasn't

8    a main issue at trial.

9         There is a minor side issue in relation to that

10    Mycelium wallet, which the government is seeking to seize as a

11    substitute asset.  At the same time the government has gone in

12    and said that the assets in the Mycelium wallet are traceable

13    to Bitcoin Fog.  And I think I have the reference if the

14    Court will indulge me for a second.  It is -- in the

15    February 22nd, 2024 afternoon transcript at pages 67 from line

16    19 to page 81 to 11, there was testimony that the Mycelium

17    wallet discussed herein contained funds traceable to Bitcoin

18    Fog which represent the defendant's proceeds.

19         The Mycelium wallet, if I recall correctly, was not

20    listed as a forfeitable asset in the superseding indictment.

21    It wasn't presented to the jury, if I am recalling correctly,

22    you know, that when the jury was deciding on whether or not

23    these assets were forfeitable.  There is case law saying that

24    you cannot seek substitute forfeiture on something that is, you

25    know, subject to direct forfeiture.  And those cases that I

1    have got is *United States versus Bornfield*.  And that is 145

2    F.3d 1123 at page 1139.  And that is from the Tenth Circuit in

3    1998.

4           And this is also a case that does the Eighth

5    Amendment proportionality analysis, because I think this issue

6    in many ways, it overlaps.  And I think it is a significant

7    problem if the government has seized all or seized a

8    substantial amount of assets from these markets and then is

9    going to seek forfeiture from Mr. Sterlingov of amounts that is

10   already in the government's possession.  I think that is what

11   Judge Jackson is touching on when she says that is a matter of

12   common sense.  So I think one way of trying to figure this out

13   is actually to find out from the government, you know, not only

14   what they have seized from these markets, but what records they

15   have and if it really is untraceable or not determinate in some

16   way.

17          THE COURT:  What are the limits to your argument?  So

18   there is a drug cartel.  There is someone who runs an offshore

19   bank and launders money for them over a period of time.  The

20   drug cartel engages in all sorts of unlawful activity.  The

21   drug cartel purchases a kilo or multiple kilos of heroin, that

22   heroin is seized.  Does the money launderer in that

23   circumstance have a defense and say, look, that heroin was

24   worth a million dollars that was seized, there is a million

25   dollar forfeiture against me for having laundered money and

1    there ought to be a one-for-one offset.  And the government

2    comes in and says, money is fungible.  How do you know it is

3    the same dollars that are involved here?  It is an entirely

4    different offense.  That was drug dealing versus money

5    laundering.  What is the limiting principle?  How would you

6    apply your principle in a world of money laundering where one

7    of the principle reasons for money laundering is to hide

8    illegal proceeds?

9          MR. EKELAND:  I think that is very close, if not the

10    same.  Of course, the Court can go look for themselves, the

11    fact pattern in the *United States v. Young.*

12          THE COURT:  Yeah.  I think it is different from

13    *Young.*  I think that in *Young,* they -- I can't remember even --

14    I am trying to remember the facts of *Young.*  I think *Young* was

15    not a third party, it was *Young* who had the heroin or the

16    drugs.  And the government seized the drugs and also sought a

17    forfeiture judgment for the dollar value of the drugs, which is

18    different than where there is an entirely different person or

19    enterprise involved.

20          MR. EKELAND:  Your Honor, I just didn't hear the

21    last.

22          THE COURT:  It seems to me it is different where you

23    have an entirely different person or enterprise involved.

24          MR. EKELAND:  Well, if you seized $180,000 worth of

25    drugs from somebody that was related to the same crime that was

1    traceable back to the money laundering and then you are seeking

2    another $180,000.  You have got $360,000 worth of assets there;

3    right?

4               THE COURT:  I guess I don't know how you know that it

5    is all traceable in the way that you are saying there.  I'm not

6    sure how looking at the books is going to answer that question.

7    You know, you have a darknet site that is engaged in unlawful

8    drug sales, unlawful sales of other things including child

9    pornography.  And the government seizes that site.  They take

10   it down.  They take any assets that there may be there as part

11   of the seizure.  And that those sites may have paid funds into

12   and paid into money laundering service or tumbling service, but

13   I don't know how you would ever say they were the same funds in

14   the same way in *Young*.  The heroin is seized and then the Court

15   enters or is asked to enter a judgment for the value of the

16   heroin where you know by definition it is the exact same item

17   or thing.

18               MR. EKELAND:  I think I am not, again, privy to what

19   the ledgers say, say for Silk Road or any of these markets or

20   what the government actually has.  And I think it would be

21   useful to answer that question if we did have some information

22   about that.  But I believe Mr. Brown said that Mr. Scholl was

23   able to match amounts from Mr. Sterlingov's Silk Road account

24   to the blockchain, because he could take the Silk Road ledger.

25   And that is what caught my ear was, right -- okay, it is not

1   just -- this is separate from tracing on the blockchain, right,

2   maybe that is not -- just looking at the blockchain, you can't

3   tell.  But the blockchain plus a ledger, now I can go in and I

4   maybe write an algorithm or get Chainalysis, somebody to go and

5   look and see if we can match the number.  Because the

6   blockchain does record, right, the date and time and the

7   amount.  And now I can have my ledger or Mr. Sterlingov or

8   Mr. X or Ms. X or whatever and I can see if there is matches.

9   So it is just not immediately obvious to me -- I don't have

10  this information.  I am scratching my head a little bit like

11  the Court is when they come up because it is such a novel area.

12              THE COURT:  I guess what I am saying is, even if you

13  could do that, I guess I am not necessarily sure that you are

14  right on -- I am not at all sure you are right on the law,

15  because, one, I think that 853 and 982 are very different

16  statutes.  But even putting that aside, the government cites to

17  cases where the same individual has been subject to multiple

18  forfeiture orders.  But putting that aside, if the funds were

19  seized on the grounds that they had been laundered, you might

20  have a stronger argument if they are seized because someone is

21  running an illegal drug site or an illegal child pornography

22  site or whatever it might be, the forfeiture is for a different

23  individual and a different crime, which I think distinguishes

24  it from *Young* where you are talking about the same individual

25  and the same crime.

1              MR. EKELAND:  I -- you are talking about -- assuming

2     you can trace it and link it back to Bitcoin Fog, you are

3     talking about the funds that are going through Bitcoin Fog and

4     then are going to, say, Silk Road and that are identifiable as

5     being the funds that came through that aren't in

6     Mr. Sterlingov's possession, who he never had legal title to,

7     and maybe given that it was a custodial mixer, he had control

8     over it, while it was in the pool of being mixed.  Because we

9     don't even know how it mixed.  But it would seem to me that you

10    are still -- if you seize that 100 -- say it is $180,000 like

11    the amount in Young and it goes to Silk Road.  You seize it

12    from Silk Road and you trace that ledger back to Bitcoin Fog.

13    And then they get a $180,000 forfeiture against Mr. Sterlingov,

14    it seems to me you got the double counting issue because now

15    the government in a certain sense, to use a term from contract

16    law, is sort of unjustly enriched.  And now it has become, you

17    know, punitive because he never had that money and it left him.

18              THE COURT:  I guess my point is, it is not the money

19    itself that is criminal.  It is not an in rem action against a

20    certain dollar figure.  It is the underlying criminal activity.

21    One is maybe money laundering and the other may be drug

22    dealing.  But I am not sure that, you know, you -- once the

23    money goes through a mixing service, you put a little red mark

24    in the corner of that dollar and then you say, that dollar can

25    never be forfeited except for that once.  And so either it is

1    the money laundering service that has to forfeit it or it may

2    be 17 transactions later when someone then uses the money to

3    buy child porn.  But it has already been forfeited, subject to

4    a forfeiture order, so it can never be subject to forfeiture

5    again.  So, for example, I assume they are somewhere out there.

6    I don't know where the Bitcoins are from -- there are some we

7    know that flowed through Bitcoin Fog that are somewhere out

8    there, that someone has them.  And, you know, in your theory

9    you are saying that if the Court enters a forfeiture judgment

10   for that amount against Mr. Sterlingov, whoever holds those

11   funds now has a get out of jail free card with respect to

12   forfeiture.  And say these funds have once been forfeited, they

13   can never be forfeited again.  And I can engage in any illegal

14   activity I want to with these funds without them ever being

15   subject to forfeiture because those dollars, they have already

16   got the red mark in the corner.  They have already been

17   forfeited once.

18              MR. EKELAND:  I think that is why I think this

19   overlaps with the Eighth Amendment excessive fines analysis,

20   because the money has left Bitcoin Fog.  Mr. Sterlingov doesn't

21   have it.  And it has gone somewhere else.  But now it -- they

22   are seeking forfeiture of that amount from Mr. Sterlingov when

23   he doesn't have it and it has gone to somebody else.  Now, you

24   have got it, it is a fine.  And he doesn't have that money,

25   doesn't control it.  And that is where you get in -- that is

1    why when I look at this, I think these analyses sort of

2    overlap.  I think you are making a good point.  It is a little

3    slippery, because I think when Congress and these laws evolved,

4    they didn't evolve in this context.  And this is a very novel

5    thing that we are dealing with.

6           THE COURT:  Before you move on to excessive fines, I

7    want to ask you, do you have any reason to think that the

8    exception in 982(b)(2) applies here, to the substitute

9    judgment?  You haven't argued that, I take it.  You know, there

10   is an exception for someone who is acting as a mere

11   intermediary if they have only engaged in two or fewer

12   transactions amounting to less than $100,000 over a 12-month

13   period.

14          MR. EKELAND:  I think this raises another problem.  I

15   could potentially but without -- what we are seeing here is we

16   are seeing sort of these aggregate numbers.  Again, when we

17   step back from this and this is what I was thinking about the

18   drive down, this is really about a decade we are talking about.

19   And roughly -- I am just roughly speaking, half of that, with

20   the exception of AlphaBay which was shut down in 2017, these

21   markets that the government is, you know, saying are involved

22   in the flows were already shut down before 2015.  So I think

23   that could be an issue, but I don't think we have got the

24   granularity on that.

25          THE COURT:  Yeah.  Although I would notice the

1    statute says three or more separate transactions involving a

2    total of $100,000 or more in any 12-month period.  Any.

3              MR. EKELAND:  Uh-huh.

4              THE COURT:  So if there were any transaction during

5    the period the exception wouldn't apply, any 12-month period

6    that was covered by the indictment.

7              MR. EKELAND:  You say over or under 100,000?

8              THE COURT:  The exception applies if during any

9    12-month period three or more separate transactions -- I'm

10    sorry.  The exception applies unless during any 12-month period

11    of time there were three or more transactions totaling

12    $100,000.  So the exception for the intermediary applies unless

13    those conditions are satisfied.

14              MR. EKELAND:  Right.  I would have to go and parse

15    obviously the data.  I am not going to -- I am happy to submit

16    briefing on that.  I don't want to speak off the cuff on that.

17    Given the volumes that we are talking about, I could see that

18    exception not applying, but I could also, given the time span

19    and the fact that everything is being aggregated and we don't

20    necessarily have the granular data, it could apply.  But I am

21    not going to die on that hill, but I am happy to go back and

22    take a look for the Court because I think it is a very

23    interesting question.

24              Because I think what the Court is sort of getting at

25    and this goes to the Eighth Amendment analysis and the nature

1    of the crime is that he is an intermediary in the sense that

2    Bitcoin Fog is essentially just taking inputs or deposits,

3    mixing them.  And licit funds aren't necessarily, again like

4    the Court said -- I think that is a very interesting point.  It

5    is not necessarily for the functioning of Bitcoin Fog that

6    there be licit funds involved in the mixing.  I think that

7    distinguishes it from the car wash example or the bank examples

8    and I think what make this area of law so novel.

9          So in that sense, in the Eighth Amendment analysis,

10   when you are looking sort of at the nature of the crime, I

11   think -- I think the Court is sort of touching on the fact that

12   Mr. Sterlingov is an intermediary, because he didn't actually

13   commit any of the crimes for the money that is being laundered.

14   He is laundering money, you know, illicit funds.  But those

15   funds aren't -- you know, he is not selling the drugs that --

16   the drug money is come into Bitcoin Fog or so I think that goes

17   a little bit to the Eighth Amendment analysis and the -- you

18   know, the gravamen of the crime.

19         THE COURT:  You said the gravity?

20         MR. EKELAND:  I said gravamen, but I meant gravity.

21   I guess they are synonyms.  And to go to that Eighth Amendment

22   analysis, which I think the Supreme Court in -- was it

23   *Bajakajian* -- I can't pronounce the case.

24         THE COURT:  As long as you spell it later for the

25   court reporter, we are fine.

1          MR. EKELAND:  I think I have got it spelled right.

2     It is *United States versus Bajakajian*.  I have it down as

3     B-A-J-A-K-A-J-I-A-N.

4          THE COURT:  I will tell you, remarkably the court

5     reporter before you said that had it exactly right on the

6     transcript so --

7          MR. EKELAND:  And that is 524 U.S. 321 from 1998.

8     One of the things that focuses on that is interesting to me and

9     I think the Court -- I think the order was very helpful -- was

10    the relationship between the fines involved, the statutory fine

11    involved and the forfeiture sought.  Because it is a

12    proportionality analysis and pretty much nothing else, right,

13    looking at the nature of the crime and those other factors.

14    But when I look at just -- putting the 1956 issue aside, I just

15    just look at the PSR and the fines involved on the counts.

16    Count 1 is $500,000 maximum fine, Count 2 is a $500,000 fine.

17    I believe Count 3 is a $250,000 fine.

18         THE COURT:  Mr. Brown is shaking his head in part

19    because I think what he just said to me is what the statute

20    actually says is $500,000 or twice the amount of the

21    transaction or -- I don't have the exact language in front of

22    me.

23         MR. EKELAND:  Even if we take that number, right --

24    so let's go back and look at the statutory numbers.  If you go

25    to statutory numbers, you have got 1,250,000.  $395 million

1    being sought is roughly 312 times that, right?  I am going off

2    the PSR.  But say we take that 67 million number that you were

3    discussing with Mr. Brown and what do we get there?  We double

4    that and we get 134 million that is still -- the sought-after

5    forfeiture is still, what, two to three times higher than that.

6            In the cases that I have looked at, where they are

7    doing the proportionality analysis and they say, no, it doesn't

8    apply, it is usually the fact pattern is, well, the -- you

9    know, what is being sought here is within the limits of the

10   fine.  Here either way, you have gone over that limit.  It is

11   just a question of what the order of magnitude is.  And if you

12   look at -- this is something else I think that was helpful that

13   the Court mentioned in their order.  Mr. Brown was up here and

14   he was talking about the money that, you know, Mr. Sterlingov

15   got from what we call the licensing fees or royalties from

16   Bitcoin Fog.

17           At trial, the government when Mr. Scholl was

18   testifying, they kept that number low.  And I am speculating

19   that the reason for that was because we were, you know,

20   pointing out, listen, Mr. Sterlingov, when he was arrested at

21   the airport and all of his assets were seized, he had like less

22   an $2 million depending on how his assets swing.  And Mr. Brown

23   was saying, well, this could swing up, depending on when you

24   cash out.  I agree with that because Bitcoin is very volatile.

25   It could go up and it could go all of the way down.  I think

1    during trial it was close to $70,000 for one Bitcoin.  Last

2    time I checked I think yesterday it was at 58,000.  The first

3    time I ever bought a Bitcoin it was at 42.  Right.  It goes up

4    and down.  It has been going up historically, but it has also

5    crashed dramatically.

6            But at 1 percent of royalties or license fees or

7    whatever you call it, according to Mr. Scholl's chart that went

8    into evidence at trial, Mr. Sterlingov would have roughly --

9    and I am rounding the numbers a little bit, because this is how

10   I am remembering it, $4 million dollars.  At the 2 percent --

11   because if the Court recalls, Bitcoin Fog charged a variable 1

12   to 3 percent fee on the transactions.  At 2 percent, that is

13   roughly $8 million Mr. Sterlingov would have.  And at

14   3 percent, you know, as the government presented this at trial

15   in front of the jury, it is 12 million.

16           So now take that 12 million number and look at that

17   proportionally, you know, to your 134 million fine or

18   395 million forfeiture.  I mean, what is striking here is when

19   you run these numbers and whatever, pick them, however we are,

20   you are still coming up with the forfeiture that is an order of

21   magnitude higher than what the government has said

22   Mr. Sterlingov received, what he actually had in assets when he

23   was arrested.  And I think the Court is right and I think, you

24   know, that a $395 million forfeiture order is not something

25   that Mr. Sterlingov will ever in his lifetime be able to repay.

1    And for Bitcoin to appreciate that much, based on, you know,

2    the assets that the government has seized from, you know,

3    Mr. Sterlingov, I just don't think that that is -- I just think

4    that is excessive.  And, particularly, in relation to one of

5    the aspects is deterrence and punishment.  And we address this

6    in our sentencing memo as well.  I think there has been a lot

7    of publicity about this case, about Binance.  Samourai Wallet

8    is now being prosecuted.  I think the deterrence point has been

9    made to the public.  He has, you know, been in jail now for 4

10   years and he is facing a substantial sentence.  And this number

11   of 395 million is -- I mean, everybody looks at it and it is

12   eye popping.  And it is not even clear how much of it is

13   illicit funds.

14            And I understand the argument, oh, it commingled and

15   everything.  But it is not -- again, it really struck me when

16   the Court came in and the Court said it is -- licit funds are

17   not at all necessary to the functioning of Bitcoin Fog.  I

18   think that is how you distinguish it.

19            THE COURT:  Mr. Brown comes back and says that it may

20   not be necessary, but it actually helps.  And that the more you

21   have in a mixer and particularly having some licit funds in the

22   mixer make it more effective.  Maybe you are able to do it

23   without the licit funds, but if there are no licit funds, then

24   among other things, law enforcement knows that everything that

25   is going through there is illicit in some respect and knows

1    that everyone who is withdrawing money from Bitcoin Fog is

2    engaged in some type of criminal activity.  So it may not be

3    essential, it may serve some purpose without the licit funds,

4    but having licit funds makes it work better.

5                MR. EKELAND:  That is not clear to me from what is in

6    evidence, now that I think about it, because we don't have the

7    code.  We don't have the ledgers.  We actually don't know the

8    precise functioning, right, and we don't even know the precise

9    necessary details on these particular transactions.  Maybe

10   these transactions were all illicit.  Maybe some of them were

11   licit.  There is -- one of the interesting things to me or

12   curious things about this space and honestly why I like working

13   in it, it is so novel.  And because it is novel, it is very

14   hard to find any kind of precedent that is dead on.  We have to

15   analogize from older case law and what in computer law a lot of

16   times we just call brick and mortar analogies.  But I was down

17   at a conference with a lot of other Bitcoin lawyers.  And one

18   of the things one of the lawyers said really struck me.  He

19   said I have a client that is being sued by the CFTC under the

20   theory that Bitcoin is a commodity.  They are simultaneously

21   being sued by the SEC that Bitcoin is a security.

22                And what is the answer to that?  I think the honest

23   answer is that there is no answer because it is a little bit of

24   anarchy in here.  And I think that is one of the problems here.

25   And it is not -- I think it is very easy to make assumptions

1    about this space, but I think in this area, particularly when a

2    fine of this magnitude or forfeiture of this magnitude, which I

3    think is a fine, if I am understanding the Supreme Court

4    correctly, of this magnitude is in order, yes, there is a

5    little bit of imprecision.  But here the number is so gigantic

6    and disproportionate to any of the numbers that we know

7    Mr. Sterlingov actually has that I just think that it is an

8    excessive fine under the Eighth Amendment.

9            THE COURT:  So if you were my shoes, what would you

10   do with it?  Would you reduce it?  And if so what rule or

11   method or methodology would you use for purposes of reducing

12   it?

13           MR. EKELAND:  One thing I'd do is I would ask the

14   government to, you know, without being ridiculous -- maybe a

15   ridiculous request, but ask the government to provide the

16   information on what they can account for, what information they

17   do have, like ledgers or whatnot and why we can't find a number

18   that is an offset.  I would not start with the 395 million.  I

19   think, you know, in our sentencing memo I think we said that

20   ceiling, without conceding that this was all illicit, would be

21   I think it was 78 million and the government, now we are

22   talking 67 million in direct funds.  But even then, I think

23   again $67 million -- I would love to make $67 million in my

24   lifetime and I think everybody in this room would.  I don't

25   think I am going to make that.  You know, maybe, but, let's

1    bring this into the realm of reason so that when Mr. Sterlingov

2    has served his sentence -- and he has already served 4 years of

3    a custodial sentence -- he is not essentially just -- you know,

4    he can rejoin society.  And these numbers, these fines of this

5    magnitude are just crippling to a young man who can, you know,

6    pay his dues, to -- whatever harm to society.

7           We are not talking about a case where there is a

8    single identifiable individual victim.  There is no

9    restitution.  Yes, I understand that the theory with money

10   laundering is there is a harm to society.  And I look at that

11   and I wonder, well, okay, are we talking about US society or

12   Swedish, society as an abstraction, as a whole?  And it is very

13   easy to pommel people with these abstractions.  But at the end

14   of the day even 67 million, probably even 30 million, right,

15   that is crippling.  And, you know, the assets that we know

16   roughly he has, you know, that was seized by the government and

17   everything is roughly 2 million.

18          THE COURT:  Although the government says that they

19   believe that there is at least another 80 million out there in

20   the 1,350 Bitcoin.

21          MR. EKELAND:  Right.  And I look at that -- and I

22   wasn't raising this because I didn't want to belabor that

23   point.  That blockchain address that is in the indictment, if

24   you go in the blockchain -- and I believe we stuck it in as an

25   exhibit.  We went on Blockchain Explorer.  We stuck it in as an

1    exhibit I believe to our objections to the draft PSR.  It

2    hasn't done a transaction since March of 2012.  And there is

3    zero dollars in it.  So it is not even clear me to in March of

4    2012 that Bitcoin Fog had done any illicit transactions.  For

5    all we know, all of the illicit transactions happened

6    afterward.  I think you need something more there, particularly

7    again, when you are asking for a fine of this magnitude.  It

8    would be one thing, Your Honor, if it was $1,000, $2,000,

9    $5,000.  Okay.  We can't be precise about it, it is 5 grand;

10   right?  He can work and get it.  But you start to get into the

11   tens of millions.  He is never going to pay it back.  If he

12   gets back to Sweden, Sweden has an MLAT with the United States.

13   They can seek, you know, the forfeiture and garnish his wages

14   or whatever.  He is going to be -- it is -- in a certain sense

15   it is a life sentence being such a punitive fine.

16            THE COURT:  The MLAT allows for garnishment?

17            MR. EKELAND:  I don't want to make a

18   misrepresentation to the Court.  That is my understanding that

19   the government can -- the United States Government can pursue

20   the forfeiture judgment against Mr. Sterlingov if he goes back

21   to Sweden, but I am going off of what I received in an email

22   from another lawyer, so I don't want to say definitively on

23   that.  But that is my understanding.

24            THE COURT:  Okay.  Anything else?

25            MR. EKELAND:  No, not unless the Court has any other

1    questions.

2             THE COURT:  Thank you.

3             All right.  Mr. Brown, I will give you a couple of

4    minutes for anything you want to respond to, including maybe

5    you could enlighten us on the final point.

6             MR. BROWN:  With respect to the last point, I don't

7    know about the MLAT.  But I do know about collection procedures

8    for forfeiture money judgments.  A forfeiture money judgment is

9    not something that the government can collect through sort of

10   ordinary debt collection process procedures.  It is not a lien.

11   The government doesn't garnish wages.  The mechanism to collect

12   on forfeiture money judgment is by identifying substitute

13   property and then making a motion to court under 853(p)(1),

14   saying that one of those statutory criteria is satisfied and

15   this is impartial satisfaction.

16            THE COURT:  Would you come back to me for that?

17            MR. BROWN:  Yes, Your Honor.

18            THE COURT:  Would I have authority to order the

19   seizure of a business in Sweden?

20            MR. BROWN:  Your Honor, you would have the authority

21   to order the seizure of property belonging to the defendant.

22   How that is enforced in Sweden, I would defer to our colleagues

23   in the Office of International Affairs at DOJ.

24            THE COURT:  Okay.

25            MR. BROWN:  But that also goes to the point, the

1    forfeiture money judgment is almost a bookkeeping mechanism.

2    It is an accounting mechanism that meters the government's

3    ability to collect substitute assets.

4         Going back to the overarching point on the

5    excessiveness, I just remind the Court again, about -- just one

6    point of clarification, what was forfeited in the Bitcoin Fog

7    cluster, was a cluster.  And this is spelled out in the

8    superseding indictment and the jury's forfeiture verdict, it is

9    a cluster identified by a root address.  So it is a cluster of

10   multiple addresses.  That root address -- and there was

11   testimony about this at trial -- was -- it is simply the first

12   address that appears in that list of addresses.

13        THE COURT:  And was the last input to that root

14   address in March of 2012?

15        MR. BROWN:  I don't know if it is the first input or

16   the last input.  It is simply the first address that is listed

17   as part of that cluster.  So that is what we mean by a root

18   address.

19        THE COURT:  I take it that Mr. Ekeland's point was

20   that if there was anything deposited in there, it was deposited

21   sometime on or before March 2012.

22        MR. BROWN:  That single address, yes.  But what was

23   forfeited was the Fog cluster, which includes that address and

24   is clustered with many, many, many other addresses that were

25   entered into evidence.

```
1                    THE COURT:  I see.

2                    MR. BROWN:  So, yes.  We don't --

3                    THE COURT:  The cluster is not where everything would

4      have gone in through that address and then out to an array of

5      others, but it is simply that there is a reason to think that

6      address was being used by the same user, because of the type of

7      methodology that you employ for determining clusters.  Do I

8      have that right?

9                    MR. BROWN:  More or less, Your Honor.  The cluster,

10     it is just sort of the operating capital of Bitcoin Fog.  It is

11     the wallet that Bitcoin Fog used to do its business to -- and

12     that 1YZ, et cetera, address was -- there was testimony about

13     that was one of the intake addresses so when people would use

14     Bitcoin Fog, that was the first address that funds would enter

15     into when you sent funds into Bitcoin Fog.  And from there, the

16     funds would move on to other addresses.

17                   THE COURT:  Well, that was my question though.  So if

18     that tap was turned off at some point in time, does that turn

19     off the tap for the entire cluster or were there other inputs

20     into that cluster?

21                   MR. BROWN:  Your Honor, there were other inputs over

22     time.  That single address was used in a certain way during the

23     early years of Bitcoin Fog.  And as Mr. Scholl testified, that

24     changed over time.  It was still part of the same cluster.

25                   THE COURT:  Okay.
```

1          MR. BROWN:  So, Your Honor, the overarching point

2    here is in looking at the *Bajakajian* factors and constitutional

3    excessiveness, you have an individual who has we believe access

4    to that Fog cluster with 80,000,000, 95,000,000 overnight

5    essentially.  And that may go up, it may go down.  But it is --

6    we are not talking about somebody who will walk out of jail and

7    be saddled with 395 million.  We are talking about somebody who

8    has a lot more agency and power to reduce that amount.  And

9    that is relevant in the excessiveness calculus that this Court

10   makes.

11         THE COURT:  All right.  Thank you.

12         So I will -- did you want a final word?

13         MR. EKELAND:  I don't want to belabor this point.

14   But I have been baffled by this root address thing since -- you

15   know, when I first looked at it in the indictment.  Because,

16   first of all, root address, as far as I know, is not some

17   recognized industry term.  I think it is something that is

18   arbitrarily being used here.  I think the Court touched on

19   something that is very interesting to me.  If the last

20   transaction for that quote/unquote root address is in March of

21   2012, but somehow it is attached to all of these clusters, you

22   would see transactions on the blockchain going through that

23   address after March 2012.  And that is not on the blockchain,

24   so I don't --

25         THE COURT:  I just -- I mean, before I actually

1  impose sentence, I may need to really roll up my sleeves on

2  this.  I understood Mr. Brown to be telling me for present

3  purposes that the government is prepared to show that there

4  were other inputs into that cluster.  Therefore, if it didn't

5  go in through the root address, that funds -- Bitcoin could

6  have gone into the cluster through other addresses.

7          MR. EKELAND:  But then -- I am a little -- I don't

8  want to belabor the point.  I just don't understand again how

9  the clustering concept is working here.  Why not pick a cluster

10  that actually has money going through it at a later time?  The

11  fact of the matter is, the government specifically named an

12  address that has not transacted since March 2012.  And now they

13  just want to say, oh, it is a root address, so there is all of

14  these other things.  I think that is a little bit arbitrary and

15  I am going to leave it at that.

16          THE COURT:  Mr. Brown, final word.

17          MR. BROWN:  Just to clarify this, I direct the

18  Court's attention to Exhibit 326 --

19          THE COURT:  326, okay.

20          MR. BROWN:  -- which was the exhibit introduced of

21  all of the addresses in the Fog cluster.  And there are 925,744

22  addresses in that spreadsheet.  The first address is the 1YZ

23  address that we have been discussing.  But what was discussed

24  at trial, in Mr. Scholl's testimony and what was presented to

25  the jury during the post-verdict forfeiture proceeding, was

1   Exhibit 326 listing all of these Bitcoin addresses.  So there

2   is something precise listing every single address that was

3   presented to the jury that the jury rendered their verdict on.

4   There is no ambiguity about what this Fog cluster is.

5               THE COURT:  All right.  Thank you.

6           So I am just thinking about the most efficient way to

7   proceed under these circumstances.  Under Rule 32.(2)(b)(2)(B),

8   the Court is required to enter a preliminary order sufficiently

9   in advance of sentencing to allow the parties to suggest

10  revisions or modifications before the order becomes final as to

11  said defendant under Rule 32.2(b)(4).  And I am happy to do one

12  of two things.  I can go back and think further about this and

13  issue an order -- a preliminary order which would still then be

14  subject to further discussion or I can simply today,

15  preliminarily order the forfeiture in the manner and to the

16  extent specified in the government's proposed order, but still

17  understanding that everyone still has the opportunity to

18  comment further on this.  But that would satisfy the rule.  And

19  in candor at this point I am as a preliminary matter persuaded

20  by the arguments the government has made to me.  But there are

21  some things candidly where I have to roll up my sleeves a

22  little bit further before I reach a final decision on this.

23  Obviously, the rule contemplates this is just preliminary and

24  not final.

25          Mr. Ekeland, I am happy to leave it to you, quite

1    frankly, because it may be a question of just how quickly you

2    want to get to sentencing or whether you want me to go wrestle

3    with these issues further and issue a preliminary order or

4    whether you want me to simply enter the preliminary order today

5    with the understanding that you reserve your right to continue

6    to object.  And then I am going to continue to think hard about

7    these.  And I am happy to do either.  And it seems to me, one

8    will give you a little bit more information perhaps on my

9    thinking and the other one will get you to sentencing a little

10   faster.  So come on up.

11           MR. EKELAND:  I think it would be helpful, because

12   these issues are so difficult if the Court rolled up their

13   sleeves, so to speak --

14           THE COURT:  I am going to roll up my sleeves one way

15   or the other, the question is just timing.

16           MR. EKELAND:  I think it may be a little bit more

17   efficient on our end too in responding to that, because then we

18   kind of have an idea of where the Court is on that.

19           THE COURT:  That is fine.  So I will do that.  And I

20   can't tell you exactly when I will get this to you.  I will

21   work on it and get it to you as soon as I can.  And then what I

22   will do is when I issue that, I will just set another date for

23   sentencing at that point.  And I may ask that the deputy clerk

24   just reach out to you by email just to figure out when you are

25   all available and we'll find another date for sentencing once I

1    issue the order.

2              Mr. Brown?

3              MR. BROWN:  Yes, Your Honor.  In terms of issuing the

4    order that is -- the government has no preference about the

5    procedure there.

6              THE COURT:  Okay.

7              MR. BROWN:  We are a little concerned about the

8    timeline.  And if it would be possible to get a more sort of

9    certain maybe range of dates when we could have sentencing in

10   this case.  And the reason we ask is we do have two cooperators

11   whose sentencing are being trailed --

12             THE COURT:  They are trailing this.  I see.

13             MR. BROWN:  And I know, Judge Howell in particular,

14   with the Larry Harmon case, when she sets a hearing it

15   is usually when the hearing is.  So we will need to inform the

16   other Courts for those cases.

17             THE COURT:  I think I probably could set the

18   sentencing sometime for October.  Is that workable?

19             MR. BROWN:  We can ask.

20             THE COURT:  So I -- we can pick a date right now and

21   I will get you the preliminary order sufficiently in advance of

22   that hearing.  So why don't we pick a date sometime in October

23   when everyone is available.  And I think for the deputy clerk's

24   sake, this is going to be a complicated one, so I think I

25   probably need a half a day for this.

```
1              THE COURTROOM DEPUTY:  Yes, Your Honor.

2              (Pause.)

3              THE COURTROOM DEPUTY:  Counsel, is everyone available

4    Friday, November 1st?

5              MR. BROWN:  I will likely be in trial in front of

6    Judge Friedrich that week, the week beginning October --

7              THE COURTROOM DEPUTY:  Does she sit on Fridays?  She

8    doesn't usually sit on Fridays, because the judge is in trial

9    here as well, so it is a Friday.

10             MR. BROWN:  That is a good point, then --

11   tentatively, yes.

12             THE COURT:  So let me tell you though, I -- Judge

13   Friedrich has been very kind to me and when she has been in

14   trial letting people break from the trial to come.  So if it

15   turns out you really are in trial in front of Judge Friedrich,

16   she wins.  Because she has accommodated me most recently on

17   this, so I don't want to keep her from her trial if she is

18   sitting that day.  So why don't we -- assuming that defense

19   counsel can do it, let's put it down for that date.  But if it

20   turns out the government is in trial --

21             MR. EKELAND:  I think we have a conflict.

22             THE COURT:  You do have a conflict?

23             MR. EKELAND:  Yeah.  We are checking to see if --

24             MR. HASSARD:  The end of the week of the 13th of

25   October.
```

```
 1                 MR. EKELAND:  We can do it the end of the week of the
 2      13th.
 3                 THE COURT:  I am in another trial.
 4                 MR. EKELAND:  So November 1st is the first time the
 5      Court is available?
 6                 THE COURT:  Yeah.  I don't know if there is a -- what
 7      is the week after that then?
 8                 THE COURTROOM DEPUTY:  The week after November 1st
 9      is -- that would be November 8, we would have to do it on a
10      Friday, because you are in trial again, Your Honor.
11                 THE COURT:  So is the 8th acceptable?
12                 MR. EKELAND:  Checking right now.
13                 THE COURT:  Are you still in trial or maybe in trial?
14                 MR. BROWN:  Thankfully this will not be a month-long
15      trial in front of Judge Friedrich, so we are predicting about a
16      week.
17                 THE COURT:  Let's put it down for November 8th then.
18      And I will get this to you well in advance of that.
19                 MR. EKELAND:  If there is -- let me just check, one
20      second.
21                 THE COURT:  Of course.
22                 MR. BROWN:  Your Honor, if there is anyway we could
23      push that into the next week, the 12th or 13th?  That would --
24                 THE COURT:  I need to see what my trial --
25                 THE COURTROOM DEPUTY:  The judge is still in trial,
```

1    so it would have to be in -- he has stuff already set on that

2    Friday, so if we do it on that week, it would have to be Friday

3    the 15th.  And it would have to be at about 1:30, like we did

4    today.

5              MR. BROWN:  Your Honor, I think for the government,

6    the 8th or the 15th, we'll make it work, one way or the other.

7              THE COURT:  I think I may have a little more time on

8    the 8th, if that works for everybody.

9              MR. EKELAND:  We could do the 8th at 1:30.  Is that

10   possible?

11             THE COURT:  Let's see what time we have for that.

12             THE COURTROOM DEPUTY:  On the 8th, we can start at

13   10:00.

14             MR. EKELAND:  We like to drive down in the morning to

15   save money on hotels.  Is possible to do it at 1:30?

16             THE COURTROOM DEPUTY:  Yes, we can do it at 1:30.

17             MR. EKELAND:  Is that okay with the government?

18             MR. BROWN:  Yes.

19             THE COURT:  So 1:30 on the 8th then, that is what

20   we'll do.  Okay.

21             Well, thank you all.  This was helpful to me.  These

22   are interesting questions.

23             (Proceedings concluded at 3:50 p.m.)

24

25

1                        C E R T I F I C A T E

2

3              I, SHERRY LINDSAY, Official Court Reporter, certify

4     that the foregoing constitutes a true and correct transcript of

5     the record of proceedings in the above-entitled matter.

6

7

8

9

10                              Dated this 23rd day of September, 2024.

11

12                              _____
                                Sherry Lindsay, RPR
13                              Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

MR. BROWN: [99]
MR. EKELAND: [36]  3/9 40/20
40/25 41/13 46/9 46/20 46/24
47/18 49/1 50/18 51/14 52/3 52/7
52/14 53/20 54/1 54/7 54/23 58/5
59/13 60/21 61/17 61/25 65/13
66/7 68/11 68/16 70/21 70/23 71/1
71/4 71/12 71/19 72/9 72/14 72/17
MR. HASSARD: [1]  70/24
THE COURT: [132]
THE COURTROOM DEPUTY: [8]  3/2
70/1 70/3 70/7 71/8 71/25 72/12
72/16

**$**

**$1 [2]**  9/5 9/7
**$1,000 [1]**  61/8
**$1.5 [2]**  34/20 35/1
**$1.5 billion [1]**  34/20
**$10 [1]**  35/10
**$10 billion [1]**  35/10
**$100 [8]**  9/7 24/24 24/25 25/1
25/2 25/2 37/17 38/22
**$100 billion [1]**  9/7
**$100 million [2]**  37/17 38/22
**$100,000 [6]**  7/9 18/9 18/10 51/12
52/2 52/12
**$100,000 back [1]**  18/10
**$180,000 [6]**  41/9 41/9 46/24 47/2
49/10 49/13
**$2 [2]**  10/2 55/22
**$2 million [2]**  10/2 55/22
**$2,000 [1]**  61/8
**$20 [6]**  6/2 6/3 6/4 6/5 32/4
32/12
**$20 million [1]**  32/4
**$200 [1]**  39/10
**$22 [1]**  9/25
**$22 million [1]**  9/25
**$250,000 [1]**  54/17
**$3 [2]**  23/8 32/20
**$3 billion [1]**  23/8
**$360,000 [1]**  47/2
**$390 [1]**  25/24
**$390 million [1]**  25/24
**$395 [6]**  25/20 33/8 33/10 42/1
54/25 56/24
**$395 million [4]**  25/20 33/10 42/1
56/24
**$4 [1]**  56/10
**$4.8 [2]**  31/22 32/7
**$4.8 million [1]**  32/7
**$5 [1]**  25/25
**$5 million [1]**  25/25
**$5,000 [1]**  61/9
**$500,000 [4]**  39/6 54/16 54/16
54/20
**$67 [3]**  36/19 59/23 59/23
**$67 million [3]**  36/19 59/23 59/23
**$70,000 [1]**  56/1
**$71 [1]**  32/15
**$72 [4]**  22/21 32/15 32/18 32/20
**$72 million [3]**  22/21 32/15 32/18
**$8 [1]**  56/13
**$8 million [1]**  56/13
**$80 [3]**  33/6 39/14 39/17
**$80 million [3]**  33/6 39/14 39/17
**$95 [1]**  33/7
**$95 million [1]**  33/7

**'**

**'37 [1]**  41/7

**1**

**1,250,000 [1]**  54/25
**1,300 [1]**  32/25
**1,350 [1]**  60/20
**1,354 [1]**  33/1
**10 [1]**  38/2
**10-minute [1]**  40/14

**100 [3]**  9/24 30/25 49/10
**100,000 [2]**  8/3 48/3
**100,000 [1]**  52/7
**10005 [1]**  2/4
**10:00 [1]**  72/13
**10s [2]**  23/7 36/3
**11 [1]**  44/16
**112,000 [1]**  22/22
**1123 [1]**  45/2
**1139 [1]**  45/2
**116 [2]**  4/23 38/13
**119,000 [2]**  22/19 22/20
**12 million [2]**  56/15 56/16
**12-month [6]**  7/9 51/12 52/2 52/5
52/9 52/10
**125 [1]**  43/16
**12MDVJ [1]**  28/2
**12th [1]**  71/23
**1301 [1]**  1/20
**134 million [2]**  55/4 56/17
**13th [3]**  70/24 71/2 71/23
**145 [1]**  45/1
**149 [1]**  29/2
**14DJPK [1]**  28/6
**15th [2]**  72/3 72/6
**17 [1]**  50/2
**178 [1]**  43/16
**18 [2]**  4/9 6/16
**19 [1]**  44/16
**1956 [6]**  38/6 39/3 39/4 39/21
40/1 54/14
**1960 [2]**  4/20 15/5
**1998 [2]**  45/3 54/7
**1:30 [5]**  72/3 72/9 72/15 72/16
72/19
**1:36 [1]**  1/6
**1st [3]**  70/4 71/4 71/8
**1YZ [2]**  64/12 66/22

**2**

**2 million [1]**  60/17
**2 percent [1]**  56/12
**20 million [1]**  32/5
**20001 [1]**  2/9
**20005 [1]**  1/21
**2011 [1]**  42/10
**2012 [7]**  61/2 61/4 63/14 63/21
65/21 65/23 66/12
**2015 [4]**  42/2 42/4 42/9 51/22
**2017 [1]**  51/20
**2019 [1]**  42/14
**2021 [1]**  42/12
**2024 [3]**  1/5 44/15 73/10
**20530 [2]**  1/14 1/17
**21 [7]**  1/5 7/19 10/8 10/12 11/1
11/9 18/22
**21-399 [2]**  1/4 3/2
**22nd [2]**  27/21 44/15
**23rd [1]**  73/10
**27th [1]**  42/12
**28 [1]**  27/22
**2:39 [1]**  40/18

**3**

**3 percent [3]**  20/18 56/12 56/14
**30 [1]**  2/3
**30 million [1]**  60/14
**309 [1]**  27/23
**312 [1]**  55/1
**316 [1]**  27/23
**32 [1]**  67/7
**32.2 [3]**  12/15 12/21 67/11
**321 [1]**  54/7
**326 [3]**  66/18 66/19 67/1
**33 [1]**  27/22
**330 [1]**  41/5
**333 [1]**  2/8
**389 [1]**  30/12
**395 million [4]**  56/18 57/11 59/18
65/7
**399 [2]**  1/4 3/2
**3:50 [1]**  72/23

**3d [2]**  41/5 43/16

**4**

**400 million [1]**  38/9
**42 [1]**  56/3
**424 [1]**  41/5
**434 [1]**  41/7

**5**

**5.1527 [1]**  1/17
**500,000 [1]**  38/7
**515 [1]**  9/24
**524 [1]**  54/7
**58,000 [1]**  56/2

**6**

**60 [3]**  28/1 28/3 28/4
**60.8 [1]**  28/12
**601 [3]**  1/16 37/6 42/19
**603D [2]**  27/23 27/24
**660 [1]**  29/2
**67 [1]**  44/15
**67 million [6]**  36/4 36/6 36/23
55/2 59/22 60/14
**6710 [1]**  2/8
**680 [1]**  41/14

**7**

**71 [3]**  22/20 32/17 32/17
**721 [1]**  31/21
**78 [1]**  59/21

**8**

**8 million [2]**  37/19 37/23
**80 million [1]**  60/19
**80,000,000 [1]**  65/4
**81 [1]**  44/16
**821 [2]**  12/16 12/20
**853 [16]**  7/19 7/20 10/8 11/1 14/6
14/6 14/6 14/11 14/13 14/17 18/23
21/7 41/10 41/17 48/15 62/13
**892 [1]**  7/16
**8th [8]**  2/4 71/11 71/17 72/6 72/8
72/9 72/12 72/19

**9**

**925,744 [1]**  66/21
**94,000 [1]**  23/6
**95,000,000 [1]**  65/4
**950 [1]**  1/14
**982 [17]**  4/9 6/16 7/3 8/3 8/4
10/7 10/11 11/5 14/12 15/4 15/6
15/14 21/22 41/16 41/17 48/15
51/8
**986 [1]**  30/12
**990 [1]**  41/14
**992 [1]**  14/13

**A**

**abetting [1]**  20/16
**ability [7]**  7/18 29/19 29/19
29/22 30/3 30/9 30/9 43/3
**able [12]**  13/11 15/22 16/2 24/7
28/6 28/7 31/7 33/9 34/25 47/23
56/25 57/22
**about [53]**  3/20 7/17 7/21 8/6
8/12 9/25 10/2 11/1 16/20 22/3
22/20 23/6 26/20 28/1 29/18 31/20
31/22 32/14 32/25 33/6 33/8 47/22
48/24 49/1 49/3 51/17 51/18 51/18
52/17 55/14 57/7 57/7 58/6 58/12
59/1 60/7 60/11 61/9 62/7 62/7
63/5 63/11 64/12 65/6 65/7 67/4
67/6 67/12 68/6 69/4 69/7 71/15
72/3
**above [1]**  73/5
**above-entitled [1]**  73/5
**abstraction [1]**  60/12
**abstractions [1]**  60/13
**Abuse [1]**  24/10
**acceptable [1]**  71/11

**A**

**access [1]** 69/3
**accommodated [1]** 70/16
**accomplished [1]** 5/18
**according [1]** 56/7
**account [19]** 15/21 15/22 16/3 17/4 19/22 24/3 26/22 26/23 27/15 27/18 27/20 27/24 28/1 28/3 28/18 28/18 43/3 47/23 59/16
**accounting [4]** 43/2 43/8 43/10 63/2
**accounts [5]** 13/7 17/1 19/13 19/16 23/24
**accurate [1]** 42/22
**act [3]** 19/9 19/9 24/10
**Acted [1]** 7/3
**acting [1]** 51/10
**action [1]** 1/3 16/8 49/19
**activity [6]** 29/6 40/8 45/20 49/20 50/14 58/2
**acts [1]** 18/24
**actual [7]** 11/10 11/12 11/12 11/15 12/7 13/12 40/9
**actually [25]** 7/23 8/7 8/9 8/11 10/16 10/18 13/12 13/25 14/9 20/18 23/16 23/19 31/2 31/21 43/19 45/13 47/20 53/12 54/20 56/22 57/20 58/7 59/7 65/25 66/10
**add [2]** 3/24 36/22
**address [38]** 4/5 14/16 15/15 21/24 21/25 26/9 27/16 27/16 28/2 28/5 28/5 28/13 35/14 57/5 60/23 63/9 63/10 63/12 63/14 63/16 63/18 63/22 63/23 64/4 64/6 64/12 64/14 64/22 65/14 65/16 65/20 65/23 66/5 66/12 66/13 66/22 66/23 67/2
**addresses [10]** 27/14 63/10 63/12 63/24 64/13 64/16 66/6 66/21 66/22 67/1
**advance [4]** 3/16 67/9 69/21 71/18
**advertised [2]** 5/15 5/21
**Affairs [1]** 62/23
**afield [1]** 20/7
**afraid [1]** 18/6
**after [6]** 42/4 42/11 55/4 65/23 71/7 71/8
**afternoon [5]** 3/6 3/8 3/9 3/12 44/15
**afterward [1]** 61/6
**again [15]** 9/7 21/1 26/16 28/22 47/18 50/5 50/13 51/16 53/3 57/15 59/23 61/7 63/5 66/8 71/10
**against [11]** 16/12 17/7 21/8 21/18 24/20 31/22 45/25 49/13 49/19 50/10 61/20
**agency [1]** 65/8
**aggregate [2]** 28/17 51/16
**aggregated [1]** 52/19
**agree [4]** 26/3 35/18 38/3 55/24
**ahead [3]** 4/1 10/5 40/13
**aiding [1]** 20/15
**airport [1]** 55/21
**Alden [1]** 3/7
**algorithm [1]** 48/4
**all [54]** 3/12 3/12 3/16 3/20 4/14 5/10 5/12 6/9 7/11 8/6 9/12 12/11 13/8 13/21 16/2 17/23 17/25 19/23 22/22 23/20 26/25 27/12 30/16 33/17 37/14 38/13 40/2 40/10 40/19 42/5 42/8 43/23 44/6 45/7 45/20 47/5 48/14 55/21 55/25 57/17 58/10 59/20 61/5 61/5 62/3 65/15 65/16 65/21 66/13 66/21 67/1 67/5 68/25 72/21
**allow [2]** 41/20 67/9
**allows [2]** 14/22 61/16
**almost [4]** 7/13 28/2 42/8 63/1
**along [1]** 6/23
**AlphaBay [2]** 42/4 51/20
**already [7]** 45/10 50/3 50/15

50/16 51/22 60/2 72/1
**all [116]** 3/7 3/20 3/23 3/24 9/16 28/24 34/22 41/19 42/6 43/5 44/16 46/16 52/18 56/4 62/25
**also a [1]** 45/4
**alternative [2]** 15/19 16/6
**Although [5]** 20/9 34/7 40/5 51/25 60/18
**am [62]** 3/15 4/3 10/5 10/14 11/19 11/21 11/21 13/3 13/5 14/11 14/12 18/4 18/6 19/9 21/25 24/21 25/5 25/5 26/24 26/24 29/14 29/21 30/11 37/16 38/3 38/9 38/23 40/20 40/23 42/3 42/24 44/6 44/21 46/14 47/18 48/10 48/12 48/13 48/14 49/22 50/19 52/21 52/20 52/21 55/11 55/18 56/9 56/10 59/3 59/25 61/21 66/7 66/15 67/6 67/11 67/19 67/25 68/6 68/7 68/14 71/3
**Amazon [2]** 36/14 36/18
**ambiguity [1]** 67/4
**Amendment [10]** 4/6 29/15 33/17 45/5 50/19 52/25 53/9 53/17 53/21 53/24 57/1
**AMERICA [2]** 1/3 3/3
**among [3]** 23/15 30/16 57/24
**amount [31]** 5/7 15/23 18/11 22/11 22/23 22/24 23/18 23/19 24/4 24/15 29/3 29/12 31/11 32/16 33/13 33/14 35/6 35/7 37/18 38/4 38/5 38/22 38/25 39/1 45/8 48/7 49/11 50/10 50/22 54/20 65/8
**amounting [1]** 51/12
**amounts [2]** 45/9 47/23
**analogies [1]** 58/16
**analogize [1]** 58/15
**analyses [1]** 51/1
**analysis [11]** 4/6 33/17 41/15 45/5 50/19 52/25 53/9 53/17 53/22 54/12 55/7
**analytic [1]** 12/5
**anarchy [1]** 58/24
**announced [1]** 28/25
**anonymity [1]** 18/8
**another [9]** 6/4 6/14 47/2 51/14 60/19 61/22 68/22 68/25 71/3
**answer [7]** 8/22 40/22 47/6 47/21 58/22 58/23 58/23
**any [37]** 7/9 8/14 9/4 11/20 12/25 14/8 14/17 14/21 15/11 16/12 18/16 23/22 26/17 26/23 27/7 27/8 27/8 28/21 28/23 29/12 40/22 43/24 47/10 47/19 50/13 51/7 52/2 52/2 52/4 52/5 52/8 52/10 53/13 58/14 59/6 61/4 61/25
**anybody [1]** 17/15
**anymore [1]** 5/12
**anything [10]** 3/24 8/20 11/3 14/7 40/10 40/24 42/16 61/24 62/4 63/20
**anyway [1]** 71/22
**appeal [1]** 31/11
**Appeals [1]** 31/10
**APPEARANCES [3]** 1/12 1/23 2/1
**appears [2]** 17/15 63/12
**applied [2]** 21/20 33/19
**applies [9]** 6/17 10/16 13/9 14/7 18/19 51/8 52/8 52/10 52/12
**apply [10]** 9/16 12/11 12/17 12/22 14/6 35/4 46/6 52/5 52/20 55/8
**applying [2]** 33/21 52/18
**appreciate [2]** 22/2 57/1
**appreciation [1]** 23/6
**approach [1]** 3/4
**appropriate [2]** 30/15 38/17
**approximately [1]** 22/19
**April [1]** 42/12
**arbitrarily [1]** 65/18
**arbitrary [1]** 66/14
**are [125]**
**are from [1]** 50/6
**area [3]** 48/11 53/8 59/1

**aren't [4]** 44/7 49/5 53/3 53/15
**arguably [3]** 8/19 34/25 34/23
**argued [1]** 51/9
**argument [6]** 19/18 29/15 40/5 45/17 48/20 57/14
**arguments [1]** 67/20
**array [1]** 64/4
**arrested [5]** 16/18 23/1 42/12 55/20 56/23
**as [74]**
**aside [4]** 22/8 48/16 48/18 54/14
**ask [6]** 51/7 59/13 59/15 68/23 69/10 69/19
**asked [2]** 40/21 47/15
**asking [5]** 11/21 20/11 40/3 40/6 61/7
**aspects [2]** 4/11 57/5
**assert [1]** 17/18
**asset [3]** 13/10 44/11 44/20
**assets [29]** 10/13 10/15 11/8 11/9 12/14 12/24 13/1 13/10 14/23 16/5 17/25 20/23 20/25 23/22 22/23 31/6 32/2 42/8 44/12 44/23 45/8 47/2 47/10 55/21 55/22 56/22 57/2 60/15 63/3
**assume [3]** 36/19 38/21 50/5
**assuming [5]** 18/21 22/13 42/21 49/1 70/18
**assumptions [1]** 58/25
**astronomical [1]** 31/6
**atomic [1]** 29/8
**attached [1]** 65/21
**attention [1]** 66/18
**August [1]** 1/5
**authorities [2]** 17/1 18/7
**authority [2]** 62/18 62/20
**authorizes [1]** 15/7
**authorizing [1]** 15/13
**available [6]** 6/1 7/7 68/25 69/23 70/3 71/5
**Ave [2]** 1/14 1/20
**Avenue [1]** 2/8
**aware [3]** 25/5 25/5 41/4
**away [3]** 31/7 32/21 33/10
**awful [1]** 8/18

**B**

**back [30]** 5/16 6/1 6/13 10/6 14/16 14/18 15/6 15/6 18/10 18/14 18/23 19/7 21/2 24/4 28/24 31/2 40/15 47/1 49/2 49/12 51/7 52/21 54/24 57/19 61/11 61/12 61/20 62/16 63/4 67/12
**bad [1]** 14/1
**baffled [1]** 65/14
**bag [3]** 6/2 6/4 6/6
**Bajakajian [11]** 4/7 30/2 30/10 33/18 33/18 35/15 39/13 39/19 53/23 54/2 65/2
**bank [16]** 6/3 13/7 15/15 15/21 15/22 16/3 19/12 19/16 19/19 23/24 24/2 24/23 26/22 26/23 45/19 53/7
**bankruptcy [3]** 2/7 34/24 35/1
**barring [1]** 14/5
**based [9]** 4/24 12/22 19/9 19/9 21/4 34/2 38/12 40/4 57/1
**basic [1]** 40/21
**basically [2]** 41/3 43/17
**basis [2]** 11/1 13/4
**be [80]**
**because [60]** 5/11 7/12 8/11 8/20 8/22 8/23 8/24 11/21 12/1 13/13 15/7 16/8 18/5 20/1 20/5 20/17 24/8 25/18 28/8 34/23 36/7 39/15 42/22 43/3 43/12 43/17 44/6 45/5 47/24 48/5 48/11 48/15 48/20 49/8 49/14 49/17 50/15 50/20 51/3 52/22 52/24 53/12 54/11 54/19 55/19 55/24 56/9 56/11 58/6 58/11 58/23 60/22 64/6 65/15 68/1 68/11 68/17 70/8 70/16 71/10

**B**

become [1]  49/16
becomes [1]  67/10
been [27]  10/19 13/14 22/14 22/15 24/17 25/7 25/8 28/19 31/21 32/11 33/19 33/24 34/24 39/16 48/17 48/19 50/3 50/12 50/16 56/4 57/6 57/8 57/9 65/14 66/23 70/13 70/13
before [13]  1/9 12/24 16/1 19/17 42/2 42/9 51/6 51/22 54/5 63/21 65/25 67/10 67/22
begin [1]  40/25
beginning [1]  70/6
beginning October [1]  70/6
behalf [2]  8/10 27/17
being [24]  7/20 7/22 10/20 13/7 18/1 18/17 21/5 24/11 27/24 49/5 49/8 50/14 52/19 53/13 55/1 55/9 57/8 58/19 58/21 59/14 61/15 64/6 65/18 69/11
belabor [3]  60/22 65/13 66/8
believe [10]  10/9 37/5 42/6 42/19 47/22 54/17 60/19 60/24 61/1 65/3
belonged [1]  10/17
belonging [2]  15/11 62/21
Bennett [1]  30/12
besides [1]  42/14
better [1]  58/4
between [6]  26/21 27/21 37/23 41/17 43/18 54/10
beyond [3]  13/15 16/4 16/8
big [2]  11/24 22/21
Bikundi [3]  30/6 39/13 43/15
bill [2]  9/7 9/21 23/8 32/20
billion [8]  9/7 9/21 23/8 32/20 34/20 35/2 35/10 35/24
billion-dollar [1]  35/24
billions [5]  9/2 9/2 9/18 34/16 35/8
bills [4]  6/2 6/5 6/6 22/21
Binance [1]  57/7
bit [16]  5/5 6/7 7/25 18/14 22/18 26/15 31/3 48/10 53/17 56/9 58/23 59/5 66/14 67/22 68/8 68/16
Bitcoin [93]
Bitcoins [1]  50/6
Bitfinex [1]  23/5
blink [1]  33/11
blockchain [15]  28/3 28/8 28/10 28/15 43/6 47/24 48/1 48/2 48/3 48/6 60/23 60/24 60/25 65/22 65/23
bond [1]  31/10
book [1]  43/8
bookkeeping [1]  63/1
books [4]  9/13 27/5 28/20 47/6
bordering [1]  25/19
Bornfield [1]  45/1
borrowed [1]  10/15
borrowing [1]  7/19
borrows [3]  10/11 10/12 14/13
both [3]  7/19 25/1 39/4
bottom [2]  26/14 37/12
bought [1]  56/3
break [4]  9/11 10/22 40/14 70/14
breaks [1]  5/23
brick [1]  58/16
brief [2]  25/6 33/7
briefing [1]  52/16
briefly [1]  40/21
bring [1]  60/1
broad [1]  4/10
broader [2]  8/4 14/12
broadly [1]  4/18
BRODIE [1]  1/15
Brooklyn [1]  2/4
brother [1]  31/18
brought [1]  62/11
BROWN [16]  1/15 3/6 42/19 42/21 42/24 43/4 47/22 54/18 55/3 55/13 55/22 57/19 62/3 66/2 66/16 69/2

BTC [1]  23/15
BTС-е [1]  23/7
bunch [1]  31/23
business [10]  4/24 9/19 9/20 9/25 10/3 16/23 16/25 19/6 62/19 64/11
buy [2]  19/21 50/3
buying [1]  27/5

**C**

calculated [1]  29/12
calculating [1]  29/9
calculus [1]  65/9
call [3]  55/15 56/7 58/16
called [2]  5/1 21/17
calling [1]  40/25
came [5]  20/18 27/11 42/5 49/5 57/16
can [44]  4/5 5/18 5/20 8/2 10/22 13/17 15/11 19/15 21/24 22/7 24/8 27/12 33/18 33/18 36/3 36/7 40/15 46/10 48/3 48/5 48/7 48/8 49/2 49/24 50/4 50/13 50/13 59/16 60/4 60/5 61/10 61/13 61/19 61/19 62/9 67/12 67/14 68/21 69/19 69/20 70/19 71/1 72/12 72/16
can't [19]  5/12 5/13 9/9 13/13 14/3 16/5 17/8 25/14 34/14 37/19 43/3 43/12 44/5 46/13 48/2 53/23 59/17 61/9 68/20
candidly [1]  67/21
candor [1]  67/19
cannot [1]  44/24
Cano [1]  34/4
Cano-Flores [1]  34/4
capital [1]  64/10
captured [1]  37/2
car [9]  5/7 5/8 13/8 13/9 16/17 16/18 16/19 16/20 53/7
card [1]  50/11
cartel [4]  34/5 45/18 45/20 45/21
case [38]  3/2 12/22 13/17 15/4 16/16 16/17 16/19 17/11 18/15 19/1 19/11 19/24 20/8 25/20 29/7 31/11 31/17 31/20 31/21 34/2 34/19 34/23 35/2 35/6 35/9 40/6 41/8 41/14 43/18 43/20 44/23 45/4 53/23 57/7 58/15 60/7 69/10 69/14
cases [12]  13/20 24/17 25/6 31/4 31/5 31/6 41/1 41/7 44/25 48/17 55/6 69/16
cash [2]  13/9 55/24
cashed [2]  37/22 37/23
CATHERINE [1]  1/13
caught [2]  25/1 47/25
Ccips [1]  1/19
ceiling [1]  59/20
cent [1]  22/13
cents [2]  20/17 20/19
certain [10]  5/7 6/24 15/7 15/8 43/12 49/15 49/20 61/14 64/22 69/9
certainty [2]  29/9 29/12
certify [1]  73/3
cetera [1]  64/12
CFTC [1]  58/19
Chainalysis [1]  48/4
chance [1]  40/14
changed [2]  37/24 64/24
charged [1]  56/11
chart [1]  56/7
check [1]  71/19
checked [1]  56/2
checking [2]  70/23 71/12
child [4]  19/14 47/8 48/21 50/3
Chris [1]  3/6
CHRISTOPHER [1]  1/15
circuit [16]  10/3 28/25 29/1 29/22 30/6 30/7 30/12 33/19 34/3 34/7 34/9 39/12 39/15 41/14 41/14 45/2
Circuit's [1]  9/23
circuits [1]  30/8

circumstance [3]  8/12 26/2 45/23
circumstances [1]  47/7
cited [1]  25/6
cites [1]  48/16
Citibank [3]  9/1 9/3 9/4
Citibank's [1]  9/13
claim [9]  16/20 17/6 17/7 19/8 19/8 20/3 20/5 21/4 21/8
claimant [2]  17/15 18/25
claimant's [1]  19/7
claimants [2]  17/18 20/23
claimed [1]  25/18
claims [1]  20/23
clarification [1]  63/6
clarify [1]  66/17
clause [2]  29/24 35/4
clean [2]  5/20 15/21
clear [6]  6/8 43/23 44/4 57/12 58/5 61/3
clearly [1]  21/20
clerk [1]  68/23
clerk's [1]  69/23
client [1]  58/19
close [2]  46/9 56/1
closer [1]  35/24
cluster [21]  32/25 33/4 33/5 33/6 63/7 63/7 63/9 63/9 63/17 63/23 64/3 64/9 64/16 64/20 64/24 65/4 66/4 66/6 66/9 66/21 67/4
clustered [1]  63/24
clustering [1]  66/9
clusters [2]  64/7 65/21
co [1]  9/14
co-mingled [1]  9/14
cocounsel [1]  34/18
code [1]  58/7
codified [1]  12/9
coffers [1]  9/4
colleagues [1]  62/22
collect [5]  20/17 20/20 62/9 62/11 63/3
collected [3]  20/13 20/25 25/22
collecting [1]  20/22
collection [2]  62/7 62/10
collects [1]  20/11
COLUMBIA [1]  1/1
come [12]  10/6 17/1 17/18 17/23 24/25 25/21 40/15 48/11 53/16 62/16 68/10 70/14
comes [2]  46/2 57/19
coming [8]  19/21 21/2 26/24 27/1 27/2 37/20 42/1 56/20
comment [2]  3/18 67/18
commingled [2]  13/16 57/14
commingles [1]  15/21
commingling [2]  12/1 12/3
commission [2]  6/23 18/23
commit [2]  6/19 53/13
commodity [1]  58/20
common [2]  41/19 45/12
compared [1]  28/10
compel [1]  22/7
competing [1]  20/3
completed [1]  32/22
completely [4]  12/8 16/24 28/5 28/13
complicated [1]  69/24
computer [2]  24/10 58/15
concedes [1]  35/3
conceding [1]  59/20
concept [2]  26/21 66/9
concerned [2]  29/18 69/7
conclude [1]  12/22
concluded [1]  72/23
conclusion [1]  26/14
concrete [1]  31/13
conditions [2]  7/2 52/13
conduct [2]  16/1 17/1
conducted [1]  7/7
conference [1]  58/17
conferred [1]  23/13
conflict [2]  70/21 70/22

**C**

congress [10]  4/19 6/24 11/11
11/25 12/7 12/10 12/16 21/20
33/22 51/3
congressional [2]  6/15 7/12
consider [2]  30/2 30/21
consideration [2]  30/10 30/15
considered [1]  30/13
consistently [1]  16/14
conspiracies [1]  24/18
conspiracy [9]  24/12 24/16 26/7
26/20 39/4 40/2 40/2 40/6 40/8
constitutes [1]  73/4
constituting [1]  14/8
Constitution [1]  2/8
constitutional [4]  9/9 30/19 34/9
65/2
constitutionally [1]  39/19
constructed [1]  6/14
construed [3]  4/16 4/23 10/15
contained [1]  44/17
contemplates [1]  67/23
context [1]  51/4
continue [2]  68/5 68/6
CONTINUED [2]  1/23 2/1
contract [2]  21/14 49/15
contrary [1]  11/4
control [3]  43/25 49/7 50/25
convening [1]  3/14
conversation [1]  38/24
converting [1]  36/16
convicted [4]  25/1 25/7 25/8
39/16
convinced [2]  18/9 31/9
convoluted [1]  23/25
cooperators [1]  69/10
corner [2]  49/24 50/16
corpus [1]  4/21
correct [3]  11/17 33/15 73/4
correctly [3]  44/19 44/21 59/4
corresponding [1]  28/4
coterminous [1]  11/16
could [34]  5/23 15/15 18/3 18/3
20/12 20/20 21/11 21/12 24/14
25/23 29/12 30/23 30/25 33/5
35/14 39/16 40/5 43/10 47/24
48/13 51/15 51/23 52/17 52/18
52/20 55/23 55/25 55/25 62/5 66/5
69/9 69/17 71/22 72/9
couldn't [1]  31/10
counsel [4]  3/4 3/5 70/3 70/19
count [6]  25/12 41/3 41/20 54/16
54/16 54/17
counterintuitive [1]  16/11
counting [5]  41/1 43/17 43/20
44/4 49/14
counts [3]  25/7 39/18 54/15
couple [6]  10/23 12/5 22/5 35/11
42/11 62/3
course [3]  7/5 46/10 71/21
court [78]
Court will [1]  44/14
Court's [5]  4/4 4/5 4/12 38/12
66/18
courts [8]  2/7 15/1 16/13 25/12
30/11 41/2 41/3 69/16
covered [1]  52/6
crashed [1]  56/5
credited [1]  27/18
crime [9]  6/19 35/22 46/25 48/23
48/25 53/1 53/10 53/18 54/13
crimes [4]  15/8 15/9 35/20 53/13
criminal [6]  1/3 3/2 17/4 49/19
49/20 58/2
criminals [1]  29/5
crippling [2]  60/5 60/15
criteria [1]  62/14
CRM [1]  1/19
cross [3]  14/25 35/5 42/7
cross-examination [1]  42/7
cross-reference [1]  14/25

crypto [1]  31/4
cryptocurrencies [1]  52/1
cryptocurrency [2]  22/18 31/5
cuff [1]  52/16
curious [2]  20/10 58/12
currencies [1]  23/14
currently [1]  18/1
custodial [3]  43/24 49/7 60/3
customer [3]  20/4 21/13 27/15
customer's [2]  20/3 21/4
customers [7]  19/15 19/16 19/18
19/21 19/23 20/1 27/3
cut [1]  6/23
cybercriminals [1]  19/18

**D**

D.C [9]  28/25 29/22 30/6 30/7
34/3 34/7 34/8 39/12 39/15
darknet [13]  23/13 26/12 26/25
27/9 27/13 36/5 36/8 36/8 36/10
36/23 37/8 43/9 47/7
data [2]  52/15 52/20
date [9]  19/7 28/9 28/11 48/6
68/22 68/25 69/20 69/22 70/19
Dated [1]  73/10
dates [1]  69/9
Daubert [1]  42/6
day [5]  38/6 60/14 69/25 70/18
73/10
days [1]  42/11
DC [6]  1/5 1/14 1/17 1/21 2/9
42/14
dead [1]  58/14
dealers [1]  19/13
dealing [7]  10/14 11/2 19/20 26/1
46/4 49/22 51/5
debt [1]  62/10
decade [1]  51/18
decide [3]  21/11 21/17 25/16
deciding [1]  44/22
decision [3]  9/23 38/13 67/22
defendant [25]  1/7 2/2 3/10 7/3
7/7 7/15 7/24 8/9 11/9 15/20
15/25 16/1 16/2 16/3 16/7 17/8
17/12 18/20 25/6 25/8 25/11 33/9
39/5 62/21 67/11
defendant's [8]  4/19 11/4 18/15
18/16 18/21 30/13 32/24 44/18
defendants [1]  31/7
defense [5]  22/6 26/11 43/19
45/23 70/18
defer [1]  62/22
definition [3]  6/21 7/13 47/16
definitively [1]  61/22
DeFries [1]  29/1
depart [1]  21/21
DEPARTMENT [1]  1/13
depending [2]  55/22 55/23
depends [2]  37/21 37/21
deposit [5]  18/5 19/4 19/22 20/6
28/4
deposited [4]  18/2 19/10 63/20
63/20
depositing [1]  20/16
deposits [2]  19/3 53/2
depriving [1]  29/4
Dept [1]  1/20
deputy [2]  68/23 69/23
derived [1]  14/8
describe [1]  7/6
described [4]  14/17 15/2 15/3
27/23
design [2]  12/2 12/3
details [1]  58/9
determinate [1]  45/15
determine [2]  26/17 28/7
determining [2]  38/17 64/7
deterrence [2]  57/5 57/8
did [12]  7/4 7/6 18/8 22/22 27/9
30/2 30/2 34/9 34/12 47/21 65/12
72/3
didn't [14]  5/18 13/11 13/12

13/19 20/14 20/15 34/10 34/10
34/12 34/22 62/22 66/6
die [1]  52/21
difference [3]  11/15 26/21 41/17
different [22]  4/19 11/25 12/8
12/24 19/11 23/12 23/21 25/7
26/15 28/5 28/13 31/4 41/16 46/4
46/12 46/18 46/18 46/22 46/23
48/15 48/22 48/23
difficult [1]  68/12
difficulty [2]  11/24 15/18
diligence [1]  13/14
diminished [1]  13/16
direct [7]  36/4 36/24 37/2 37/7
44/25 59/22 66/17
direction [1]  4/4
directly [2]  27/2 36/10
dirty [1]  15/21
disadvantage [1]  18/6
discouraging [1]  29/6
discovery [1]  44/7
discrete [1]  10/23
discretion [2]  4/12 21/21
discuss [2]  29/14 41/7
discussed [4]  32/13 32/18 44/17
66/23
discussing [2]  55/3 66/23
discussion [2]  27/19 67/14
disproportionate [1]  59/6
distinguish [1]  57/18
distinguishes [2]  48/23 53/7
DISTRICT [4]  1/1 1/1 1/10 2/7
do [34]  5/11 17/7 25/16 33/18
33/23 33/25 36/14 36/15 37/9 46/2
48/13 51/7 55/3 57/22 59/10 59/13
59/17 62/7 64/7 64/11 67/11 68/7
68/19 68/22 69/10 70/19 70/22
71/1 71/9 72/2 72/9 72/15 72/16
72/20
doctrine [1]  18/23
does [21]  5/13 7/6 7/15 8/1 15/25
16/22 17/5 18/14 18/18 18/25
21/21 28/24 29/7 33/12 35/4 41/15
45/4 45/22 48/6 64/18 70/7
doesn't [17]  6/6 9/18 12/11 12/17
12/21 14/6 17/21 22/11 42/16
43/13 50/20 50/23 50/24 50/25
55/7 62/11 70/8
doing [4]  9/18 41/16 41/16 55/7
DOJ [3]  1/16 1/19 62/23
DOJ-CRM [1]  1/19
DOJ-USAO [1]  1/16
dollar [12]  9/1 9/21 20/17 20/20
22/21 35/24 37/7 45/25 46/17
49/20 49/24 49/24
dollars [16]  9/2 9/19 13/18 13/22
23/7 35/7 35/8 35/11 35/12 35/22
36/4 45/24 46/3 50/15 56/10 61/3
don't [45]  4/1 11/20 11/20 12/5
13/19 14/3 18/5 20/23 21/10 30/21
31/12 31/25 36/6 37/4 40/13 41/23
43/7 47/4 47/13 48/9 49/9 50/6
51/23 52/16 52/19 54/21 57/3 58/6
58/7 58/7 58/8 59/24 61/17 61/22
62/6 63/15 64/2 65/13 65/24 66/7
66/8 69/22 70/17 70/18 71/6
Donald [1]  31/9
done [4]  10/4 14/1 61/2 61/4
door [1]  20/13
double [9]  41/1 41/3 41/20 43/14
43/16 43/20 44/4 49/14 55/3
double-counting [1]  44/4
down [19]  9/11 10/23 16/17 17/25
24/2 42/2 42/9 47/10 51/18 51/20
51/22 54/2 55/25 56/4 58/16 65/5
70/19 71/17 72/14
downstream [2]  23/23 24/7
draft [1]  61/1
dramatically [1]  56/5
drive [2]  51/18 72/14
drug [13]  13/21 13/23 14/18 19/13
36/14 45/18 45/20 45/21 46/4 47/8

**D**

**drug...** **[3]** 48/21 49/21 53/16
**drugs [9]** 13/22 19/20 19/21 27/5 46/16 46/16 46/17 46/25 53/15
**due [2]** 13/14 23/6
**dues [1]** 60/6
**during [7]** 28/11 52/4 52/8 52/10 56/1 64/22 66/25

**E**

**each [2]** 33/20 37/7
**ear [1]** 47/25
**earlier [2]** 14/16 32/14
**early [1]** 64/23
**easy [3]** 28/16 58/25 60/13
**ECF [2]** 4/23 38/13
**effective [1]** 57/22
**efficient [2]** 67/6 68/17
**Eighth [10]** 4/6 29/15 33/17 45/4 50/19 52/25 53/9 53/17 53/21 59/8
**either [4]** 9/8 49/25 55/10 68/7
**EKELAND [7]** 2/2 2/3 3/10 4/2 40/16 40/19 67/25
**Ekeland's [1]** 63/19
**Elfgeeh [1]** 9/24
**else [11]** 6/22 8/21 13/15 35/8 40/10 41/18 50/21 50/23 54/12 55/12 61/24
**else's [2]** 5/19 16/19
**email [1]** 61/21 68/24
**emphasizing [1]** 35/25
**employ [1]** 64/7
**enacted [1]** 11/25
**enacting [1]** 7/12
**end [5]** 42/10 60/13 68/17 70/24 71/1
**enforced [1]** 62/22
**enforcement [2]** 5/19 57/24
**engage [2]** 16/25 50/13
**engaged [4]** 13/23 47/7 51/11 58/2
**engages [1]** 45/20
**engaging [2]** 29/6 36/16
**enlighten [1]** 62/5
**enough [2]** 9/15 36/19
**enriched [1]** 49/16
**enter [6]** 20/10 25/20 47/15 64/14 67/8 68/4
**entered [2]** 24/18 63/25
**enterprise [5]** 15/10 19/5 19/6 46/19 46/23
**enters [2]** 47/15 50/9
**entire [2]** 36/6 64/19
**entirely [7]** 10/19 18/4 18/9 38/3 46/3 46/18 46/23
**entitled [4]** 8/7 22/12 24/6 73/5
**especially [1]** 19/20
**essence [2]** 35/19 35/22
**essential [1]** 58/3
**essentially [5]** 7/1 16/7 53/2 60/3 65/5
**establish [1]** 29/3
**established [1]** 33/17
**estate [1]** 34/25
**et [1]** 64/12
**et cetera [1]** 64/12
**evaluating [1]** 30/14
**even [22]** 8/20 22/13 23/19 24/5 24/13 24/14 29/11 30/10 30/18 31/7 31/25 46/13 48/12 48/16 49/9 54/23 57/12 58/8 59/22 60/14 60/14 61/3
**eventually [1]** 31/24
**ever [9]** 8/20 10/17 12/23 25/21 33/24 47/13 50/14 56/3 56/25
**every [6]** 19/22 19/22 20/17 20/19 22/12 67/2
**everybody [3]** 57/11 59/24 72/8
**everyone [5]** 11/20 58/1 67/17 69/23 70/3
**everything [8]** 25/22 35/8 37/23 52/19 57/15 57/24 60/17 64/3

**evidence [9]** 5/16 6/15 24/8 27/3 28/11 28/19 38/6 43/13 52/7 59/2
**evolve [1]** 51/4
**evolved [1]** 51/3
**exact [4]** 15/25 24/4 47/16 54/21
**exactitude [1]** 29/3
**exactly [5]** 10/3 26/17 35/9 54/5 68/20
**examination [1]** 42/7
**example [10]** 5/10 6/1 6/20 15/15 26/8 26/10 30/11 32/13 50/5 53/7
**examples [3]** 31/5 31/13 53/7
**except [1]** 49/25
**exception [8]** 51/8 51/10 51/20 52/5 52/8 52/10 52/12 52/18
**excess [1]** 32/20
**excessive [12]** 8/23 9/17 10/5 29/24 35/4 35/5 35/12 39/19 50/19 51/6 57/4 59/8
**excessiveness [3]** 63/5 65/3 65/9
**exchange [1]** 22/18
**exchanges [2]** 23/15 23/15
**exercise [2]** 13/14 26/16
**exhibit [12]** 27/23 27/23 37/5 37/6 37/10 37/12 42/19 60/25 61/1 66/18 66/20 67/1
**Exhibit 316 [1]** 27/23
**Exhibit 326 [1]** 66/18
**Exhibit 601 [2]** 37/6 42/19
**Exhibit 603D [1]** 27/23
**Exhibits [1]** 27/22
**expense [1]** 36/15
**expert [1]** 42/5
**explained [2]** 5/17 27/25
**explanation [1]** 43/12
**Explorer [1]** 60/25
**exploring [1]** 15/19
**exposure [3]** 36/22 37/2 37/7
**expressly [1]** 30/13
**extension [1]** 12/10
**extent [2]** 30/15 67/16
**extinguished [1]** 18/22
**extinguishes [1]** 18/15
**extremely [1]** 31/7
**eye [2]** 33/11 57/12

**F**

**F.3d [5]** 9/24 29/2 30/12 41/14 45/2
**facilitate [3]** 5/2 6/10 33/5
**facilitates [1]** 19/4
**facilitating [5]** 4/22 4/24 4/25 12/4 15/10
**facing [1]** 57/10
**fact [11]** 6/5 9/23 14/5 22/9 25/5 43/13 46/11 52/19 53/11 55/8 66/11
**factor [6]** 29/23 30/4 30/7 30/16 30/20 39/19
**factors [8]** 30/17 33/19 33/20 33/20 35/15 39/13 54/13 65/2
**facts [2]** 20/7 46/14
**factual [1]** 21/25
**factually [5]** 5/5 5/15 21/25 22/17 26/4
**failing [1]** 9/16
**failure [1]** 9/19
**fair [3]** 9/15 35/12 36/19
**fairness [1]** 30/8
**far [3]** 8/15 20/7 65/16
**faster [1]** 68/10
**favor [1]** 33/21
**FBI [1]** 13/6
**February [2]** 27/21 44/15
**February 22nd [2]** 27/21 44/15
**federal [1]** 12/23
**fee [2]** 37/24 56/12
**feels [1]** 8/18
**fees [2]** 55/15 56/6
**few [3]** 23/23 29/17 35/11
**fewer [2]** 30/25 51/11
**fiat [1]** 23/24

**figure [7]** 27/10 34/16 35/24 49/18 53/20 55/23 56/24
**figured [1]** 44/5
**filed [1]** 33/7
**final [8]** 22/16 32/10 62/5 65/12 66/16 67/10 67/22 67/24
**finally [1]** 32/11
**find [4]** 45/13 58/14 59/17 68/25
**finds [2]** 29/24 35/4
**fine [26]** 8/19 14/1 38/4 38/5 38/6 38/17 39/1 39/5 39/6 39/10 39/18 39/20 50/24 53/25 54/10 54/16 54/16 54/17 55/10 56/17 59/2 59/3 59/8 61/7 61/15 68/19
**fined [1]** 39/17
**fines [8]** 8/23 9/17 10/5 50/19 51/6 54/10 54/15 60/4
**first [11]** 7/21 26/20 56/2 63/11 63/15 63/16 64/14 65/15 65/16 66/22 71/4
**fit [1]** 34/13
**five [1]** 13/13
**fixed [1]** 11/21
**flip [1]** 17/21
**Floor [1]** 2/4
**Flores [1]** 34/4
**flow [3]** 10/2 26/21 28/17
**flowed [2]** 38/13 50/7
**flows [1]** 51/22
**focus [1]** 7/21
**focused [2]** 7/16 10/9
**focuses [1]** 54/8
**Fog [67]** 4/25 5/15 5/17 5/18 5/20 6/10 17/23 18/1 18/3 19/2 19/3 19/3 19/10 20/14 20/18 21/13 22/11 23/9 23/17 24/2 24/5 24/12 24/16 25/23 26/1 26/6 26/19 27/2 27/4 27/12 32/25 36/1 36/24 36/24 38/14 41/23 42/9 42/13 42/17 43/21 43/22 44/1 44/13 44/18 49/2 49/3 49/12 50/7 50/20 53/2 53/5 53/16 55/16 56/11 57/17 58/1 61/4 63/6 63/23 64/10 64/11 64/14 64/15 64/23 65/4 66/21 67/4
**folks [1]** 18/2
**follow [2]** 4/4 24/21
**Following [1]** 17/11
**foregoing [1]** 73/4
**forfeit [6]** 11/9 13/22 14/4 15/23 24/7 50/1
**forfeitable [2]** 44/20 44/23
**forfeited [14]** 16/18 17/14 18/17 22/9 22/13 24/11 33/14 49/25 50/3 50/12 50/13 50/17 63/6 63/23
**forfeiting [2]** 8/19 13/20
**forfeits [2]** 13/21 26/5
**forfeiture [99]**
**forfeitures [1]** 26/11
**forth [1]** 7/3
**fortuitously [1]** 9/14
**forward [1]** 17/18
**found [6]** 12/23 28/11 32/24 33/2 34/12 43/16
**founded [1]** 6/9
**four [1]** 33/20
**Fourth [1]** 30/11
**frame [1]** 35/14
**frankly [1]** 68/1
**fraud [5]** 24/9 24/10 25/9 39/15 43/18
**free [1]** 50/11
**Friday [5]** 70/4 70/9 71/10 72/2 72/2
**Fridays [2]** 70/7 70/8
**Friedrich [4]** 70/6 70/13 70/15 71/15
**front [8]** 31/14 37/9 37/10 54/21 56/15 70/5 70/15 71/15
**frozen [1]** 17/23
**FTX [1]** 34/19
**function [1]** 41/23
**functioning [3]** 53/5 57/17 58/8

**F**

funds [97]
fungible [1]  46/2
further [6]  40/12 67/12 67/14
67/18 67/22 68/3
furtherance [1]  9/13
future [4]  29/19 29/19 30/9 30/9

**G**

gains [1]  29/5
garnish [2]  61/13 62/11
garnishment [1]  61/16
Gary [2]  31/14 31/20
general [1]  28/24
generally [1]  16/21
generated [1]  27/16
get [27]  5/18 5/20 8/1 8/1 8/2
8/7 8/13 13/17 18/10 25/1 36/17
42/17 48/4 49/13 50/11 50/25 55/3
55/4 61/10 61/10 68/2 68/9 68/20
68/21 69/8 69/21 71/18
gets [1]  61/12
getting [5]  24/21 26/24 36/2
43/14 52/24
gigantic [1]  59/5
give [6]  4/2 20/19 31/13 40/14
62/3 68/8
given [7]  14/5 26/18 27/8 28/20
49/7 52/17 52/18
giving [1]  18/24
go [25]  4/1 6/13 14/16 16/12
17/11 28/24 36/14 36/15 40/13
46/10 48/3 48/4 52/14 52/21 53/21
54/24 54/24 55/25 55/25 60/24
65/5 65/5 66/5 67/12 68/2
goes [9]  27/6 41/7 49/11 49/23
52/25 53/16 56/3 61/20 62/25
going [35]  5/8 5/16 6/1 7/13 14/2
18/13 20/4 21/7 21/24 26/2 27/4
40/20 41/24 41/25 42/17 45/9 47/6
49/3 49/4 52/15 52/21 55/1 56/4
57/25 59/25 61/11 61/14 61/21
63/4 65/22 66/10 66/15 68/6 68/14
69/24
gone [6]  44/11 50/21 50/23 55/10
64/4 66/6
good [10]  3/6 3/8 3/9 3/12 34/7
34/9 41/22 43/22 51/2 70/10
got [15]  17/24 24/24 41/24 43/5
44/3 44/3 45/1 47/2 49/14 50/16
50/24 51/23 54/1 54/25 55/15
gotten [1]  29/5
governed [2]  17/19 21/7
government [83]
government's [8]  9/5 19/1 19/6
19/25 20/5 45/10 63/2 67/16
government's interest [1]  19/25
grand [1]  61/9
granular [1]  52/20
granularity [1]  51/24
gravamen [2]  53/18 53/20
gravity [2]  53/19 53/20
greater [2]  38/6 39/8
grounded [1]  12/15
grounds [1]  48/19
guess [10]  10/6 13/3 16/21 20/9
39/10 47/4 48/12 48/13 49/18
53/21
gun [1]  13/22
guy [1]  16/17

**H**

hack [1]  22/20
hacked [1]  22/18
hacker [2]  23/4 24/1
had [30]  7/17 8/14 8/20 9/3 15/8
16/20 17/4 17/23 19/16 20/18 23/6
27/11 27/14 28/19 31/21 31/25
32/2 32/6 32/9 41/9 43/23 46/15
48/19 49/6 49/7 49/17 54/5 55/21
56/22 61/4

half [4]  39/17 42/13 51/19 69/25
handcuffed [1]  48/6
hands [1]  17/24
happen [1]  20/20
happened [2]  40/5 61/5
happens [2]  16/1 20/10
happy [9]  3/23 4/3 21/25 40/23
52/15 52/21 67/11 67/25 68/7
harbor [7]  6/16 6/17 7/7 7/10
7/19 7/21 12/11
hard [2]  58/14 68/6
harder [1]  12/2
harm [4]  35/20 35/22 60/6 60/10
Harmon [4]  31/14 31/20 31/22
69/14
Harmon's [1]  31/17
has [69]  4/16 4/23 8/23 9/8 10/3
12/23 16/15 17/13 19/9 21/3 21/6
21/19 21/20 22/6 22/9 23/23 24/3
24/18 25/7 25/21 25/24 32/18 33/4
33/24 34/18 34/24 40/11 41/2 42/8
42/20 42/25 44/5 44/6 44/11 45/7
47/20 48/17 49/16 50/1 50/3 50/8
50/11 50/20 50/21 50/23 56/4 56/4
56/21 57/2 57/6 57/8 57/9 59/7
60/2 60/2 60/16 61/12 61/25 65/3
65/8 66/10 66/12 67/17 67/20 69/4
70/13 70/13 70/16 72/1
hasn't [2]  22/14 61/2
HASSARD [2]  2/2 3/10
hassle [1]  36/15
have [124]
haven't [1]  51/9
having [4]  4/4 45/25 57/21 58/4
he [70]  8/17 8/19 8/20 8/20 16/3
16/5 16/8 17/5 19/12 22/19 22/22
22/23 23/11 23/11 23/12 23/13
23/14 23/15 23/16 23/17 23/19
24/1 24/2 25/22 28/2 28/8 31/10
31/23 31/23 31/24 31/24 31/24
31/25 32/2 32/6 32/9 32/14 32/17
37/22 37/23 43/25 47/24 49/6 49/7
49/17 50/23 50/24 53/1 53/12
53/14 53/15 54/19 55/14 55/20
55/21 56/22 56/22 57/9 57/10
58/18 60/2 60/3 60/4 60/16 61/10
61/11 61/11 61/14 61/20 72/1
head [8]  7/25 8/6 17/22 25/4 37/5
37/20 48/10 54/18
hear [5]  3/20 3/23 40/15 40/24
46/20
heard [2]  42/24 43/4
hearing [7]  1/9 3/15 3/21 42/6
69/14 69/15 69/22
held [4]  18/1 27/17 34/5 38/15
Helix [1]  23/16
help [1]  5/2
helped [1]  6/10
helpful [6]  3/20 22/4 54/9 55/12
68/11 72/21
helps [1]  57/20
her [2]  70/17 70/17
here [39]  4/9 5/4 5/9 5/14 5/25
8/12 8/18 8/24 11/24 13/12 14/17
15/14 15/14 15/18 15/20 21/17
29/18 30/18 31/3 35/4 35/24 36/24
41/11 41/21 43/14 46/3 51/8 51/15
55/9 55/10 55/13 56/18 58/24
58/24 59/5 65/2 65/18 66/9 70/9
herein [1]  44/17
heroin [7]  41/9 45/21 45/22 45/23
46/15 47/14 47/16
herring [1]  6/8
hid [1]  9/1
hide [5]  8/17 9/5 17/5 19/19 46/7
hiding [1]  9/12
higher [4]  36/5 36/22 55/5 56/21
highlighted [1]  3/22
hill [1]  52/21
him [1]  49/17
his [18]  16/19 22/24 22/24 23/24
25/24 28/1 28/3 31/18 32/12 32/15

32/20 54/18 55/21 55/22 56/25
58/2 58/23 65/2
historically [1]  56/4
hold [1]  38/16
holding [2]  16/23 29/7
holds [1]  50/10
honest [1]  58/22
honestly [1]  58/12
Honor [65]  3/6 3/9 4/3 4/7 5/14
5/22 9/10 9/22 10/12 11/23 13/2
14/10 14/15 15/15 17/10 18/13
20/21 21/10 22/24 22/24 25/4 26/3
26/10 26/22 29/14 30/1 31/2 31/12
32/6 32/23 33/16 33/25 34/12
34/18 35/10 35/13 36/9 36/21 37/4
37/11 37/13 37/20 37/21 38/5
38/12 38/18 39/3 39/12 39/23 40/1
40/11 40/17 40/20 46/20 61/8
62/17 62/20 64/9 64/21 65/1 69/3
70/1 71/10 71/22 72/5
HONORABLE [1]  1/9
hook [1]  11/7
hop [2]  36/23 37/1
hops [1]  37/2
hotels [1]  72/15
how [19]  16/22 17/8 26/18 27/11
28/19 34/14 46/2 46/5 47/4 47/6
47/13 49/9 55/22 56/9 57/12 57/18
62/22 66/8 68/1
Howell [2]  31/15 69/13
however [4]  28/18 30/15 40/23
56/19
huh [1]  52/3
humor [1]  38/21
hundred [1]  35/11
hung [1]  36/2
hypothetical [2]  17/22 39/11
hypothetically [1]  35/6
hypotheticals [1]  31/13

**I**

I would [1]  31/2
I'd [4]  14/15 14/15 15/1 59/13
I'm [4]  32/11 37/15 47/5 52/9
idea [4]  5/9 17/4 36/2 68/18
identifiable [2]  49/4 60/8
identified [1]  63/9
identify [2]  24/14 28/7
identifying [1]  62/12
ill [1]  29/5
ill-gotten [1]  29/5
illegal [9]  5/13 5/19 6/19 9/1
16/25 46/8 48/21 48/21 50/13
illicit [15]  5/10 5/24 6/7 8/17
35/7 36/7 36/20 42/16 53/14 57/13
57/25 58/10 59/20 61/4 61/5
illicitly [1]  8/21
Ilya [15]  6/20 22/3 22/8 22/10
22/10 22/13 22/14 22/18 22/22
23/1 23/10 24/9 25/22 26/5 32/13
Imagine [1]  22/21
immaterial [1]  41/17
immediately [2]  28/2 48/9
impartial [1]  62/15
implicitly [3]  11/1 11/3 12/13
important [3]  4/8 7/11 7/11
impose [6]  6/25 25/13 25/15 40/4
40/6 66/1
imposing [1]  7/14
impossible [3]  23/22 26/17 28/18
imprecision [1]  59/5
includes [5]  4/18 4/21 5/1 39/4
63/23
including [2]  47/8 62/4
inconceivable [3]  25/19 26/4 33/9
increase [1]  31/6
indeed [1]  33/2
independent [1]  24/19
independently [1]  25/13
indictment [5]  44/20 52/6 60/23
63/8 65/15
indirect [2]  36/22 37/7

**I**

indirectly [2]  27/2 36/10
individual [7]  9/3 27/17 48/17
  48/23 48/24 60/8 65/3
indulge [1]  44/14
industry [1]  65/17
inform [1]  69/15
information [5]  47/21 48/10 59/16
  59/16 68/8
informative [1]  41/4
innocent [6]  5/1 17/7 17/19 18/2
  34/23 36/1
input [3]  63/13 63/15 63/16
inputs [4]  53/2 64/19 64/21 66/4
insert [1]  15/3
instances [1]  6/24
instead [1]  15/1
intake [1]  64/13
intended [2]  12/8 14/9
intent [2]  6/15 7/12
interest [4]  18/16 19/19 19/25
  32/25
interested [2]  3/23 5/20
interesting [7]  41/22 52/23 53/4
  54/8 58/11 65/19 72/22
interests [1]  17/24
intermediary [6]  7/4 7/22 51/11
  52/12 53/1 53/12
International [1]  62/23
interpretation [1]  10/6
interpreted [1]  16/14
interrupt [1]  37/15
introduced [1]  66/20
involve [1]  12/3
involved [39]  4/14 4/16 4/21 8/5
  8/8 8/14 10/10 10/17 10/19 11/13
  11/16 13/12 14/7 15/4 20/2 20/15
  21/5 24/11 24/15 26/19 33/3 38/7
  38/9 38/14 38/19 38/19 39/2 39/7
  39/21 39/21 40/3 46/3 46/19 46/23
  51/21 53/6 54/10 54/11 54/15
involving [3]  7/8 39/14 52/1
is [534]
is an [1]  53/1
is usually [1]  69/15
isn't [1]  43/14
issue [15]  4/7 25/16 41/1 44/3
  44/4 44/8 44/9 45/5 49/14 51/23
  54/14 67/13 68/3 68/22 69/1
issues [3]  3/22 68/3 68/12
issuing [1]  69/3
it [343]
item [1]  47/16
itemized [1]  37/8
its [3]  4/10 17/22 64/11
itself [2]  36/7 49/19

**J**

Jackson [3]  41/6 41/18 45/11
jail [3]  50/11 57/9 65/6
JEFFREY [2]  1/18 3/7
joint [2]  34/2 34/4
judge [12]  1/10 31/15 41/6 41/18
  45/11 69/13 70/6 70/8 70/12 70/15
  71/15 71/25
judgment [37]  7/1 7/14 7/18 8/2
  8/8 10/1 12/15 13/25 18/12 18/19
  20/10 20/12 21/18 30/14 30/23
  30/24 31/1 32/7 32/12 32/16 32/20
  33/13 33/21 33/24 34/14 34/19
  35/2 40/4 40/7 46/17 47/15 50/9
  51/9 61/20 62/8 62/12 63/1
judgments [2]  31/8 62/8
jumping [1]  10/5
jurisdiction [1]  13/15
jury [8]  32/23 32/2 44/21 44/22
  56/15 66/25 67/3 67/3
jury's [1]  63/8
just [77]
JUSTICE [2]  1/13 1/20

**K**

keep [2]  35/25 70/17
ken [1]  16/4
kept [1]  55/18
key [5]  5/25 6/14 26/21 29/17
  35/25
kilo [1]  45/21
kilos [1]  45/21
kind [3]  58/14 68/18 70/13
know [88]
knowing [1]  19/22
known [1]  36/10
knows [2]  57/24 57/25

**L**

language [5]  11/6 14/6 39/1 39/20
  54/21
large [1]  8/13
largest [1]  33/23
Larry [3]  31/17 31/22 69/14
last [7]  32/23 46/21 56/1 62/6
  63/13 63/16 65/19
later [1]  50/2 53/24 66/10
launder [6]  6/19 16/25 19/13
  19/17 24/24 24/25 25/1
laundered [26]  7/23 8/3 8/10
  10/18 10/21 11/10 11/12 11/15
  12/7 22/10 22/23 23/9 23/11 23/20
  23/20 24/5 25/11 25/23 26/1 35/21
  37/17 38/3 42/15 45/25 48/19
  53/13
launderer [2]  34/5 45/22
launderers [1]  6/17
laundering [50]  4/14 4/17 4/20
  4/22 5/6 6/11 6/21 6/22 7/5 7/22
  9/6 9/13 11/2 12/1 12/2 12/15
  12/25 13/8 15/5 17/5 19/5 19/23
  20/2 20/15 20/16 21/5 23/24 24/12
  24/16 24/18 24/20 25/8 26/20
  33/24 35/11 36/20 38/20 39/16
  39/25 40/8 40/8 46/5 46/6 46/7
  47/1 47/12 49/21 50/1 53/14 60/10
launderings [1]  7/2
launders [1]  45/19
law [12]  2/3 5/19 29/7 30/19 34/9
  44/23 48/14 49/16 53/8 57/24
  58/15 58/15
lawful [1]  5/8
laws [1]  51/3
lawyer [1]  61/22
lawyers [2]  58/17 58/18
lays [1]  14/21
leads [1]  8/23
least [6]  10/11 11/11 11/19 30/7
  42/23 60/19
leave [2]  66/15 67/25
ledger [7]  27/24 28/10 43/7 47/24
  48/3 48/7 49/12
ledgers [6]  26/25 43/5 43/8 47/19
  58/7 59/17
left [4]  27/12 44/1 49/17 50/20
legal [9]  8/15 18/25 19/19 19/24
  19/25 20/5 21/3 43/23 49/6
legally [1]  9/3
legitimate [4]  16/22 18/4 18/10
  19/12
lens [2]  12/21 14/14
less [4]  35/23 51/12 55/21 64/9
lesser [1]  16/7
let [6]  7/20 8/22 9/10 11/6 70/12
  71/19
let's [10]  10/6 22/8 36/13 36/19
  38/2 54/24 59/25 70/19 71/17
  72/11
letting [1]  70/14
level [2]  28/19 29/8 29/12 29/18
liability [2]  34/3 34/4
liable [1]  34/5
license [1]  56/6
licensing [1]  55/15
licit [18]  5/1 5/11 5/25 6/6 8/14

  10/19 35/8 36/7 41/23 53/3 53/6
  ...16/... 56/6 56/23 58/3 58/4
  58/11
Lichtenstein [17]  6/2 6/20 22/3
  22/8 22/10 22/10 22/13 22/14
  22/18 22/22 23/2 23/10 25/22 26/1
  26/6 32/13 32/19
Lichtenstein's [1]  24/9
lien [1]  62/10
life [2]  17/3 61/15
lifestyle [2]  22/24 22/25
lifetime [2]  56/25 59/24
like [25]  5/23 6/20 8/18 13/20
  14/1 14/15 18/2 18/5 21/14 22/21
  23/14 23/15 24/23 41/22 42/22
  43/8 43/8 48/10 49/10 53/3 55/21
  58/12 59/17 72/3 72/14
likely [2]  35/23 70/5
limit [1]  55/10
limitation [1]  8/11
limiting [3]  8/24 9/8 46/5
limits [2]  45/17 55/9
LINDSAY [3]  2/6 73/3 73/12
line [5]  26/14 35/5 37/12 42/7
  44/15
linguistic [1]  11/7
link [2]  27/12 49/2
liquidate [1]  16/2
liquidated [2]  32/10 32/11
list [1]  63/12
listed [3]  42/5 44/20 63/16
listen [1]  55/20
listing [2]  67/1 67/2
literal [1]  13/24
little [24]  5/5 6/7 7/25 14/4
  18/14 20/7 22/17 26/15 31/3 48/10
  49/23 51/2 53/17 56/9 58/23 59/5
  66/7 66/14 67/22 68/8 68/9 68/16
  69/7 72/7
livelihood [4]  29/20 30/3 30/4
  30/9
locate [1]  13/13
locked [1]  17/24
long [2]  53/24 71/14
longer [1]  27/5
look [20]  11/1 14/14 22/8 23/22
  31/12 33/18 39/13 43/8 45/23
  46/10 48/5 51/1 52/22 54/14 54/15
  54/24 55/12 56/16 60/10 60/21
looked [4]  28/9 39/15 55/6 65/15
looking [12]  6/13 6/15 14/11
  14/19 28/14 35/17 35/19 47/6 48/2
  53/10 54/13 65/2
looks [2]  10/8 57/11
lot [11]  8/4 8/18 13/25 14/2
  23/12 23/21 42/20 57/6 58/15
  58/17 65/8
love [1]  59/23
low [1]  55/18
Luke [1]  42/5

**M**

made [6]  35/11 36/1 41/22 43/22
  57/9 67/20
magnitude [7]  55/11 56/21 59/2
  59/2 59/4 60/5 61/7
main [1]  44/8
maintain [2]  29/19 30/3
maintained [1]  9/3
major [1]  22/18
make [11]  5/11 31/3 34/25 40/5
  53/8 57/22 58/25 59/23 59/25
  61/17 72/6
makes [2]  58/4 65/10
making [4]  12/2 38/23 51/2 62/13
man [1]  60/5
mandatory [3]  4/10 4/13 21/20
manner [1]  67/15
many [4]  45/6 63/24 63/24 63/24
March [7]  61/2 61/3 63/14 63/21
  65/20 65/23 66/12
March 2012 [2]  63/21 66/12

## M

**mark [2]**  49/23 50/16
**marked [1]**  6/3
**market [1]**  27/17
**market's [1]**  28/20
**marketplace [1]**  36/14
**markets [21]**  23/13 26/12 26/25
27/9 27/13 28/17 36/5 36/10 36/23
37/8 42/1 42/9 42/18 42/22 43/9
43/11 44/1 45/8 45/14 47/19 51/21
**massive [2]**  8/13 9/4
**match [3]**  43/17 47/23 48/5
**matches [1]**  48/8
**matching [1]**  28/12
**mathematical [2]**  29/3 29/8
**matter [9]**  5/13 6/6 30/19 33/17
34/9 45/11 66/11 67/19 73/5
**matters [1]**  6/5
**maximum [2]**  39/18 54/16
**may [20]**  10/19 18/6 26/17 33/8
38/10 40/22 47/10 47/11 49/21
50/1 57/19 58/2 58/3 65/5 65/5
66/1 68/1 68/16 68/23 72/7
**maybe [28]**  16/3 16/3 16/5 20/9
21/7 21/8 22/17 25/7 27/6 27/6
31/25 36/4 36/16 39/10 42/3 43/25
48/2 48/4 49/7 49/21 57/22 58/9
58/10 59/14 59/25 62/4 69/9 71/13
**me [46]**  3/20 7/20 8/23 9/10 11/6
14/4 16/10 16/15 17/22 18/18
20/19 20/19 21/2 22/4 25/1 25/19
37/10 38/21 41/19 44/4 44/14
45/25 46/22 48/9 49/9 49/14 54/8
54/19 54/22 57/15 58/5 58/11
58/18 61/3 62/16 65/19 66/2 67/20
68/2 68/4 68/7 70/12 70/13 70/16
71/19 72/21
**meager [2]**  26/22 26/22
**mean [16]**  8/25 9/6 9/11 9/15 9/23
12/5 18/18 22/12 29/10 30/24
39/10 43/13 56/18 57/11 63/17
65/25
**means [5]**  8/25 9/20 30/13 30/22
42/12
**meant [1]**  53/20
**mechanism [5]**  5/25 22/7 62/11
63/1 63/2
**Medicare [2]**  39/14 43/18
**meet [1]**  29/8
**memo [2]**  57/6 59/19
**mentioned [1]**  55/13
**merchant [1]**  18/4
**mere [1]**  51/10
**merely [2]**  7/4 30/16
**meters [1]**  63/2
**method [1]**  59/11
**methodology [3]**  5/2 59/11 64/7
**MICHAEL [2]**  2/2 3/10
**might [5]**  8/1 25/8 25/17 48/19
48/22
**million [58]**  9/25 10/2 22/21
25/20 25/24 25/25 31/23 32/4 32/5
32/7 32/12 32/15 32/18 32/20 33/6
33/7 33/8 33/10 36/4 36/6 36/19
36/23 37/17 37/19 37/23 38/2 38/3
38/9 38/10 38/22 39/10 39/14
39/17 42/1 45/24 45/24 54/25 55/2
55/4 55/22 56/10 56/13 56/15
56/16 56/17 56/18 56/24 57/11
59/18 59/21 59/22 59/23 59/23
60/14 60/14 60/17 60/19 65/7
**millions [3]**  23/7 36/4 61/11
**mingled [1]**  9/14
**minor [1]**  44/9
**minute [1]**  40/14
**minutes [1]**  62/4
**misrepresentation [1]**  61/18
**mix [1]**  5/8
**mixed [2]**  49/8 49/9
**mixer [8]**  5/9 5/10 5/11 5/23
43/24 49/7 57/21 57/22

**mixing [5]**  5/2 36/16 49/23 53/3
53/?
**MLAT [3]**  61/12 61/16 62/7
**model [4]**  4/24 27/13
**modifications [1]**  67/10
**moment [7]**  19/2 20/6 26/23 27/8
38/21 40/15 43/25
**Monero [1]**  23/14
**money [111]**
**month [7]**  7/9 51/12 52/2 52/5
52/9 52/10 71/14
**month-long [1]**  71/14
**more [26]**  7/8 7/9 8/18 9/17 10/9
13/25 16/21 18/18 23/8 32/3 32/5
37/1 39/6 52/1 52/2 52/9 52/11
57/20 57/22 61/6 64/9 65/8 68/8
68/16 69/8 72/7
**morning [2]**  27/21 72/14
**mortar [1]**  58/16
**MOSS [1]**  1/9
**most [7]**  3/23 15/1 41/3 42/1
43/25 67/6 70/16
**motion [2]**  1/9 62/13
**move [2]**  51/6 64/16
**Mr [1]**  32/19
**Mr. [66]**  4/2 6/2 6/18 7/6 7/10
8/14 12/12 19/11 19/17 21/9 21/14
21/19 25/24 26/1 27/20 27/21
27/25 28/6 30/22 33/4 37/18 40/16
40/19 42/11 42/19 42/21 42/24
43/4 43/23 45/9 47/22 47/22 47/23
48/7 48/8 49/6 49/13 50/10 50/20
50/22 53/12 54/18 55/3 55/13
55/14 55/17 55/20 55/22 56/7 56/8
56/13 56/22 56/25 57/3 57/19 59/7
60/1 61/20 62/3 63/19 64/23 66/2
66/16 66/24 67/25 69/2
**Mr. Brown [14]**  42/19 42/21 42/24
43/4 47/22 54/18 55/3 55/13 55/22
57/19 62/3 66/2 66/16 69/2
**Mr. Ekeland [4]**  4/2 40/16 40/19
67/25
**Mr. Ekeland's [1]**  63/19
**Mr. Lichtenstein [2]**  6/2 26/1
**Mr. Scholl [5]**  27/21 28/6 47/22
55/17 64/23
**Mr. Scholl's [2]**  56/7 66/24
**Mr. Sterlingov [32]**  6/18 7/6 7/10
8/14 19/11 19/17 21/9 21/14 21/19
25/24 27/25 33/4 37/18 42/11
43/23 45/9 48/7 49/13 50/10 50/20
50/22 53/12 55/14 55/20 56/8
56/13 56/22 56/25 57/3 59/7 60/1
61/20
**Mr. Sterlingov's [5]**  12/12 27/20
30/22 47/23 49/6
**Mr. X [1]**  48/8
**Ms. [1]**  48/8
**Ms. X [1]**  48/8
**much [11]**  26/18 27/11 28/19 33/10
34/14 35/23 35/24 35/24 54/12
57/1 57/12
**multiple [4]**  31/4 45/21 48/17
63/10
**my [29]**  3/21 7/25 8/6 10/6 17/3
17/5 18/5 18/6 18/9 20/16 25/4
26/23 34/18 37/5 37/20 47/25 48/7
48/10 49/18 59/9 59/23 61/18
61/23 64/17 66/1 67/21 68/8 68/14
71/24
**Mycelium [4]**  44/10 44/12 44/16
44/19

## N

**N.W [1]**  1/16
**name [1]**  3/5
**named [1]**  66/11
**narrower [2]**  10/9 14/6
**nature [5]**  35/20 35/22 52/25
53/10 54/13
**necessarily [4]**  48/13 52/20 53/3
53/5

**necessary [4]**  21/10 57/17 57/20
59/6 69/9
**need [8]**  5/11 30/21 41/23 61/6
66/1 69/15 69/25 71/24
**needs [2]**  12/20 29/8
**never [12]**  8/8 8/14 9/3 26/2
30/13 40/5 49/6 49/17 49/25 50/4
50/13 61/11
**nevertheless [1]**  18/25
**New [2]**  1/20 31/9
**news [1]**  34/24
**next [3]**  1/23 28/18 71/23
**Ninth [2]**  41/14 41/14
**no [31]**  1/4 10/25 11/7 12/23
12/23 13/4 15/5 17/4 18/3 19/8
22/6 24/1 24/13 24/19 27/5 29/7
29/10 34/7 34/9 37/13 38/16 40/11
41/10 43/16 55/7 57/23 58/23 60/8
61/25 67/4 69/4
**nobody [1]**  30/23
**none [1]**  23/9
**nonetheless [1]**  19/21
**not [120]**
**nothing [3]**  8/20 25/14 54/12
**notice [2]**  17/14 51/25
**novel [5]**  48/11 51/4 53/8 58/13
58/13
**November [5]**  70/4 71/4 71/8 71/9
71/17
**November 1st [1]**  70/4
**November 8 [1]**  71/9
**November 8th [1]**  71/17
**now [20]**  18/8 23/8 32/2 32/3 43/5
48/3 48/7 49/14 49/16 50/11 50/21
50/23 56/16 57/8 57/9 58/6 59/21
66/12 69/20 71/12
**number [29]**  3/2 3/19 4/5 4/6
10/25 12/6 12/9 12/13 20/21 21/1
22/6 29/10 29/11 31/3 31/13 32/13
36/5 36/22 37/3 37/9 41/1 48/5
54/23 55/2 55/18 56/16 57/10 59/5
59/17
**numbers [10]**  8/13 38/23 43/12
51/16 54/24 54/25 56/9 56/19 59/6
60/4
**NW [3]**  1/14 1/20 2/8
**NY [1]**  2/4

## O

**object [1]**  68/6
**objections [1]**  61/1
**objectively [1]**  30/22
**objects [1]**  39/4
**obligation [1]**  6/25
**obligations [2]**  25/13 25/15
**obtain [1]**  7/18
**obvious [1]**  48/9
**obviously [2]**  52/15 67/23
**occasional [1]**  36/11
**occur [1]**  26/2
**occurred [2]**  40/7 40/9
**October [5]**  42/10 69/18 69/22
70/6 70/25
**October 2011 [1]**  42/10
**odd [1]**  8/12
**off [11]**  12/17 22/23 23/11 23/20
25/4 37/4 52/16 55/1 61/21 64/18
64/19
**offense [18]**  7/5 8/5 10/20 11/13
13/21 14/9 15/8 25/9 32/19 33/3
38/7 38/9 38/14 38/20 39/2 39/14
39/21 46/4
**offenses [7]**  4/15 4/17 12/1 12/2
20/3 21/5 29/5
**Office [1]**  62/23
**Official [3]**  2/7 73/3 73/13
**offset [4]**  41/2 44/3 46/1 59/18
**offsets [1]**  41/8
**offsetting [2]**  4/5 4/7
**offshore [1]**  45/18
**oh [3]**  34/18 57/14 66/13
**okay [22]**  6/12 13/11 17/25 21/23

**O**

okay... [18]  25/2 29/13 31/19
34/1 34/17 34/21 37/14 39/9 47/25
60/11 61/9 61/24 62/24 64/25
66/19 69/6 72/17 72/20
older [1]  58/15
once [6]  32/21 49/22 49/25 50/12
50/17 68/25
one [45]  8/11 9/1 10/8 12/6 13/13
26/17 26/23 28/1 30/2 30/16 30/20
32/23 33/1 36/23 37/1 41/4 42/3
42/25 43/17 43/17 45/12 46/1 46/1
46/6 48/15 49/21 54/8 56/1 57/4
58/11 58/17 58/18 58/24 59/13
61/8 62/14 63/5 64/13 67/11 68/7
68/9 68/14 69/24 71/19 72/6
online [2]  19/20 19/21
only [11]  5/24 10/16 18/20 21/6
28/6 28/11 30/19 36/3 42/3 45/13
51/11
open [1]  19/22
opening [1]  33/7
operated [1]  27/13
operating [3]  42/9 42/13 64/10
operator [1]  24/20
opportunity [4]  3/17 4/2 17/17
67/17
order [32]  3/16 3/18 3/19 3/21
4/5 4/13 9/21 13/18 22/16 25/20
32/15 35/10 50/4 54/9 55/11 55/13
56/20 56/24 59/4 62/18 62/21 67/8
67/10 67/13 67/13 67/15 67/16
68/3 68/4 69/1 69/4 69/21
orders [2]  24/19 48/18
ordinary [1]  62/10
origin [1]  6/10
original [3]  23/3 25/9 32/3
other [41]  4/11 4/19 6/5 8/16
8/16 13/1 13/17 16/5 16/25 18/7
19/23 23/16 23/22 23/23 23/24
24/22 26/8 26/10 27/8 30/3 30/8
30/16 35/25 36/23 47/8 49/21
54/13 57/24 58/17 61/25 63/24
64/16 64/19 64/21 66/4 66/6 66/14
68/9 68/15 69/16 72/6
others [2]  29/6 64/5
ought [1]  46/1
our [8]  25/6 33/7 39/10 57/6
59/19 61/1 62/22 68/17
out [33]  6/4 7/10 11/2 11/3 14/21
16/19 23/13 27/10 28/17 30/6
31/23 32/12 34/19 37/22 37/23
41/25 43/21 44/5 45/12 45/13 50/5
50/7 50/11 55/20 55/24 60/9 63/7
64/4 65/6 68/24 68/24 70/15 70/20
outside [1]  21/12
over [12]  7/25 19/17 20/11 27/1
37/25 45/19 49/8 51/12 52/7 55/10
64/21 64/24
overarching [2]  63/4 65/1
overlap [1]  51/2
overlaps [2]  45/6 50/19
overnight [1]  65/4
overseas [1]  23/15
owe [3]  13/18 25/2 25/2
owing [1]  31/5
owner [1]  17/19

**P**

p.m [3]  1/6 40/18 72/23
page [3]  1/23 44/16 45/2
pages [3]  27/22 41/7 44/15
paid [3]  25/24 47/11 47/12
paperwork [1]  23/3
parse [1]  52/14
part [15]  11/23 11/24 15/5 19/4
19/22 21/18 27/3 31/21 35/25 36/1
40/8 47/10 54/18 63/17 64/24
participants [1]  17/2
particular [6]  25/5 27/18 28/11
41/11 58/9 69/13

particularly [5]  14/5 57/4 57/21
57/21 57/24 57/24
parties [4]  18/20 34/23 34/25
67/9
party [9]  6/17 6/21 7/2 8/10
10/18 18/25 19/7 20/23 46/15
passing [1]  6/23
path [2]  5/24 23/25
pattern [4]  9/23 25/5 46/11 55/8
Pause [1]  70/2
pay [10]  9/7 14/2 22/24 29/19
29/23 30/9 30/23 30/25 60/6 61/11
paycheck [2]  26/23 26/24
PEARLMAN [2]  1/18 3/7
peddlers [1]  19/13
peeled [3]  22/23 23/11 23/20
PELKER [1]  1/13 3/7
penalty [1]  16/7
Pennsylvania [1]  1/14
people [9]  6/18 16/23 17/2 18/2
18/7 30/25 60/13 64/13 70/14
people's [2]  8/16 8/16
percent [6]  20/18 56/6 56/10
56/12 56/12 56/14
percentage [1]  20/13
perhaps [5]  3/23 8/8 33/10 38/11
68/8
period [8]  7/9 45/19 51/13 52/2
52/5 52/5 52/9 52/10
person [8]  9/6 10/17 15/12 16/24
17/6 17/7 46/18 46/23
personam [2]  18/19 21/18
persuaded [1]  67/19
phase [1]  32/24
phrase [4]  4/16 4/18 12/6 12/7
phrasing [1]  4/21
pick [4]  56/19 66/9 69/20 69/22
piece [4]  6/14 23/11 23/12 32/23
pieces [2]  8/6 10/23
place [2]  11/10 16/8
placed [1]  13/15
places [1]  12/13
plain [4]  4/8 11/4 21/22 38/6
Plaintiff [2]  1/4 1/13
played [1]  15/8
plea [1]  23/3
please [1]  3/4
pled [1]  31/24
PLLC [1]  2/3
plus [1]  48/3
pocket [1]  13/23
podium [1]  3/4
point [31]  5/12 5/22 9/22 10/7
11/6 24/1 25/24 27/18 35/5 35/9
38/24 41/22 43/22 49/18 51/2 53/4
57/8 60/23 62/5 62/6 62/25 63/4
63/6 63/19 64/18 65/1 65/13 66/8
67/19 68/23 70/10
pointed [2]  30/6 34/18
pointing [2]  42/18 55/20
points [4]  5/14 20/21 29/17 31/3
pommel [1]  60/13
pool [2]  5/25 49/8
pooled [4]  5/2 6/9 27/13 27/16
pooling [2]  4/25 42/23
popping [1]  57/12
porn [1]  50/3
pornography [3]  19/14 47/9 48/21
portion [2]  8/13 20/11
pose [1]  37/16
position [1]  12/12
possession [2]  45/10 49/6
possible [5]  23/21 24/4 69/8
72/10 72/15
possibly [1]  9/9
post [2]  31/10 66/25
post-verdict [1]  66/25
potential [1]  44/3
potentially [2]  21/11 51/15
power [1]  65/8
practicable [1]  26/16
Practically [1]  22/8

precedent [1]  58/14
precise... [3]  58/2 61/9 67/2
preconditions [1]  14/22
predicting [1]  71/15
preexisting [1]  19/14
preference [1]  69/4
preliminarily [1]  67/15
preliminary [8]  32/15 67/8 67/13
67/19 67/23 68/3 68/4 69/21
prepared [2]  29/14 66/3
preponderance [1]  24/8
present [2]  3/11 66/2
presented [4]  44/21 56/14 66/24
67/3
presently [1]  7/15
presumably [1]  39/25
pretty [1]  54/12
price [1]  23/7
primary [2]  23/2 23/8
principle [6]  9/8 9/9 28/25 46/5
46/6 46/7
privy [3]  42/24 44/6 47/18
probably [5]  8/1 30/25 60/14
69/17 69/25
problem [3]  12/1 45/7 51/14
problems [2]  22/5 58/24
procedural [1]  10/11
procedure [1]  69/5
procedures [2]  62/7 62/10
proceed [2]  40/23 67/7
proceeding [4]  3/17 17/11 18/14
66/25
proceedings [2]  72/23 73/5
proceeds [15]  4/19 4/20 5/19 5/21
6/20 9/1 10/10 10/17 11/4 14/8
15/9 15/9 24/9 44/18 46/8
process [3]  19/23 23/24 62/10
processed [1]  9/25
profits [1]  37/18
pronounce [1]  53/23
properties [6]  17/13 18/16 32/9
32/10 32/22 33/1
property [46]  4/14 4/23 4/24 5/1
6/25 7/5 7/24 8/5 8/9 10/17 11/10
11/12 11/13 11/15 11/16 12/4 12/7
13/17 14/8 14/9 14/13 14/17 15/4
15/7 15/10 15/11 16/8 17/13 17/19
18/16 18/21 19/25 24/11 24/11
24/14 24/15 26/19 32/19 33/14
38/7 38/13 38/14 38/19 39/7 62/13
62/21
proportionality [4]  30/14 45/5
54/12 55/7
proportionally [1]  56/17
proposed [7]  3/16 3/18 3/18 22/6
22/15 32/15 67/16
proposition [2]  8/2 8/24
prosecuted [2]  31/24 57/8
prostitution [1]  16/18
prove [1]  24/8
provide [6]  3/16 17/14 43/2 43/10
43/11 59/15
provision [21]  6/16 6/17 7/7 7/10
7/20 7/21 10/9 10/12 10/12 10/14
11/8 11/25 12/11 12/14 12/21
13/10 13/10 14/13 14/19 15/3
41/16
provisions [1]  8/4
PSR [3]  54/15 55/2 61/1
public [2]  28/15 57/9
publicity [1]  57/7
pull [1]  6/4
punishment [2]  29/4 57/5
punitive [2]  49/17 61/15
purchases [1]  45/21
purchasing [1]  36/17
purpose [4]  5/21 6/11 29/4 58/3
purposes [7]  7/22 16/12 29/23
38/16 38/24 59/11 66/3
pursuant [1]  18/22
pursue [1]  61/19
push [2]  31/2 71/23

**P**

put **[4]** 6/3 49/23 70/19 71/17
puts **[1]** 16/4
putting **[4]** 8/6 48/16 48/18 54/14

**Q**

quarter **[2]** 32/1 33/10
question **[23]** 4/6 7/17 8/23 9/12
 9/17 10/7 11/7 11/19 16/21 18/20
 18/24 21/6 22/1 29/19 34/11 37/16
 47/6 47/21 52/23 55/11 64/17 68/1
 68/15
questions **[8]** 3/19 3/21 11/21
 40/12 40/21 40/22 62/1 72/22
quickly **[1]** 68/1
quite **[1]** 67/25
quote **[1]** 65/20
quote/unquote **[1]** 65/20

**R**

raised **[1]** 15/16
raises **[1]** 51/14
raising **[2]** 11/19 60/22
ran **[3]** 23/12 23/16 23/17
RANDOLPH **[1]** 1/9
range **[1]** 69/9
reach **[5]** 16/8 34/10 34/11 67/22
 68/24
reaches **[1]** 8/5
read **[6]** 10/7 12/4 14/15 14/16
 15/1 15/1
reading **[3]** 8/25 15/19 16/6
realistic **[1]** 36/13
realize **[4]** 8/3 10/11 14/11 14/12
really **[12]** 11/20 11/22 14/1 21/2
 41/18 41/22 45/15 51/18 57/15
 58/18 66/1 70/15
realm **[2]** 21/12 60/1
reason **[8]** 3/14 11/24 11/24 51/7
 55/19 60/1 64/5 69/10
reasonable **[1]** 28/23
reasonably **[1]** 17/15
reasoning **[2]** 26/15 39/13
reasons **[2]** 13/13 46/7
recall **[3]** 17/8 29/21 44/19
recalling **[1]** 44/21
recalls **[1]** 56/11
received **[5]** 23/5 25/18 37/18
 56/22 61/21
recently **[1]** 70/16
Recess **[1]** 40/18
recognize **[2]** 30/19 33/12
recognized **[4]** 6/24 30/7 30/9
 65/17
record **[4]** 3/5 6/9 48/6 73/5
records **[2]** 44/7 45/14
recovered **[2]** 33/4 35/1
recovery **[2]** 33/5 43/14
red **[3]** 6/8 49/23 50/16
reduce **[3]** 18/11 59/10 65/8
reduced **[1]** 33/14
reducing **[1]** 59/11
reference **[3]** 14/25 27/20 44/13
referenced **[2]** 42/19 43/15
referred **[1]** 23/4
referring **[2]** 14/18 15/12
refers **[2]** 15/5 15/6
refuse **[1]** 41/3
regard **[1]** 31/4
regardless **[2]** 21/3 41/24
register **[4]** 9/16 9/18 9/19 13/9
reimbursement **[1]** 17/8
rejoin **[1]** 60/4
related **[2]** 31/17 46/25
relates **[2]** 19/7 27/22
relating **[1]** 10/13
relation **[4]** 18/23 39/14 44/9
 57/4
relationship **[1]** 54/10
relatively **[7]** 4/10 22/11 22/23
 22/24 23/11 23/12 28/16

release **[1]** 17/7
relevancy **[1]**
relevant **[4]** 15/3 30/10 35/23
 65/9
relied **[1]** 4/25
rem **[1]** 49/19
remain **[1]** 28/20
remarkably **[1]** 54/4
remember **[5]** 16/16 34/15 37/19
 46/13 46/14
remembering **[2]** 42/3 56/10
remind **[3]** 16/10 16/15 63/5
rendered **[1]** 67/3
repay **[1]** 56/25
replace **[1]** 15/13
reply **[1]** 25/6
report **[1]** 42/5
reported **[1]** 34/24
reporter **[7]** 2/6 2/7 40/14 53/25
 54/5 73/3 73/13
represent **[2]** 26/19 44/18
representing **[1]** 10/2
request **[1]** 59/15
required **[4]** 3/15 4/13 29/2 67/8
reserve **[1]** 68/5
respect **[7]** 18/12 25/17 25/18
 38/4 50/11 57/25 62/6
respond **[2]** 4/2 62/4
responding **[1]** 68/17
rest **[1]** 40/14
restitution **[1]** 60/9
restriction **[1]** 12/14
result **[2]** 14/21 22/7
retain **[1]** 7/4
retained **[1]** 8/21
reviewed **[1]** 4/4
revisions **[1]** 67/10
rewinding **[1]** 22/17
RICO **[1]** 15/10
ridiculous **[2]** 59/14 59/15
right **[53]** 3/12 5/4 8/15 9/4 9/9
 12/19 13/6 14/20 14/24 15/17
 15/24 17/16 20/24 21/15 25/10
 29/10 32/8 36/12 36/25 37/14
 37/24 38/8 38/10 39/20 40/10
 40/19 41/12 42/22 47/3 47/25 48/1
 48/6 48/14 48/14 52/14 54/1 54/5
 54/12 54/23 55/1 56/3 56/23 58/8
 60/14 60/21 61/10 62/3 64/8 65/11
 67/5 68/5 69/20 71/12
rise **[1]** 18/24
Road **[22]** 27/8 27/14 27/17 27/20
 27/24 28/10 36/11 36/13 36/18
 36/24 36/24 42/22 43/5 43/5 43/7
 43/9 47/19 47/23 47/24 49/4 49/11
 49/12
robbery **[2]** 6/3 24/23
Roberts **[1]** 29/2
role **[1]** 15/8
roll **[4]** 22/21 66/1 67/21 68/14
rolled **[1]** 68/12
ROMAN **[6]** 1/6 3/3 3/10 22/12 24/6
 27/24
room **[2]** 2/8 59/24
root **[9]** 63/9 63/10 63/13 63/17
 65/14 65/16 65/20 66/5 66/13
roughly **[9]** 41/25 42/12 51/19
 51/19 55/1 56/8 56/13 60/16 60/17
rounding **[1]** 56/9
royalties **[2]** 55/15 56/6
RPR **[1]** 73/12
rubric **[2]** 21/17 35/15
rule **[7]** 12/15 12/21 59/10 67/7
 67/11 67/18 67/23
rules **[4]** 3/15 10/11 11/1 11/3
run **[2]** 5/7 56/19
running **[3]** 16/22 19/11 48/21
runs **[1]** 45/18

**S**

saddled **[1]** 65/7
safe **[7]** 6/16 6/16 7/6 7/10 7/19

 7/21 12/10
said **[8]** 8/25 16/15 17/25
 29/22 29/25 32/5 34/7 39/15 41/8
 41/10 41/17 41/18 42/19 42/10
 42/21 43/19 43/23 44/12 47/22
 53/4 53/19 53/20 54/5 54/19 56/21
 57/16 58/18 58/19 59/19 67/11
sake **[1]** 69/24
sales **[2]** 47/8 47/8
same **[23]** 16/1 18/12 26/15 26/25
 27/3 28/5 29/6 31/18 35/9 38/18
 43/6 44/11 46/3 46/10 46/25 47/13
 47/14 47/16 48/17 48/24 48/25
 64/6 64/24
Samourai **[1]** 57/7
satisfaction **[1]** 62/15
satisfied **[2]** 52/13 62/14
satisfy **[1]** 67/18
save **[1]** 72/15
savings **[1]** 17/3
say **[42]** 5/18 6/9 9/9 10/7 11/1
 11/7 12/6 12/9 12/13 12/18 12/24
 14/5 15/2 17/3 17/22 18/2 18/3
 20/13 24/25 30/2 30/22 34/9 35/10
 37/17 37/18 38/2 38/25 40/24 43/4
 45/23 47/13 47/19 47/19 49/4
 49/10 49/24 50/12 52/7 55/2 55/7
 61/22 66/13
saying **[17]** 11/14 12/4 12/10
 12/16 13/11 13/18 14/1 14/12
 41/25 42/16 44/23 47/5 48/12 50/9
 51/21 55/23 62/14
says **[14]** 11/8 14/17 14/18 15/2
 25/2 25/14 30/12 41/15 45/11 46/2
 52/1 54/20 57/19 60/18
scale **[1]** 7/2
scenario **[3]** 15/20 15/25 16/6
scheme **[2]** 5/6 7/13
Scholl **[5]** 27/21 28/6 47/22 55/17
 64/23
Scholl's **[3]** 42/5 56/7 66/24
scope **[2]** 4/11 40/2
scratching **[3]** 7/25 8/6 48/10
SEC **[1]** 58/21
second **[5]** 9/23 10/3 29/1 44/14
 71/20
security **[1]** 58/21
see **[12]** 7/25 13/20 19/15 48/5
 48/8 52/17 64/1 65/22 69/12 70/23
 71/24 72/11
seeing **[2]** 51/15 51/16
seek **[3]** 44/24 45/9 61/13
seeking **[5]** 3/25 41/9 44/10 47/1
 50/22
seem **[1]** 49/9
seems **[4]** 11/11 46/22 49/14 68/7
seen **[1]** 41/4
seize **[11]** 13/7 13/8 13/11 13/12
 13/19 15/22 17/1 27/9 44/10 49/10
 49/11
seized **[35]** 17/4 17/14 22/15 23/2
 23/23 24/3 28/21 31/21 32/18 41/2
 41/9 42/2 42/4 42/8 42/20 42/23
 43/2 43/5 43/11 44/2 44/5 44/6
 45/7 45/7 45/14 45/22 45/24 46/16
 46/24 47/14 48/19 48/20 55/21
 57/2 60/16
seizes **[2]** 15/22 47/9
seizing **[1]** 17/25
seizure **[6]** 23/8 27/8 28/21 47/11
 62/19 62/21
seizures **[3]** 26/11 26/18 42/25
self **[3]** 6/19 25/7 25/11
self-launder **[1]** 6/19
self-laundered **[1]** 25/11
selling **[1]** 53/15
sending **[1]** 27/4
sense **[7]** 13/24 41/19 45/12 49/15
 53/1 53/9 61/14
sent **[2]** 24/1 64/15
sentence **[5]** 57/10 60/2 60/3
 61/15 66/1

**S**

sentenced [5]  16/2 22/14 31/24
39/5 39/6
sentencing [15]  3/17 4/11 17/12
31/25 32/2 57/6 59/19 67/9 68/2
68/9 68/23 68/25 69/9 69/11 69/18
separate [8]  7/8 17/10 21/16
25/12 25/13 48/1 52/1 52/9
separately [1]  25/14
September [1]  73/10
serve [1]  58/3
served [2]  60/2 60/2
servers [1]  17/24
service [7]  9/25 24/20 24/21
47/12 47/12 49/23 50/1
services [1]  19/5
set [8]  7/3 22/7 24/2 29/18 38/19
68/22 69/17 72/1
setoff [6]  22/12 24/19 25/17
29/11 29/11 33/13
sets [1]  69/14
setting [1]  3/21
several [2]  34/3 34/4
shake [1]  6/4
shaking [1]  54/18
shall [4]  4/13 11/9 39/5 39/5
she [13]  41/6 41/7 41/8 41/10
41/19 45/11 69/14 70/7 70/7 70/13
70/16 70/16 70/17
SHERRY [3]  2/6 73/3 73/12
shirt [2]  36/11 36/17
shoes [1]  59/9
should [7]  6/25 9/6 10/7 10/15
11/20 14/14 33/13
shouldn't [2]  18/11 41/20
show [7]  17/3 18/3 20/12 28/16
28/18 36/3 66/3
showed [1]  28/16
shown [1]  28/9
shows [2]  7/12 37/6
shut [4]  42/2 42/9 51/20 51/22
side [1]  44/9
significant [5]  29/23 31/8 34/22
35/23 45/6
significantly [1]  34/8
Silk [22]  27/8 27/14 27/17 27/20
27/24 28/10 36/11 36/13 36/18
36/24 36/24 42/22 43/5 43/5 43/7
43/9 47/19 47/23 47/24 49/4 49/11
49/12
simply [12]  5/23 9/16 21/21 24/1
24/3 26/6 30/2 63/11 63/16 64/5
67/14 68/4
simultaneously [1]  58/20
since [4]  3/25 61/2 65/14 66/12
single [4]  60/8 63/22 64/22 67/2
sit [2]  70/7 70/8
site [4]  47/7 47/9 48/21 48/22
sites [2]  36/8 47/11
sitting [1]  70/18
situation [13]  6/8 9/11 18/13
19/2 19/2 19/15 21/1 25/8 28/14
33/9 35/14 35/21 41/21
situations [1]  25/12
size [3]  30/23 30/24 31/1
sleeves [4]  66/1 67/21 68/13
68/14
slippery [1]  51/3
sliver [3]  23/18 23/19 24/15
small [8]  7/1 22/10 22/11 22/23
22/24 23/11 23/12 23/18
smaller [1]  23/19
snapshot [3]  27/10 28/20 28/22
so [119]
so-called [1]  5/1
society [5]  60/4 60/6 60/10 60/11
60/12
sold [2]  13/15 36/11
some [32]  3/21 6/18 8/24 9/8
10/11 15/8 15/9 16/2 18/7 19/13
20/11 22/9 23/16 23/17 23/24

25/17 27/1 30/8 31/6 35/4 35/9
42/12 48/14 52/11 53/20 57/2 58/2
58/3 58/10 64/18 65/16 67/21
somebody [14]  5/19 6/22 8/21 9/18
13/15 16/22 35/11 35/25 36/18
46/25 48/4 50/23 65/6 65/7
somehow [5]  12/4 12/16 12/22
17/24 65/21
someone [10]  12/11 13/21 16/19
18/6 20/12 45/18 48/20 50/2 50/8
51/10
something [19]  4/12 12/23 13/17
14/1 14/16 21/12 21/14 28/22
28/23 39/18 41/18 44/24 55/12
56/24 61/6 62/9 65/17 65/19 67/2
sometime [3]  63/21 69/18 69/22
somewhere [3]  50/5 50/7 50/21
soon [1]  68/21
sorry [2]  37/15 52/10
sort [22]  4/3 5/17 7/24 9/10
10/22 11/15 15/19 21/25 22/17
23/23 25/14 28/23 42/14 49/16
51/1 51/16 52/24 53/10 53/11 62/9
64/10 69/8
sorts [1]  45/20
sought [6]  46/16 54/11 55/1 55/4
55/9
sought-after [1]  55/4
sources [2]  6/7 6/7
space [2]  52/12 59/1
span [1]  52/18
speak [2]  52/16 68/13
speaking [3]  22/8 22/17 51/19
specific [8]  17/13 28/7 32/9
32/21 33/1 33/14 33/14 33/18 42/18
specifically [3]  27/19 35/20
66/11
specified [1]  67/16
speculate [1]  42/17
speculating [1]  55/18
spell [1]  53/24
spelled [2]  54/1 63/7
spend [1]  22/22
spending [1]  26/24
spends [1]  16/3
spent [2]  31/23 31/25
spoken [1]  21/20
spreadsheet [1]  66/22
stamp [1]  28/12
standard [4]  12/8 21/2 21/2 28/24
72/12
start [5]  4/1 4/8 59/18 61/10
72/12
started [1]  19/17
starting [1]  3/5
state [2]  3/4 16/17
STATES [17]  1/1 1/3 1/10 3/3 9/24
28/25 29/1 30/12 31/14 34/3 41/5
41/13 45/1 46/11 54/2 61/12 61/19
statute [10]  4/9 6/14 8/25 15/6
15/13 17/20 34/13 41/11 52/1
54/19
statutes [4]  16/13 16/14 41/15
48/16
statutory [13]  7/13 9/8 10/6
10/25 14/22 22/7 29/10 38/19
38/25 54/10 54/24 54/25 62/14
step [1]  51/17
steps [1]  12/6
STERLINGOV [37]  1/6 3/3 3/10 6/18
7/6 7/10 8/14 19/11 19/17 21/9
21/14 21/19 22/12 24/6 25/24
27/25 33/4 37/18 42/11 43/23 45/9
48/7 49/13 50/10 50/20 50/22
53/12 55/14 55/20 56/8 56/13
56/22 56/25 57/3 59/7 60/1 61/20
Sterlingov's [6]  12/12 27/20
27/24 30/22 47/23 49/6
still [14]  12/20 20/9 28/19 35/1
49/10 55/4 55/5 56/20 64/24 67/13
67/16 67/17 71/13 71/25
stock [1]  26/21
stole [5]  22/19 22/23 31/20 32/14

32/17
stolen [3]  22/20 23/17 23/18
straight [1]  8/19
strange [1]  14/4
Street [2]  1/16 2/3
strikes [1]  25/19
striking [1]  56/18
stronger [1]  48/20
struck [3]  41/19 57/15 58/18
struggling [1]  3/19
stuck [2]  60/24 60/25
stuff [2]  36/17 72/1
subject [12]  4/12 9/20 20/1 21/4
33/2 33/3 44/25 48/17 50/3 50/4
50/15 67/14
submit [1]  52/15
subsection [4]  14/10 14/18 15/2
15/12
substantial [2]  45/8 57/10
substantially [1]  13/16
substitute [21]  6/25 7/18 8/2 8/7
10/13 10/15 12/12 14/24 13/1
13/10 14/13 14/23 18/12 20/22
20/25 33/13 44/11 44/24 51/8
62/12 63/3
substitution [3]  11/8 11/11 11/12
such [5]  10/16 22/7 23/25 48/11
61/15
sued [2]  58/19 58/21
sues [1]  21/13
sufficiently [2]  67/8 69/21
suggest [1]  67/9
suggested [1]  38/8
Suite [1]  1/17
sum [1]  32/17
superior [6]  18/25 19/8 19/18
20/5 21/3 21/6
superseding [2]  44/20 63/8
Supp [2]  41/5 43/16
suppose [2]  30/21 38/23
Supreme [7]  16/15 16/20 29/22
29/24 30/1 53/22 59/3
sure [8]  10/24 32/11 38/3 38/9
47/6 48/13 48/14 49/22
Sweden [5]  61/12 61/12 61/21
62/19 62/22
Swedish [1]  60/12
sweeping [2]  4/10 13/6
sweeps [2]  4/18 13/6
swing [2]  55/22 55/23
synonyms [1]  53/21

**T**

T-shirt [2]  36/11 36/17
table [2]  12/18 37/6
take [16]  12/5 15/12 31/11 33/12
35/3 35/9 40/13 47/9 47/10 47/24
51/9 52/22 54/23 55/2 56/16 63/19
taken [1]  40/18
takes [1]  7/9
taking [4]  6/21 6/22 16/23 53/2
talk [2]  5/16 7/20
talking [12]  33/8 48/24 49/1 49/3
51/18 52/17 55/14 59/22 60/7
60/11 65/6 65/7
talks [1]  7/21
tap [2]  64/18 64/19
tell [6]  43/1 43/12 48/3 54/4
68/20 70/12
teller [1]  9/1
telling [1]  66/2
tens [1]  61/11
tentatively [1]  70/11
Tenth [1]  45/2
term [2]  49/15 65/17
terms [7]  6/15 7/20 19/24 19/25
20/3 21/21 69/3
terrorism [1]  15/11
testified [3]  6/2 23/10 64/23
testifying [1]  55/18
testimony [6]  27/20 27/25 44/16
63/11 64/12 66/24

**T**

text [3]  4/8 11/5 21/22
than [16]  4/20 8/4 8/19 10/10
  12/8 12/25 18/18 23/8 30/25 32/3
  32/5 39/6 46/18 51/12 55/5 56/21
thank [7]  3/14 40/17 40/20 62/2
  65/11 67/5 72/21
Thankfully [1]  71/14
that [591]
theft [2]  25/9 32/3
their [10]  6/10 6/19 13/23 17/18
  17/24 18/10 29/5 55/13 67/3 68/12
them [16]  5/13 13/13 14/4 17/6
  17/7 24/2 25/6 27/7 42/3 43/25
  45/19 50/8 50/14 53/3 56/19 58/10
themselves [3]  6/19 10/20 46/10
then [45]  4/1 6/19 6/23 7/17 8/17
  9/20 13/17 14/13 16/7 16/24 17/2
  17/21 18/24 19/14 19/23 20/12
  21/5 23/20 26/8 27/7 28/2 37/2
  37/3 40/15 40/22 45/8 47/1 47/14
  49/4 49/13 49/24 50/2 57/23 59/22
  62/13 64/4 66/7 67/13 68/6 68/17
  68/21 70/10 71/7 71/17 72/19
theory [7]  5/22 8/18 9/5 24/6
  50/8 58/20 60/9
there [122]
therefore [7]  14/2 14/3 18/8
  20/17 20/19 39/17 66/4
these [40]  8/6 11/21 22/14 26/25
  27/13 28/17 31/6 36/9 38/23 41/15
  42/1 42/9 42/25 43/11 43/21 43/24
  44/23 45/8 45/14 47/19 50/12
  50/14 51/1 51/3 51/16 51/20 56/19
  58/9 58/10 60/4 60/4 60/13 65/21
  66/14 67/1 67/7 68/3 68/7 68/12
  72/21
they [75]
thing [9]  23/2 26/25 42/25 43/6
  47/17 51/5 59/13 61/8 65/14
things [12]  8/12 23/16 43/3 47/8
  54/8 57/24 58/11 58/12 58/18
  66/14 67/12 67/21
think [126]
think that [1]  24/23
thinking [6]  5/4 11/11 30/11
  51/17 67/6 68/9
third [13]  6/17 6/21 7/2 8/10
  10/18 18/20 18/25 19/7 20/23 32/1
  34/23 34/25 46/15
third-party [6]  6/17 6/21 7/2
  18/25 19/7 20/23
this [129]
Thompson [1]  41/13
those [38]  3/21 4/22 6/6 6/22
  6/23 17/6 17/17 19/4 19/10 19/16
  19/18 20/1 20/22 24/9 25/15 26/17
  26/18 27/11 28/19 30/10 32/1
  32/10 32/21 33/20 33/20 37/8 44/1
  44/7 44/7 44/25 47/11 50/10 50/15
  52/13 53/14 54/13 62/14 69/16
though [7]  13/5 16/16 16/21 30/22
  31/25 64/17 70/12
thought [2]  3/20 3/22
thousand [2]  13/22 35/12
thousands [2]  35/7 35/21
thread [1]  5/16
three [5]  7/8 52/1 52/9 52/11
  55/5
through [36]  5/5 5/8 10/2 12/21
  14/14 14/14 17/11 18/1 22/11 23/9
  23/13 23/16 23/17 24/2 24/5 25/23
  26/1 33/20 34/25 35/1 36/15 38/13
  41/7 41/7 42/17 49/2 49/5 49/23
  50/7 57/25 62/9 64/4 65/22 66/5
  66/6 66/10
ticking [1]  33/20
time [36]  13/21 13/23 19/10 21/6
  22/19 25/21 27/1 27/3 27/10 28/9
  28/11 28/12 28/20 28/22 31/22
  31/25 32/1 32/14 35/5 36/15 37/25

42/13 44/11 45/19 48/6 52/11
  66/10 71/4 72/7 72/11
timeline [1]  69/8
times [3]  55/1 55/5 58/16
timing [1]  68/15
tiny [2]  24/15 24/15
title [14]  10/12 11/9 18/15 18/21
  18/22 19/1 19/1 19/6 19/9 20/5
  21/3 21/6 43/24 49/6
today [3]  67/14 68/4 72/4
today's [1]  3/21
together [1]  8/7
too [2]  37/25 68/17
took [2]  16/8 19/17
top [3]  25/4 37/4 37/20
TOR [4]  2/2 2/3 3/9 36/15
tort [1]  21/14
total [6]  7/8 15/23 23/18 23/19
  24/15 52/2
totaling [1]  52/11
totally [3]  21/12 21/16 32/11
touch [1]  40/21
touched [1]  65/18
touching [2]  45/11 53/11
trace [5]  5/12 5/13 12/3 24/4
  49/2 49/12
traceability [2]  18/5 43/4
traceable [12]  16/5 16/6 26/6
  28/23 32/2 32/19 42/21 43/13
  44/12 44/17 47/1 47/5
traced [1]  36/10
tracing [3]  41/24 43/6 48/1
traditional [1]  5/5
trailed [1]  69/11
trailing [1]  69/12
transacted [1]  66/12
transacting [1]  9/20
transaction [16]  5/24 9/7 13/24
  14/7 28/7 28/8 28/10 28/12 39/7
  39/22 39/24 42/14 52/4 54/21 61/2
  65/20
transactions [23]  4/22 7/8 8/17
  10/1 27/23 36/7 36/9 36/17 40/3
  40/4 40/7 40/9 50/2 51/12 52/1
  52/9 52/11 56/12 58/9 58/10 61/4
  61/5 65/22
transcript [5]  1/9 27/21 44/15
  54/6 73/4
transferred [1]  13/14
transforms [1]  16/5
transmission [1]  4/15
transmitting [2]  4/17 20/2
trial [27]  5/16 27/3 28/15 32/24
  42/7 42/11 44/8 55/17 56/1 56/8
  56/14 63/11 66/24 70/5 70/8 70/14
  70/14 70/15 70/17 70/20 71/3
  71/10 71/13 71/13 71/15 71/24
  71/25
tried [1]  25/1
triggers [1]  7/18
true [2]  30/8 73/4
truly [1]  9/13
Trump [1]  31/9
trying [5]  11/22 29/21 37/16
  45/12 46/14
tumbling [1]  47/12
turn [2]  40/19 64/18
turned [2]  16/18 64/18
turns [2]  70/15 70/20
twice [7]  38/7 38/25 39/1 39/6
  39/9 39/17 54/20
two [10]  3/22 5/14 20/21 31/3
  31/13 37/2 51/11 55/5 67/12 69/10
type [3]  25/17 58/2 64/6

**U**

U.S [3]  1/13 2/7 54/7
U.S.C [6]  4/9 6/16 7/19 10/8 11/1
  18/23
Uh [1]  52/3
Uh-huh [1]  52/3

ultimately [2]  23/1 26/5
 unaware [2]  37/17 9/5 11/8
  11/18 12/25 15/18 16/6 17/19
  30/10 39/3 39/10 39/19 41/10 52/7
  58/19 59/8 62/13 67/7 67/7 67/11
underlying [1]  49/20
understand [6]  5/6 11/22 37/24
  57/14 60/9 66/8
understanding [5]  59/3 61/18
  61/23 67/17 68/5
understood [1]  66/2
uniquely [1]  27/16
UNITED [17]  1/1 1/3 1/10 3/3 9/24
  28/25 29/1 30/12 31/14 34/3 41/5
  41/13 45/1 46/11 54/2 61/12 61/19
unjustly [1]  49/16
unlawful [4]  5/9 45/20 47/7 47/8
unless [4]  40/11 52/10 52/12
  61/25
unlicensed [6]  4/14 4/17 9/25
  19/5 20/2 23/14
Unlike [1]  4/11
unquote [1]  65/20
untraceable [2]  23/14 45/15
unusual [2]  13/10 13/18
unwitting [3]  16/24 17/2 20/14
up [24]  5/23 6/4 8/19 17/3 18/3
  20/12 26/1 36/2 38/23 39/1 39/10
  48/11 55/13 55/23 55/25 56/3 56/4
  56/20 65/5 66/1 67/21 68/10 68/12
  68/14
uploaded [2]  27/15 28/1
uploads [1]  27/7
upon [4]  13/14 18/23 21/17 32/9
us [8]  1/20 13/18 23/22 37/7 43/1
  43/12 60/11 62/5
USAO [1]  1/16
use [5]  5/18 5/20 49/15 59/11
  64/13
used [16]  4/19 4/20 8/17 9/4 11/9
  13/7 14/9 14/9 16/17 19/12 23/14
  23/15 64/6 64/11 64/22 65/12
useful [3]  43/1 43/10 47/21
user [5]  19/3 21/13 24/21 27/7
  64/6
users [1]  27/4
uses [3]  15/20 15/21 50/2
using [8]  5/24 12/6 12/7 16/24
  17/5 18/6 19/17 36/18
usually [3]  55/8 69/15 70/8

**V**

valid [1]  17/15
value [8]  13/16 31/6 33/5 37/7
  38/7 39/7 46/17 47/15
valued [3]  22/20 32/14 32/20
variable [1]  56/11
various [1]  23/13
vendor [2]  27/6 27/6
verdict [3]  63/8 66/25 67/3
versus [12]  3/3 9/24 11/12 28/25
  29/1 30/12 31/14 34/3 41/13 45/1
  46/4 54/2
very [19]  4/18 6/14 8/13 16/11
  23/18 28/16 41/22 46/9 48/15 51/4
  52/22 53/4 54/9 55/24 58/13 58/25
  60/12 65/19 70/13
vests [3]  18/22 19/6 20/5
victim [1]  60/8
view [1]  12/20
views [1]  11/21
violations [1]  24/10
virtually [1]  30/23
vis [2]  20/4 20/4
volatile [1]  55/24
volumes [1]  52/17
vs [1]  1/5

**W**

wad [1]  23/3
wages [2]  61/13 62/11
walk [1]  65/6

**W**

Wall [1]   2/3

wallet [10]   23/4 23/4 23/5 24/2
44/10 44/12 44/17 44/19 57/7
64/11

wallets [1]   27/9

want [25]   3/24 9/16 18/8 18/8
19/20 20/17 20/19 24/24 31/3
40/23 50/14 51/7 52/16 60/22
61/17 61/22 62/4 65/12 65/13 66/8
66/13 68/2 68/2 68/4 70/17

wanted [2]   3/14 26/9

was [156]

wash [5]   5/7 5/8 13/8 13/9 53/7

Washington [5]   1/5 1/14 1/17 1/21
2/9

wasn't [3]   44/7 44/21 60/22

way [29]   5/6 5/15 6/13 10/8 10/16
14/25 15/1 15/1 16/12 16/13 18/7
18/12 20/22 21/9 24/13 28/6 30/2
33/19 35/14 45/12 45/16 47/5
47/14 55/10 55/25 64/22 67/6
68/14 72/6

ways [3]   23/12 23/21 45/6

we [110]

we'll [5]   17/11 40/15 68/25 72/6
72/20

week [9]   70/6 70/6 70/24 71/1
71/7 71/8 71/16 71/23 72/2

weighed [1]   30/16

weighs [1]   33/21

well [27]   4/22 6/9 7/20 7/25 8/22
12/5 12/15 16/25 19/24 20/9 29/1
33/16 35/10 35/20 38/12 39/15
41/15 42/21 46/24 55/8 55/23 57/6
60/11 64/17 70/9 71/18 72/21

went [10]   16/17 16/20 28/1 28/8
31/23 43/21 43/21 44/1 56/7 60/25

were [55]   3/22 5/10 8/3 8/8 8/8
8/9 8/14 8/16 10/16 10/18 10/18
10/20 11/9 13/12 14/19 18/2 18/9
18/9 19/10 19/11 19/11 19/14 24/5
24/13 25/20 27/14 29/11 30/18
32/2 32/2 32/3 32/10 36/1 36/9
37/17 39/16 41/16 41/16 42/2
44/23 47/13 48/18 51/22 52/4
52/11 55/2 55/19 55/21 58/10
58/10 59/9 63/24 64/19 64/21 66/4

weren't [1]   13/11

what [88]

whatever [14]   6/10 15/13 25/9
26/5 26/23 32/17 42/15 42/15 48/8
48/22 56/7 56/19 60/6 61/14

whatnot [1]   59/17

when [43]   11/2 12/16 12/17 14/13
23/1 27/25 33/7 37/22 39/13 41/6
42/23 43/4 43/22 44/22 45/11
48/11 50/2 50/22 51/1 51/3 51/16
53/10 54/14 55/17 55/20 55/23
56/18 56/22 57/15 59/1 60/1 61/7
64/13 64/15 65/15 68/20 68/22
68/24 69/9 69/14 69/15 69/23
70/13

where [42]   7/3 7/23 7/25 8/13
9/24 13/21 14/3 14/17 15/2 15/20
16/16 16/17 16/22 24/17 25/6
25/12 25/23 27/9 28/14 31/5 31/7
33/9 35/21 38/4 41/1 41/2 41/21
42/14 44/2 46/6 46/18 46/22 47/16
48/17 48/24 50/6 50/25 55/6 60/7
64/3 67/21 68/18

whether [12]   6/8 8/6 8/11 9/12
10/7 10/14 25/17 30/3 38/10 44/22
68/2 68/4

which [39]   4/9 4/25 6/25 7/21
10/8 12/15 13/18 13/25 14/10 15/4
15/14 17/12 17/22 24/1 25/21 26/2
26/18 31/14 34/4 35/6 37/6 38/6
39/3 41/5 41/10 41/14 42/1 42/5
43/15 44/10 44/18 46/17 48/23
51/20 53/22 59/2 63/23 66/20

67/13

whoever [1]   50/7

while [1]   49/8

who [25]   3/11 6/18 7/4 16/20
16/23 17/2 17/15 18/2 18/2 19/16
21/3 21/6 21/13 30/23 30/25 35/11
45/18 46/15 49/6 51/10 58/1 60/5
65/3 65/6 65/7

whoever [1]   50/10

whole [7]   5/12 15/22 34/5 34/25
38/9 38/22 60/12

whose [2]   69/11

why [16]   4/1 5/13 7/11 11/24
11/25 18/11 40/13 43/2 43/12
50/18 51/1 58/12 59/17 66/9 69/22
70/18

wife's [2]   16/19 22/25

will [26]   4/2 5/19 8/22 17/14
20/1 24/25 31/13 32/21 44/14 54/4
56/25 62/3 65/6 65/12 68/8 68/9
68/19 68/20 68/20 68/22 68/22
69/15 69/21 70/5 71/14 71/18

window [1]   37/22

wins [1]   70/16

wipe [2]   31/7 33/10

wiped [1]   32/21

wipes [1]   32/12

wire [2]   24/9 25/9

withdrawal [4]   28/4 28/8 28/9
28/13

withdrawing [1]   58/1

withdrawn [1]   28/19

withdraws [2]   27/6 27/7

withdrew [1]   28/3

within [4]   29/12 34/13 35/15 55/9

without [6]   50/14 51/15 57/23
58/3 59/14 59/20

wonder [1]   60/11

wondering [4]   8/10 10/14 13/3
13/5

word [4]   4/19 38/19 65/12 66/16

words [3]   24/22 36/23 38/19

work [10]   5/10 5/11 16/22 18/12
21/9 36/2 58/4 61/10 68/21 72/6

workable [1]   69/18

worked [1]   26/25

working [3]   3/18 58/12 66/9

works [4]   5/6 14/25 17/9 72/8

world [2]   30/25 46/6

worth [9]   10/1 23/7 23/8 31/22
32/3 41/9 45/24 46/24 47/2

would [70]   3/4 3/20 3/23 8/25 9/6
9/12 11/4 15/2 16/7 16/12 18/1
18/10 18/10 19/18 21/9 22/2 22/4
24/14 25/21 27/10 27/18 31/2 35/5
35/10 36/21 36/22 37/3 37/5 37/6
37/22 38/17 39/9 43/1 43/9 46/5
47/13 47/20 49/9 51/25 52/14 56/8
56/13 59/9 59/10 59/11 59/13
59/18 59/20 59/23 59/24 61/8
62/16 62/18 62/20 62/22 64/3
64/14 64/16 64/16 65/22 67/13
67/18 68/11 69/8 71/9 71/9 71/23
72/1 72/2 72/3

would go [1]   16/12

wouldn't [2]   5/10 52/5

wrestle [1]   68/2

write [1]   48/4

written [1]   33/22

wrong [1]   42/4

**Y**

yeah [10]   8/3 9/15 30/5 31/16
34/17 38/1 46/12 51/25 70/23 71/6

years [4]   20/11 57/10 60/2 64/23

yes [32]   4/3 5/23 9/10 9/22 13/9
17/10 19/15 24/22 26/3 26/13
29/16 30/1 32/6 33/16 34/12 35/13
35/16 36/10 38/18 39/12 39/23
40/1 59/4 60/9 62/17 63/22 64/2
69/3 70/1 70/11 72/16 72/18

yesterday [2]   33/6 56/2

yet [2]   22/14 27/11

York [2]   22/23 23/1

you [245]

you get [1]   50/25

you'd [1]   35/5

young [11]   41/5 46/11 46/13 46/13
46/14 46/14 46/15 47/14 48/24
49/11 60/5

your [81]

**Z**

zero [1]   61/3